August 21, 2020

Hon. Paula Xinis
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770

Re:   *CASA v. Wolf*, 8:20-cv-2118-PX

Dear Judge Xinis:

In response to this Court's order, ECF No. 53, Plaintiffs submit this brief to explain that they are entitled to summary judgment on Counts 2-4,[1] and therefore the vacatur of the Asylum EAD Rules, because they have standing and because Defendant Chad Wolf lacked authority to issue the rules. *See Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). In addition, in view of the irreparable harm that these rules impose (harm that will increase the longer they are in effect) and likelihood of success on these counts, Plaintiffs renew their request for a temporary postponement of the rules under a TRO or 5 U.S.C. § 705 pending the earlier of summary judgment or the preliminary relief initially sought.

**I.    Plaintiffs Have Standing.**

All five plaintiffs assert Counts 2-4, and the Court can adjudicate those counts if any one of them has standing. *See Bostic*, 760 F.3d at 370. Courts have expressed particular willingness to review allegations of procedural injury from government actions taken by an official without legal authority. *See, e.g.*, *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 19-21 (D.D.C. 2020) (holding that the redressability requirement is relaxed in procedural-rights cases and finding that asylum seekers had standing to challenge the propriety of Cuccinelli's appointment); *see also Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000), *cert. denied*, 121 S. Ct. 298 (2000).

First, each of the named plaintiffs has organizational standing. Defendants did not initially dispute this in opposing preliminary relief, and *CASA v. Trump*, __ F.3d. __, No. 19-2222, 2020 WL 4664820 (4th Cir. Aug. 5, 2020), did not change the analysis. *See* Reply, ECF No. 47, at 11-13; Supp. Br., ECF No. 54, at 2. *CASA* is inapposite where, as here, plaintiffs demonstrate a forced change to their programs, such as loss in revenue. *See La Clinica de la Raza v. Trump*, No. 19-CV-04980-PJH, 2020 WL 4569462, *4 (N.D. Cal. Aug. 7, 2020); *see also, e.g.*, CASA Decl., ECF No. 24-4, ¶¶ 33-34; Oasis Decl., ECF No. 24-7, ¶¶ 44-46.[2]

---

[1] Plaintiffs are not moving for summary judgment with respect to the Appointments Clause claim in Count 4, which Plaintiffs pled in the alternative to the statutory claims.

[2] The court in *La Clinica* also found that organizational plaintiffs there demonstrated that, as legal services providers, they are within the zone of interests of the immigration laws. *See* 2020 WL 4569462, at *7-11. This analysis is not required for standing, and "the test is not especially demanding" in the APA context. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-130 (2014) (internal quotation marks omitted). Defendants have not contested this issue nor could they, given that Plaintiffs exist to serve asylum seekers and DHS itself identified

1

Second, Plaintiffs CASA and ASAP have associational standing, an issue that Defendants have not disputed thus far. A membership organization has associational standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). The final prong of this test is met here because Plaintiffs present legal claims and request the remedy of vacatur, obviating the need for individual-member participation in the lawsuit. *See Hunt*, 432 U.S. at 343-45 (holding that associations may pursue prospective relief on behalf of their members). That leaves the first two prongs: identifying at least one member who would have standing, *see S. Walk*, 713 F.3d at 184, and showing that interests at stake here—the ability of asylum seekers to obtain work authorization—are germane to the organization's purpose.

CASA satisfies these requirements. *See* ECF No. 24-4. CASA's mission is to "create a more just society by building power and improving the quality of life in low-income immigrant communities, including those seeking asylum." CASA Decl. ¶ 4. CASA has 100,000 members, including asylum seekers, who pay dues and participate in the organization's leadership and programming. *See id.* ¶¶ 7-8; *see also Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 771 (D. Md. 2018) (CASA, as "a special interest group[] directly focused on aiding immigrants and their communities," is a "prototypical example[]" of an organization with associational standing), *aff'd on other grounds*, 924 F.3d 684 (4th Cir. 2019), *cert. denied*, 2020 WL 3492650 (2020). The Asylum EAD Rules will harm CASA's mission by depriving its asylum-seeking members of the opportunity to work to support themselves and their families, and thereby pursue their asylum applications. CASA Decl. ¶¶ 12-13, 20-23. CASA members who will be harmed by the rules include H.V. and M.C, both of whom will have to wait indefinitely to receive work authorization under the new rules, *id.* ¶ 26.

