# Exhibit A

August 26, 2020

Hon. Paula Xinis
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770

Re:   *CASA v. Wolf*, 8:20-cv-2118-PX

Dear Judge Xinis:

Plaintiffs submit this letter in response to Defendants' August 21 supplemental brief regarding summary judgment on Counts 2-4, ECF No. 60. Defendants do not dispute that they are properly on notice that Plaintiffs' motion is converted to one for partial summary judgment, and raise no new arguments or disputed material facts to delay or defeat summary judgment. In this letter reply, Plaintiffs respond to Defendants' new case citations and arguments regarding standing and the vacancies-related counts.

## I.      Plaintiffs Have Shown Standing for Summary Judgment.

Defendants do not raise any factual disputes regarding standing that would preclude summary judgment. Defendants do not dispute associational standing for Plaintiffs CASA or ASAP for summary judgment purposes—only whether such standing is sufficient here to grant the preliminary relief of postponing the rules in their entirety. ECF No. 60 ("Letter") at 2–3.

With respect to organizational standing, Defendants argue that "the majority of" the harms that Plaintiffs have articulated are voluntary, Letter at 1–2, but that characterization ignores the holding of *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (recognizing organizational standing where an entity's operation is "perceptibly impaired"). Plaintiffs have shown that the services that they currently provide will be impaired once the Broader EAD Rules go into effect as a direct result of the rules' impact on their clients and members, and on their professional obligations to provide services competently and zealously. Defendants also argue that other identified harms, while not voluntary, are merely speculative, citing case law analyzing whether the enhanced risk of future harm is an injury in fact. Letter at 2 (citing *Beck v. McDonald*, 848 F.3d 262, 275–76 (4th Cir. 2017)). But the injury here is not speculative: it is undisputed that the organizations' work is and will continue to be burdened by the challenged rules, and Defendants themselves expected the plaintiff organizations to shoulder that burden. *See* Reply Br. at 12.

## II.     Defendant Wolf's Purported Service as Acting Secretary Violates the HSA.

Defendants maintain that Nielsen's April 9 Directive amended the order of succession in the case of a Secretary's *resignation*. But Defendants are silent as to why McAleenan later amended Delegation 00106 to apply to resignations if Nielsen had already done that.[1] Moreover, Defendants' cannot circumvent the plain text of the Directive that points only to the delegation

---

[1] *See also La Clinica De La Raza v. Trump*, No. 19-CV-04980-PJH, 2020 WL 4569462, at *14 (N.D. Cal. Aug. 7, 2020) (finding that the "fact that McAleenan amended Delegation No. 00106 to modify section II.A to cross-reference Annex A but Nielsen did not, reinforces the conclusion that at the time of Nielsen's resignation, Executive Order 13753 governed the order of succession").

order.  Defendants argue that, because Nielsen invoked § 113(g)(2) in her Directive, she could not have meant to change only the delegation order because the authority for that is provided by a different statutory provision that she did not invoke.  Letter at 4–5.  At the same time, however, Defendants argue that Nielsen's Directive changed both the order of succession *and* the delegation to create a unitary list for both.  *Id.* at 8.  Defendants have no sensible explanation for their position that invocation of § 113(g)(2) provides authority to amend the orders of delegation and succession, but is insufficient to support an amendment to the order of delegation alone.

III.     **Defendant Wolf's Purported Service Violates the FVRA's Time Limits**.

This Court is presented with two competing interpretations of the HSA: Plaintiffs' view that the HSA incorporates the FVRA and sets time limits on the service of any Acting DHS Secretary, or Defendants' view that the HSA authorizes lower-ranked temporary acting officials to serve as Acting Secretary "without time limitation," 85 Fed. Reg. 38,557 (June 26, 2020), in total disregard of both the FVRA and the Senate's advice and consent power.  Defendants' new attempts to support their position are no more compelling than their prior arguments.

**First,** despite the plain text of the FVRA and HSA, Mot. at 26–28 and Reply Br. at 6–9, Defendants argue that the FVRA's time limits apply only to acting officials designated by the President and not those designated by agency-specific statutes like the HSA.  Letter at 8–11 (citing 5 U.S.C. § 3346).[2]  But § 3346's reference to "an acting officer as described under [§] 3345" does not limit the FVRA's timing provision to acting officials designated by the President.  Rather, it refers to the statement in § 3345 regarding the offices and vacancies addressed by the FVRA: vacancies in executive offices requiring Senate confirmation upon death or resignation.  *See* 5 U.S.C. § 3345(a).  That is precisely the kind of vacancy at issue here.  *See* Rosenberg Amicus at 7.

