

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Jane E. Andersen*
*Assistant United States Attorney*
*Jane.Andersen@usdoj.gov*

*Mailing Address:*
*6500 Cherrywood Lane, Suite 200*
*Greenbelt, MD 20770-1249*

*Office Location:*
*6406 Ivy Lane, 8th Floor*
*Greenbelt, MD 20770-1249*

*DIRECT: 301-344-4516*
*MAIN: 301-344-4433*
*FAX: 301-344-4516*

September 4, 2020

Honorable Paula Xinis
United States District Judge
United States District Court, District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Dear Judge Xinis:

**Standing to Challenge the Entire Broader EAD Rule:** Plaintiffs acknowledges that an "agency action' may be "part of an agency rule." 5 U.S.C. § 51(13). Yet, plaintiffs continue to maintain that standing has been established to challenge **all** of the provisions contained within the Broader EAD Rule, even though they have failed to identify members who would be harmed by all of the provisions. Courts are "powerless to create [its] own jurisdiction by embellishing otherwise deficient allegations of standing." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC,* 713 F.3d 175, 181-82 (4th Cir. 2013) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). Here, plaintiffs' generic averments of injury to support standing are improper. By way of example, the EWI Bar only applies to individuals who enter the United States illegally (with exceptions) after August 25, 2020. Plaintiffs have not submitted any affidavits after August 25, 2020, and the individuals identified in the declarations all entered the United States prior to August 25, 2020.

Relatedly, in a footnote, plaintiffs' state that some of CASA's members were able to file their asylum application before the effective date, contrary to the allegations set forth therein. Pls.' Sept. 2, 2020 Ltr. at n. 3. If those members are H.V. and M.C., then plaintiffs no longer have any claim of standing to challenge the EWI Bar provision. This information is material and needs to be clarified.

Finally, plaintiffs' suggestion that a procedural deprivation is the only thing needed to be shown to demonstrate standing in an APA case is incorrect. Indeed, a "deprivation of a procedural right without some concrete interest that is affected by the deprivation--a procedural right *in vacuo*--is insufficient to create Article III standing. *Summers v. Earth Island Inst.,* 555 U.S. 488, 496 (2009). The cases relied upon by plaintiffs address the "redressability" test and not the injury in fact test related to standing.

**The import of the language "function or duty" in § 3348—**Plaintiffs claim that the term "function or duty" means "*all* of the functions and duties that were actually assigned to [a vacant] office at the time." Pls.' Sept. 2, 2020 Ltr. at 4. Tellingly, they ignore the actual text of the statute, which defines a function or duty for the purposes of that section as "any function or duty" of the office "established" by statute or regulation and "required" by statute or regulation "to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2).

Plaintiffs similarly misconstrue the District of Columbia's decision in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), a case which does not help their § 3348 theory. The *L.M.-M.* court concluded

that a "function or duty" of a vacant office covered only functions that *both* are assigned by statute or regulation to a particular office *and* have not been reassigned by "the department head . . . using his vesting-and-delegation authority or any other authority at least 180 days before the vacancy occurred." *Id.* at 34. Even under that framework, the issuance of the rules is not a function or duty of the office of the Secretary because that authority was reassigned long ago to at least the Deputy Secretary. *See* Defs.' Sept. 2, 2020 Ltr. at 4; *id.*, Ex. 1.

**Authority regarding the effect of Delegation No. 00106**—Plaintiffs agree that then-Secretary Nielsen's signed order—not DHS Delegation No. 00106—controlled the order of succession upon her resignation. Pls.' Sept. 2, 2020 Ltr. at 5. Yet Plaintiffs' argument unravels because it depends on a strained reading that is unsupported by the order itself.

Plaintiffs' argument, which claims that Ms. Nielsen set an order of succession that applied in the event of a disaster or catastrophic emergency but not upon a Secretary's resignation, PI Br. at 28–29, necessarily relies on the structure of DHS Delegation No. 00106—specifically, paragraphs II.A and II.B. *See id.* at 28 (citing Revision 8.5 to DHS Delegation No. 00106). So, to make their argument work, Plaintiffs claim that Ms. Nielsen ratified DHS Delegation No. 00106. Pls.' Sept. 2, 2020 Ltr. at 5. Yet Ms. Nielsen's order provides no support for that reading. Ms. Nielsen's order barely mentions DHS Delegation No. 00106: she simply amended "Annex A" of DHS Delegation No. 00106. From that, Plaintiffs make a giant leap—one unsupported by the order itself—and claim that Ms. Nielsen adopted the entire structure of DHS Delegation No. 00106 simply because she acknowledged its existence and amended one of its attachments. The Court should not adopt this reading. It relies on the unsupported assumption that, despite relying on her 6 U.S.C. §113(g)(2) authority and expressly saying that she was designating an order of succession without qualification, she actually amended the order for delegation of authority, doing so by silently ratifying an administrative document. But in fact, she exercised her § 113(g)(2) authority in her April 2019 order to designate the order of succession, without tacitly ratifying DHS Delegation No. 00106.

Plaintiffs also point to a later amendment to the order of succession and lean on the presumption against superfluity to support their reading of Ms. Nielsen's order, but that attempt fares no better. While serving as Acting Secretary, Mr. McAleenan amended the order of succession and expressly said that Annex A governs when a Secretary resigns. Plaintiffs say this shows that Ms. Nielsen's order of succession did not apply when she resigned; otherwise, the express language in Mr. McAleenan's order would be superfluous. Pls.' Sept. 2, 2020 Ltr. at 5. But Plaintiffs cite no authority that says the presumption against superfluity categorically bans a *later* amendment that clarifies existing language without changing the substance of that language. Such an extreme reading of the presumption would bar any non-substantive amendment. Plaintiffs also ignore that Mr. McAleenan's order did more than clarify that Annex A; it also changed the actual order of succession. Thus, it is not as though the sole purpose of Mr. McAleenan's order was to address when Annex A governs.

**Nationwide injunction**—Plaintiffs ask this Court to ignore the severability clause contained within the Broader EAD Rule. This would be improper. Indeed, "[t]he question whether an agency order is severable turns on the agency's intent. *See Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 929, 429 U.S. App. D.C. 195 (D.C. Cir. 2017); *United States v. Booker*, 543 U.S. 220, 246, (2005). Finally, the feasibility of enjoining the rule to all unidentified members of CASA and ASAP should be analyzed under the balancing of the harms prong of *Winters*. It weighs in favor of a narrower injunction or no injunction at all.

                                                Respectfully submitted,
                                                Robert K. Hur
                                                United States Attorney

                                                _____/s/_____
                                                Jane E. Andersen
                                                Assistant United States Attorney