

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Jane E. Andersen*
*Assistant United States Attorney*
*Jane.Andersen@usdoj.gov*

*Mailing Address:*
*6500 Cherrywood Lane, Suite 200*
*Greenbelt, MD 20770-1249*

*Office Location:*
*6406 Ivy Lane, 8th Floor*
*Greenbelt, MD 20770-1249*

*DIRECT: 301-344-4516*
*MAIN: 301-344-4433*
*FAX: 301-344-4516*

October 9, 2020

Honorable Paula Xinis
United States District Judge
United States District Court, District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Dear Judge Xinis:

      I am writing on behalf of the defendants in the above-captioned proceeding to respectfully request a conference concerning the defendants' implementation and compliance with the Preliminary Injunction ("PI") entered on September 11, 2020 ("ECF No. 70). The PI provides specific injunctive relief to members of CASA de Maryland ("CASA") and the Asylum Seeker Advocacy Project ("ASAP") (herein referred to collectively as "members'"), related to "Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I–765 Employment Authorization Applications," 85 Fed. Reg. 37,502-37,546 (June 22, 2020) ("Timeline Repeal Rule"); and "Asylum Application, Interview, and Employment Authorization for Applicants," 85 Fed. Reg. 38,532-38,628 (June 26, 2020) ("Broader EAD Rules").

      As addressed below, while the parties have been able to agree upon a number of issues concerning the implementation of the PI, the parties have been unable to agree upon one important aspect that may require the Court's assistance. Specifically, U.S. Citizenship and Immigration Services ("USCIS") would like to move forward on implementation regarding already filed applications for employment authorization (Form I-765) in the (C)(8) category for asylum applicants ("(C)(8) I-765 applications"). This plan was shared with plaintiffs, but they have expressed their objection to the plan and have stated that they believe it would violate the PI. While USCIS does not agree, it also does not want to move forward with the plan until the court has considered this issue. While the dispute remains, USCIS has agreed not to move forward with the plan. A summary of USCIS's plan and reasons for its plan is set forth below. Additionally, defendants seek clarification with respect to the scope of members that the PI applies to.

**A. Background**

At USCIS, the end-to-end process for receipting, handling, and adjudicating (C)(8) I-765 applications involves a highly technical, complex arrangement across various USCIS offices and procedures. Asylum applicants submit their Form I-765 to USCIS intake facilities referred to as "Lockboxes," which are operated by a designated financial agent managed jointly by the Department of Treasury and USCIS.

On average, USCIS Lockboxes process approximately 40,000 receipts on a daily basis across their three primary filing locations. Because of the enormous volume of applications, petitions, and other filings that the Lockboxes process on a daily basis, intake review consists of limited pre-defined intake criteria to quickly determine whether an application should be accepted and receipted by USCIS or returned to the sender without prejudice. For efficiency purposes, this initial review is conducted using a combination of automated application review tools with pre-defined system logic and minimal human review of a limited set of acceptability criteria. This manual review does not entail a full review of all I-765 filings and supporting evidence filed by asylum applicants, nor does it involve eligibility assessments for individual applications. Review of the eligibility criteria of each Form I-765 must be conducted later in the adjudication process by trained USCIS Immigration Services Officers (ISOs). For example, intake review of (C)(8) I-765 applications is generally limited to a determination of whether the Form I-765 was properly completed and signed and whether the correct base application fee and biometric services fee amounts were submitted, as applicable.[1] For the last four months, receipts for (C)(8) I-765 applications have been at 20,424 for September 2020, 69,705 for August 2020, 50,542 for July, and 43,190 for June 2020. (Data current as of October 9, 2020).

If the Lockbox determines that the application meets pre-defined acceptance criteria, including the filing of the required fees, the lockbox electronically transmits critical application information to an electronic case management system and then mails the paper application file to one of the five USCIS Service Centers. For paper applications, after the application is physically received at the USCIS Service Center, records staff perform additional preliminary processing steps to schedule the applicant for an Application Support Center (ASC) appointment in order to collect the requisite

---

[1] Prior to the August 25, 2020, effective date of the Broader EAD final rule, USCIS did not categorically require first time or "initial" (C)(8) I-765 applications to include a base application fee or a biometric services fee; however, (C)(8) I-765 applications to renew or replace a (C)(8) employment authorization document (EAD) required a base application fee. The Broader EAD final rule added the biometric service fee ($85) to (C)(8) initial applications, but did not add a base application fee.

2

biometrics. This update transmits data to the scheduling system where the applicant is put in a queue for scheduling of the ASC appointment. The notice is generated at the time the applicant is scheduled in the National Appointment Scheduling System (NASS).

