October 13, 2020

Hon. Paula Xinis
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770

Re:     *CASA v. Wolf*, 8:20-cv-2118-PX
        Plaintiffs' position statement in
        advance of status conference

Dear Judge Xinis:

This morning, we notified Defendants' counsel that Plaintiffs would be writing to the Court to join Defendants' request for a status conference and to present Plaintiffs' positions on various outstanding issues. We hope that the additional information set forth below will be useful to the Court in understanding the issues to be discussed at the October 19 status conference. *See* ECF No. 76 (Defendants' letter requesting conference).

As this Court is aware, in its Order granting in part Plaintiffs' motion for preliminary injunction, *see* ECF No. 69, the Court held that Plaintiffs had met their burden to show that members of CASA and ASAP—organizations with combined nationwide membership exceeding 100,000 individuals and growing every day, ECF No. 24-4 ¶ 3 ("CASA Decl."); ECF No. 24-5 ¶¶ 7-8 ("ASAP Decl.")—were suffering and would continue to suffer irreparable harm as a result of Defendants' likely unlawful actions. ECF No. 69 at 58-62. The Court rejected Defendants' invitation to limit relief to several individual members whose personal circumstances were described in the declarations, but rather than issue a nationwide injunction, the Court tailored relief to apply to *all* CASA and ASAP members. *Id.* at 62-66. This tailoring reflected the Court's application of constraints on relief articulated in the Fourth Circuit's decision in *CASA de Maryland v. Trump*, 971 F.3d 220 (4th Cir. 2020), and the Court's effort to grant an injunction "no more burdensome . . . than necessary to provide complete relief to the plaintiffs." ECF No. 69 at 63 (internal quotations marks omitted).

Defendants now attempt to circumvent the Court's Preliminary Injunction ("PI") by seeking to apply it so narrowly as to effectively convert it to the constricted preliminary injunction that the Court expressly rejected. Plaintiffs request that the Court conference address: (1) Defendants' compliance with the PI in managing pending applications for EADs; (2) Defendants' compliance with the PI in processing new EAD applications; (3) the scope of the PI; and (4) PI compliance monitoring.

I.      **Defendants' Compliance with the PI in Managing Pending Applications**

    A. **Defendants' Delay in Complying with the Court's PI Caused the Current Backlog of Pending Applications that is the Subject of Defendants' Letter**

Defendants seek this Court's permission to reject[1] thousands of pending applications for work authorization (or employment authorization documents, "EADs") for failure to pay biometrics fees, including the applications of CASA and ASAP members, despite this Court's order preliminarily enjoining the biometrics requirement as to them. *See* ECF No. 69 at 68. But any hurdles to implementing the PI with respect to pending applications is a result of Defendants' failure to act promptly in response to the Court's PI.

The Court issued the PI on Friday night, September 11. On Monday, September 14, Plaintiffs' counsel sought guidance from Defendants on how applicant-members could make themselves known to defendant DHS in order to benefit from the PI and requested that DHS update its website with this information. In response, Defendants asked whether CASA and ASAP could provide an estimate of the number and a list of members who will be, or are, submitting EAD applications. Plaintiffs responded that they could not do so comprehensively because neither organization provides direct representation for asylum or for EADs to all their members, and therefore it was incumbent on DHS to promptly notify applicants and their counsel that the rules enjoined by the PI do not apply to ASAP and CASA members.

The parties conferred by phone on September 17 at Plaintiffs' request, and during that call Defendants' counsel confirmed that Defendants would suspend the denial of all applications until a system was in place for applying the PI to ASAP and CASA members, and stated that Defendants' counsel would notify Plaintiffs if she became aware of any plans to alter that protocol. Although Plaintiffs flagged to opposing counsel that simply holding EAD applications indefinitely would also violate the PI's 30-day processing requirements, Defendants' commitment to temporarily halt rejections gave Plaintiffs' counsel some reassurance that member-applicants would not suffer adverse action on their applications, so that they could work expeditiously with Defendants to develop a system to implement the PI.

