**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

CASA DE MARYLAND, INC., *et al.*

      Plaintiffs,

v.

MAYORKAS, *et al.*

      Defendants.

Civil No. 20-2118-PX

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION**
**FOR SUMMARY JUDGMENT ON THEIR HOMELAND SECURITY ACT CLAIM,**
**OR IN THE ALTERNATIVE, TO MODIFY PRELIMINARY INJUNCTION**

i

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND       ...................................................................................................................2

   I.    The Court Preliminarily Enjoined Provisions of the Challenged Rules as to the
Members of ASAP and CASA ..................................................................................2

   II.   Relevant Procedural History.....................................................................................4

   III.  Further Proceedings in *CASA v. Trump* .........................................................................4

   IV.  Access to Work Authorization Under the Court's Order ................................................4

ARGUMENT..........................................................................................................................6

   I.    Plaintiffs Have Standing to Challenge the Asylum EAD Rules....................................6

       A.  Plaintiffs Have Organizational Standing to Challenge the Asylum EAD Rules in
Their Entirety ....................................................................................................6

       B.  Plaintiffs Have Associational Standing to Challenge the Asylum EAD Rules .......10

   II.   Plaintiffs Are Entitled to Summary Judgment on Their Claim That the Challenged
Rules Are Invalid Because Chad Wolf Did Not Lawfully Serve as Acting DHS
Secretary When He Purported to Issue the Rules .......................................................10

   III.  The Appropriate Remedy for Defendants' Violation of the APA is Vacatur of the
Challenged Rules in Their Entirety..........................................................................13

   IV.  In the Alternative, Modification of the Preliminary Injunction is Appropriate and
Necessary to Prevent Continuing Irreparable Harm to Plaintiffs ................................16

CONCLUSION.....................................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin*

 __ F. Supp. 3d __, 2020 WL 7240396 (D. Md. Dec. 9, 2020). ................................................17

*Ass'n of Cmty. Cancer Ctrs. v. Azar*

 __ F. Supp. 3d __, 2020 WL 7640818 (D. Md. Dec. 23, 2020) ...............................................19

*Batalla Vidal v. Wolf*

 __ F. Supp. 3d __, 2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020) ....................................11, 12

*Bostic v. Schaefer*,

 760 F.3d 352 (4th Cir. 2014) ...................................................................................................6

*CASA de Md. v. Trump*,

 981 F.3d 311 (4th Cir. 2020) ...............................................................................................1, 4

*CASA v. Trump*,

 971 F.3d 220 (4th Cir. 2020) ..........................................................................................

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,

 140 S. Ct. 1891 (2020) ..........................................................................................................13

*District of Columbia v. Dep't of Agric.*,

 444 F. Supp. 3d 1 (D.D.C. 2020) .........................................................................................18

*Harrison v. Spencer*,

 449 F. Supp. 3d 594 (E.D. Va. 2020)......................................................................................9

*Havens Realty Corp. v. Coleman*,

 455 U.S. 363 (1982) .......................................................................................................*passim*

*HIAS v. Trump*,

985 F.3d 309 (4th Cir. 2021) ................................................................ 18, 19, 20

*Immigrant Legal Res. Ctr. v. Wolf*,

    491 F. Supp. 3d 520 (N.D. Cal. 2020) ............................................... 12, 14

*J.O.P. v. U.S. Dep't of Homeland Sec.*,

    __ F.R.D. __, 2020 WL 7489017 (D. Md. Dec. 21, 2020) ................... 17, 20

*Lane v. Holder*,

    703 F.3d 668 (4th Cir. 2012) ...................................................................... 7

*Madsen v. Women's Health Ctr., Inc.*,

    512 U.S. 753 (1994) .................................................................................. 20

*Mayor of Baltimore v. Azar*,

    973 F.3d 258 (4th Cir. 2020) (en banc) .................................................. 14, 15

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,

    60 F.3d 823 (4th Cir. 1995) ...................................................................... 17

*Nat. Res. Def. Council v. Wheeler*,

    955 F.3d 68 (D.C. Cir. 2020) .................................................................... 13

*Nat'l Fed'n of the Blind v. Dep't of Educ.*,

    407 F. Supp. 3d 524 (D. Md. 2019) ..................................................... 7, 8, 9

*Nelson v. Collins*,

    700 F.2d 145 (4th Cir. 1983) .................................................................... 17

*Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*,

    __ F. Supp. 3d __, 2020 WL 5995206 (D.D.C. Oct. 8, 2020) ............... 11, 14

*Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*,

    No. 20-CV-09253-JD, 2021 WL 75756 (N.D. Cal. Jan. 8, 2021) ....... 11, 12, 14

iv

*People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of Western Maryland, Inc., the Fourth Circuit,*

    No. 20-1010, __ F. App'x __, 2021 WL 305546 (4th Cir. Jan. 29, 2021)..............................7, 8

*Rosario v. USCIS,*

    No. 15-0813-JLR (W.D. Wash.).................................................................................... 5, 16, 20

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,*

    713 F.3d 175 (4th Cir. 2013) ...................................................................................................7

*Sanchez v. McAleenan,*

    No. GJH-19-01728, 2020 WL 6263428 (D. Md. Oct. 23, 2020).............................................17

*Sierra Club v. U.S. Army Corps of Eng'rs,*

    909 F.3d 635 (4th Cir. 2018) .................................................................................................13

*Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,*

    989 F.3d 368 (5th Cir. 2021) .................................................................................................14

*Texas v. United States,*

    809 F. 3d 134 (5th Cir. 2015) ................................................................................................19

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.,*

    404 F.3d 821 (4th Cir. 2005) .................................................................................................17

*Tobin v. Alma Mills,*

    192 F.2d 133 (4th Cir. 1951) .................................................................................................17

**Rules**

Fed. R. Civ. P. 54.........................................................................................................................17

Fed. R. Civ. P. 56....................................................................................................................11, 13

Fed. R. Civ. P 59.........................................................................................................................17

**Statutes**

5 U.S.C. § 706................................................................................................. 10, 12

8 C.F.R. § 208.....................................................................................................3

6 U.S.C. § 113............................................................................................*passim*

Plaintiffs CASA de Maryland ("CASA"), Asylum Seeker Advocacy Project ("ASAP"), Centro Legal de la Raza ("Centro Legal"), Oasis Legal Services ("Oasis"), and Pangea Legal Services ("Pangea") submit this memorandum of law in support of their motion for summary judgment on their Homeland Security Act claim, or in the alternative, to modify the scope of the preliminary injunction.

