IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

CASA DE MARYLAND, INC., *ET AL*.

      *Plaintiffs*,

– *versus* –

ALEJANDRO MAYORKAS, *ET AL.*

      *Defendants*.

Case No. 8:20-cv-02118-PX

**SECOND DECLARATION OF JULIA HIATT-SHEPP**

Pursuant to 28 U.S.C. § 1746, I, Julia Hiatt-Shepp, declare under penalty of perjury as follows:

1. I make this sworn statement based upon personal knowledge and information provided to me by colleagues at Centro Legal de la Raza ("Centro Legal") whom I believe to be reliable.

2. I am a managing attorney with the Immigrants' Rights team at Centro Legal.

3. Centro Legal is a legal services agency that protects and advances the rights of low-income individuals through bilingual legal representation, education, and advocacy.

4. I submitted a declaration in support of Plaintiffs' motion for a stay of effective dates under 5 U.S.C. § 705, or in the alternative, preliminary injunction. *See* ECF No. 24-6. In this declaration, I am providing additional information about the impact on Centro Legal of the two rules ("asylum EAD rules") that Centro Legal and other Plaintiffs challenged in this case.

1

5. An essential part of Centro Legal's asylum representation is assisting asylum-seekers in applying for employment authorization (EADs). This work is core to our mission. Centro Legal has assisted asylum-seekers applying for initial EADs and renewals since at least 2016.

6. Centro Legal does not charge for its services, and the funding the organization receives is tied to the number of clients that we represent in removal proceedings, including through filing asylum applications. Centro Legal does not receive dedicated funding for assisting asylum seekers with EAD applications.

7. As I anticipated, as a result of the asylum EAD rules, Centro Legal must spend double or triple the amount of time per client to assist our clients in applying for EADs. This is because EAD applications are necessarily more complicated, time-consuming, and resource-intensive under the asylum EAD rules. *See* ECF No. 24-6 ¶¶ 27-36.

8. Centro Legal must also spend more time and resources assisting each client applying for EAD renewal under the asylum EAD rules. This is because Centro Legal must perform time- and resource-intensive eligibility assessments for EAD renewal clients, similar to the assessments we perform for clients applying for initial EADs, in order to ensure that renewal applicants who remain eligible for employment authorization are not denied.

9. Before the asylum EAD rules went into effect, Centro Legal's assistance to clients applying for EAD renewals was largely an administrative task performed by paralegals. After the asylum EAD rules went into effect, much of the work associated with EAD renewals must be performed by an attorney.

10. Because Centro Legal's work assisting clients in applying for EADs and renewing their EADs has become more resource- and time-intensive, Centro Legal has had to shift the organization's limited resources away from other work we do in support of our mission, such

as helping clients obtain Special Immigrant Juvenile status, humanitarian visas, or other vital benefits, in order to continue providing EAD application assistance to our clients.

11. As I anticipated, the asylum EAD rules have made Centro Legal's pro bono EAD clinics infeasible, and Centro Legal has had no choice but to stop providing the pro bono EAD clinics that help unrepresented asylum seekers apply for EADs. *See* ECF No. 24-6 ¶¶ 17-22.

12. The EAD pro bono clinic model is based on identifying asylum seeking EAD applicants who meet straightforward eligibility requirements and whose applications can be completed in a half-day clinic, but under the asylum EAD rules, eligibility requirements are not straightforward in any asylum seeker case.

13. Each EAD application now requires significant counseling to determine whether the asylum-seeker is eligible for an EAD. The staff running the pro bono clinic would need to evaluate, for each asylum-seeker participating in the clinic, whether any of the new categorical bars to eligibility apply, and if so, they would need to ask detailed follow up questions to determine whether the applicant qualified for an exception.

14. For example, staff would have to inquire whether EAD applicants entered the U.S. at a port of entry, and if not, whether they had presented themselves to DHS officials within 48 hours of entry and expressed a fear of return. Prior to submitting Form I-765, staff would then have to compare clients' memories of the details of their entries with DHS records, which are often only available through a lengthy Freedom of Information Act process, in order to eliminate the risk that an otherwise-unrepresented asylum seeker's recollection is contradicted by DHS records.

15. Prior to the asylum EAD rules going into effect, Centro Legal held pro bono EAD clinics remotely over Zoom while our physical office was closed due to the Covid-19 pandemic. If the asylum EAD rules had not gone into effect, Centro Legal would have continued to hold the pro bono EAD clinics remotely until our physical office reopened.

16. Because Centro Legal is no longer able to hold the pro bono EAD clinics, we have assisted tens or even hundreds fewer asylum seekers with their EAD applications since August 2020. This reduction in our services comes at a time of severe economic stress for the low-income populations we serve when their need for work authorization is especially high.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on April 19, 2021, in Oakland, California.

                                                                                          _____  
                                                                                          Julia Hiatt-Shepp, J.D.  
                                                                                          Immigrants' Rights Managing Attorney  
                                                                                          Centro Legal de la Raza