IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| CASA DE MARYLAND, INC., ET AL.<br><br>*Plaintiffs*,<br><br>– *versus* –<br><br>ALEJANDRO MAYORKAS, ET AL.<br><br>*Defendants*. | Case No. 8:20-cv-02118-PX |

**SECOND DECLARATION OF CAROLINE KORNFIELD ROBERTS**

I, Caroline Kornfield Roberts, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am the Executive Director and co-founder of Oasis Legal Services ("Oasis"), a Plaintiff in the above-captioned case.

2. I submit this declaration based on my personal knowledge and information supplied to me by employees of Oasis whom I know to be reliable.

3. I previously submitted a declaration in support of Plaintiffs' motion for a stay of effective dates under 5 U.S.C. § 705, or in the alternative, preliminary injunction. *See* ECF No. 24-7. This declaration adds additional information about the impact of the two rules limiting asylum seekers' ability to obtain work authorization and changing asylum case processing ("rules"), which Oasis and the other Plaintiffs challenged in the above-captioned case.

1

**Impacts of the Rules on Oasis**

4. Oasis's mission is to provide direct legal services and holistic case management to LGBTQ+ asylum seekers living within the jurisdiction of the U.S. Citizenship and Immigration Services' (USCIS) San Francisco Asylum Office. *See* ECF No. 24-7 ¶¶ 3-10.

5. The rules have had a direct, negative impact on Oasis's programming. As described in my original declaration, Oasis offers assistance in obtaining work authorization for all of its asylum-seeking clients. This assistance takes the form of counseling clients on whether and when they will become eligible to apply for work authorization; helping clients to complete the I-765 form; helping clients to identify, collect, and assemble any supporting documentation required for their EAD applications; and physically mailing the application to USCIS on the client's behalf. The new rules have increased the amount of time and resources Oasis must use to continue to provide this assistance to all of its asylum-seeker clients.

6. As a result of the new rules, Oasis had to retrain staff on how to determine whether an asylum-seeker client is eligible to apply for work authorization because the new rules impose new categorical bars to work authorization and new limits on work authorization eligibility.

7. Oasis also had to rewrite the resources we provide to asylum-seeker clients which discuss (c)(8) employment authorization eligibility. The resources we provided before the new rules became effective were no longer accurate after the new rules became effective, and we could not continue to provide them unless we revised them to discuss the impact of the new rules. Oasis spent approximately 25 hours of staff time in reviewing the new rules, understanding their impact on our clients, and updating our employment authorization resources to ensure their accuracy.

8. Because of the new rules, Oasis staff must also spend more time counseling each asylum-seeker client applying for an EAD. This is because under the new rules, many more asylum seekers are categorically ineligible to apply for work authorization, and in counseling clients, Oasis must screen for each ground of ineligibility. If a client is subject to one of the new ineligibility bars, Oasis must then screen to see if any of the exceptions to the bar applies and if so, determine what documentation must be submitted with the EAD application to demonstrate that the client remains eligible for work authorization. For example, because of the ineligibility bar for individuals who entered without inspection, Oasis staff must now look through each asylum seeker EAD client's case file and investigate how the client entered the country.

9. Oasis staff also need additional time to help clients fill out the new I-765 form, given that the form has more questions and is longer as a result of the new rules. Based on my conversations with Oasis staff and my personal experience, I believe it takes at minimum 30 minutes (and up to an hour) longer per client to fill out the new I-765 form than was needed before the new rules took effect.

10. Oasis needs even more time to complete the new I-765 form for some clients because it must also obtain documentary evidence in support of the client's statements, for example, with respect to the circumstances under which the client entered the United States. For some clients who no longer have access to their I-94 number or passport with their entry stamp that shows how and when they lawfully entered the country, Oasis must draft affidavits to prove the client entered the United States lawfully because otherwise they may be subjected to the bar on asylum seekers who entered without inspection.

11. Because the new rules require Oasis to spend additional time and resources in order to continue to provide asylum-seeker clients with assistance obtaining employment authorization,

and Oasis has limited staff and financial resources, I have had no choice but to make cuts in other Oasis programs. For example, because each EAD application now takes longer, our one paralegal in our asylum program has had to stop all her work on filing new asylum cases and devote her time almost entirely to asylum seeker EAD applications. Because of this, we now file two fewer new asylum applications a month for clients.

12. I believe that the impact of the new rules on Oasis would have been even more severe if the Court had not enjoined the Timeline Repeal Rule, the 365-day rule, the one-year filing bar, the rescission of the "deemed complete" rule, the discretionary review rule, and the $85 biometrics fee for Oasis clients who are members of ASAP or CASA. These provisions would have required Oasis staff to take even more time to counsel each client on these additional complications to asylum seeker EAD eligibility requirements, required us to collect and submit more documentary evidence and information (particularly as to the one-year filing bar), and reduced each client's ability to pay low bono fees by significantly delaying (or in some cases denying) their receipt of EADs. *See also* ECF No. 24-7 ¶ 46.

I hereby declare under penalty of perjury that the foregoing is true and correct.
Executed this 16 day of April 2021 in Oakland, California.

_____

Caroline Kornfield Roberts
Executive Director
Oasis Legal Services