ASAP, too, has associational standing. *See* ECF No. 24-5. "ASAP's mission is to provide individuals who came to the Mexico-U.S. border seeking asylum with community support and legal services." ASAP Decl. ¶ 4. ASAP has over 4,000 members—the majority of whom are asylum-seeking mothers—whom it screens and approves for membership. *Id.* ¶¶ 7-8. As ASAP members, they receive access to ASAP's resources and set the priorities for its systemic reform and advocacy work. *Id.* ¶¶ 6-8, 12. The Asylum EAD Rules will harm ASAP's mission by making it more difficult for members to pursue their asylum applications. *Id.* ¶ 31. Individual ASAP members who will be harmed by the rules include W.L. and N.G., who were expecting to be able to apply for and receive their work authorization soon but will now have to wait months more to apply and indefinitely longer to actually receive an adjudication. *Id.* ¶¶ 22-29.

Courts in this district have found CASA and other membership organizations representing immigrants to have standing in similar cases. *See, e.g.*, *Casa de Maryland*, 284 F. Supp. 3d at 771; *Kravitz v. U.S. Dep't of Commerce*, 366 F. Supp. 3d 681, 733 (D. Md. 2019) ("[A] membership

---

organizations like Plaintiffs as parties that would bear the burden of the rules. *See* Reply at 12; *see also La Clinica*, 2020 WL 4569462, at *7-11.

organization and community union that seeks to build strong communities in the Rio Grande Valley" had associational standing.); *Int'l Refugee Assistance Project v. Trump*, 265 F. Supp. 3d 570, 599 (D. Md. 2017) (finding associational standing for membership organizations), *aff'd*, 883 F.3d 233 (4th Cir. 2018). The Court should find the same here.

## II. Plaintiffs are Entitled to Summary Judgment on Counts 2-4.

### A. The Court May Advance These Counts to Summary Judgment.

Counts 2-4 are ripe for final resolution on the merits. Under Fed. R. Civ. P. 65(a)(2), this Court may consolidate its decision on Plaintiffs' motion for preliminary injunction ("Mot.", ECF No. 23-1) with its final determination on the merits as long as the parties "receive clear and unambiguous notice" that the court may proceed to the merits "at a time which . . . still afford[s] [them] a full opportunity to present their respective cases." *Gellman v. State of Md.*, 538 F.2d 603, 604 (4th Cir. 1976); *see also Grace v. D.C.*, 187 F. Supp. 3d 124, 151 (D.D.C. 2016) ("[W]hen the eventual outcome on the merits is plain at the preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment." (alteration in original)).

Here, Defendants had ample notice and opportunity to respond to Plaintiffs' vacancies arguments. Plaintiffs raised these very issues through comments submitted on the Broader EAD Rule in January 2020, 85 Fed. Reg. at 38,557, and Defendants were aware of the legal problems posed by Defendant Wolf's service even earlier, by November 2019, when the U.S. Government Accountability Office ("GAO") began its months-long investigation. *See* Letter of Chad Mizelle ("Mizelle Ltr.") at 6, https://www.dhs.gov/publication/letter-dhs-office-general-counsel-gao-dhs-succession?topics=all (last visited August 21, 2020). Defendants have also had ample notice that the Court may advance the arguments to summary judgment: Plaintiffs from the outset have been clear that the claims are ripe for final disposition, *see* Mot. at 9 n.7; Reply at 11, and the Court itself provided notice at the August 14 hearing and gave Defendants additional time for briefing, Tr., ECF No. 56, at 61-65. This Court is thus well within its authority to advance Plaintiffs' vacancies claims to summary judgment.