Every court that has addressed the interaction of the FVRA with agency-specific statutes has found that they apply together.  *See English v. Trump,* 279 F. Supp. 3d 307, 319 (D.D.C. 2018) (finding that the FVRA is "generally intended to apply alongside agency-specific statutes"); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016).  Defendants' tortured reading of the HSA runs afoul of those principles, and leads to absurdities: in Defendant's view, the Deputy Secretary would be subject to time limitations as Acting Secretary under the FVRA, whereas lower-ranked officials would be entitled to indefinite tenure as Acting Secretary under the HSA.  Reply at 7.  Defendants defend this absurdity, arguing that Congress may have intended to provide the agency some flexibility when the Deputy Secretary is unavailable to step in as Acting Secretary.  Letter at 10 n.10.  But the FVRA already balanced the need for agency flexibility when vacancies occur with the need to protect the Senate's advice and consent power, and Congress determined that imposing a time limit on acting service is integral to that balance.  *See* S. Rep. No. 105-250, at 8 (recognizing the need for *temporary* flexibility to "keep the government functioning"

---

[2] Congress has enacted agency-specific succession statutes with alternative timelines, but absent an express time limit, the FVRA's defaults apply.  When Congress has done that, it has imposed time limits *shorter* than in the FVRA, including in the one example cited by Defendants: 29 U.S.C. § 153(d) only allows the Acting General counsel of the NLRB to serve for "forty days when the Congress is in session" unless a new permanent nominee has been submitted to the Senate.  *Id.*

during vacancies); *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017) (recognizing that Congress enacted the FVRA "[p]erceiving a threat to the Senate's advice and consent power").

      **Second**, Defendants argue that Congress did not intend for the FVRA to limit the duration of appointments under agency succession statutes and instead was only concerned with agency "housekeeping" or delegation statutes. But Defendants' cited authority for this view does not support their claims: they cite a pre-FVRA case, which highlighted precisely the problem Congress meant to remedy with the FVRA; another case discussing a pre-FVRA successions statute; and an opinion from the DOJ's Office of Legal Counsel attempting to interpret the FVRA's time limits in a way that would allow the Executive to circumvent the Appointments Clause. Letter at 9; *see also* Rosenberg Amicus at 6–14 (disagreeing with the view that agency-specific statutes' timelines are unaffected by the FVRA). Moreover, Congress's vision was not so narrow, *see* Rosenberg Amicus at 8–13, and the FVRA addresses both kinds of statutes. *See* 5 U.S.C. § 3347(a) (allowing only agency succession statutes that authorize acting service "temporarily"); *see also id.* § 3347(b) (prohibiting agency delegation statutes from qualifying as exceptions to the FVRA entirely). Defendants do not offer a tenable argument why Congress would have aimed to curb indefinite acting tenure of officials serving under one kind of statute, while authorizing indefinite service under another.

      **Third**, Defendants misconstrue constitutional avoidance: the question is not whether Defendant Wolf's particular service independently violates the Appointments Clause,[3] but whether Defendants' interpretation of the HSA would raise a serious issue of constitutional concern that can be avoided. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005). Defendants' interpretation raises just such a concern; their position in response to the Broader EAD Asylum Rule is that an Acting Secretary serving pursuant to § 113(g)(2) may do so "without time limitation." 85 Fed. Reg. 38557 (June 26, 2020). They announced that position publicly, before facing this litigation, and they are bound to it. *See Roe v. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020), as amended (Jan. 14, 2020) (rejecting agency post hoc rationalizations). And it would functionally transform a "temporary acting officer" into a permanent one, clearly rendering the HSA constitutionally deficient. *See United States v. Smith*, 962 F.3d 755, 764 n.3 (4th Cir. 2020) (observing that a statute that authorizes a lengthy acting tenure will amount "to a circumvention of the Appointments Clause"). Likely realizing the constitutional deficiencies in their position, Defendants now claim that their interpretation of the HSA "does not mean an Acting Secretary can serve indefinitely." Letter at 11. But even this about-face does little to mitigate the constitutional concern created by Defendants' interpretation, which has already resulted in what appears to be the longest-running cabinet-level vacancy in modern history.

---

[3] While Plaintiffs disagree that the constitutionality of Wolf's appointment is a political question and that his service as Under Secretary of the Office of Strategy, Policy and Plans is "germane" to the role of Acting Secretary, the constitutionality of Wolf's specific appointment is not currently before this court. *See* Pls' Letter Br. at 1 n.1. Proper construction of the HSA will allow the court to avoid having to evaluate either the constitutionality of the HSA or the constitutionality of Wolf's appointment.

Respectfully submitted,

Mariko Hirose*
Kathryn Austin*
Geroline Castillo*
INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
One Battery Park Plaza, 4th Floor
New York, NY 10004
Tel: (516) 701-4620
Fax: (929) 999-8115
mhirose@refugeerights.org
kaustin@refugeerights.org
gcastillo@refugeerights.org


Justin B. Cox (Bar No. 17550)
INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
PO Box 170208
Atlanta, GA 30317
Tel: (516) 701-4233
Fax: (929) 999-8115
jcox@refugeerights.org

Dennise Moreno (Bar No. 21358)
Conchita Cruz*
Zachary Manfredi*
ASYLUM SEEKER ADVOCACY
PROJECT
228 Park Avenue S. #84810
New York, NY 10003-1502
Tel: (305) 484-9260
Fax: (646) 968-0279
dennise.moreno@asylumadvocacy.org
conchita.cruz@asylumadvocacy.org
zachary.manfredi@asylumadvocacy.org


    /s/ *Richard W. Mark*
Richard W. Mark*
Joseph Evall*
Katherine Marquart*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035
RMark@gibsondunn.com
JEvall@gibsondunn.com
KMarquart@gibsondunn.com


*Attorneys for Plaintiffs*
* Admitted *pro hac vice*


cc: All Counsel of Record