Although ASC appointments were not required for (C)(8) I-765 applicants prior to the August 25, 2020, effective date of the final Broader EAD Rules, ASC appointments are generally required for their underlying Form I-589, *Application for Asylum and Withholding of Removal*, and are required for individuals filing many other applications, petitions, and filings with USCIS. Prior to COVID-19, scheduling was typically completed and an appointment notice sent to the applicant within a few days of receipt. Applicants typically were asked to appear for an appointment approximately 3 weeks after receipt of an application. Due to COVID-19 closures and continued limited capacity at reopened ASCs, there is currently a large backlog of applicants across form types awaiting scheduling.[2]

After the steps described above are complete, the I-765 is routed to a unit within the Service Center where a trained ISO will ultimately adjudicate the application. The full adjudication involves the ISO conducting required security checks and a complete review of the application and supporting evidence to determine whether the applicant is eligible for the benefit sought. If there is missing information or evidence in the application or a question of eligibility arises, the ISO may issue a request for evidence (RFE) to the applicant prior to making a final adjudicative decision.[3] Ultimately, if the ISO determines that the applicant has established eligibility for the benefit sought, the ISO updates the electronic record in the case management system with an approval action, which then triggers the generation of a paper approval notice and the production of an EAD. The approval notice and EAD are mailed separately to the applicant by a different USCIS production facility.

### B. Immediate Steps Taken

The enjoined rules went into effect on August 21, 2020 and August 25, 2020. Because the PI prohibits USCIS from requiring submission of biometric information from CASA and ASAP members as part of the (C)(8) I-765 applications, after the PI was issued on the evening of Friday, September 11, 2020, USCIS began to hold the

---

[2] Department of Homeland Security, U.S. Citizenship and Immigration Services, "USCIS Response to COVID-19", https://www.uscis.gov/about-us/uscis-response-to-covid-19.

[3] Under existing practice, this RFE tolls the 30-day processing period for (C)(8) I-765 applications.

(C)(8) I-765 applications at the Lockbox that did not include the new biometric services fee, which would have otherwise been automatically flagged by Lockbox systems for rejection. The agency has held these applications, without the $85 biometrics fee, while working on options to differentiate between applications submitted by CASA or ASAP members and non-members.[4] Plaintiffs were notified of this action and USCIS agreed to inform plaintiffs if this plan would change.

### C. Identification of Members and Notice

In the meantime, the parties have had communications about ways to identify members who have submitted (C)(8) I-765 applications and will be submitting (C)(8) I-765 applications in the future. As of October 9, 2020, CASA and ASAP have been able to affirmatively identify, by A-number, 190[5] members who are believed to have submitted an (C)(8) I-765 application after August 21, 2020, and should therefore benefit from the PI. USCIS has agreed to accept plaintiffs' representations as prima facie evidence of membership and has agreed to process any identified (C)(8) I-765 applications filed after August 21, 2020, in accordance with the PI.[6]

CASA and ASAP have represented, however, that they have no way of identifying all of their members who may have a (C)(8) I-765 application pending because they do not represent many of these individuals in a legal capacity. As such, USCIS has attempted to develop alternative ways to identify any additional applications that should receive the benefit of the PI. After some discussions with plaintiffs, USCIS is finalizing the process as to how members who will be submitting (C)(8) I-765 applications in the near future can provide proof of membership to allow USCIS to

---

[4] Given that CASA only provides membership services in Maryland, Virginia, and Pennsylvania (and perhaps Washington D.C.), and ASAP has represented it has approximately 4,000 members in total, it is reasonable to assume that a large portion of the (C)(8) I-765 applications held in the Lockbox have been submitted by non-members. As of October 7, 2020, there are approximately 14,000 pending (C)(8) I-765 applications.

[5] Plaintiffs provided the A-numbers for: three individuals on September 22; seven individuals on September 25; 10 individuals on October 3; 98 individuals on October 5; 31 individuals on October 6, 2020; 24 individuals on October 8, 2020; and 17 individuals on October 9, 2020. Because the Form I-765 does not require that applicants provide their A-numbers, USCIS may be unable to match every A-number that CASA and ASAP have provided with a member's corresponding I-765 (c)(8) application.

[6] After review of some of the 173 A-numbers submitted by Plaintiffs, USCIS determined that CASA and ASAP have identified a number of individuals whose (C)(8) I-765 applications were submitted before August 21, 2020 and are therefore not subject to the PI.

process their applications according to the PI. In particular, USCIS is updating its website to detail how members of CASA or ASAP should identify themselves as members when filing initial and renewal (C)(8) I-765 applications. USCIS is also implementing system-based changes to suppress automated ASC scheduling for initial and renewal (C)(8) I-765 applications, which will systematically bypass ASC scheduling when a CASA or ASAP member files a (C)(8) I-765 application with proof of membership.