On Monday, September 21, Plaintiffs sent a detailed proposal to Defendants on how DHS could implement the PI, including a proposal for notice, prospective identification of members who submit EAD applications, and for processing member applications within the larger pool of applications that were already submitted to DHS. During the week of September 21, Plaintiffs also began sending Defendants lists of the "A numbers" of certain members who had pending EAD applications, while reminding Defendants that the lists were not comprehensive and were based solely on information that CASA and ASAP were able to obtain at the time.  Finally, because the

---

[1] Although Defendants' letter to the Court does not use the term "rejection," Defendants described their proposal to Plaintiffs as the "rejection" of pending applications when they first raised it in an October 3 email, and again during October 7 phone calls with Plaintiffs when they clarified that their proposal was to "reject" 14,000 pending applications. Defendants have been clear that their proposal would remove pending EAD applications from the USCIS processing system entirely and require resubmission (by mail) of all such applications.

PI required processing of members' initial EAD applications within 30 days of submission, Plaintiffs once again reminded Defendants that simply holding the applications without rejecting them was not sufficient.

Over the course of the next few weeks, despite numerous requests by Plaintiffs that the Government implement procedures to comply with the PI, including by providing appropriate notice to potential member-applicants on relevant DHS websites, and despite several conversations with Defendants' counsel, the Government website providing instructions for EAD applications continued to state only that DHS was "working to comply" with the September 11 PI: the website failed to provide any instructions on what member-applicants should *do* to obtain the benefit of the PI. Likewise, Defendants' counsel was unable to provide any information about Defendants' plans for complying with the PI, apart from confirming that (i) applications would not be denied; and (ii) DHS received the lists of A numbers and that those individuals would be flagged as ASAP and CASA members.

Plaintiffs received the first substantive update from Defendants on Saturday, October 3, when Defendants informed Plaintiffs that "one important decision . . . has been made":  DHS would be rejecting all 14,000 pending applications that had not been submitted with biometrics fees with the exception of those that Plaintiffs' counsel had identified directly by A number as belonging to a CASA or an ASAP member. As described in more detail below, Plaintiffs responded immediately with concerns that this unilateral decision would violate the PI and provided Defendants a detailed written explanation of their concerns.

Finally, on October 9—nearly a month after the PI issued and on the day that Defendants filed their letter with the Court seeking the court conference—Defendants provided Plaintiffs and the public with information about what CASA and ASAP members should to do on a prospective basis to ensure their applications were processed pursuant to the PI. *See* U.S. Citizenship & Immigr. Servs., *I-765, Application for Employment Verification*, https://www.uscis.gov/i-765 (last visited Oct. 13, 2020); U.S. Citizenship & Immigr. Servs., *I-589, Application for Asylum and for Withholding of Removal*, https://www.uscis.gov/i-589 (last visited Oct. 13, 2020). Even at the time of Defendants' letter, however, the Government's instructions to members and its procedures for processing member applications were not yet fully implemented; indeed, Defendants have not specified whether DHS is processing members' applications in compliance with the PI. *See* ECF No. 76 at 4 (DHS "is finalizing the process as to how members who will be submitting (C)(8) I-765 applications in the near future can provide proof of membership"); *id.* at 5 (DHS "is also implementing system-based changes" to deal with member applications).[2]

---

[2] Earlier today, the Government notified Plaintiffs that as of October 8, DHS was manually reviewing incoming applications for evidence of verification of CASA and ASAP membership. Many questions remain, however, because Defendants did not provide any details regarding DHS's  process after it identifies member applications. Nor has the Government indicated whether any ASAP or CASA members have received an EAD as a result of the PI. Plaintiffs' counsel will continue working with Defendants' counsel to resolve as many issues as possible before the status conference.

In summary, nearly a month passed before Defendants announced how they will be complying with the PI prospectively and before they provided any instruction whatsoever to applicants about how to avoid the effect of the enjoined rules. That significant delay generated a backlog of EAD applications that were filed without any guidance as to how member-applicants could benefit from the PI. That month was a particularly fraught period for applicants because another set of new rules, which would have imposed for the first time a fee on asylum-seekers' initial EAD applications, was scheduled to go into effect on October 2.[3] Accordingly, a significant number of CASA and ASAP members likely rushed to file their EAD applications ahead of that scheduled imposition of new EAD application fees.