## INTRODUCTION

In September 2020, this Court preliminarily enjoined in part two final rules that would have dismantled the decades-old system through which asylum seekers obtain the employment authorization they need to work, and to support themselves and their families, while they wait—often for years—for the government to adjudicate their asylum cases.   In issuing its injunction, the Court concluded that Plaintiffs were "likely to succeed on the merits" of their claim arising under the Homeland Security Act ("HSA," or "Appointments claim").   ECF No. 69 at 40.   The Court, however, considered the matter one of "first, or near first impression," *id*. at 27, and did not consider summary judgment on the issue as an alternative to preliminary relief.   Stressing the constraints imposed by the then-recent Fourth Circuit decision in *CASA de Maryland v. Trump*, the Court limited its preliminary relief to members of Plaintiffs CASA and ASAP.   The Court also limited its relief to select provisions of the challenged rules.

Seven months later, the legal landscape has shifted significantly.   Courts across the country have endorsed and adopted this Court's Appointments analysis, including by granting summary judgment on such claims brought under the Administrative Procedure Act ("APA"). The Fourth Circuit vacated its panel decision in *CASA v. Trump*, such that Fourth Circuit law on organizational standing and the scope of preliminary relief once again favors Plaintiffs' positions. Meanwhile, the limited relief that the Court determined was appropriate under then-binding

precedent has proven insufficient to prevent continuing irreparable harms.

Plaintiffs respectfully request that the Court grant summary judgment on their HSA claim and vacate the challenged rules in their entirety. If the Court enters summary judgment on the HSA claim, there are two independent reasons why the appropriate relief is vacatur of *all* provisions of the Broader EAD Rule: first, Plaintiffs have organizational standing to challenge all provisions of the Broader EAD Rule, not just those that were preliminarily enjoined; and second, at a minimum, Plaintiffs CASA and ASAP have associational standing to challenge the Timeline Repeal Rule and provisions of the Broader EAD Rule, and the Broader EAD Rule is not severable. Vacatur of the rules, without limitation, is the default remedy at summary judgment. If the Court declines to reach summary judgment at this juncture, Plaintiffs request, in the alternative, that the Court modify the preliminary injunction to provide relief on a uniform basis and as to all provisions of the challenged rules, as the circumstances have changed and a modified injunction is appropriate and necessary to prevent continuing irreparable harm to Plaintiffs, their members, and the communities they serve.

## BACKGROUND

### I.    The Court Preliminarily Enjoined Provisions of the Challenged Rules as to Members of ASAP and CASA

In June 2020, Defendants issued two Final Rules that indefinitely delay or improperly burden asylum seekers' ability to obtain work authorization.[1] In July 2020, Plaintiffs filed suit,

---

[1] The "Timeline Repeal Rule" repealed the decades-old requirement that the Department of Homeland Security ("DHS") adjudicate asylum seekers' initial Form I-765(c)(8) applications for employment authorization within 30 days of filing, while the "Broader EAD Rule" delayed, burdened, and substantially narrowed asylum seekers' eligibility for EADs through various substantive and procedural hurdles. Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, 85 Fed. Reg. 37,502

*see* Compl., ECF No. 1, and three days later, moved for preliminary relief as to both rules, ECF No. 23.   The Timeline Repeal Rule and the Broader EAD Rule (together, the "Asylum EAD Rules") went into effect in August 2020.

In September 2020, this Court granted Plaintiffs' motion in part and preliminarily enjoined the Timeline Repeal Rule and five provisions of the Broader EAD Rule.[2]  *See* ECF No. 70 ("Order").   The Court held that Plaintiffs were likely to succeed on the merits of their claims that the putative appointment of then-Acting Secretary Chad Wolf violated the Homeland Security Act and that the challenged rules were not the product of reasoned decision-making, in violation of the APA.   ECF No. 69 at 39–58 ("Opinion").   The Court further held that the two membership organizations CASA and ASAP had associational standing to challenge the provisions the Court ultimately enjoined; that their members suffered and would continue to suffer harm that is "indisputably irreparable"; and that the balance of equities and considerations of public interest favored preliminary relief.   *Id.* at 22–25, 58–62.   In discussing the appropriate scope of relief, the Court noted that although "uniform preliminary relief seem[ed] especially warranted here," the Court "believe[d] itself bound" by the then-recent Fourth Circuit decision in *CASA v. Trump*, 971 F.3d 220 (4th Cir. 2020), which the Court concluded compelled limiting the relief to members of CASA and ASAP.   *Id.* at 64, 66.

---

(June 22, 2020) (to be codified at 8 C.F.R. pt. 208); Asylum Application, Interview, and Employment Authorization for Applicants, 85 Fed. Reg. 38,532 (Aug. 25, 2020) (to be codified at 8 C.F.R. pt. 208, 274); *see* ECF No. 69, at 5–10.

[2] The specific provisions of the Broader EAD Rule enjoined by the Court are the 365-day waiting period, the removal of the "deemed-complete" rule, the discretionary review rule, the one-year filing bar, and the provision requiring submission of biometric information as part of EAD applications.   ECF No. 69 at 68; ECF No. 70.

## II.    Relevant Procedural History

On November 10, 2020, Defendants noticed an interlocutory appeal of this Court's Order. ECF No. 88.    On November 23, 2020, Plaintiffs filed a cross-appeal.    ECF No. 92.    On March 22, 2021, the parties voluntarily dismissed the appeal and cross-appeal.    No. 20-2217, ECF No. 22, 23.    During the pendency of the appeal, the parties agreed to time-limited abeyances of the proceedings in this Court, which have now expired, and filed successive status reports.    *See* ECF Nos. 83, 91, 96.    Defendants also provided Plaintiffs with the Administrative Records for the Timeline Repeal Rule and the Broader EAD Rule.    *See* ECF No. 91 ¶ 4.