### B. Defendants Violated the FVRA and HSA.

Defendant Wolf's service as purported Acting DHS Secretary violates both the time limits prescribed by the Federal Vacancies Reform Act ("FVRA") and the order of succession under the Homeland Security Act ("HSA"). Mot. at 26-31; Reply at 6-11. Both of these issues are ripe for final disposition on the current record,[3] and each offers an *independent* reason to vacate the Asylum EAD Rules. Plaintiffs refer the Court to our prior briefing regarding the merits of the claims, but address two recent developments: the district court decision in *La Clinica de la Raza v. Trump*, No. 19-CV-04980-PJH, 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020); and DHS's letter responding to the GAO report, ECF No. 51-1, finding that Defendant Wolf's purported service as Acting Secretary violates the HSA.

---

[3] Whether Defendant Wolf's tenure as Acting Secretary violates the FVRA's 210-day limit presents a pure question of law that requires no factual development. Whether Wolf's purported service also violates the HSA—while not a pure question of law—similarly requires no further factual development, as Defendants recognized at the hearing, *see* Tr. at 62 ("I cannot conceive of any new facts that would have to be before the Court to decide [the vacancies issue].").

### 1. The *La Clinica* Decision Reinforces Plaintiffs' HSA Claim.

The recent *La Clinica* decision supports Plaintiffs' position that Defendant Wolf never lawfully assumed office as the Acting Secretary under the HSA. *See* 2020 WL 4569462, at *14. In that case, the court found that former Secretary Nielsen's amendments to the order of succession never made McAleenan her proper successor, *id.*, meaning he could not have changed the order of succession to make Defendant Wolf Acting Secretary under the HSA. The court concluded that McAleenan could nevertheless validly serve as Acting Secretary if he was designated by the President under the FVRA. *Id.* Defendants have not made that argument here, but even if they did, Wolf's tenure as Acting Secretary would still be improper: McAleenan could not have amended the order of succession as he purported to do after the FVRA's 210-day limit had elapsed, and Wolf himself could not have been designated under the FVRA because his purported tenure began more than 210 days from when the vacancy occurred. *See* Mot. at 28-31.

### 2. DHS Did Not Rebut the GAO's Findings that Defendant Wolf Violated the HSA.

This week, DHS responded to the GAO's report regarding Defendant Wolf's unlawful service as Acting Secretary in an eight-page letter signed by the "Senior Official Performing the Duties of the General Counsel," Chad Mizelle (who himself has not been Senate-confirmed as DHS General Counsel—a position that has been vacant without any nomination for over 300 days). DHS's response, however, does not identify any new material facts or legal arguments regarding Plaintiffs' vacancies claims. The letter does not substantively address Plaintiffs' FVRA time limitation claims, and instead presents three readily refuted arguments about Wolf's purported service under the HSA.[4]

**First**, Mizelle argued that Nielsen's Memorandum dated April 9, 2019, amending Delegation 00106, is a non-binding internal agency document with no legal force. Mizelle Ltr. at 5. Plaintiffs disagree with that characterization, but more importantly, it is irrelevant: Plaintiffs do not seek to enforce the Memorandum. Rather, Plaintiffs challenge Defendant Wolf's authority to serve as Acting Secretary under the HSA, and it is *Defendants* who point to the Memorandum's amendments to Delegation 00106 as the operative order of succession under that statute. Indeed, in response to Plaintiffs' comments during the rulemaking that questioned Defendant Wolf's authority to issue the Broader EAD Rule, DHS cited the Memorandum as purportedly rendering McAleenan her valid successor. 85 Fed. Reg. at 38,557. Defendants doubled down on this position when they cited Delegation 00106 and its purported amendments to this Court to argue that Defendant Wolf and his predecessor, McAleenan, properly assumed the office of Acting Secretary under the HSA. *See* Opp'n, ECF No. 41, at 25. DHS cannot now dismiss as meaningless the documents it relied on as the legal authority to install the Acting Secretaries. *See Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 83-84 (4th Cir. 2020) ("[C]ourts may not accept . . . post hoc rationalizations for agency action." (internal quotation marks omitted)).