### D. Identification of Members Who Have Pending Applications

The parties have not yet been able to come to an agreement as to how to treat the pending applications that have been held in the Lockbox and not otherwise affirmatively been identified by plaintiffs as being filed by members. While additional time to discuss these disagreements would normally be the preferred approach, due to concerns about holding these applications for a longer period of time, USCIS believes that its plan as outlined below both complies with the PI and provides the most practical solution in order to ameliorate potential harms for both organization members as well as other applicants.

**Proposed Plan**: For all remaining (C)(8) I-765 applications that were submitted after August 25, 2020 without a biometric services fee, the Agency will be returning the application with a notice that will state that the application cannot be accepted; will notify the applicant about the PI; and will inform all applicants receiving this letter that they may refile with either: (1) documentary evidence of membership in CASA or ASAP; or (2) the biometric services fee (if not a member). This notice will not be considered a "denial" and will not prejudice applicants. If any applicant refiles[7] with documentary evidence of membership in CASA or ASAP, then the application will be processed pursuant to the PI.

From a practical perspective, taking this action will provide personal notice to all unidentified members with pending (C)(8) I-765 applications about the PI and will provided a relatively simple way to have their applications treated under the PI—by resubmitting their filed application along with documentary proof of membership. In turn, this approach will provide notice to all non-members who failed to pay the biometrics fee of their need to do so, so that their applications can also be advanced through the process.

---

[7] The application will be returned to the applicant exactly as it was originally filed. The applicant is therefore able to immediately resubmit the same application, with the required proof of CASA or ASAP membership, or the requisite biometrics fee.

5

Additionally, from an operational perspective, this approach will ensure CASA and ASAP member applications are processed in the quickest possible time compared to the alternatives considered by Plaintiffs' counsel and USCIS. To accept each application, rather than return them for refiling at this stage, would require accepting the thousands of applications filed without a biometrics fee and currently being held at the Lockbox and forwarding them to the Service Center for adjudication. Absent proof of membership or a biometrics fee, the ISOs would need to RFE for such evidence for this large population. These RFEs would need to be put ahead of other properly filed cases for RFE issuance. Once correspondence from the applicant is received in response to the RFE, it routinely takes 1 - 2 weeks for physical files to reach the ISO for continued processing. Only at that point could USCIS determine on the basis of an RFE response that an applicant was a CASA or ASAP member.

Further, there are significant ramifications to USCIS' ability to track and account for funds received by the Service Centers because the technical capabilities of the intake system do not allow for adding or changing fees associated with a case that was already received elsewhere on a prior date. Finally, the Service Center will have no way of knowing which initial (C)(8) I-765 applications must be adjudicated within 30 days until such information or fees are received from the applicant and it can be discerned which applications fall under the PI.

### E. Temporal Limitation on Membership

Finally, the Court's September 11, 2020 Order preliminarily enjoined USCIS from enforcing the specified rule changes "against all members of the Plaintiff organizations Casa de Maryland, Inc., and Asylum Seekers Advocacy Project," but did not specify a temporal limitation by when an individual had to be a member of CASA or ASAP in order to fall under the Court's Order. Given Article III considerations that require standing to be established at the time the complaint is filed, along with the equitable principles requiring that an injunction be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs, defendants' respectfully request the Court's clarification on the issue. It appears that membership in CASA and ASAP requires little.[8] Thus, without a temporal limitation, an unlimited

---

[8] *See* CASA de Maryland, Membership, https://wearecasa.org/membership/ (last visited Oct. 8, 2020) ("How do I become a member? . . . 3 simple steps: Complete a membership form with personal information. Pay $35.00 in cash and/or credit for an annual joint membership. Get a photo identity card with access to all our services and benefits."); Asylum Seeker Advocacy Project, Members, https://asylumadvocacy.org/members/ (last visited Oct. 8, 2020) (Q: Who can apply for ASAP membership? A: ASAP screens individuals for membership who (1) are seeking asylum in the

6

number of applicants could become members of CASA or ASAP to seek the benefits of the preliminary injunction, thereby effectively expanding the scope to that of a nationwide injunction which is disfavored.

I thank the Court for its consideration of this request and look forward to resolving this dispute at the Court's earliest convenience.

                                            Respectfully submitted,

                                            Robert K. Hur
                                            United States Attorney

                                            __/s/_____
                                            Jane E. Andersen
                                            Assistant United States Attorney

---

United States, (2) are over the age of 18, and (3) believe in ASAP's mission. If you meet these criteria, please fill out our membership application form and ASAP will be in touch about next steps in the membership application process. Please note that we are currently limiting our screening of applications to those of individuals who can show they have either (1) a receipt notice demonstrating that they have applied for asylum with USCIS, or (2) a pending case in immigration court or at the Board of Immigration Appeals.").