Indeed, during that period, ASAP and CASA—which are involved in large scale organizing efforts of asylum seekers, *see* CASA Decl. ¶ 6; ASAP Decl. ¶ 4—engaged in organizing to inform their members of the fee increases and to encourage members to file EAD applications before the new rules took effect. ASAP and CASA also informed members of this Court's PI, and—given Defendants' silence as to what members needed to do to have their applications processed in conformance with the PI—both organizations provided the best guidance they had: they urged members to identify as such on their applications and to provide documentation of membership. Given the urgency and the large number of people ASAP and CASA needed to reach, these outreach efforts were uni-directional and included posting on social media and sending mass text messages; as such, the organizations cannot be certain of how many members heeded their advice.

## B. Defendants' Proposal to Reject All Pending Applications Without Biometrics Fees Regardless of Applicants' Membership in ASAP or CASA Would Violate the PI

If implemented, Defendants' proposal to reject all 14,000 pending EAD applications without biometrics fees regardless of the applicants' membership in CASA or ASAP would violate the PI in several respects:

- *First*, between September 11 and now, CASA and ASAP were advising their members to, at a minimum, include their member IDs with their EAD applications. Based on that guidance, many members likely submitted EAD applications with the very documentation of membership that DHS has now committed to accept prospectively. To reject these applications without any review, despite evidence of membership, would be a facial violation of the PI.

---

[3] The fee rules would have imposed a new $550 filing fee for asylum-seekers' initial EAD applications, while virtually eliminating fee waivers for renewal EAD applications. *See Fee Schedule & Changes to Certain Other Immigration Benefit Request Requirements*, 85 Fed. Reg. 46,788, 46,790 (Aug. 3, 2020). The fee rules were first enjoined on September 29.  *See Immigrant Legal Res. Ctr. v. Wolf*, — F. Supp. 3d —, No. 20-cv-5883-JSW, 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) (enjoining rules nationwide); *see also Northwest Immigrant Rights Project, v. U.S. Citizenship & Immigr. Servs.*, No. 19-3283-RDM, 2020 WL 5995206 (D.D.C. Oct. 8, 2020) (same).

- *Second*, the simple rejection that is proposed by the Government would prejudice EAD applicants who are CASA and ASAP members and are entitled to the benefits of the PI because those members' applications should have been processed within 30 days. Rejecting the applications and requiring those members to re-file would cause one of the very delays that the PI was intended to avoid. It would also require applicants to re-file with whatever increased fee might be in effect at that time.[4] Plaintiffs raised this concern with Defendants last week and asked the Government to confirm that the increased fee rules would not apply. The Government has not made that commitment and Defendants' letter to the Court provides no response, simply asserting in a conclusory manner that applicants will not be prejudiced by a rejection.

Given these concerns, Plaintiffs proposed an alternative approach to Defendants in an email on October 6, which included: (1) not peremptorily rejecting pending applications and instead reviewing them for evidence of membership; (2) creating a dedicated email box for receiving verification of membership in order to expedite DHS's receipt of such verification; and (3) issuing Requests for Evidence ("RFE") to the extent any application without biometrics fees does not contain sufficient verification of membership. An RFE is an established method for DHS to request missing evidence from applicants for any type of immigration benefit, and it would avoid prejudice to the members by ensuring that, once requested evidence is provided, their application could continue to be processed under the fee rules in effect at the time of the initial application. The RFE and dedicated email box process would also spare applicants the need to resubmit (by mail) their entire application, as a rejection would require. Indeed, DHS has set up dedicated email boxes in response to other similar litigation.[5] Defendants have not provided any reasons during the meet-and-confer process or in their letter to the Court why this approach would not be feasible, other than the circular reasoning that their chosen method for processing requires first rejecting people on the basis of their failure to submit biometrics fees.[6]

---

[4] Even though the new fees rules are currently enjoined, *see supra* n.3, the Government could appeal or seek a stay of the injunctions, and the new fees could go into effect.