## III.    Further Proceedings in *CASA v. Trump*

The Fourth Circuit issued its panel decision in *CASA v. Trump* on August 5, 2020, setting aside a nationwide injunction directed to the "public charge" rule (rendering certain immigrants likely to become a "public charge" ineligible for certain immigration benefits).    On December 3, 2020, the Fourth Circuit granted en banc review of the panel's decision in *CASA v. Trump*, thereby vacating that panel decision.    *CASA de Md. v. Trump*, 981 F.3d 311 (4th Cir. 2020); *see* 4th Cir. L.R.A.P. 35(c) ("Granting of rehearing en banc vacates the previous panel judgment and opinion[.]").    On March 9, 2021, the government moved to dismiss its appeal voluntarily, and the Court of Appeals granted that motion on March 11, 2021.    *See* No. 19-2222, ECF Nos. 210, 211.

## IV.    Access to Work Authorization Under the Court's Order

Notwithstanding the Court's holding that CASA and ASAP members suffer irreparable harm when their access to work authorization is delayed, Defendants have largely failed to promptly adjudicate initial member applications for employment authorization documents ("EADs") since the Order issued.

Defendants began implementing the Court's Order in October 2020.    From October 2020

4

to January 2021, Defendants adjudicated only 15 percent of initial EAD applications of CASA and ASAP members within 30 days.   *See* Manfredi Decl., Ex. A, March 2021 Processing Data, *Rosario v. USCIS*, No. 15-0813-JLR (W.D. Wash.).[3]   In February and March 2021, Defendants adjudicated less than 33 percent of such applications.   *Id.*, Ex. B, April 2021 Processing Data; *see id.* ¶¶ 5-7.   This stands in stark contrast to the 97 percent of initial EAD applications Defendants adjudicated within 30 days during the 18 months preceding the effective dates of the challenged rules.   *See id.*, Ex. A.

Recent government filings in *Rosario* take the position that Defendants' delay in processing such applications is attributable in part to the additional manual review process necessitated by this Court's Order.   *See id.*, Ex. C, Decl. of Connie Nolan ¶ 17, *Rosario* ("Distinguishing [members from] non-members at the Dallas Lockbox requires manual review that is more time-consuming than processing prior to the *CASA* court's injunction."); *id.*, Ex. D, Def's Opp. to Pls.' Mot. for Contempt at 5, 10, *Rosario* ("[The district court in *CASA v. Mayorkas*] limit[ed] the scope of the preliminary injunction to members of CASA and ASAP (a result that neither party requested)" and this "ruling raised a number of practical difficulties with implementation."); *id.*, Ex. E, Decl. of Ernesto DeStefano ¶ 3, *Rosario* ("[A]nother challenge contributing to delays is the significant increase in (c)(8) applications that USCIS must manually review since the Fall 2020 as part of the implementation of the preliminary injunction," which is "on average anywhere between 1,500-2,000 (c)(8) applications each day.").

---

[3] In *Rosario v. USCIS*, the United States District Court for the Western District of Washington issued an injunction compelling the government to comply with the 30-day regulatory deadline for processing asylum seekers' initial EAD applications.   The 15 percent figure is derived from the data contained in the government's March 2021 report.   *See* Manfredi Decl. ¶¶ 3-4.

## ARGUMENT

### I.    Plaintiffs Have Standing to Challenge the Asylum EAD Rules.

#### A.  Plaintiffs Have Organizational Standing to Challenge the Asylum EAD Rules in Their Entirety.

Plaintiffs have standing to challenge every provision of both Asylum EAD Rules. Specifically, Plaintiffs have organizational standing because they suffer cognizable harms:  the rules impair their mission-driven programming, requiring Plaintiffs to divert resources away from their other mission-driven work in order to continue to provide EAD application assistance to their clients and members.[4]

The challenged rules "perceptibly impair[]" each Plaintiff's mission-related programs, and effect a "consequent drain on the organization's resources."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).   That is sufficient to give Plaintiffs organizational standing to challenge the Asylum EAD Rules in their entirety.

The now-vacated panel decision in *CASA* was an aberration that narrowed standing under *Havens*, creating what this Court regarded as an obstacle to organizational standing.   *See* Opinion at 21; *see also CASA v. Trump*, 971 F.3d at 265–66 (King, J., dissenting) (*CASA* majority "misconstrue[d]" *Havens* and there was "no question" that plaintiff organization satisfied the Supreme Court's standard).   Without the *CASA* obstacle, controlling precedent recognizes that an organizational plaintiff suffers injury where its "discrete programmatic concerns are being directly and adversely affected by the challenged action, as opposed to that there has merely been a

---

[4] The Court needs to find only one Plaintiff with standing to challenge the Broader EAD Rule in order for Plaintiffs' claims to be justiciable.  *See, e.g.*, *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("[T]he Supreme Court has made it clear that the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." (internal quotation marks omitted)).

diversion of resources based on the organization's own budgetary choices." *Nat'l Fed'n of the Blind v. Dep't of Educ.*, 407 F. Supp. 3d 524, 531–34 (D. Md. 2019) (internal quotations marks and citation omitted) (citing *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012));[5] *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013) (distinguishing *Havens* as finding organizational injury where "broadly alleged" impairment of organization's ability to advance its purposes combined with alleged "consequent drain on the organization's resources").