**Second**, Mizelle argued that even if Nielsen's amendment to the orders of succession is subject to review, the GAO should have deferred to DHS's interpretation of that amendment.

---

[4] The GAO responded to the letter and declined to rescind its decision finding Wolf's service unlawful. *See* GAO Response, https://www.gao.gov/products/D22098 (last visited Aug. 21, 2020).

4

Mizelle Ltr. at 5. However, only the agency's "authoritative positions" that reflect the agency's expertise and fair and considered judgment are entitled to deference, *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-18 (2019), and DHS's response to a GAO inquiry, much like its litigation positions, is not entitled to such deference. *See Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 286-87 (4th Cir. 2018) ("[L]itigation positions that do not reflect an exercise of delegated legislative authority and agency expertise . . . are not eligible for any deference."). And, in any event, deference is only available where there is genuine ambiguity, even after "resort[ing] to all the standard tools of interpretation." *Kisor*, 139 S. Ct. at 2414. Defendants have raised no such ambiguity, and, there is none: by its plain terms, the Memorandum does not make McAleenan the valid successor because it only amends Annex A, which applies in the event the Secretary is unavailable "during a disaster or catastrophic emergency" —not when the Secretary resigns. Decl. of Neal J. Swartz., ECF No. 41-2, Ex. 1 at 5-6; *id.* Ex. 2 at 7; *see also* Reply at 10; GAO Report at 9; GAO Response at 2.[5]

**Third**, Mizelle argued that, regardless of the written amendment to the orders of succession, Nielsen's subsequent actions—including administering the oath of office to McAleenan and announcing his position in her internal farewell email—somehow superseded Delegation 00106.[6] Mizelle Ltr, at 6. But, again, DHS made clear its view that Delegation 00106 is the authoritative order of succession under HSA § 113(g)(2) when it promulgated the Broader EAD Rule and cited the Memorandum as the authority that made McAleenan Nielsen's purported successor, and McAleenan's amendments to the Delegation as the authority for Wolf's purported tenure. *See* 85 Fed. Reg. at 38,557. The agency's sudden about face and "post-hoc" pronouncement that Delegation 00106 and the Memorandum are not in fact the operative order of succession under the HSA is thus "entitled to no weight or deference." *Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 516 n.2 (4th Cir. 2011); *see also* GAO Report at 9.

### C. Plaintiffs Are Entitled to a Vacatur of the Asylum EAD Rules.

If the Court enters summary judgment in Plaintiffs' favor on any of their vacancies claims, the appropriate remedy is vacatur of the Asylum EAD Rules for three separate reasons. **First**, the FVRA specifies the remedy for violations of its provisions: any action taken "in the performance of any function or duty of a vacant office" by a person not lawfully filling that vacancy under the statute, "shall have no force or effect" and "may not be ratified." 5 U.S.C. § 3348(d)(1)-(2). A "function or duty" of an office must be "established by statute" and "required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). Defendants have not disputed that the promulgation of the Asylum EAD Rules was a "function or duty" of the office of the DHS Secretary. Nor could they. The Secretary is broadly vested with "[a]ll functions of all [DHS] officers," 6 U.S.C § 112, and the "administration and enforcement" of all laws relating to immigration and naturalization, 8 U.S.C. § 1103(a)(1). Defendants cited that precise legal

---

[5] DHS attempts to deny the plain text of the Memorandum by distinguishing between an "order of succession" and a "delegation of authority." Mizelle Ltr. at 3. But regardless of whether Nielson intended to amend the order of succession, the plain text of the Memorandum is unambiguous: it only amended Annex A, which applies only in the case of "disaster or catastrophic emergency." Swartz Decl., Ex. 1 at 6. DHS admits as much, noting that "Nielsen's memorandum did not expressly revoke the language" in Delegation 00106 that refers to the order of succession in the event of the Secretary's resignation. Mizelle Ltr. at 3.