[5] *See, e.g.*, U.S. Citizenship & Immigr. Servs., *Rosario Class Action*, https://www.uscis.gov/laws-and-policy/other-resources/class-action-settlement-notices-and-agreements/rosario-class-action (last visited Oct. 13, 2020) (describing dedicated email box). Moreover, in response to the Covid-19 pandemic, other federal agencies have used email boxes to facilitate case filing. For example, the Executive Office for Immigration Review (EOIR) has established dedicated email boxes for parties to submit filings electronically, including asylum applications. *See* U.S. Dep't of Justice, *Filing by Email – Immigration Courts*, https://www.justice.gov/eoir-operational-status/filing-email-immigration-courts (last visited Oct. 13, 2020).

[6] Defendants' chosen process is also contrary to DHS's instructions to applicants regarding when payment of the biometrics fee was required. *See* U.S. CITIZENSHIP & IMMIGR. SERVS., INSTRUCTIONS FOR APPLICATION FOR EMPLOYMENT AUTHORIZATION 19 (Aug. 25, 2020), *accessed* Oct. 5, 2020 ("If you file this application with USCIS, you do not need to include a biometric services fee at the time you submit your application. If you are later notified that you must submit biometrics, you will receive a biometric services appointment notice with instructions on how to submit the additional biometric services fee."). Of course, having created a significant backlog through their delay, the Government could readily avoid the severe prejudice to ASAP and CASA

**II.**     **The Parties Have Not Yet Reached Agreement on Other Issues Related to the Implementation of the PI**

Contrary to Defendants' statement in their letter to the Court, the parties have yet to reach agreement on a number of other issues regarding Defendants' prospective compliance with the PI. Plaintiffs have raised each of the below issues with Defendants in the past month but have not received a response as to Defendants' position. Plaintiffs will continue to attempt to meet and confer with Defendants on these issues, among others, but may need the Court's assistance should the parties be unable to reach resolution:

- Whether newly submitted applications that include evidence of membership are being processed under the PI.
- Whether Defendants will post the notice of the PI on portions of DHS websites other than the I-765 and I-589 landing pages.
- Whether Defendants will make the notice available in French and Amharic, rather than only in English and Spanish, in order to reach as many affected members as possible.
- Whether Defendants will accept evidence of membership after application filing, such as through the email box Plaintiffs proposed.
- How Defendants will direct CASA and ASAP members that they do not need to respond to the Form I-765 questions requesting information about criminal convictions and details of entry that occurred prior to August 25, 2020.
- Whether Defendants will set up a method for CASA and ASAP members to inquire about the status of individual applications directly with the Government, rather than simply directing them to the organizations, as Defendants have done, which further burdens the capacity of organizational plaintiffs (*e.g.*, ASAP has purchased additional website server capacity and website security services as a result of Defendants posting notice instructing individuals to "contact CASA or ASAP directly to ensure USCIS is able to process their applications").

**III.**    **The Court's PI Applies to All Members of CASA and ASAP and if Defendants Cannot Comply with It, the PI Should Be Broadened**

On its face, and as Defendants themselves appear to recognize, the Court's PI applies to all members of CASA and ASAP without a limitation as to when they became members. *See* ECF No. 70 at 2. This is appropriately so because a preliminary injunction is a forward-looking remedy and an injunction that protects an organization's membership must continue to protect all members prospectively to effectively protect the organization from irreparable harm. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (recognizing that associational standing is particularly appropriate where prospective relief will inure to the benefit of the injured members); *see also City of Evanston v. Barr*, 412 F. Supp. 3d 873, 888 (N.D. Ill. 2019) (enjoining conditions on law enforcement grants imposed by the Trump Administration as to all members of the U.S. Conference of Mayors for all future years and rejecting the argument that the injunction

_____

members resulting from the backlog by bypassing the biometrics filter and addressing ASAP or CASA membership at a later stage of processing.

should be limited to individual association members who come forward with proof that they are authorized to, and wish to, obtain the requested relief).