For example, in *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of Western Maryland, Inc.*, the Fourth Circuit held that the plaintiff animal rights organization had standing under *Havens* where it alleged and proved that it diverted resources to counteract harm to animals caused by the defendant zoo, which in turn "impeded [its] efforts to carry out its mission by reducing its ability to engage in mission-related campaigns against other zoos." No. 20-1010, __ F. App'x __, 2021 WL 305546, at *3–4 (4th Cir. Jan. 29, 2021) (unpublished), *petition for cert. filed* (U.S. Feb. 25, 2021) (No. 20-1183). Likewise, in *National Federation of the Blind*, Judge Chuang applied binding precedent to hold that an advocacy organization that assisted its blind members in making discrimination complaints had *Havens* standing to challenge an agency action that made it more difficult to file certain discrimination complaints because such action "forced

---

[5] *Lane* adopted the D.C. Circuit's test in *Fair Employment Council of Greater Washington v. BMC Marketing Corporation*. *See Lane*, 703 F.3d at 674–74 (citing *BMC*, 28 F.3d 1268, 1276–77 (D.C. Cir. 1994)). Under that standard, an organization has standing where it must divert resources to counteract the effects of a challenged action on the organization's mission-based programming, but the organization's resource diversion is "self-inflicted"—and not cognizable under *Havens*—where it is designed only "to increase legal pressure" and "d[oes] not have any *other* effect on [the organization's] programs." *BMC*, 28 F.3d at 1276–77. The *BMC* court made clear that *Havens* standing was established where the challenged action made plaintiff organization's "overall task more difficult." *Id.*

7

[the organization] to go above and beyond its normal activities" in order to ensure its members' complaints continued to be investigated and addressed—by updating its training materials, retraining its members, and changing its complaint-filing processes—and, as a result, the organization had to expend resources that it could have spent on other mission-driven activities. 407 F. Supp. 3d at 532–33.

Plaintiffs easily meet this standard for organizational standing. Just as in *People for Ethical Treatment of Animals* and *National Federation of the Blind*, Defendants' rules in their entirety have made it more difficult for Plaintiffs to accomplish their mission-driven work of assisting their asylum seeking clients and members in obtaining and maintaining work authorization, and as a result, Plaintiffs have had "to go above and beyond [their] normal activities" in order to continue to provide services at the core of their missions.[6] *Id.*

For example, the Asylum EAD Rules as a whole have caused Centro Legal to "spend double or triple the amount of time per client," and it must dedicate substantially more attorney (as opposed to non-attorney) time to continue assisting its clients in applying for initial and renewal EADs—mission-critical programming that the organization has done for years. Centro Legal Decl. II ¶¶ 3, 5, 7–9. Doing so has required Centro Legal to divert resources away from other mission-driven work, including helping its clients obtain humanitarian visas and other immigration benefits. *Id.* ¶ 10. And Centro Legal's pro bono clinic assistance model—through which it

---

[6] *See, e.g.*, Centro Legal July 23, 2020 Decl. ("Centro Legal Decl. I") ¶¶ 2–4, 17–35, ECF No. 24-6; Centro Legal April 19, 2021 Decl. ("Centro Legal Decl. II") ¶¶ 3, 5, 7–16; Oasis July 23, 2020 Decl. ("Oasis Decl. I") ¶¶ 3, 9, 36–53, ECF No. 24-7; Oasis April 16, 2021 Decl. ("Oasis Decl. II") ¶¶ 4–12; Pangea July 23, 2020 Decl. ("Pangea Decl. I") ¶¶ 4–5, 9, 12–16, 23–39, ECF No. 24-8; Pangea April 19, 2021 Decl. ("Pangea Decl. II") ¶¶ 3, 5, 7–10, 12–16; ASAP July 24, 2020 Decl. ("ASAP Decl. I") ¶¶ 4, 17, 39–42, ECF No. 24-5; ASAP April 19, 2021 Decl. ("ASAP Decl. II") ¶¶ 36–48.

provided EAD application assistance to unrepresented asylum seekers—is no longer feasible in the regulatory regime created by the Asylum EAD Rules; the pro bono clinics were therefore ended, and Centro Legal has consequently assisted "tens or even hundreds fewer asylum seekers" just since the Asylum EAD Rules took effect. *Id*. ¶¶ 11–16. Other Plaintiffs have been similarly affected by the Asylum EAD Rules. *See, e.g.*, Pangea Decl. II ¶¶ 5–16 (organization has had to devote "significantly" more resources to mission-critical EAD application assistance, diverted from other mission-critical programming, with negative consequences for its grant funding); Oasis Decl. II ¶¶ 4–11 (organization "had no choice but to make cuts in other Oasis programs" as a result of the Asylum EAD Rules, and additionally injured by the rules diminishing its clients' ability to pay low bono fees); ASAP Decl. II ¶¶ 12–48 (organization has had to divert hundreds of staff hours to EAD application-related programming to assist members impacted by all non-enjoined provisions of Broader EAD Rule and to continue to provide EAD application assistance and resources). The "perceptibl[e] impair[ment]" of Plaintiffs' missions and corresponding drain on their resources were precisely the kinds of harms Plaintiffs anticipated before the Asylum EAD Rules went into effect. *Havens*, 455 U.S. at 379; *see* Centro Legal Decl. I ¶¶ 17–35; Pangea Decl. I ¶¶ 12–16, 23–39; Oasis Decl. I ¶¶ 36-53; ASAP Decl. I ¶¶ 39–42; *see also* Compl. ¶¶ 111–127, 129.

In sum, just as in *Havens*, Plaintiffs have had "to expend more resources than usual to assist their members [and clients] in a specific fashion that is core to their mission . . . , and have asserted that it [is] more burdensome to do so." *Nat'l Fed'n of the Blind*, 407 F. Supp. 3d at 533 (citing *Havens*, 455 U.S. at 379); *accord Harrison v. Spencer*, 449 F. Supp. 3d 594, 601–05 (E.D. Va. 2020) (holding injury cognizable under *Havens* where challenged action increased requests for organization's legal assistance that required the organization to divert resources from its other

programming and causing delays to such programming, and collecting cases within the Fourth Circuit).