[6] As they are immaterial, Plaintiffs do not dispute these new facts not introduced in this record.

authority when promulgating the Asylum EAD Rules. *See* 85 Fed. Reg. at 38,546; 85 Fed. Reg. at 37,503.[7]

**Second**, and independently, if the Court finds that Defendant Wolf did not validly assume the position of Acting Secretary under the HSA, that violation would also trigger the FVRA's mandatory sanction. FVRA § 3347(a) provides that the FVRA is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency," unless an agency-specific statute "expressly" authorizes the head of that agency to otherwise designate an official to fulfill the functions of that office "temporarily in an acting capacity," 5 U.S.C. § 3347(a)(1)(A). HSA § 113(g) does just that, allowing the Secretary to designate a further order of succession for the role of Acting Secretary. If Wolf's tenure as purported Acting Secretary is not lawful under § 113(g) of the HSA, however, then the FVRA remains the exclusive authority for his service. This brings us back to Defendants' FVRA violations and the FVRA's express remedy. *See* Br. Of Amicus Curiae Constitutional Accountability Center ("CAC"), ECF No. 38-1, at 7; Tr. at 61.

**Finally**, in addition to FVRA's specific remedy, the APA provides for vacatur of agency rules where the action was, as here, "in excess of statutory jurisdiction [or] authority," 5 U.S.C. §706(2)(C). *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 n.7 (2020) (finding vacatur to be an appropriate remedy in an APA case); *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018) (recognizing that vacatur is the presumptive remedy under § 706). Thus, regardless of whether the requirements for the FVRA's remedial provision (such as the "function or duty" test) is met, the APA provides an independent ground for voiding the rules. *See SW Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 78, 83 (D.C. Cir. 2015) (voiding challenged action under the APA where official was serving in violation of the FVRA but the FVRA's remedial provision did not apply), *aff'd* 137 S. Ct. 929 (2017); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 34 (D.D.C. 2020); *see also* CAC Br. at 18.

### III. Plaintiffs Are Entitled to Temporary Postponement of the Rules Pending Summary Judgment or Preliminary Relief.

Because summary judgment is appropriate and the rules cause ongoing irreparable harm, Plaintiffs renew their emergency request for a postponement of the effective dates of the Asylum EAD Rules through a TRO and/or § 705 relief pending summary judgment. Today, the Timeline Repeal Rule took effect: DHS is no longer under an obligation to decide asylum applicants' initial

---

[7] Although many functions of the Secretary's office may be delegated to other DHS officers, that delegation authority does not immunize the Secretary from the FVRA's prescribed remedy. *See L.M.-M.*, 442 F. Supp. at 31 (rejecting view that a function or duty must be non-delegable to trigger the FVRA's remedy under 5 U.S.C. § 3348(d)(1)); *see also* CAC Br. at 15. In any event, the only other officer who could plausibly have the authority to promulgate the Asylum EAD Rules is the USCIS Director, who is charged with "establish[ing] national immigration services policies and priorities," 6 U.S.C. § 271(a)(3)(D). However, there has not been a lawful USCIS Director since June 2019, *see L.M.-M.*, 442 F. Supp. 3d at 7, 28, and when a subcabinet office is vacant, the duties of that office revert back to the head of the agency, 5 U.S.C. § 3348(b)(2), here—the DHS Secretary. *See* CAC Br. at 15.

authority when promulgating the Asylum EAD Rules. *See* 85 Fed. Reg. at 38,546; 85 Fed. Reg. at 37,503.[7]