This Court had evidence before it at the time of granting the PI that both organizations have an active and growing membership. CASA Decl. ¶¶ 7-8; ASAP Decl. ¶ 8; *see* Tr. at 103-07. It is too late for Defendants to seek to modify the PI based on information that all parties and the Court had at the time that the PI issued. *See Brightview Grp., LP v. Teeters*, No. SAG-19-2774, 2020 WL 4003168, at *5 (D. Md. July 15, 2020) ("A motion to modify a preliminary injunction is meant only to relieve inequities that arise *after* the original order") (emphasis in original); *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733-35 (W.D. Va. 2006) (party seeking modification of preliminary injunction may not rely on evidence or arguments that could have been raised prior to the entry of judgment (citing *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)); *see also* L.R. 105(10) (requiring any motions to reconsider to be filed within 14 days of the Court's order).

To the extent that Defendants are suggesting that the Court modify the PI because an injunction that applies to organizations with a growing membership cadre is burdensome, the answer should be to broaden the scope of the PI, either to all EAD applicants during the relevant period, or to a 5 U.S.C. § 705 stay of the relevant rules, rather than to narrow the PI in a manner that would fail to protect Plaintiffs from rules that the Court has held are likely invalid and causing them irreparable harm. As briefed previously, a broader § 705 stay is particularly appropriate where Defendants are unable to craft more limited relief. *See Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016); *see also* ECF Nos. 54, 66. Although the Court previously found that it could not distinguish this case from *CASA v. Trump*, the record of DHS's failure to comply with the PI and Defendants' concession that it is too burdensome to comply with the PI as ordered distinguish the appropriateness of a broader remedy at this point in this case from the posture in *CASA*.[7]

## IV.     Request for PI Compliance Monitoring

Plaintiffs appreciate Defendants' counsel's efforts to ensure that the Defendants comply with the PI, but it is clear that Defendants themselves have been unable to implement procedures to ensure compliance with the PI. In view of the foregoing, Plaintiffs request the Court's support going forward in ensuring PI compliance. At the court conference, Plaintiffs request that the Court consider this additional request from Plaintiffs.

//

//

//

---

[7] Indeed, since the Court issued its PI, at least two courts have enjoined broad application of DHS rules based on the likelihood of success on the merits. *See Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *19–20 (nationwide injunction staying USCIS fee rules); *Northwest Immigrant Rights Project*, 2020 WL 5995206, at *32–33 (same).

Respectfully submitted,

<table>
<tr>
<td>

   /s/ Linda Evarts
Linda Evarts*
Mariko Hirose*
Geroline Castillo*
Kathryn Austin*

INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
One Battery Park Plaza, 4th Floor
New York, NY 10004
Tel: (516) 701-4620
Fax: (929) 999-8115
levarts@refugeerights.org
mhirose@refugeerights.org
gcastillo@refugeerights.org
kaustin@refugeerights.org

Justin B. Cox (Bar No. 17550)
INTERNATIONAL REFUGEE ASSISTANCE
PROJECT
PO Box 170208
Atlanta, GA 30317
Tel: (516) 701-4233
Fax: (929) 999-8115
jcox@refugeerights.org

</td>
<td>

   /s/ Dennise Moreno
Dennise Moreno (Bar No. 21358)
(signed by Linda Evarts with permission of
Dennise Moreno)
Conchita Cruz*
Zachary Manfredi*
ASYLUM SEEKER ADVOCACY
PROJECT
228 Park Avenue S. #84810
New York, NY 10003-1502
Tel: (305) 484-9260
Fax: (646) 968-0279
dennise.moreno@asylumadvocacy.org
conchita.cruz@asylumadvocacy.org
zachary.manfredi@asylumadvocacy.org

Richard W. Mark*
Joseph Evall*
Katherine Marquart*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035
RMark@gibsondunn.com
JEvall@gibsondunn.com
KMarquart@gibsondunn.com

</td>
</tr>
</table>

*Attorneys for Plaintiffs*

* Admitted *pro hac vice*