### B.  Plaintiffs Have Associational Standing to Challenge the Asylum EAD Rules.

In addition, in its prior Opinion, this Court correctly held that Plaintiffs have associational standing to challenge the Timeline Repeal Rule and at least certain provisions of the Broader EAD Rule.   To have associational standing, a plaintiff must establish that: "'(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit.'"   Opinion at 22 (quoting *S. Walk*, 713 F.3d at 184).   The Court correctly found that CASA and ASAP members would have standing to sue in their own right based on the irreparable harms they suffered as a result of the Timeline Repeal Rule and certain provisions of the Broader EAD Rule, and that Plaintiffs satisfied the other associational standing factors.   *Id.* at 22–24.   At a minimum, CASA and ASAP continue to have associational standing to challenge the Timeline Repeal Rule and enjoined provisions of the Broader EAD Rule, and the Broader EAD Rule must be vacated in its entirety because it is not severable.   *See infra* Part III.

### II.  Plaintiffs Are Entitled to Summary Judgment on Their Claim That the Challenged Rules Are Invalid Because Chad Wolf Did Not Lawfully Serve as Acting DHS Secretary When He Purported to Issue the Rules.

Plaintiffs are entitled to summary judgment on their claim under 5 U.S.C. §§ 706(2)(A) and (2)(C) that the Asylum EAD Rules were promulgated "in excess of . . . authority" and not "in accordance with law" because Chad Wolf's putative tenure as Acting Secretary of DHS violated

the HSA, 6 U.S.C. § 113.[7]  In a decision of first impression, this Court held that Plaintiffs were likely to succeed on the merits of the claim that "Wolf filled the role of Acting Secretary without authority, [and] promulgated the challenged rules also 'in excess of . . . authority,' and not 'in accordance with law.'"  Opinion at 45.  As the Court reasoned, Wolf's purported predecessor, Kevin McAleenan, never validly assumed the office of Acting Secretary of DHS under the governing order of succession when then-Secretary Kristjen Nielsen resigned.  *Id.* at 44. McAleenan thus "lacked the authority to amend the order of succession to ensure Wolf's installation as Acting Secretary."  *Id.* at 44–45.[8]

This Court's analysis turned on the "plain meaning of Nielsen's order," Opinion at 44, a purely legal question that does not require factual development—as Defendants have conceded. *See* Tr. of Aug. 14, 2020 Proceedings at 62, ECF No. 56 ("I cannot conceive of any new facts that would have to be before the Court to decide [Plaintiffs' vacancies claims].") (statement of Defendants' counsel).  Four other district courts, presented with the same issue regarding the unlawfulness of Wolf's actions, have adopted this Court's reasoning.  In each instance, the government unsuccessfully "recycled exactly the same legal and factual claims" that failed before this Court, and in each instance, the court "soundly rejected" the government's position.  *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 20-CV-09253-JD, 2021 WL 75756, at *4 (N.D. Cal. Jan. 8, 2021) (holding government proffered no new facts or law to support the lawfulness of Wolf's appointment); *see Batalla Vidal v. Wolf*, No. 16-CV-4756, __ F. Supp. 3d __, 2020 WL

---

[7]  Pursuant to Federal Rule of Civil Procedure 56(c)(1), Plaintiffs concurrently file a statement of the undisputed facts material to their HSA claim.    *See* Statement of Undisputed Facts ¶¶ 1–23.

[8]  *See also* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 28–31, ECF No. 23-1; Pls.' Reply at 9–11, ECF No. 47; Pls.' Supp. Br. at 3–5, ECF No. 59; Pls.' Supp. Reply at 1–2, ECF No. 62-1.

6695076, at *9 (E.D.N.Y. Nov. 14, 2020) (concerning decision to suspend Deferred Action for Childhood Arrivals ("DACA") program); *Nw. Immigrant Rights Project v. U.S. Citizenship & Immigration Servs.*, No. CV 19-3283 (RDM), __ F. Supp. 3d __, 2020 WL 5995206, at *24 (D.D.C. Oct. 8, 2020), *appeal dismissed*, No. 20-5369, 2021 WL 161666 (D.C. Cir. Jan. 12, 2021) (concerning rule changing fee structure for immigration benefits requests and imposing fee to apply for asylum); *Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520 (N.D. Cal. 2020) (same).   Indeed, Judge Donato—"the fifth federal court asked to plow the same ground"—wrote, "[a] good argument might be made that, at this point in time, the government's arguments lack a good-faith basis in law or fact."   *Pangea*, 2021 WL 75756, at *4.   In short, Wolf was not validly serving as acting Secretary under the HSA, rendering unlawful the challenged agency actions taken under his purview.

Moreover, the only court to issue final judgment on the Wolf Appointments issue granted summary judgment in favor of the plaintiffs.  *See Batalla Vidal*, 2020 WL 6695076, at *1. In *Batalla Vidal*, Judge Garaufis adopted this Court's reasoning, explaining that under the "plain text of the operative order of succession, neither Mr. McAleenan nor, in turn, Mr. Wolf, possessed statutory authority to serve as Acting Secretary."   *Id*. at *9.   Judge Garaufis squarely rejected the government's *post hoc* re-interpretation of the agency delegation orders and concluded that no subsequent factual issues had any impact on his analysis.[9]   *Id*.

Here, as in *Batalla Vidal*, there are no factual disputes material to the legal question of Wolf's lack of authority as purported Acting DHS Secretary, and the Court's prior analysis is

---

[9] Likewise, every court to consider Wolf's purported "ratification" of his own actions has concluded that they have no effect.   *See Batalla Vidal*, 2020 WL 6695076 at *9; *Pangea*, 2021 WL 75757 at *5.

correct as a matter of law.  Because "there is no genuine dispute as to any material fact and [Plaintiffs are] entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), the Court should grant Plaintiffs summary judgment on their claim that the Asylum EAD Rules were promulgated in violation of the APA because Wolf acted "in excess of . . . authority" and not "in accordance with the law."  5 U.S.C. §§ 706(2)(A), (C); *see* Opinion at 45.

### III.    The Appropriate Remedy for Defendants' Violation of the APA is Vacatur of the Challenged Rules in Their Entirety.