**Second**, and independently, if the Court finds that Defendant Wolf did not validly assume the position of Acting Secretary under the HSA, that violation would also trigger the FVRA's mandatory sanction. FVRA § 3347(a) provides that the FVRA is the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency," unless an agency-specific statute "expressly" authorizes the head of that agency to otherwise designate an official to fulfill the functions of that office "temporarily in an acting capacity," 5 U.S.C. § 3347(a)(1)(A). HSA § 113(g) does just that, allowing the Secretary to designate a further order of succession for the role of Acting Secretary. If Wolf's tenure as purported Acting Secretary is not lawful under § 113(g) of the HSA, however, then the FVRA remains the exclusive authority for his service. This brings us back to Defendants' FVRA violations and the FVRA's express remedy. *See* Br. Of Amicus Curiae Constitutional Accountability Center ("CAC"), ECF No. 38-1, at 7; Tr. at 61.

**Finally**, in addition to FVRA's specific remedy, the APA provides for vacatur of agency rules where the action was, as here, "in excess of statutory jurisdiction [or] authority," 5 U.S.C. §706(2)(C). *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 n.7 (2020) (finding vacatur to be an appropriate remedy in an APA case); *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018) (recognizing that vacatur is the presumptive remedy under § 706). Thus, regardless of whether the requirements for the FVRA's remedial provision (such as the "function or duty" test) is met, the APA provides an independent ground for voiding the rules. *See SW Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 78, 83 (D.C. Cir. 2015) (voiding challenged action under the APA where official was serving in violation of the FVRA but the FVRA's remedial provision did not apply), *aff'd* 137 S. Ct. 929 (2017); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 34 (D.D.C. 2020); *see also* CAC Br. at 18.

### III. Plaintiffs Are Entitled to Temporary Postponement of the Rules Pending Summary Judgment or Preliminary Relief.

Because summary judgment is appropriate and the rules cause ongoing irreparable harm, Plaintiffs renew their emergency request for a postponement of the effective dates of the Asylum EAD Rules through a TRO and/or § 705 relief pending summary judgment. Today, the Timeline Repeal Rule took effect: DHS is no longer under an obligation to decide asylum applicants' initial

---

[7] Although many functions of the Secretary's office may be delegated to other DHS officers, that delegation authority does not immunize the Secretary from the FVRA's prescribed remedy. *See L.M.-M.*, 442 F. Supp. at 31 (rejecting view that a function or duty must be non-delegable to trigger the FVRA's remedy under 5 U.S.C. § 3348(d)(1)); *see also* CAC Br. at 15. In any event, the only other officer who could plausibly have the authority to promulgate the Asylum EAD Rules is the USCIS Director, who is charged with "establish[ing] national immigration services policies and priorities," 6 U.S.C. § 271(a)(3)(D). However, there has not been a lawful USCIS Director since June 2019, *see L.M.-M.*, 442 F. Supp. 3d at 7, 28, and when a subcabinet office is vacant, the duties of that office revert back to the head of the agency, 5 U.S.C. § 3348(b)(2), here—the DHS Secretary. *See* CAC Br. at 15.

EAD applications on any timeline and may reassign staff and redesign its processes—as it asserted that it would do—accordingly. On Tuesday, August 25, the Broader EAD Rule goes into effect.