Under the APA, vacatur is the appropriate final remedy for an agency rule found to be unlawful.  5 U.S.C. § 706(2) ("hold unlawful and set aside"); *see* Opinion at 65 (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018)); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 n.7 (2020).  Here, the Court should vacate both of the Asylum EAD Rules in their entirety.

Plaintiffs have standing to challenge every provision of the rules, but even if they did not, vacatur of the rules in their entirety would nevertheless be warranted because the Broader EAD Rule is not severable.[10]  The purpose of the severability doctrine is to allow courts to excise unlawful provisions of a rule from the lawful provisions that the agency would have adopted absent the legal defect.  *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 81 (D.C. Cir. 2020) (severability doctrine premised on court's ability to separate "valid" rule provisions from "invalid" provisions).  Where, as here, the legal defect infects every provision of the challenged rules, there are no "lawful" or "valid" portions to excise and preserve.   Indeed, the severability clause in the Broader

---

[10] Plaintiffs excluded from the scope of their challenge a conforming amendment regarding renewal EADs that accompanied the Timeline Repeal Rule.  *See* ECF No. 23-1 at 7 n.6.  Nonetheless, in light of the unlawful Appointments defect, the Timeline Repeal Rule should be vacated in its entirety as well.

EAD Rule is itself tainted by the unlawful Appointments defect:  crediting that clause would improperly sanction the unlawful process that produced it.  Courts that have recently addressed the unlawful Appointments issue have applied this principle in holding that Chad Wolf's unlawful appointment infects all aspects of the rules he purported to issue.  *See, e.g.*, *Nw. Immigrant Rights Project*, 2020 WL 5995206, at *33 ("[B]ecause the Court concludes that Wolf acted without authority when he approved the Final Rule and later attempted to ratify that action and McAleenan's issuance of the Proposed Rule, the legal infirmity at issue reaches all portions of the Rule."); *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *19–20 (same); *see also Pangea*, 2021 WL 75756, at *1, 6–7 (enjoining in its entirety rule that "would make sweeping changes to the United States asylum system" based on likelihood of success on the merits of plaintiffs' claim that Chad Wolf was unlawfully appointed); *see generally Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 378–80 (5th Cir. 2021) (holding, in context of standing analysis, that appropriate remedy for successful procedural challenge would be vacatur of entire rule, notwithstanding that plaintiffs were injured by only one of five provisions).  Because DHS's unlawful decision-making process infected the entire Broader EAD Rule, the rule stands or falls as one.[11]

Even if the Court concluded that traditional severability analysis is required, the Broader EAD Rule is not severable under Fourth Circuit law.  Whether a regulation is severable turns on whether the agency would have issued the rule without the offending provisions, and "[s]everance and affirmance of a portion of an administrative regulation is improper if there is substantial doubt

---

[11] Moreover, if the Court enters summary judgment on Plaintiffs' HSA claim and sets aside the challenged rules in their entirety, the case will be over (since none of Plaintiffs' remaining claims would entitle them to any additional relief).

that the agency would have adopted the severed portion on its own." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292–93 (4th Cir. 2020) (en banc) (affirming district court injunction and reasoning that rule was not severable—notwithstanding its severability clause—where agency desired "a single, coherent policy" and rule would "lose[] its primary purpose" without the challenged provisions ), *cert. granted sub nom. Cochran v. Mayor & City Council of Baltimore*, No. 20-454, 2021 WL 666373 (U.S. Feb. 22, 2021).

Here, even if the Court concludes that Plaintiffs have standing to challenge only the currently enjoined provisions of the Broader EAD Rule, *but see supra* Part I(A), there is at least "substantial doubt" that the agency would have adopted only the un-enjoined provisions of that rule.    The agency's purpose for the Broader EAD Rule was, according to the rule itself, deterring frivolous, fraudulent, and otherwise non-meritorious asylum applications.    85 Fed. Reg. 38,532, 38,543–46, 38,578, 38,584.    Defendants themselves identified several specific provisions as the linchpins of the rule—changes without which the rule could not achieve its stated purpose.    For example, Defendants explained that the one-year filing bar provision was "necessary to disincentivize abusive behavior," and that "failing to take this significant action [would] invite more of the same behavior that ha[d] brought the asylum system to its current crisis."   *Id.* at 38,569.    With respect to the extension of the waiting period to 365 days, the agency explained that it "started with the premise that the current 180-day waiting period"—encompassing a 150-day waiting period and a 30-day adjudication period—"is insufficient to deter aliens from filing asylum applications that are without merit."    85 Fed. Reg. at 38,595.    The discretionary review provision was necessary, in turn, because "[a] mandatory and limitless (c)(8) EAD is too strong a draw for economic migrants."   *Id.* at 38,577.    But the one-year filing bar provision, the 365-day wait provision, and the discretionary review provision are all provisions that the Court enjoined.

In short, without the enjoined provisions the Broader EAD Rule "loses its primary purpose," such that the remaining provisions would not accomplish the agency's stated goal on their own.    *See Mayor of Baltimore*, 973 F.3d at 293.

Moreover, the Broader EAD Rule itself makes clear that DHS desired a "single, coherent policy" with complementary provisions.    *Id*. at 292.    For example, DHS intended to eliminate the 180-day asylum clock (with its complicated rules for starting and stopping the "clock") and replace it with *both* the (enjoined) 365-*calendar* day waiting period *and* the more expansive applicant-caused delay provisions (which are not currently enjoined). [12]    *See* 85 Fed. Reg. at 38,547–48.    Similarly, the rule justified the (enjoined) biometrics collection provision as necessary to implement the (not enjoined) provisions eliminating work authorization eligibility for essentially all asylum seekers with criminal history.    *See* 85 Fed. Reg. at 38,550.    Given this tangle of interlocking provisions, there is at least "substantial doubt" that DHS would have chosen to retain only some parts of that tangle, [13]  and "substantial doubt" is all that is required for the rule to be set aside in its entirety.