The implementation of the rules will force Plaintiffs to change their business in a way that will cause immediate irreparable injury and will yield broader chaos for the agency and the public. *See* Mot. at 31-34; Reply at 11-14; Supp. Br. at 2. Once the Broader EAD Rules take effect, for example, Plaintiffs providing legal services will have to file their clients' applications for asylum or work authorization on more complicated application forms, according to more complicated instructions. *See* USCIS, www.uscis.gov/i-765 (setting out instructions for two sets of forms) (last visited Aug. 21, 2020); USCIS, www.uscis.gov/i-589 (same) (last visited Aug. 21, 2020). They will have to prepare additional documentation to urge the agency to exercise favorable discretion and submit detailed information and documentation regarding their clients' criminal and immigration histories. *See, e.g.*, Pangea Decl., ECF No. 24-8, ¶¶ 26-29; Centro Legal, ECF No. 24-6, ¶¶ 27-35. Asylum applicants and their advocates will also immediately face confusion about what constitutes an "applicant-caused delay" that could jeopardize EAD eligibility. They will face difficult decisions as a result, such as whether to submit supplemental evidence in support of their asylum applications at the risk of having work authorization denied. *See, e.g.*, Oasis Decl. ¶ 52. Absent preliminary relief, even if the Court vacates the rules in short order, the harms that would have accumulated in the interim would be irreparable—Plaintiffs would already have been forced to change their programming and they would in fact have to spend additional resources altering programming back to the prior status quo or potentially remedying the applications that have been submitted while the rules were in effect (e.g., if the agency demands after the fact that EAD applicants re-submit their applications with different forms).

To the extent that Defendants seek in their submission today to prolong these proceedings with additional briefing or factual submissions in advance of summary judgment, that would only increase Plaintiffs' need for the § 705 relief or the preliminary injunction that Plaintiffs sought in their initial papers. Even if Defendants were to submit new legal arguments or facts in today's briefing, the record with respect to Plaintiffs' request for preliminary relief is closed and Defendants have had adequate opportunity to brief these issues. If the government requires additional time to re-formulate its positions with respect to Counts 1-4 for summary judgment despite having had ample opportunities to do so, *see supra* at 3, Plaintiffs should be protected from irreparable harm based on the preliminary showing that Defendant Wolf lacked authority to issue the challenged rules. The recent Fourth Circuit decision in *CASA* did not—and could not have— foreclosed all options for preliminary relief in this circuit, and Plaintiffs have met the requirements for such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Plaintiffs therefore renew their request that the Court issue a temporary postponement of the effective dates of the rules (through a TRO or section 705) until the earlier of summary judgment or preliminary relief (in the form of postponement of the rules until disposition under § 705 or pursuant to a preliminary injunction).

Respectfully submitted,

| | |
|---|---|
| _____/s/_____<br>Mariko Hirose*<br>(signed by Dennise Moreno with permission of Mariko Hirose)<br>Kathryn Austin*<br>Geroline Castillo*<br>INTERNATIONAL REFUGEE ASSISTANCE PROJECT<br>One Battery Park Plaza, 4th Floor<br>New York, NY 10004<br>Tel: (516) 701-4620<br>Fax: (929) 999-8115<br>mhirose@refugeerights.org<br>kaustin@refugeerights.org<br>gcastillo@refugeerights.org<br><br>Justin B. Cox (Bar No. 17550)<br>INTERNATIONAL REFUGEE ASSISTANCE PROJECT<br>PO Box 170208<br>Atlanta, GA 30317<br>Tel: (516) 701-4233<br>Fax: (929) 999-8115<br>jcox@refugeerights.org | _____/s/_____<br>Dennise Moreno (Bar No. 21358)<br>Conchita Cruz*<br>Zachary Manfredi*<br>ASYLUM SEEKER ADVOCACY PROJECT<br>228 Park Avenue S. #84810<br>New York, NY 10003-1502<br>Tel: (305) 484-9260<br>Fax: (646) 968-0279<br>dennise.moreno@asylumadvocacy.org<br>conchita.cruz@asylumadvocacy.org<br>zachary.manfredi@asylumadvocacy.org<br><br>Richard W. Mark*<br>Joseph Evall*<br>Katherine Marquart*<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Tel: (212) 351-4000<br>Fax: (212) 351-4035<br>RMark@gibsondunn.com<br>JEvall@gibsondunn.com<br>KMarquart@gibsondunn.com |

*Attorneys for Plaintiffs*
\* Admitted *pro hac vice*


cc: All Counsel of Record