---

[12] The Court did not enjoin the elimination of the 180-day asylum clock provision or the new applicant-caused delay provisions, but the Government has conceded in a recent filing in *Rosario* that Defendants are unable to implement this Court's Order without relying on the pre-existing (and formally repealed) 180-day asylum clock and applicant-caused delay provisions.    *See* Manfredi Decl., Ex. D, *Rosario*, ECF No. 179 at 4 & n.2 (*CASA v. Mayorkas* preliminary injunction "essentially creat[es] two different sets of rules for the adjudication of [I-765(c)(8)] applications," and explaining that applicants who are not CASA or ASAP members must wait 365 days after filing their asylum case to file an EAD application, but for CASA and ASAP members, the "prior rules apply whereby asylum applications must [have] been pending for a minimum of 180 'clock' days, not including delays caused or requested by the applicants").

[13] And it is impossible in any event to determine what provisions DHS would have adopted if the agency had been led by a lawfully-appointed Secretary.    *See supra* Part III.

### IV.    In the Alternative, Modification of the Preliminary Injunction is Appropriate and Necessary to Prevent Continuing Irreparable Harm to Plaintiffs.

Plaintiffs seek expeditious relief from the irreparable harms they, their members, and their clients and communities continue to suffer.    If the Court determines in its discretion that Plaintiffs' motion for partial summary judgment should not be adjudicated at this time, Plaintiffs respectfully request that the Court address the continuing irreparable harm that the rules inflict by modifying the preliminary injunction in light of the changed circumstances.

Modification of a preliminary injunction is appropriate where the moving party demonstrates a "significant change in fact, law or circumstance since the previous ruling" that renders the initial injunction inequitable. *Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*, No. TDC-20-1320, __ F. Supp. 3d __, 2020 WL 7240396, at *6 (D. Md. Dec. 9, 2020) (internal quotation marks omitted); *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 60 F.3d 823, 823 (4th Cir. 1995) (unpublished); *Nelson v. Collins*, 700 F.2d 145, 147 (4th Cir. 1983); *Tobin v. Alma Mills*, 192 F.2d 133, 136 (4th Cir. 1951).    Changed circumstances sufficient to meet this standard include that "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work a manifest injustice." *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. GJH-19-1944, __ F.R.D. __, 2020 WL 7489017, at *19 (D. Md. Dec. 21, 2020) (appeal filed Feb. 19, 2021).[14]    There is no requirement

---

[14] The Fourth Circuit has not determined whether a motion to modify a preliminary injunction should be analyzed under Federal Rule of Civil Procedure 54(b), 59(e), or outside of the Rules, but the basic standard is the same.    *See Sanchez v. McAleenan*, No. GJH-19-01728, 2020 WL 6263428, at *3–4 (D. Md. Oct. 23, 2020) (appeal filed Jan. 5, 2021) (surveying the case law).

of bad faith or fault on the part of the nonmoving party.    *See Thompson v. U.S. Dep't of Hous. &*
*Urb. Dev.*, 404 F.3d 821, 829 (4th Cir. 2005).    Rather, where the moving party meets the changed
circumstances standard, the relevant inquiry is then the traditional preliminary injunction analysis.
*See, e.g.*, *J.O.P*, 2020 WL 7489017, at *20–21.

Here, the changed circumstances standard is satisfied on two independent bases: (i) there
has been an intervening change in controlling law—specifically, the en banc vacatur of the *CASA
v. Trump* panel decision has restored the pre-existing Fourth Circuit precedent relating to the
appropriate scope of preliminary injunctive relief, and has removed limitations on what constitutes
a cognizable injury for *Havens* standing purposes, *see supra* Part I; and (ii) continuance of the
Court's prior, limited preliminary injunction—crafted in response to then-binding Fourth Circuit
precedent—has proven insufficient to prevent irreparable harm to Plaintiffs and must be modified
to prevent manifest injustice.

First, the Court's Opinion relied heavily on the Fourth Circuit's then-controlling opinion
in *CASA v. Trump* in analyzing the key questions of *Havens* standing and the appropriate scope of
the injunction.    *See, e.g.*, Opinion at 21 ("In light of [the *CASA* court's] clear guidance, and on
the current record, the Court cannot find that any one Plaintiff has organizational standing."); *id.*
at 66 ("[E]ven though this Court remains concerned about 'slicing and dicing' application of the
rules in a manner contrary to the uniform administration of immigration laws, the Court believes
itself bound to follow the Circuit's binding precedent [in *CASA*]." (quoting *District of Columbia
v. Dep't of Agric.*, 444 F. Supp. 3d 1, 37 (D.D.C. 2020)).

The vacatur of *CASA* restores this Circuit's prior precedent on two central points of law:
(i) *Havens* standing (such that at least one Plaintiff has standing to challenge every provision of
the rules), *see supra* Part I(A); and (ii) the appropriate scope of a preliminary injunction in an APA

case challenging an immigration-related rule (such that a uniform injunction is preferred), *see* Opinion at 64–66.   With respect to the un-enjoined provisions of the Broader EAD rule, the *CASA* vacatur removes any doubt that Plaintiffs directly suffer harms, which flow from the challenged rules in their entirety.   *See supra* Part I(A).   These direct harms are irreparable.   *See HIAS v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021); *see also* ECF No. 23-1 at 31, 34.

And with respect to the question of who should be protected from the enjoined rules, the vacatur removes the impediment this Court identified, permitting the Court to ensure "uniform preliminary relief" that "seem[ed] especially warranted" in this case, rather than "slicing and dicing" the population affected.   Opinion at 64, 66 (collecting cases); *see Texas v. United States*, 809 F. 3d 134, 187–88 (5th Cir. 2015) ("Congress has instructed that the immigration laws of the United States should be enforced vigorously and *uniformly*; and the Supreme Court has described immigration policy as a comprehensive and *unified* system." (internal quotation marks omitted)), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016); *see also HIAS*, 985 F.3d at 327 (4th Cir. 2021) (affirming nationwide preliminary injunction of immigration-related executive action where limited relief "would . . . undermine the very national consistency that the Refugee Act is designed to protect"); *Ass'n of Cmty. Cancer Ctrs. v. Azar*, No. CV CCB-20-3531, __ F. Supp. 3d __, 2020 WL 7640818, at *12 & n.16 (D. Md. Dec. 23, 2020) (granting uniform preliminary relief and explaining that "[w]hen a plaintiff prevails on a challenge under the APA to a rule of broad applicability, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual").   Thus, in light of the *CASA* vacatur and under now-controlling law, Plaintiffs have established direct and irreparable harm from the challenged rules in their entirety and that it is appropriate for the Court to rectify this inequity on a uniform basis.

Second, this Court held that asylum seekers are irreparably injured when they are forced to

19

wait more than six months for work authorization—but notwithstanding this Court's order, members continue to suffer this irreparable injury at a high rate.[15]   *See* Manfredi Decl., Ex. A (March 2021 Processing Data); *id.*, Ex. B (April 2021 Processing Data).   Indeed, Defendants concede that the limited scope of the Court's Order itself is adding to processing delays.   *See id.*, Ex. C (Connie Nolan Decl.) ¶¶ 15, 17 (the manual review process required to distinguish members from non-members "is more time-consuming than processing prior to [this Court's] injunction").[16] Defendants have also conceded that they are unable to implement the Court's Order without declining to enforce some of the un-enjoined provisions of the Broader EAD Rule as to CASA and ASAP members, demonstrating that the rule is not severable.   *See supra* Part III n.12.

These new circumstances demonstrate that the preliminary injunction, as implemented, is not affording even Plaintiffs' members the relief from irreparable harm that was the Court's objective.   *See* Opinion at 62–63 ("[T]he relief granted . . . 'should be no more burdensome . . . than necessary to *provide complete relief* to the plaintiffs.'" (emphasis added) (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)).   The continuing irreparable harms Plaintiffs suffer constitute "manifest injustice" sufficient to warrant modification.   *See J.O.P.*, 2020 WL 7489017, at *21 (granting plaintiffs' motion to modify preliminary injunction to expand relief to "correct a manifest injustice" whereby some class members were excluded from relief). And as the Fourth Circuit recently acknowledged, the inability of a more limited injunction to

---

[15]   *See* Opinion at 59 ("[E]very additional day these individuals wait [for employment authorization] will visit on them crippling dependence on the charity and good will of others" and may "damage . . . [their] ability to seek asylum in the first instance.").

[16] As a matter of common sense, the un-enjoined provisions of the Broader EAD Rule must similarly add to processing delays, given that they increase the findings DHS must undertake when it adjudicates applications and require the agency to monitor the status of asylum cases to enforce the automatic termination provisions.   *See* 85 Fed. Reg. at 38,551–53; *id.* at 38,574.

prevent irreparable harm to Plaintiffs results in inequity that warrants broader relief.    *See HIAS*, 985 F.3d at 327 (affirming nationwide preliminary injunction where more limited relief "would cause inequitable treatment of refugees").

Seven months ago, this Court found that Plaintiffs met each of the preliminary injunction factors, and that the balance of equities favored preliminary injunctive relief to prevent irreparable harm to Plaintiffs.    *See* Opinion at 27–62.    Plaintiffs continue to satisfy each of the preliminary injunction factors, and the irreparable harms they suffer have not abated.    Centro Legal Decl. II ¶¶ 10–16; ASAP Decl. II ¶¶ 41–48; Oasis Decl. II ¶¶ 11–12; Pangea Decl. II ¶¶ 8–16.    In the absence of prompt final vacatur (*i.e.*, summary judgment on the HSA claim), it is both appropriate and necessary to expand the Court's preliminary injunction.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for summary judgment on their HSA claim and vacate the Timeline Repeal Rule and the Broader EAD Rule in their entirety. In the event that the Court determines, in its discretion, that Plaintiffs' motion for partial summary judgment cannot be expeditiously resolved at this time, Plaintiffs respectfully request that the Court grant their motion to modify the preliminary injunction as set forth herein.

21

Dated:   April 20, 2021

Respectfully submitted,


_____/s/_____                                    _____/s/_____
Linda Evarts (*pro hac vice*)                                       Dennise Moreno (Bar No. 21358)
Geroline A. Castillo (*pro hac vice*)                          Amit Jain (Bar No. 21004)
Kathryn Austin (*pro hac vice*)                                 Conchita Cruz (*pro hac vice*)
Mariko Hirose (*pro hac vice*)                                  Zachary Manfredi (*pro hac vice*)
INTERNATIONAL REFUGEE ASSISTANCE         ASYLUM SEEKER ADVOCACY PROJECT
PROJECT                                                                   228 Park Avenue S. #84810
One Battery Park Plaza, 4th Floor                            New York, NY 10003-1502
New York, New York 10004                                     Tel: (305) 484-9260
Tel: (516) 838-1655                                                   Fax: (646) 968-0279
Fax: (929) 999-8115                                                  dennise.moreno@asylumadvocacy.org
levarts@refugeerights.org                                          amit.jain@asylumadvocacy.org
gcastillo@refugeerights.org                                       conchita.cruz@asylumadvocacy.org
kaustin@refugeerights.org                                         zachary.manfredi@asylumadvocacy.org
mhirose@refugeerights.org


_____/s/_____
Justin B. Cox (Bar No. 17550)                                   Richard W. Mark (*pro hac vice*)
INTERNATIONAL REFUGEE ASSISTANCE         Joseph Evall (*pro hac vice*)
PROJECT                                                                   Katherine Marquart (*pro hac vice*)
PO Box 170208                                                         GIBSON, DUNN & CRUTCHER LLP
Atlanta, GA 30317                                                     200 Park Avenue
Tel: (516) 701-4233                                                   New York, NY   10166-0193
Fax: (929) 999-8115                                                  Tel: (212) 351-4000
jcox@refugeerights.org                                              Fax: (212) 351-4035
                                                                               RMark@gibsondunn.com
                                                                               JEvall@gibsondunn.com
                                                                               KMarquart@gibsondunn.com


*Counsel for Plaintiffs*

22