

**Officers**
Katharine Crost
*Chair*
Katharine Laud
*Vice Chair*
Gene DeFelice
*Secretary*
Scott Wu
*Treasurer*

**Board of Directors**
Kevin Bearden
Diann Dawson
Earl Johnson
Helen Kanovsky
Regis McDonald
Jeffrey Metzger
John Monahan
Linda Thomas-Greenfield
Sam Udani

**President and CEO**
Eskinder Negash

**Headquarters**
2231 Crystal Drive
Suite 350
Arlington, VA 22202
p/ 703-310-1130
f/ 703-769-4241

**Local Offices**
Albany, New York
Austin, Texas
Cleveland, Ohio
Colchester, Vermont
Des Moines, Iowa
Detroit, Michigan
Erie, Pennsylvania
Kansas City, Missouri
Nashville, Tennessee
Raleigh, North Carolina
"Rinconcito del Sol", Florida
Saint Louis, Missouri
San Salvador, El Salvador
Washington, DC

**refugees.org**

November 7, 2019

Samantha Deshommes,
Chief Regulatory Coordination
Division Office of Policy and Strategy,
US. Citizenship and Immigration Services,
Department of Homeland Security
20 Massachusetts Avenue NW,
Mailstop #2140
Washington, D.C. 20529

Re: DHS Docket No. USCIS-2018-0001, RIN 1615-AC19 Removal of 30-Day
Processing Provision for Asylum Seekers' Initial Employment Authorization
Document Applications

Dear Chief Deshommes:

The U.S. Committee for Refugees and Immigrants (USCRI) respectfully submits
these comments in response to the Department of Homeland Security's (DHS)
Notice of Proposed Rulemaking (NPRM) entitled "Removal of 30-day Processing
Provision for Asylum Applicant-Related Form I-765 Employment Authorization
Applications" published on September 9, 2019. USCRI appreciates the opportunity
to submit comments regarding the proposed rule.

USCRI, established in 1911, is a nongovernmental, not-for-profit international
organization dedicated to addressing the needs and rights of refugees and
immigrants. USCRI provides legal representation to asylum seekers at its four legal
services offices. We believe the proposed rule would increase economic hardships
for our asylum-seeking clients and their families, their potential employers, and
their communities. As such, USCRI opposes the proposed amendments to 8 CFR §
208.7 and requests that DHS withdraw the proposed rule. Our specific comments
are below.

<u>Opposition to Removal of Adjudication within 30 Days</u>

DHS' proposed rule removes the requirement that the initial Employment
Authorization Document (EAD) be processed within 30 days of submission.

Asylum seekers already face financial hardship under the requirement that they
must wait 150 days after submission of an asylum application to seek an EAD by
submitting an I-765 pursuant to the ABT Settlement Agreeement.[1] Under the
current rule, this makes an asylum seeker's wait 180 days total. Asylum seekers
are currently dependent on family, friends, and organizations such as USCRI for
their livelihoods. Without an EAD and work authorization, asylum seekers have

difficulty obtaining drivers' licenses, banking services, and health care. At the same time, businesses and communities lose workers, and federal and state governments lose income taxes.

Adding time to an already lengthy and unforgiving process is both discriminatory and adverse to Congressional intent. Congress adopted the 150 day waiting period as it was a period "beyond which it would not be appropriate to deny work authorization to a person whose claim had not been adjudicated."[2]

Moreover, courts have consistently concluded that any wait beyond 180 days for an EAD creates humanitarian harm for asylum seekers. Most recently, the United States District Court for the Western District of Washington in the case *Gonzalez Rosario v. United States Citizenship and Immigration Services (USCIS)* found that USCIS must adhere to the 30-day deadline due to the negative impact on human welfare. The *Rosario* court stated that,

> "Asylum seekers are unable to obtain work when their EAD applications are delayed and consequently, are unable to financially support themselves or their loved ones... This negative impact on human welfare is further compounded by the length of USCIS's delay."[3]

Thus, maintaining the 30-day EAD deadline (180 day total) is consistent with established Congressional intent and court decisions, such as *Rosario*. Access to an EAD within 180 days is an important economic and humanitarian protection for vulnerable asylum seekers.

Lack of Hardship and Security Concerns for DHS

In Table 1, DHS cites the motivation for removal of the 30-day processing provision for EADs on the grounds that the provision presents both a hardship to process within 30 days and a security concern for the agency.

First, DHS states in the proposed rule that USCIS needs more time to process EAD applications due to increased background checks required by the government since 2004 in response to the September 11, 2001, terror attacks. However, the current processing time of 30 days was fully implemented by 2006, two years after such security checks were implemented. Further, the *Rosario* court, cited above, also stated that the security concerns of the government were too vague to justify a longer waiting period than 30 days.[4]

Second, DHS has been able to process 99 per cent of EAD applications within the 30 day deadline in the last fiscal year.[5] Therefore, it is unclear why DHS requires more time to do so.

In consideration of the above comments regarding hardship to asylum seekers as well as concerns that the proposed rule would be antithetical to both clear Congressional intent and established court

[1] The Settlement Agreement in *B.H., et al. v. United States Citizenship and Immigration Services, et al.*, No. CV11-2108-RAJ (W.D. Wash.), also known as the ABT Settlement Agreement, as revised, or the "Agreement," resulted in changes to USCIS and Executive Office for Immigration Review (EOIR) processes and procedures that affect how USCIS's Asylum Division adjudicates Form I-589, Application for Asylum and for Withholding of Removal, and how USCIS's Service Center Operations Directorate adjudicates Form I-765, Application for Employment Authorization. These changes generally relate to eligibility for an Employment Authorization Document (EAD) for asylum applicants, and to calculation of the 180-day Asylum EAD Clock.
[2] 84 Fed. Reg. 47150.
[3] *Gonzalez Rosario*, 365 F. Supp. 3d at 1162, quoting *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984).
[4] *Id.* at 1163, footnote. 6, quoting *Pereira v. Sessions*, U.S., 138 S. Ct. 2105, 2118 (2018).
[5] United States Citizenship and Immigration Services (USCIS) I-765 - Application for Employment Authorization Eligibility Category: C08, Pending Asylum Initial Permission to Accept Employment Completions by Processing Time Buckets FY15 - FY19 (Through June 30, 2019).

decisions, USCRI respectfully requests that DHS withdraw the proposed rule, "Removal of 30-day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications."

USCRI thanks DHS for the opportunity to submit comments regarding this proposed rule.

Sincerely,

Eskinder Negash
President and CEO

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-4e0s
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2473
Comment Submitted by Cindy Anonymous

---

## Submitter Information

**Name:** Cindy Anonymous

---

## General Comment

Why would you delay an asylum seekers work authorization?? That's ridiculous! These men, women, and children have escaped horrible, life-threatening situations and come to us for help. Let them work while they wait. We need more workers to fill the gap as our population ages and we give birth to less children. They need and want to support themselves! This is a win-win. Don't make it a lose - lose.

AR005028

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-3cve
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2474
Comment Submitted by Lisa Splawinski, Legal Aid Society of Cleveland

## Submitter Information

**Name:** Lisa Splawinski

## General Comment

See attached file for comment submitted by The Legal Aid Society of Cleveland.

## Attachments

Comments opposing the elimination of the 30-day processing provision for asylum EADs 11.08.2019

AR005029



November 8, 2019

*Submitted via www.regulations.gov*

Samantha Deshommes, Chief
Regulatory Coordination Division, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Washington, DC 20529-2140

**Re:** **Public Comment Opposing the Removal of 30-Day Processing
Provision for Asylum Applicant-Related Form I-765 Employment
Authorization Applications
Docket ID USCIS-2018-0001-0001**

Dear Ms. Deshommes:

I am writing on behalf of The Legal Aid Society of Cleveland in opposition to the
Department of Homeland Security (DHS), United States Citizenship and
Immigration Services (USCIS) proposal to remove the 30-day processing provision
for asylum-applicant-related Form I-765 Employment Authorization Applications,
Docket ID USCIS 2018-0001-0001, published in the Federal Register on September
9, 2019.

The Legal Aid Society of Cleveland provides free legal services to vulnerable low-
income clients in five counties in Northeast Ohio. Our mission is to secure justice
and resolve fundamental problems for those who are low income and vulnerable by
providing high quality legal services and working for systemic solutions. Our
organization works directly with immigrant survivors of domestic and sexual
violence who come to the United States to seek protection. Our clients have suffered
rape, beatings, and death threats at the hands of the perpetrators in their home
countries – sometimes enduring the abuse for many years – before they are able to
escape and seek safety here in the U.S. They will undoubtedly suffer if the proposal
to eliminate the 30-day processing provision for their I-765 applications for
employment authorization is implemented.

If the proposed elimination of the 30-day processing provision is implemented,
asylum applicants would lose the potential to earn wages and obtain other
employment-related benefits as a result of their delayed entry into the U.S. labor
force. This loss would strain their ability to support themselves and their families,

Lisa Splawinski
Phone: 216-861-5310
Fax: 216-861-5106
Lisa.Splawinski@lasclev.org

**New Clients Call:**
888.817.3777 (toll-free)
or
216.687.1900

**General Business:**
888.808.2800 (toll-free)
or
216.861.5500

**Cleveland
& Administrative Offices**
1223 West Sixth Street
Cleveland, OH 44113
General Business: 216.861.5500
Fax: 216.586.3220

**Elyria Office**
1530 West River Road North
Suite 301
Elyria, OH 44035
General Business: 440.324.1121
Fax: 440.324.1179

**Jefferson Office**
121 East Walnut Street
Jefferson, OH 44047
General Business: 440.576.8120
Fax: 440.576.3021

**Painesville Office**
8 North State Street
Suite 300
Painesville, OH 44077
General Business: 440.352.6200
Fax: 440.352.0015

**www.lasclev.org**

and will cause an enormous amount of harm to an already vulnerable community. Not having income means not being able to afford food, housing, medical treatment, health insurance, or legal representation. Furthermore, the affected individuals will not be able to obtain valid identification, which is needed for many social services, and will be increasingly vulnerable to exploitation, trafficking, and underground economic risks as a result. The barrier to being able to work legally, and the correlating lack of income, also vastly increases the risk that those affected by the proposed rule will become a public charge.

In addition to the aforementioned hardships that the proposed rule will impose on asylum applicants, it will also result in a loss for the U.S. government in the form of taxable income and tax contributions to other federal programs. The U.S. Citizenship and Immigration Services (USCIS) admitted that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income each year, and it projected a loss of $39.15 million to $118.54 million per year because delays in receiving work authorization will prevent asylum applicants and their employers from contributing to Medicare and social security.

Besides the severe economic losses that both the U.S. government and asylum applicants will experience if the proposed rule is implemented, the potential delay in screening asylum applicants' requests for employment authorization that would result from the proposed rule may also lead to national security concerns. In the published notice, USCIS makes frequent reference to a rise in national security threats as a reason to spend more time and resources on each decision. However, USCIS has also reported that it has been able to decide over 99% of I-765 applications within the 30-day timeframe over the past year. USCIS has therefore demonstrated that it is able to adequately screen the number of I-765 applicants in a timely fashion. Its argument about an increase in security threats suggests the need for a speedier process to properly protect national security, rather than a delay; because asylum applicants who are requested employment authorization documents are already in the U.S., having unvetted people in the U.S. who are subjected to a potentially indefinite review period of their I-765 applications seems contrary to USCIS' stated concerns.

As the law is currently written, asylum applicants must wait 180 days before they can receive authorization to work. They are permitted to submit I-765 applications after 150 days, giving USCIS the 30-day period in question to process the requests. However, if the 30-day timeframe is too short, USCIS could consider shortening the waiting time before asylum applicants are permitted to submit their I-765 applications. For example, if USCIS feels that a 60-day time period to process the I-765 applications would be more beneficial, then it can allow applications to be submitted after 120 days, rather than 150. Allowing asylum applicants to submit their applications earlier could give USCIS up to 180 days to process and properly evaluate each application, while also reducing the risk of harm to each applicant.

For these reasons, The Legal Aid Society of Cleveland urges USCIS and DHS to withdraw the proposed rule and to instead advance policies and guidance that uphold and support its stated mission of "efficiently and fairly adjudicating requests for immigration benefits."

Sincerely,

Lisa Splawinski, Senior Attorney
The Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland, OH 44113
216-861-5310
Lisa.splawinski@lasclev.org

AR005032

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-qjcz
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2475
Comment Submitted by George Kanuck, Lowcountry Immigration Coalition

## Submitter Information

**Name:** George Kanuck
**Submitter's Representative:** George Kanuck
**Organization:** Lowcountry Immigration Coalition
**Government Agency Type:** Local

## General Comment

As the Co-Chair of the Lowcountry Immigration Coalition of the Hilton Head, Bluffton, Beaufort County, South Carolina areas, we oppose this latest action by the Trump Administration to create even more despicable rules against the ability of asylum seekers to immediately attain an ability for work authorization. There are so many reasons that such a restriction has on this potential population, it is hard to describe or list. Not only is it counter-productive to asylum seekers by limiting their income and ability to fend for themselves, but it inhibits their acquiring health care, food, and housing for themselves and their families. What good would this policy achieve--none but retrogressive, non-compassionate actions. Most important, it is simply a political, xenophobic dodge to restrict reasonable asylum-seeking individuals from wherever they may be from. This is further a short-sighted move that actually decreases taxable income and is inconsistent with what America stands for as a Nation. Shame on the Administration for even considering such negative, sick and limiting policies. Lastly, it looks like another Stephen Miller-created hell storm. Such a policy is Un-American.

AR005033

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-vc4j
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2476
Comment Submitted by Scott Pollock

---

## Submitter Information

**Name:** Scott Pollock

---

## General Comment

The proposal to eliminate 30 day EAD processing for asylum applicants is an invitation for the Government to be irresponsible and for the agency to not do its job. Applicants already are required to wait 5 months after filing for asylum to even apply for work authorization. It's during this time, as soon as the I-589 application is filed, that USCIS begins background checks. The 30 day rule was intended to prevent undue hardship to legitimate asylum seekers. If the agency can't determine in 6 months whether an application is fraudulent, or an applicant is a security risk, then it won't do so in 9 or 12 months, either. How does eliminating a mandated time frame ensure greater integrity of the asylum process or security for our Nation? It doesn't; rather it contributes to less security. The current rule has been in place for decades and it makes sense to keep it intact. We've accepted that a 5 month waiting period is a reasonable balance between the agency's need to investigate claims and an applicant's human need to seek employment while awaiting a decision on the asylum application.

AR005034

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-20q3
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2477
Comment Submitted by Ysauro Munoz

---

## Submitter Information

**Name:** Ysauro Munoz

---

## General Comment

Please Support President Trumps Immigration Reform and Properly Vet all Immigrants to our country.

AR005035

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-sq2j
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2478
Comment Submitted by Shelley Wittevrongel

---

## Submitter Information

**Name:** Shelley Wittevrongel
**Address:**
    1547 Quince
    Boulder,  CO,  80304
**Email:** witt@indra.com
**Phone:** 303 916-8548

---

## General Comment

I am an immigration attorney with 25 years of experience who has represented many asylum applicants. The removal of the 30 day processing provision for asylum applicants seeking employment authorization is very harmful to these applicants and their families. An applicant seeking to obey laws and regulations in the United States already has to wait 180 days before he or she can work. For many asylum seekers working is essential for survival. Delaying approval of EAD's for an undetermined amount of time unnecessarily increases stress and hardship on people who are often already in trauma. Furthermore, legal working contributes to the U.S. economy.

Shelley Wittevrongel

AR005036

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-dgee
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2479
Comment Submitted by Justin Sweeney

---

## Submitter Information

**Name:** Justin Sweeney

---

## General Comment

Work permits for people waiting asylum applications is already a needlessly difficult process. This administration claims immigrants use public resources for assistance and then denies them the very thing they need to work legally. Asylum seekers, at this point will have already waited AT LEAST 150 days to apply for the work permit and are more desperate than ever to get an EAD. It is common practice now too, to have ICE officers do a home-check in, ankle monitors that restrict travel to possible job opportunities and more and more ICE check ins at the local ICE office. All of this is intentionally trying to do deny asylum seekers the ability to work and make employing asylum seekers less desirable. This is a veiled attempt by this administration to make sure they don't have the $ to pay a lawyer to fight their case in the ever-changing and more difficult asylum law framework. This, again, is intentional as the sole purpose is to process these cases as quickly as possible, deny as many as we can and deport them back to their country as fast as humanly possible.

These extremely vulnerable people, who are frequently uneducated and often do not speak English are given less time to find an attorney in continued removal proceedings than our own government takes to process a simple EAD application. We CAN and SHOULD do better. We should eliminate the 150 day waiting period, especially if the goal is to process these cases as quickly as possible, not be ADDING to the time before they will get their EAD!

AR005037

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-sx5x
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2480
Comment Submitted by Marshal Hyman

---

## Submitter Information

**Name:** Marshal Hyman

---

## General Comment

We should not force refugees into working illegally, because it is not humane, and because the government will lose the benefit of being able to tax them. Most of these people are more than happy to work and perform jobs that many American workers would not do. The rules that are in place were well thought out and there is no need to change in this way that punishes everyone.

AR005038

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-bqum
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2481
Comment Submitted by Kathy Holmes

---

## Submitter Information

**Name:** Kathy Holmes

---

## General Comment

I do not believe you should change the rule with this outlandish deadline. I am against it.

AR005039

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-l3f4
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2482
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am a caseworker working with individuals seeking asylum. Asylum seekers want to work to be able to provide for themselves. If they are unable to work, they will be more likely to rely on state and federal benefits or other local resources due to inability to pay for their basic needs. They will also pay less taxes since they will not be able to work. If asylum workers are able to continue to receive work authorization, they will be able to pay for their basic needs and become self-sufficient, tax-paying members of society. They will be able to support their families and contribute to the community.

AR005040

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-rlrs
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2483
Comment Submitted by Bridget Crawford, Immigration Equality

---

## Submitter Information

**Name:** Bridget Crawford
**Submitter's Representative:** Immigration Equality
**Organization:** Immigration Equality

---

## General Comment

Dear Chief Deshommes,

We strongly oppose the proposed changes to the 30-day processing time for asylum applicants who are seeking an employment authorization document through Form I-765. The proposed rule will have grave effects on our client base of lesbian, gay, bisexual, transgender, queer (LGBTQ) and HIV-positive asylum seekers. Most significantly, the proposed rule would prevent or needlessly delay our clients from attaining self-sufficiency and would deny them access to critical necessities, including food, shelter, medication, health insurance and health services.

We, therefore, strongly urge that the proposed rule be withdrawn in its entirety and asylum seekers be allowed to apply for EADs concurrently with their asylum applications or, alternatively, that the current rule remain in effect, subject to the order in Rosario v. USCIS, No. C15-0813JLR (9th Cir. 2017), requiring DHS to comply with the 30-day deadline to adjudicate EAD applications.

Please see the attached comment for a detailed analysis on the proposed rule and the reasons for our objection.

Sincerely,
Immigration Equality

---

## Attachments

Immigration Equality - Public Comment Filed Opposing the Removal of the 30-Day Processing Provision

AR005041

AR005042




*Submitted via www.regulations.gov*

November 8, 2019

Ms. Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy, U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Washington, DC 20529-2140

    Re: Public Comment Filed Opposing the Removal of the 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, 84 F.R. 47148

Dear Chief Deshommes:

    We write on behalf of Immigration Equality in response to the Department of Homeland Security ("DHS") Notice of Proposed Rulemaking ("proposed rule") on the Removal of the 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, published in the Federal Register at 84 F.R. 47148 on September 9, 2019 ("Notice"). We strongly oppose the proposed changes to the 30-day processing time for asylum applicants who are seeking an employment authorization document ("EAD" or "work permit") through Form I-765. The proposed rule will have grave effects on our client base of lesbian, gay, bisexual, transgender, queer ("LGBTQ") and HIV-positive asylum seekers. Most significantly, the proposed rule would prevent or needlessly delay our clients from attaining self-sufficiency and would deny them access to critical necessities, including food, shelter, medication, health insurance and health services.

    We, therefore, strongly urge that the proposed rule be withdrawn in its entirety and asylum seekers be allowed to apply for EADs concurrently with their asylum applications or, alternatively, that the current rule remain in effect, subject to the order in *Rosario v. USCIS*, No. C15-0813JLR (9th Cir. 2017), requiring DHS to comply with the 30-day deadline to adjudicate EAD applications.

I.    <u>Immigration Equality</u>

    Immigration Equality is a national organization providing free legal services and advocacy for LGBTQ and HIV-positive immigrants. In more than 80 countries, it is either a crime or profoundly dangerous to be LGBTQ. Immigration Equality's mission is centered around securing safety and freedom for LGBTQ and HIV-positive individuals. Our in-house legal team and pro bono network

AR005043


of 130+ law firms in 150+ offices nationwide are currently providing legal representation to more than 600 asylum seekers, including securing EADs for many of these individuals.

Given our extensive experience, we understand at the most fundamental level the importance of securing work authorization for our clients as quickly as possible. Without the ability to work, our clients often are denied basic necessities, such as housing, food, medication and healthcare. Not only are these necessities critical for survival, but they are essential for individuals to effectively pursue their asylum claims.

II.  The Proposed Rule Radically Changes the Regulatory Deadline to Adjudicate Work Permits

Under the current system, asylum seekers must wait 150 days from the date they file an asylum application before applying for an EAD (if the applicant has caused delays in their asylum case, they must wait even longer). Pursuant to a regulation in place since 1994, USCIS is required to adjudicate EAD applications within 30 days of receiving them. Nonetheless, USCIS routinely failed to meet this deadline until July 2018, when a federal court hearing the case ordered the government to comply with the deadline. *See Rosario*, No. C15-0813JLR. Since that time, USCIS has adjudicated 99% of initial EAD applications within 30 days. Prior to the court's ruling in *Rosario*, USCIS adjudicated 47% of initial EAD applications within 30 days, an additional 31% of applications within 60 days, and 22% of applications in more than 60 days. One of the "chief purposes" of the 30-day deadline was "to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible." (Notice at 47153, fn. 11.)

The existing five-month wait period before applying for an EAD is already too long for asylum seekers who need a way to support themselves while waiting for their claims to be adjudicated. The delay is extremely burdensome, forcing many of our clients into homelessness, and making access to food, clothing, medication and health services impossible. The proposed rule would exacerbate this already precarious situation forcing asylum seekers to wait even longer before applying for work permits. Notably, the actual wait time for an EAD is usually much longer than six months because preparation of the underlying asylum application generally takes several months before it is filed.

Significantly, DHS has proposed no alternative timeline to the current 30-day deadline. DHS considered a 90-day timeframe, which would have been *three times* the current period, but ultimately rejected that idea removing the timeframe entirely. (Notice at 47166-47167.) This suggests that the agency anticipates these applications will be significantly delayed.

III.  The Proposed Rule Will Negatively Impact Immigration Equality Clients

Immigration Equality's client population is uniquely vulnerable. Many clients have endured extreme violence in their countries of origin on account of their sexual orientation, gender identity

AR005044


and/or HIV status, and have fled to the United States with no financial resources or safety net to speak of. Obtaining permanent legal status in the U.S. is a crucial lifeline, and the ability to work while awaiting a determination on an asylum application is critical for survival. Simply put, without an EAD, many of our clients cannot eat, cannot access transportation, cannot secure housing and cannot access essential healthcare.

Ninety-nine percent of our clients live at or below 250% of the poverty line when they are accepted into our legal services program with a substantial portion living at or below the poverty line. Forty-four percent are under the age of 30. Moreover, LGBTQ and HIV-positive individuals often seek asylum in the United States as a result of persecution by their own families and communities. Thus, our clients often cannot rely on family or community networks in the United States for financial support the way some other asylum seekers do. Accordingly, it is crucial that they have immediate means to support themselves.

Studies show that asylum seekers who lack community support are likely to become "homeless, live in overcrowded or unsafe conditions, and lack basic needs like food and clothing."[1] This has been true for many of our clients who, with the delay in securing an EAD under the current scheme, routinely face homelessness and hunger. Moreover, homeless LGBTQ individuals are particularly vulnerable to exploitation, trafficking, and underground economy risk. The National Coalition for the Homeless reports that "LGBT individuals experiencing homelessness are often at a heightened risk of violence, abuse, and exploitation compared with their heterosexual peers. Transgender people are particularly at physical risk due to a lack of acceptance and are often turned away from shelters; in some cases signs have been posted barring their entrance."[2]

Further, many health care exchanges require work authorization documents to quality. Thus, our clients have medical needs that often go unmet due to lack of income and access to medical insurance under the current rule. This situation will only worsen if the proposed rule takes effect. For example:

- HIV treatment, known as anti-retroviral therapy, is prohibitively expensive. Having to wait for work authorization for longer periods of time will hamper efforts by asylum seekers living with HIV to access necessary medical treatment and medication. This is not only devastating to the health of the individual, but could also have negative health consequences on the community at large, as disruptions in HIV care and treatment— especially resulting in reduced adherence or medication rationing—can lead to drug resistant strains of HIV. In short, the proposed rule could have a ripple effect on public health.

---

[1] Human Rights First, <u>Callous and Calculated: Longer Work Authorization Bar Endangers Lives of Asylum Seekers and Their Families</u>, (Apr. 29, 2019), https://www.humanrightsfirst.org/sites/default/files/Work_Authorization.pdf.
[2] National Coalition for the Homeless, <u>LGBT Homelessness</u>, https://nationalhomeless.org/issues/lgbt/ (last visited Nov. 7, 2019).

AR005045





- Transgender clients who discontinue hormone therapy due to lack of financial resources can experience severe health consequences. Hormone therapy "is a medically necessary intervention for many transsexual, transgender, and gender-nonconforming individuals with gender dysphoria."[3] However, it is expensive and needs to be ongoing and closely monitored by healthcare professionals.[4] Ceasing treatment due to a lack of income and medical insurance can result in serious negative physical and mental health outcomes.[5]

- Many of our clients faced extreme violence and trauma in their country of origin and are in desperate need of mental health counselling services. These services are often inaccessible to asylum applicants without income or acceptable identification documents like an EAD.

In addition, many of our clients arrive to the U.S. without recognized forms of identification and cannot access social services without appropriate documents. An EAD is often the only form of picture identification an asylee can provide to social services agencies to access the resources they desperately need. It is also one of the few forms of travel documents permitted by TSA in order to travel within the United States.[6]

Federal law does not provide asylum seekers with public assistance, such as income, housing or food assistance.[7] While federal law permits states to provide state-funded benefits for asylum seekers, this is entirely discretionary and only about half the states have extended any programs providing benefits. Moreover, eligibility can be extremely limited.[8]

It is a constant struggle for us to find social and medical service providers to fill the gap. The need is simply too great for the available resources. As a result, many of our clients suffer needlessly, with dire consequences for their health and well-being. This also has an impact on their underlying asylum claims. For example, without income, clients do not have money for transportation and miss appointments. Without housing, a consistent address and an ability to pay

---

[3] World Professional Association For Transgender Health, Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People, 33 (2011), https://www.wpath.org/media/cms/Documents/Web%20Transfer/SOC/Standards%20of%20Care%20V7%20-%202011%20WPATH.pdf.

[4] Id. at 65.

[5] American Psychiatric Association, What is Gender Dysphoria, (Feb. 2016), https://www.psychiatry.org/patients-families/gender-dysphoria/what-is-gender-dysphoria.

[6] Transportation Security Administration, Travel: Identification, https://www.tsa.gov/travel/security-screening/identification (last visited Nov. 7, 2019).

[7] Human Rights First, *supra* note 1.

[8] Human Rights First, *supra* note 1.

AR005046



for phone service, attorneys have difficulty reaching clients and clients struggle to collect the necessary evidence to support their claims. Without appropriate mental healthcare resources, clients who have suffered severe trauma are retraumatized every time they discuss their experiences with their attorneys.

The timeframe under the current rule already causes hardship to our clients. The situation will worsen considerably if the proposed rule takes effect as it may remove the ability to hold USCIS accountable to any deadline.

Our clients are resilient, resourceful and want to be self-sufficient. After obtaining work authorization, they are successful and go on to be significant contributors to American society, pursuing careers in business, education, healthcare, the arts, and activism, among others.

For example, one of our clients is now a successful painter and graphic designer in New York City. Another former client founded a full-service media company empowering communities through storytelling. He also runs a refugee shelter. Yet another is an activist advocating for the rights and needs of LGBTQ communities, while also working as a case manager at a community health center and pursuing her political science degree as a full-time student. Another former client is an entrepreneur and small business owner with an office on Fifth Avenue in Manhattan. In short, our clients thrive when given the opportunity.

IV.    The Proposed Rule Is Costly and Is Not Supported by DHS's Rationale

By DHS's own data estimates, the proposed rule change could result in $255.88 million to $774.76 million in lost compensation for asylum seekers annually. (Notice at 47150). Revenue losses to the federal government in the form of lost contributions to Medicare and social security would "rang[e] from $39.15 million to $118.54 million" annually. *Id.*

Notably, DHS's estimates of costs rely on its assumption that without the 30-day deadline, USCIS' case processing timelines will return to what they were before the *Rosario* decision. However, there is no guarantee. This assumption fails to account for asylum backlog that has grown every year over the past five years, according to DHS, and is one of the primary reasons DHS cites for wanting to eliminate the 30-day deadline.

DHS claims that implementing the proposed rule will result in overall cost savings to the agency in the form of fewer personnel needed to process EAD applications. However, DHS has not estimated these personnel costs, nor has DHS estimated:

- losses to businesses that currently employ asylum-seekers
- losses to small businesses in asylum-seekers' communities
- losses to asylum-seekers' family members and networks
- losses to organizations that provide services to asylum-seekers

AR005047



- losses to federal, state, and local governments in the form of loss income tax

The economic estimates and justification of the proposed rule are not backed up by the data and warrant deeper analysis.

DHS claims that it seeks to eliminate the 30-day processing deadline because the regulatory deadline does "not provide sufficient flexibility" for the agency to address (1) the "increased volume of affirmative asylum applications and accompanying Applications for Employment Authorization"; (2) "changes in intake and EAD document production" over the last two decades; and (3) "the need to appropriately vet applicants for fraud and national security concerns." (Notice at 47155). However, the changes the government identifies in intake and document production have been in place for more than a decade and a half. (Notice at 47154, fn. 17). Similarly, the additional fraud and national security vetting the government identified has been implemented since September 11, 2001 and the creation of the Office of Fraud Detection and National Security (FDNS) in 2004. (Notice at 47154-55). Despite the existence of these production and vetting changes, USCIS has been able to comply for more than a year with the *Rosario* court's order requiring it process initial EAD applications in 30 days.

With respect to *Rosario*, DHS says that in order to comply with the court's order it has been forced to "redistribute[] its adjudication resources," and the proposed elimination of the 30-day requirement would allow those redistributed resources to be reallocated, "potentially reducing delays in processing of other applications, and avoiding costs associated with hiring additional employees." (Notice at 47150). As noted above, however, DHS has failed to include any estimated costs of hiring additional employees so those number can be compared to the lost revenue and income noted above.

In support of the proposed rule, USCIS makes frequent reference to a rise in national security threats as a reason to spend more time and resources on each decision. However, as noted above, USCIS has been able to decide 99% of EADs within the 30-day timeframe over the past year. Therefore, USCIS has proven its ability to vet requests in a timely fashion. Moreover, its argument regarding increased threats serves only to prompt the need for a speedier process to properly protect national security, rather than its request to delay the process further. This need for a speedier process is further compounded by the fact that the EAD applicants are asylum-seekers already residing in the United States. If vetting must be done to prevent security risks, then having unvetted people in the U.S. subjected to a potentially indefinite review period seems contrary to the department's stated interests.

V.    Conclusion

For these reasons, DHS should immediately withdraw its current proposal, and allow for the 30-day EAD processing timeframe to remain in place or, alternatively, allow asylum seekers to apply for an EAD concurrently with their asylum application. We urge DHS to dedicate its efforts

AR005048


to advancing policies that strengthen rather than undermine the ability of immigrants to support themselves and their families in the future.

Thank you for the opportunity to submit comments on the proposed rule. Please do not hesitate to contact Bridget Crawford at bcrawford@immigrationequality.org to obtain further information.


Sincerely,

Bridget Crawford
Legal Director
Immigration Equality
40 Exchange Place, #1300
New York, NY  10005
212-714-2904

AR005049

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-cx69
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2484
Comment Submitted by Amy Lenhert

## Submitter Information

**Name:** Amy Lenhert

## General Comment

Stop the assault on asylum seekers! They should have the ability to work legally while pursuing their claims.

AR005050

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2484.html[9/15/2020 4:14:29 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-d2lt
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2485
Comment Submitted by Yasmin Russell

---

## Submitter Information

**Name:** Yasmin Russell

---

## General Comment

A weapon seeking asylum in the United States is legal. This country committed that after it taking so long to get involved in WW2 and assist the Jewish community, we would not turn our backs to people again. Sometimes this country fails, but the goal was to always do better. Protect asylum seekers protections.

AR005051

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-umbg
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2486
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

The proposed elimination of the issuance of an initial employment authorization for asylum applicants is unnecessary and will lead to additional hardships as well as the loss of income to USCIS. Asylum applicants already must wait 150 days to apply for an employment authorization document. Eliminating the 30 day adjudication window is an attempt by the USCIS to overturn a lawsuit settlement agreement.

AR005052

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-6v9t
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2487
Comment Submitted by the Safe Passage Project

## Submitter Information

**Name:** Anonymous Anonymous
**Submitter's Representative:** Safe Passage Project
**Organization:** Safe Passage Project

## General Comment

See attached file.

## Attachments

Safe Passage Project Comment

AR005053



*Via Federal e-Rulemaking Portal*
*https://www.regulations.gov/document?D=USCIS-2018-0001-0001*

U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

**Re: Comment on Proposed Rule, "Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications," Docket No. USCIS-2018-0001**

November 8, 2019

To U.S. Citizenship and Immigration Services:

Safe Passage Project respectfully submits this comment to the Department of Homeland Security's Notice of Proposed Rulemaking on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019 (the "Proposed Rule").

Safe Passage Project is a registered 501(c)(3) nonprofit corporation based in New York City. We provide free lawyers to refugee and immigrant children in New York City and on Long Island who face deportation back to life-threatening situations. Safe Passage Project was founded in 2006 at New York Law School and in 2013 fully incorporated as an independent nonprofit. Safe Passage Project recruits, trains, and mentors volunteer attorneys to represent unaccompanied minors in immigration court, before the U.S. Citizenship and Immigration Services ("USCIS") Asylum Office, and in New York Family Court. Without the legal services we provide, many of these children would be unrepresented and unaware of the available options to legalize their immigration status.

Our organization has a number of concerns about the Proposed Rule, including its impact on local economies and its role as part of a systemic effort to exclude asylum seekers from the United States. However, in light of our organization's mission to provide legal services to immigrant youth, we are focusing our comment upon the ways in which this Proposed Rule harms children who have fled violence in their home countries to seek asylum in the United States.

AR005054

## I.    Background

Safe Passage Project works with children from all over the world who are seeking asylum in the U.S. Many of our clients are fleeing record levels of violence in the Northern Triangle of Central America—El Salvador, Guatemala and Honduras. Children in these countries are often forcibly recruited by criminal syndicates commonly referred to as "gangs." They are forced to engage in criminal activities or engage in violent acts, or forced to provide sexual services to gang members. Children may also be targeted as members of families who are themselves targeted for persecution on account of their race, religion, nationality, membership in a particular social group or political opinion. In many regions, the government is well aware of the criminal activity and does not protect the populace, and may in fact be benefitting from corrupt criminal payments. In many cases, children flee these conditions on their own, and arrive at the border unaccompanied by an adult family member. *See, generally, e.g.*, *Children on the Run: Unaccompanied Children Leaving Central America and Mexico and the Need for International Protection,* United Nations High Commissioner for Refugees, available at https://www.unhcr.org/about-us/background/56fc266f4/children-on-the-run-full-report.html.

In their searches for safety and security, many such children exercise their legal rights to apply for asylum in the U.S. The asylum adjudication process can be very long; due to backlogs at USCIS and congested dockets in the immigration courts, many of our clients wait many months, or even years, for a decision. Asylum applicants whose cases have been pending for more than 150 days are eligible to apply for an employment authorization document ("EAD"). 8 C.F.R. 208.7(a)(1). Since 1994, a federal regulation has required USCIS to adjudicate EAD applications from asylum seekers within 30 days of their receipt. *Id*. However, for years USCIS consistently failed to meet that deadline, leading a federal court to order compliance in 2018. *Rosario v. USCIS*, No. C15–0813JLR (W.D. Wash. July 26, 2018). Since then, USCIS has complied with the 30-day deadline for most initial EAD applications. *See* Compliance Report, *Rosario*, No. C15–0813JLR at 4 (Aug. 6, 2019), available at https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf.

Now, the Department of Homeland Security ("DHS") once again seeks to avoid the 30-day deadline. This time, in an abuse of its regulatory authority, DHS aims to escape a court order with which it does not want to comply by striking the underlying regulation from the law entirely. On September 9, 2019, DHS published the Proposed Rule, which would remove altogether the requirement that USCIS adjudicate asylum seekers' EAD applications within 30 days of receipt. The Proposed Rule does not offer any new timeline for EAD processing, freeing USCIS to significantly lengthen current processing times.

## II.    The Proposed Rule Harms Asylum-Seeking Children

Our organization stands in firm opposition to enactment of the Proposed Rule. Based upon our extensive work with young asylum seekers, we know that the Proposed Rule poses a significant threat to their health, their wellbeing, and their ability to prove their otherwise meritorious immigration cases.

AR005055

## A.  The Proposed Rule Threatens the Health and Safety of Asylum-Seeking Children

Our organization's clients are young, but many of the 17 to 21 year olds do rely on work to support themselves. Some lack sufficient financial support from their families, while others have already completed their education and begun pursuing their own careers. For these young people, the ability to work is essential to meeting basic needs for food, shelter, and clothing—needs that do not subside just because their asylum applications are still pending. Currently, the 30-day processing deadline ensures that they are able to work during many of the months and even years they await asylum decisions. The deadline also offers predictability that allows them to make advance, informed decisions about their jobs and their expenses.

Should the Proposed Rule be enacted, these young people will instead be at the mercy of a delayed and unpredictable system. The Proposed Rule fails to replace the 30-day deadline with any alternative timeframe. DHS reports that it considered a 90-day deadline—a change that would still have lengthened asylum seekers' waits by three times—but ultimately decided that the deadline lacked "flexibility" and "would unnecessarily place operational constraints on adjudicators." *See* Proposed Rule at 47166–67. DHS appears to anticipate that EAD adjudication wait periods will span more, than 90 days, and thus that some applicants' waits for work authorization will more than triple from their current lengths, potentially indefinitely.

For young people who have recently arrived in the United States, the difference between a 30-day wait and an indefinite wait is drastic. Longer wait times threaten their ability to support themselves and increase the chance that they will go hungry, become homeless, or be unable to afford medicine they need to survive. Many young asylum seekers are especially vulnerable to these dangers. Because they fled their home countries in extreme hurries, they are frequently starting "from scratch" in the U.S. and have few resources here to support themselves through long periods of unemployment. Moreover, while access to basic necessities is important for everyone, it is especially crucial for young people, whose lifelong health and development can be hindered by malnutrition, housing instability, and other consequences of financial insecurity. *See, e.g.*, Ajay Chaudry and Christopher Wimer, *Poverty is not Just and Indicator: The Relationship Between Income, Poverty, and Child Well*-Being, Academic Pediatrics, available at https://www.academicpedsjnl.net/article/ S1876-2859(15)00383-6/pdf.

Not only young people in search of their own employment will be impacted if the Proposed Rule is enacted. Even our youngest clients, children who are too young for jobs themselves, will be harmed, because many rely on the financial support of asylum-seeking parents or guardians who will face the same delays. Infants and other very young children should not be made to bear the burden of avoidable bureaucratic delays, especially when such delays endanger their health and safety.

For older children, employment authorization documents are a prerequisite not only to legal employment, but to many health and social services as well. The federal health insurance marketplace, which most states use for insurance enrollment, requires asylum applicants who over thirteen years old to have work authorization in order to qualify. *Immigration Status and the Marketplace*, Healthcare.gov, https://www.healthcare.gov/immigrants/immigration-status; *see*

AR005056

*also State Health Insurance Marketplace Types, 2019*, Kaiser Family Foundation, https://www.kff.org/health-reform/state-indicator/state-health-insurance-marketplace-types. Some states who administer their own insurance marketplaces use the same EAD rules. *See, e.g.*, *Proof of Immigration Status or Lawful Presence*, Covered California, https://www.coveredca.com/documents-to-confirm-eligibility/proof-of-immigration-status-or-lawful-presence. Young people in these states who cannot otherwise access insurance will be forced to remain uninsured indefinitely as USCIS processes their EAD applications, at tremendous risk to their health and safety.

Similarly, many state identification cards ("IDs") are unobtainable without proof of work authorization. IDs are necessary to navigating modern life, but they are also required by many community service agencies, shelters, and social service programs. Without IDs, asylum seekers will remain unable to access such services at a time of great vulnerability in their lives.

**B. The Proposed Rule Harms Young Asylum Seekers' Access to Due Process Under the Law**

The Proposed Rule endangers not only the health and wellbeing of asylum-seeking youth, but also negatively impacts their access to due process under law. Children's immigration cases do not cease when they apply for asylum. They must continue to appear in immigration court, prepare for their asylum interviews or hearings, and/or apply for alternative forms of relief, steps that all require the assistance of an attorney. Although Safe Passage Project represents children on a pro bono basis, not every child in the U.S. has access to free legal representation. Unfortunately, the demand for pro bono attorneys far outmatches the supply. Many children and families are forced to bear the cost of an immigration attorney, or proceed without advice of counsel in a complex and time lengthy process. Delaying access to legal employment, and the income it brings, hinders their ability to hire and pay the attorneys they need to effectively pursue their cases. Additionally, because of their inexperience with immigration cases, *pro se* respondents and applicants pose a greater burden to the immigration system and the adjudicators within it.

Even for clients like ours who have access to pro bono attorneys, there are other costs inherent in immigration cases. Children seeking immigration relief often must pay court filing fees. They must also bear transportation costs in order to attend the court hearings, asylum interviews, and legal meetings necessary to avoid removal. When young people cannot afford travel costs or court fees because of lengthy waits for work authorization, they risk losing access to immigration relief to which they are entitled.

The stakes are incredibly high for young people whose financial insecurity jeopardizes their immigration outcomes. When children who qualify for relief cannot obtain it, they may be removed from the U.S. and sent back to violence or even death.

AR005057

**Conclusion**

Removing the 30-day processing deadline for EAD applications threatens the health and safety of children seeking asylum in the United States. In view of all of the foregoing, Safe Passage Project affirms that the Rule as drafted would be harmful to our clients, vulnerable unaccompanied immigrant youth who have fled persecution and who seek safety in the U.S.

Yours truly,


Alexandra Rizio
Managing Attorney
Safe Passage Project


Michelle Caldera-Kopf
Managing Attorney
Safe Passage Project


Katherine Fite
Equal Justice Works Fellow
Safe Passage Project

AR005058

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d78-z94z
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2488
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I don't think we should be rushing people into the country without background checks just because the 30 day window is up. If we need more money to process people faster, then let's do that.

AR005059

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-hvu6
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2489
Comment Submitted by Michelle Hughes

---

## Submitter Information

**Name:** Michelle Hughes

---

## General Comment

Asylum is the right thing for the US to offer & a win/win scenario for seekers & our country as provider. Seekers need basic time & opportunity & assistance to become viable & to thrive in our nation. Please preserve or extend this valuable & necessary timeline for seekers. Thank you.

AR005060

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2489.html[9/15/2020 4:14:30 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-8vtj
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2490
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

The removal of the 30-day processing provision for asylum applicants would do more harm than good. Asylees will lose wages, be at risk of homelessness, food insecurity, and human trafficking. The Trump administration has said it is working to reduce human trafficking--this move would increase that to an already vulnerable population.

AR005061

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ltt8
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2491
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

If asylum seekers faced delays on the process of getting their EAD; it could leads to:
lost of income and the ability to support themselves and their family, risk of homelessness, food insecurity.
Inability to obtain a State ID and medical insurance.
They become more vulnerable to be trafficked and exploited and the feelings of fear and desperation can affect their mental health.
An employment authorization card and a social security card are required documents to access social services programs and community services agencies, to receive services, It is required to present some type of valid ID, proof of income and proof of residency, in most of the cases.

AR005062

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ksno
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2492
Comment Submitted by Richard Williams

---

## Submitter Information

**Name:** Richard Williams
**Address:**
  410 Paula Way
  Woodland,  CA,  95695
**Email:** timmonswilliams83@gmail.com

---

## General Comment

As a citizen and former small business owner, I want to state that I feel asylum seekers should have the ability to support themselves as they wait an asylum decision. They should be able to work as soon as possible; this is humane and common sense. Thank you.

AR005063

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-inxo
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2493
Comment Submitted by Christine Popp

---

## Submitter Information

**Name:** Christine Popp

---

## General Comment

I am an immigration attorney in Bloomington, Indiana. I practice exclusively immigration law. Around 1/3-1/2 of my practice is asylum.

Many of my clients have come to the US as students, scholars, or professors (or as family members of those individuals). Generally, because of their studies or scholarship, they are at risk of persecution by their governments should they return. In addition, by their activism and support of democratic principles, they are cut off from the very funds they need to survive. They are cut off from their scholarship opportunities. They are cut off from their families. They are in the US with no means of support.

In the notice, USCIS makes frequent reference to a rise in national security threats as a reason to spend more time and resources on each decision. However, USCIS has reported that it has been able to decide over 99% of EADs within the 30-day timeframe for over the past year. Therefore, USCIS has proven its ability to adequately vet the amount of requests in a timely fashion. Moreover, its argument regarding increased threats serves only to prompt the need for a speedier process to properly protect national security, rather than its request to delay the process further. This need for a speedier process is further compounded by the fact that the EAD applicants are asylum-seekers already residing in the United States. If vetting must be done to prevent security risks, then having unvetted people in the U.S. subjected to a potentially indefinite review period seems contrary to the departments stated interests.

Moreover, many of my clients have already been vetted by the Department of State in issuing their visas. These individuals support the United States and our values. They are fighting for their own countries to adopt those same values. Delaying a work permit solves no problem but causes many.

Filing for the Work Authorization benefits my clients greatly. They are able to continue their studies because they are able to work to support themselves and pay their tuition dollars. However, longer delays would be harmful for these individuals. Many of them are on the cusp of having to drop out of school because they are cut

AR005064

off from the very funding they need to continue their scholarship. Their activism has made them at risk. Their democratic principles have made them a target. They need to support themselves.

AR005065

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-54ng
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2494
Comment Submitted by Todd Drezner

---

## Submitter Information

**Name:** Todd Drezner

---

## General Comment

Please keep the rule that requires the government to process work permit applications from asylum seekers within 30 days. The rule helps asylum seekers gain employments and avoid potential issues such as lack of housing, food insecurity, and lack of access to community services, among others. And it benefits society at large by helping asylum seekers to become productive members of a community that they may permanently join. Removing the rule would be punitive, cruel, and counter-productive. I urge you to keep it in place.

AR005066

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-rhqo
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2495
Comment Submitted by Ramon Urbano

---

## Submitter Information

**Name:** Ramon Urbano
**Address:**
  37370 County Rd 24
  Woodland,  CA,  95695
**Email:** rurbano@earthlink.net
**Phone:** 530 6620755

---

## General Comment

Asylum seekers should be able to work as soon as possible
And not later than 30 days.

AR005067

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ddvq
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2496
Comment Submitted by Michael Montesano

---

## Submitter Information

**Name:** Michael Montesano

---

## General Comment

If you don't allow them to work how will they avoid becoming a public charge?

AR005068

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-crz1
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2497
Comment Submitted by Javier Maldonado

---

## Submitter Information

**Name:** Javier Maldonado
**Address:**
   8620 N. New Braunfels
   Ste. 605
   San Antonio,  TX,  78217
**Email:** jmaldonado.law@gmail.com
**Phone:** 210-277-1603
**Fax:** 210-587-4001

---

## General Comment

I urge you not to eliminate the 30-day requirement for USCIS to process applications for employment authorization filed by asylum seekers. Asylum seekers need a work authorization to provide for their families, some who were born in the US. The administrative inconvenience of complying with the 30-day requirement pales in comparison with the human suffering our Government will impose on asylum seekers. I am an immigrant myself and now a US citizen. I still believe that this country should and must do more for those who flee persecution in their home country.

AR005069

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-n4yi
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2498
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous
**Address:** United States,
**Email:** molly.coe@gmail.com

---

## General Comment

People seeking the protection of the United States often wait years and years for a decision on their asylum
applications. There is no reason to force them to live in limbo, unable to find stable employment and acclimate to
a new country. Asylum seekers are permitted under law to remain in the US while their cases are pending. Why
wouldn't we want them to be able to start working as soon as possible? This change is not about agency capacity
because USCIS is well-equipped to adjudicate applications for employment authorization in a month, as they do
regularly for DACA renewals, which are considerably more complex matters. This change is clearly rooted in
this administration's intent to increase barriers for refugees specifically, and part of a broader anti-immigrant
agenda.

AR005070

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-coxr
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2499
Comment Submitted by Ricka Long

---

## Submitter Information

**Name:** Ricka Long

---

## General Comment

To whom it may concern,
Please DO NOT do away with the 30-day processing provision for Asylum seekers!! The people seeking refuge here have already waited 6 months to get to this point. Further delays in getting their EAD will only leave them no way to provide for themselves and thier families. This will put an increased burden on the US to provide for thier needs. Without the work authorization they will have no way to work for income. They will be unable to buy food or food for thier families. They will have no money for healthcare. They will not be able to pay for housing. As if all this is not bad enough they will be forced to find a way to survive making them vulnurale to abuse such as sex trafficking or prostitution. The delay in getting their EAD also deprives the US of income from the taxes to thier salaries.

These are all facts, what about the morality?? Our nation has always stood for and been seen by other countries as a safe haven.

How can we not live up to what we have always stood for as a nation. I would much rather be a nation who embraces others in need with compassion and empathy rather than walls and laws put in place to make it more difficult to even work.

Please, Please do not remove the 30 day Processing Provision for Asylum Applicant Related Form I-765 Employment Authorization Applications.
Thanks, A concerned citizen!

AR005071

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-mlzo
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2500
Comment Submitted by Leslie Diaz

---

## Submitter Information

**Name:** Leslie Diaz

---

## General Comment

Asylum seekers are entitled to a process, and they need to work to support themselves and not become a burden to our society while their cases make it through the system. The 30-day deadline to adjudicate the work permit does not restrain the time to vet asylum seekers as they already have to wait five months before they can apply (which is in itself to discourage fraudulent filers who just want a work permit), but they are already being vetted during that time, so actually the government has six months to vet them. This is more than enough as all they are doing is checking some databases. Let's be human and stop sabotaging this critical process that makes America a beacon of hope for the rest of the world. We were all immigrants once too.

AR005072

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-w39f
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2501
Comment Submitted by Melina Somoza

---

## Submitter Information

**Name:** Melina Somoza

---

## General Comment

I am an immigration attorney at a non-profit organization. I have seen first-hand the harmful impact that not having lawful permission to work can have on a family that is here to work hard and contribute to our country. Immigrants come here to flee from dangerous lethal conditions and come to work hard and build a better life for their families and for our country. They need work authorization and we need the taxes to build our social systems. Immigrants keep our country running.

AR005073

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-leii
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2502
Comment Submitted by Carol Anne Donohoe

---

## Submitter Information

**Name:** Carol Anne Donohoe
**Address:**
   PO Box 12912
   Reading,  PA,  19612

---

## General Comment

I urge USCIS not to remove the 30 day processing provision for I-765 applications for asylum seekers. The restrictions on employment for asylum seekers are already erroneous, making it difficult for them to support themselves and their families. To make them wait indefinitely for application processing goes against all this country once stood for when it welcomed immigrants. To delay work authorization is just another punishment inflicted by the current administration against legitimate asylum seekers. Asylum seekers should be able to work and contribute to the economy. They need attorneys to represent them and cannot secure one if they have no funds. Again, this is just another attempt to deter those from coming to the U.S. to seek asylum and will likely face a court challenge, wasting more taxpayer dollars.

AR005074

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-yeec
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2503
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Do not remove the 30-day processing provision. Letting asylum seekers work legally while they wait for their decision helps everyone!

AR005075

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-fob5
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2504
Comment Submitted by Robert Pauw

---

## Submitter Information

**Name:** Robert Pauw

---

## General Comment

The proposal to eliminate 30 day EAD processing for asylum applicants should be rejected. It simply allows USCIS to be irresponsible and for the agency to delay. Congress intended that asylum applicants should be eligible to get work authorization while they wait for a decision on their applications. Delaying and denying work authorization causes unjustified hardship and also causes unjustified loss of tax revenues.

AR005076

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2504.html[9/15/2020 4:14:32 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-vwxv
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2505
Comment Submitted by Gabriela Lopez

---

## Submitter Information

**Name:** Gabriela Lopez

---

## General Comment

Let asylum seekers work. I am an immigration attorney who works daily with asylum seekers who suffer greatly when there is a lapse in their work authorization. Some lose their jobs others are put on leave until they receive their work permits. This can be devastating for their families who depend on their labor and income to survive. Moreover, the lack of ability to work and correlating lack of income also vastly increases the risk that people coming to the United States will become a public charge. The best way to keep folks employed and contributing to our communities is to allow them to work lawfully. Their employment equals tax dollars to the this country which can be used to pay to run our country.

AR005077

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-c0vd
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2506
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

We need to let asylum seekers work! It only makes sense so they can support themselves instead of depending on others.

AR005078

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-kir2
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2507
Comment Submitted by Karen Hoffmann

---

## Submitter Information

**Name:** Karen Hoffmann
**Address:**
 128 Chestnut St.
 Ste. 301A
 Philadelphia,  19106
**Email:** karen@syrenalaw.com
**Phone:** 4129164509

---

## General Comment

I am an immigration attorney representing many asylum seekers. I have seen firsthand how important having permission to work impacts their lives. People do not want to live in the shadows; they want to follow the proper procedures and regularize their status to the extent they are able. My clients are forced to work under the table until their card arrives because they need to provide for their families and put a roof over their heads. This makes them vulnerable to exploitation, including wage theft and even trafficking. Receiving their work card promptly ensures that they are able to find legitimate employment that respects their dignity.

AR005079

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-jyq2
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2508
Comment Submitted by Scott Emerick

---

## Submitter Information

**Name:** Scott Emerick
**Address:**
  1601 Vine St
  Los Angeles,  CA,  91356
**Email:** Emrck68@yahoo.com
**Phone:** 3238570034

---

## General Comment

Asylum seekers currently have to wait five months before they can apply for employment authorization - during this time the government is already running background checks. Eliminating this rule will allow the government to further abdicate its job and prevent legitimate asylum seekers from contributing to our country while their case is processed.

AR005080

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-2c31
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2509
Comment Submitted by Holly Leon-Lierman, Asylum Seeker Assistance Project

---

## Submitter Information

**Name:** Holly Leon-Lierman

---

## General Comment

My name is Holly Leon- Lierman and I work passionately and emphatically to welcome asylum seekers to the DMV area in my role as Program Manager with the Asylum Seeker Assistance Project. I urge you to NOT move forward with this proposed rule change.

The ability to work brings peace, a sense of belonging and a means to not only survive also thrive to the individuals and families with which we work. The ability to work is a human right.

Asylum seekers would lose wages and benefits as a result of delayed entry into the U.S. labor force, straining their ability to support themselves and their families. USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year. The loss of income to asylum-seekers will cause an outsized amount of harm to this already-vulnerable community. A lack of income means not being able to afford food, housing, medical treatment, health insurance, or legal representation. Furthermore, individuals will be unable to secure a valid ID (needed for many social services) and be increasingly vulnerable to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increase safety risks and vulnerability as well as compound trauma and limit worker's ability to contribute to their new society and community.

AR005081

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-m8eu
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2510
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

USCIS has 30 days to process the EAD application ONLY AFTER the Asylum seeker has waited at least 5 months from filing the Asylum Application. So that is actually 180 days to perform the background checks, or adjudicate the application itself.
The issue is that EADs are taking more than 6 months to be processed in all cases, including family and employment based cases. If applicants are not allowed to work, they would become a risk or an additional burden. Unreasonable delays in adjudication is the culprit for the immigration crisis. USCIS does not usually abide by the timelines established in the law or the regulations. Eliminating the 30-day provision would only make it easier for the agency to further delay cases. Resulting in more backlog and extending the suffering of applicants. Justice delayed is justice denied.

AR005082

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-olv4
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2511
Comment Submitted by Laura Lunn

---

## Submitter Information

**Name:** Laura Lunn

---

## General Comment

Have you ever fled your home afraid that you could never go back? Have you left behind everyone and everything you love because you were afraid if you didn't, you and your family would be murdered? Asylum seekers are in the United States because their former lives are over and they are here to rebuild in a safe community. The right to work to support themselves and their families is important to ensure they are safe and free from predatory employers who wish do inflict further harm on them. Providing a way to allow people to quickly work lawfully in the United States takes few resources, is good for our economy, protects people from the risk of human trafficking, and follows the moral compass set forth by the founders of the United States. For these reasons, the 30-day processing period should not be stripped from the regulations.

AR005083

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ta4p
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2512
Comment Submitted by Neena Dutta

---

## Submitter Information

**Name:** Neena Dutta

---

## General Comment

It would be an incredible loss to the US for asylum seekers to not be able to secure employment authorization. If you want people to work legally, you must give work authorization in a timely manner.

AR005084

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-mhhk
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2513
Comment Submitted by Nick Chantiles, Asylum Seeker Assistance Project

---

## Submitter Information

**Name:** Nick Chantiles

---

## General Comment

I am the Employment Program Manager of the Asylum Seeker Assistance Project (ASAP), located in Washington, DC. As part of my job, I work daily with clients before, after and during their EAD application process to prepare for the U.S. workforce, and I can say unequivocally that removing the 30-day mandate for EAD authorization would be a cruel and demoralizing action against asylum seekers. Our clients are stuck in a horrific asylum proceeding backlog, with indefinite uncertainty and fear on when and if their case will be hear. Having an EAD issued is one of the only (if not the only) validating experiences most clients receive from USCIS during their entire asylum proceeding. People call me crying when they receive their EAD, expressing that they finally can see a future for themselves and a light at the end of what has been a very long, dark tunnel. It provides agency, hope, and the possibility of "the American dream" we are so fond of espousing. To take away the only consistent timeline from asylum seekers is to refuse to acknowledge their legal status and legitimacy.

The number one thing clients waiting on their EAD tell me is that they long to contribute to society. Yes, the financial burden and insecurity of not being work authorized is terrible, but at the end of the day our clients want to add something positive to the United States. Many asylum seekers have been forced to flee their countries for espousing and promoting ideals that we in the United States hold dearly: democracy, liberty, and justice, and to be able to find new meaning through work. Moreover, we as a nation can benefit from these skilled and capable people. 62.84% of ASAP's clients hold degrees from recognized higher education institutions, almost double the percentage of American college graduates according to a 2017 census report, and almost all hold years (if not decades) of professional experience in their country of persecution. Denying individuals the ability to contribute to our nation weakens our ability to grow and flourish as the U.S. has done time and time again with various waves of immigration.

So, what is the assumed benefit of this proposed ruling? Is it to reduce the backlog of pending asylum cases? The backlog is still at a standstill, despite the "first in, first out" policy, and there isn't substantial evidence to indicate this change would make any impact. Or, is it to continue handing off resources to ICE as they continue dismantling asylum at the border, to dismantle all support for asylum seekers, and to send a signal that the United

AR005085

States is no longer the safe haven it was for our grandparents? I can't presume to know what the true intention is behind the proposed regulation, but I can say with absolute certainty that it is not with the wellbeing of asylum seekers.

AR005086

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ik7a
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2514
Comment Submitted by Matt Kriezelman

## Submitter Information

**Name:** Matt Kriezelman

## General Comment

It is important to have limits on the amount of time that USCIS can take to adjudicate a work permit. I would rather have people who are waiting in the US be able to lawfully work and find employment than to stay here and potentially require public services and benefits, putting an undue hardship on the social services of the areas in which they reside. They are already waiting at least 6 months to obtain employment authorization at this point. It is unclear what background checks are necessary prior to adjudicating a work permit that would require a longer processing time. These people are already checked when they first file their Asylum applications 5 months before.

AR005087

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ritr
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2515
Comment Submitted by Andrea Carcamo, Center for Victims of Torture

## Submitter Information

**Name:** Andrea Carcamo
**Submitter's Representative:** Torture Treatment Programs
**Organization:** Center for Victims of Torture

## General Comment

See attached file(s)

## Attachments

Comment on EAD 30-day limit rule 2019 FINAL

AR005088

November 8, 2019

Department of Homeland Security (DHS)
U.S. Citizenship and Immigration Services (USCIS)
Samantha Deshommes, Chief, Regulatory Coordination Division, Office of Policy and Strategy

**Re: Agency DHS, Docket No. USCIS-2018-0001- Public Comment Opposing the Proposed Removal of the 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications. In the Federal Register at 84 F.R. 47148.**

Dear Ms. Deshommes:

The five national torture treatment programs below respectfully submit this comment to oppose the Department of Homeland Security's Notice of Proposed Rulemaking on Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019.

The proposed rule will be extremely detrimental to survivors of torture.  It is yet another step by the administration to punish asylum seekers for seeking refuge in the United States.  In addition, as torture survivors' ability to work is key to their mental health and wellbeing, allowing USCIS to delay the delivery of work authorizations to asylum seekers will obstruct their healing and place them in further danger. Some may have no option but to seek work in the informal economy.

For the reasons detailed in the comments that follow, DHS and USCIS should immediately withdraw their current proposal and dedicate their efforts to advancing policies that safeguard individuals fleeing persecution in their home countries.

Thank you for the opportunity to submit comments on this proposed rule.  Please do not hesitate to contact us with any questions or for further information.

Andrea Carcamo /s/                           Scott Roehm /s/
Andrea Carcamo                                Scott Roehm
Senior Policy Counsel                         Washington Office Director
acarcamo@cvt.org                              sroehm@cvt.org

**DETAILED COMMENTS in opposition to DHS, Docket No. USCIS-2018-0001. Public Comment Opposing the Proposed Removal of the 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications.**

The five (5) undersigned Torture Treatment Programs welcome the opportunity to comment on the proposed removal of the 30-day processing provision for Asylum applicant-related Form I-765 Employment Authorization  Applications, DHS Docket No. USCIS-2018-0001 ("the proposed rule," or "the rule").

The signatory organizations seek to advance the knowledge, technical capacities and resources devoted to the care of torture survivors living in the United States and act collectively to prevent torture worldwide.

As experts in the provision of mental health to survivors of torture and other trauma, we are intimately familiar with the profound effects that this proposed rule will have on our clients. It is also of great concern to us that this rule is yet another step by the Trump administration to disintegrate our asylum process.

## I.    <u>Background</u>

On September 9, 2019, the Department of Homeland Security (DHS) published a notice of Proposed Rulemaking to remove the requirement that an application for Employment Authorization Document (EAD) be processed within 30 days of receipt of the application by the U.S. Citizenship and Immigration Services.  The rule will also remove the provision allowing the asylum seeker to submit a renewal of the EAD 90 days before the current authorizations expires.

Currently, asylum seekers whose asylum cases have been pending without a decision for at least 150 days are eligible to apply for an EAD (if the applicant has caused delays in their asylum case, they must wait longer). Pursuant to a regulation in place since 1994, USCIS is required to adjudicate the EAD application within 30 days of receiving it. One of the "chief purposes" of the 30-day deadline was "to ensure that bona fide asylees [and asylum-seekers] are eligible to obtain employment authorization as quickly as possible."  (See p. 47153, fn. 11 of the Notice).

DHS explains that it seeks to eliminate the 30-day processing deadline because the regulatory deadline does "not provide sufficient flexibility" to the agency to address (1) the "increased volume of affirmative asylum applications and accompanying Applications for Employment Authorization"; (2) "changes in intake and EAD document production" over the last two decades; and (3) "the need to appropriately vet applicants for fraud and national security concerns." (See p. 47155 of the Notice).

The rules will result in lasting negative consequences for survivors of torture.

AR005090

## II. This rule is another step by the administration to punish asylum seekers who come to the United States, and to deter others from trying

Through the establishment of policies, agreements, and dubious unilateral changes to well-settled asylum law, it is clear that the Trump administration seeks to prevent individuals south of our border from accessing the U.S. asylum process at all, much less actually obtaining asylum. These actions for the backdrop to the proposed rule—which is just another step towards the administration's goals— include the following:

**Changing asylum immigration law**: The attorney general certified himself several immigration court cases and decided them in a way that upends longstanding law. In overruling Matter of A-B- and Matter of L-E-A-, the attorney general made it significantly more difficult for individuals from Central America to win their asylum cases, since they largely rely on these two cases.

**Zero Tolerance leading to Family Separation:** The administration adopted a policy of pursuing criminal charges against every individual who crossed the border outside of a port of entry, then took children from the parents who were subjected to criminal proceedings. Family separation was a cruel practice that traumatized both children and parents. It will have long lasting consequences for asylum seekers and for the United States.[1]

**Asylum Ban 1.0:** In November 2018, the president issued a proclamation banning individuals who enter the United States between ports of entry from asylum.[2]

**Migrant Protection Protocols:** Established in January 2019, this policy forces asylum seekers to wait in dangerous Mexican border cities during the pendency of their cases. Besides placing asylum seekers in danger, it undermines their ability to obtain assistance of counsel, greatly diminishing their ability to win their case.[3]

**Asylum Ban 2.0:** In July 2019, the administration disqualified from asylum any individual who transited through a third country before arriving at the United States southern border. This disqualifies all but Mexican asylum seekers arriving at our southern border from asylum.[4]

**Agreements with other countries:** The Trump administration continues to attempt to enter into "safe third country" agreements with countries that simply are not safe—from which people are

---

[1] https://www.cvt.org/AsylumFact4
[2] https://www.federalregister.gov/documents/2018/11/09/2018-24594/aliens-subject-to-a-bar-on-entry-under-certain-presidential-proclamations-procedures-for-protection
[3] https://www.humanrightsfirst.org/sites/default/files/Delivered-to-Danger-August-2019%20.pdf
[4] https://www.federalregister.gov/documents/2019/07/16/2019-15246/asylum-eligibility-and-procedural-modifications

AR005091

fleeing violence and persecution that these countries' governments cannot, or will not, effectively address—including El Salvador, Guatemala, and Honduras. These agreements would essentially trap asylum seekers in the countries where they are being persecuted or are otherwise at significant risk of harm.

### III. The proposed rule will lead to significant delays, or even a full stop, in the provision of work permits to asylum seekers

DHS has proposed no alternative to the current 30-day rule for adjudication EADs. Although it considered replacing the current rule with a 90-day limit (see p. 47166-47167 of the Notice), instead DHS is proposing to remove a timeframe entirely, suggesting that the agency anticipates these applications will at least be significantly delayed. Of greater concern, the absence of any adjudication deadline permits—and given the context of the proposed rule as described in section II above, implicitly incentivizes—USCIS not to provide EADs to asylum seekers at all.

### IV. A delay or full stop in the grant of EADs to asylum seekers will have lasting and detrimental consequences to the health of survivors of torture and severe trauma

A delay in, or the elimination of, granting employment authorization to asylum seekers (including survivors of torture and others who have suffered severe trauma) will harm them, in particular their mental health. Clinicians who provide rehabilitation services to this population explain why below:

**Andrea Northwood, Director of Client Services at CVT** states:

> For torture survivors who have fled for their lives into exile, the period of time between arriving in a country of refuge and obtaining asylum is one of extreme psychological vulnerability and fragility. This is when survivors are most at risk, most distraught by recent trauma and losses, and least supported: they lack adequate food, clothing, shelter, health care, social support, employment authorization, legal support and legal assistance. They usually have medical and psychological wounds from their torture that have not received any treatment. This often puts their lives literally at risk: they can present at our doors with life-threatening physical conditions and life-threatening psychological symptoms, including suicidality and torture-related flashbacks that result in dangerous activities such as walking into traffic or leaving shelter at night in a semi-conscious state.

> A delay in the grant of a work authorization will deliberately increase this period of extreme risk, which is both immoral and inhumane. This will have a direct and immediate harmful effect on the lives of our asylum-seeking clients, who are in this country legally while their claims are submitted and pending with the federal government. We believe such an inhumane measure is also a fundamental violation of

human rights, which include the right to seek asylum and the right to be free from torture. It punishes those who have come forward with honesty and presented their cases lawfully, making no distinction between cases with merit (in our case, this can include forensic evidence such as medical documentation of scars from torture) and the so-called frivolous claims the policy purports to address.

In addition to the basic necessity of income in order to survive and support a family in danger back home, sitting around all day with nothing to do is described as a major stressor (at best) and even a cause of insanity ("going crazy") by our asylum-seeking trauma survivors, as they use "keeping busy" and meaningful activity to distract themselves from involuntary, disturbing traumatic memories as well as profound sadness and loss. One of the first priorities of rehabilitation at CVT is to rebuild meaningful activity into the lives of asylum seekers by helping them with employment-readiness activities until their work permit arrives and, as soon as it does, employment itself. This is because this change alone produces a reduction in emotional distress and calms people down.

**Ariel Zarate, MA, MSW, Survivors of Torture Clinical Case Manager at the IRC in Denver** states:

Many of the torture survivors that the Survivor Wellness Center at IRC Denver supports are asylum seekers who want nothing more than to recreate safe, meaningful lives. They want to contribute to their community and to care for their families. They want to rebuild themselves, separate from the abuses they and their families have endured. Key to this is the ability to work. Work is more than a means to financial stability but an element of human dignity and a Universal Human Right.[5]

For torture survivors, work is a path to reassert their humanity, to take back agency that was lost as they were tortured. When meeting with clients, the primary, consistent stressor is work. Second only to housing and food, work is what keeps clients up at night, and what triggers anxiety, depression and traumatic withdrawal.

*"I am just sitting here like nothing; I don't want to just sit; I want to do."*

This sentiment is universal; as is the aversion to "hand – outs."

*"If I were not desperate, if I had another choice, I would never beg."*

Beyond this, work is a way for survivors to buffer themselves against the intrusive, disruptive and dysregulating memories of their torture. Images of the ways that their bodies, minds and lives were damaged can be persistent and very distressing. Work gives

---

[5] UN General Assembly, *Universal Declaration of Human Rights*, 10 December 1948, Article 24.

survivors a goal and a focal point outside of these experiences. Work gives survivors hope.

**Gwen V. Mitchell, PsyD Assistant Professor/Director of Field Placements MA International Disaster Psychology (MAIDP) Graduate School of Professional Psychology University of Denver** also explains:

> I am concerned about the proposed changes to the statute on issuing work permits for asylum seekers. From a psychosocial and mental health perspective, work permits and the solidification of meaningful employment is an essential component to a recently arrived asylum seeker's recovery and adjustment to the United States. The World Health Organization (WHO) defines "[t]he conditions in which people are born, grow, live, work and age" as social determinants of health. Work permits and the subsequent aftereffects of obtaining and sustaining gainful employment are an essential part of healing and recovery for the asylum seekers we work with.

The proposed rule would cause significant financial hardship to asylum applicants who are unable to work and to those who depend on them financially, which in turn would destabilize their basic needs, like health and housing. The proposed rule would also burden and stretch the capacity of charities and non-profit service providers: if asylum-seekers are unable to obtain an EAD in a timely manner, they are forced to rely on other forms of support, including organizations that provide financial, housing, legal, or other forms of assistance.

**Jordan N. Enger, MA, LPC Psychosocial Support and Survivors of Torture Clinical Care Coordinator from the International Rescue Committee (IRC) in Denver** states:

> My clients are survivors of torture as defined on the 18 U.S. Code §2340 which we use to determine eligibility and admission into our program at the International Rescue Committee in Denver, CO. Since starting the program in October 2018, there are approximately 42 survivors to whom we are providing biopsychosocial and legal support, most with pending asylum applications. Asylum seekers do not meet the criteria to receive temporary assistance through the government with medical issues, food, childcare or money for housing. The time our clients spend without a work permit causes significant stress for them. They are unable to find safe and sanitary housing, unable to cover their medical bills, unable to pay for groceries to support themselves and family members—and these compounding effects fill the days they cannot work with anxiety. Having a work authorization not only bridges asylum seekers with basic needs, but it also engages their minds, allowing them to feel as if they can regain control over their lives. A work authorization offers a sense of hope to asylum seekers, something that they may not have experienced since they were tortured and had to flee their home country. Clinically we have seen many clients become more isolated while awaiting work authorization, which is counter-productive when working toward wellness and holistic well-being. Having the

AR005094

ability to be productive and financially independent initiates hopefulness, which matches with determination to build a safe opportunity to live for themselves and their family, and can lead to a stronger mental outlook and dedication to their community. I strongly encourage these benefits to be prioritized as they affect asylum seekers significantly as well as our community.

**Amanda McDonald, Social Worker & Targeted Case Management Supervisor from the Center for Victims of Torture (CVT)** states that:

Many clients are unable to provide for their own basic needs so many live couch to couch, on the floor of basements or in common rooms. Many only eat when they are offered meals resulting in minimal access to food. A lack of income means a lack of access to transportation so some are unable to take the bus to vocational services that will prepare them for work. CVT can bridge the gap by providing referrals to food shelves, and bus cards but unmet needs remain and many suffer in silence. Once clients receive a work permit some report feeling like they are safer here because they have a card that reflects their legal presence, which aids in sleep and stress reduction. Clients are motivated to work quickly and do. It has been astounding to me how eager clients are to work in mostly difficult, grueling roles as many first receive employment in manual labor at factories, restaurants, etc. Once clients are working they are able to discontinue use of CVT donated bus cards and food which contributes to their sense of independence and self-efficacy. Most notably to their mental health, it allows them to send money back home which often pays basic needs like food, rent and medical care for their children or relatives.

**Caitlin Tromiczak LICSW-C, LCSWC, Health and Psychological Wellness Program Manager, Creator & Facilitator of Torture Abolition and Survivors Support Coalition (TASSC) Training Program TASSC International in Washington DC** also states that:

At TASSC, we provide holistic services to support survivors of torture; many of whom are seeking asylum and struggling to create stability during the extensive process of waiting for interviews and court dates. While we offer support in the form of therapeutic services, cultural orientation, legal support, and career development, what we cannot do is provide financially for them. More importantly, we cannot restore in our clients the sense of dignity and self-worth that comes from being able to work for oneself. Although a great deal of our survivors bring impressive resumes with high levels of education and professional accomplishments, without a work permit they are unable to support themselves or contribute to society as they so desperately desire. Many basic necessities such as housing and food are provided by generous members of the community including religious and diaspora groups, however generosity has its limits and without the ability to work, our survivors are at extreme risk of homelessness, illness, and hopelessness. Some of our survivors have been waiting several years for their asylum

AR005095

interview or court date and if they were unable to obtain a work permit the cost to their mental, emotional, and physical wellbeing would be severe. There is no psychological support we can offer to offset these detrimental effects of abject poverty. Access to a work permit is essential for survival.

A delay in obtaining, or the inability to obtain at all, a work permit could lead asylum seekers to look for work in the informal sector of the economy, a decision that places already vulnerable individuals at risk of re-victimization and exploitation. Laura Rambikur, LCSW from IRC Arizona explains it best:

**Laura Rambikur, LCSW & MDiv, Clinical Therapist, International Rescue Committee Arizona**:

> For our clients a job is more than just a way to earn money, it represents the restoration of human dignity and healing. It symbolizes the essence of American values: to be able to work, contribute to society, and participate as a member of the community. The proposed changes that were announced earlier in September that eliminate the requirement that USCIS process work permit applications for asylum seekers within 30 days of filing will have a detrimental impact on our asylum seeking communities. At best, this policy will paralyze asylum seekers. At worst, it has the potential to create a market for labor exploitation that will force asylum seekers to engage in harmful, unlawful, and risky forms of employment, which could endanger their legal claims. This policy hurts immigrants who are within the boundaries of the legal structures that exist in our current immigration system. Exploitation and abuse will be a direct result of this policy. Healing happens in stable environments when one is able to provide for oneself and when people are recognized not by their past trauma and suffering, but by their resiliency and ability to contribute, find meaning, and create a new identity.

## Conclusion

The administration must abstain from implementing the proposed rule, which will continue to harm the asylum system, asylum seekers generally, and survivors of torture specifically.


Sincerely,

Center for Survivors of Torture
Center for Victims of Torture
IRC, AZ
IRC Denver
TASSC

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-csh3
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2516
Comment Submitted by Elizabeth Banks, Unitarian Uiversalist Church of Davis

## Submitter Information

**Name:** Elizabeth Banks
**Address:**
  1437 El Capitan Street
  Davis,  CA,  95616
**Email:** Revbethbanks@gmail.com
**Phone:** (530) 220-5622
**Submitter's Representative:** Garamendi
**Organization:** Unitarian Uiversalist Church of Davis
**Government Agency Type:** Local

## General Comment

I request that asylum seekers be allowed to work as soon as possible. This will benefit our country's economy as well as their well-being.

AR005097

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-2ci2
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2517
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am an immigration attorney practicing in Oakland, California, and I represent asylum seekers and their families before USCIS, the Executive Office for Immigration Review, and the U.S. Courts of Appeals. The time that it takes my clients' cases to be adjudicated ranges from 45 days to over 10 years. For my client's cases that are pending for more than 180 days, this delay has been caused by changes in adjudicative priorities by USCIS. Many of my clients' cases are significantly delayed due to these changes, which put their applications at the back of the line when it had been, at some earlier time, at or near the front of the line. For other cases pending at the Executive Office for Immigration Review, the delay is caused by the extreme backlog of cases such that the time between hearings is often over 2 years. In other words, this delay has not been caused by my clients.

I have seen firsthand how the prompt receipt of an Employment Authorization Document allows an asylum seeker to gain stability in the United States and, therefore, better present their case. Many of the adult asylum seekers that I represent are supporting themselves here in the United States, their children here in the United States, and their family abroad, who continue to live in fear and hiding. My clients are living here in the United States, they are in the process of regularizing their immigration status, and they are at the mercy of the government for how long they have to wait to have their claim decided. They should be allowed to have a valid work authorization as promptly as possible.

Having a work authorization allows my clients to productively contribute to the Oakland and California economy while waiting for their meritorious claims to be granted. In addition, all of my clients are highly traumatized due to what they have suffered in their home country, and the ability to work allows them maintain community ties, which is beneficial to their mental health.

Without a valid work authorization, my clients are at risk of being exploited in the labor market and not being paid for their work. An undocumented labor force only helps unscrupulous employers. In addition, when a client has a work authorization and a valid Social Security number, they will pay taxes which further supports the local, State, and Federal government.

AR005098

Instability due to not being able to maintain lawful unemployment also effects my clients' to maintain stable housing. If a client is unable to maintain their housing, they will be unable to focus and present their cases. If there are children involved, maintaining housing means better health outcomes and education outcomes for my clients' children.

I have seen firsthand how much my clients are suffering due to what happened to them or to their family in their home country. All of my clients wish to contribute to this country as soon as possible, they do not want to take benefits for which they are not eligible or be seen as a burden on our country. Promptly providing them with a work authorization will allow them to do that.

If the government believes that it cannot adequately adjudicate initial work authorization applications within 30 days, a better solution would be to allow the applicants to submit their application. The law requires asylum-seekers to wait 180 days before they can be granted authorization to work, and the application may be submitted after 150 days. If the government needs more time, a better solution would be allow asylum-seekers to submit their application sooner. Indeed, if asylum-seekers were allowed to submit their work authorization application with the initial filing, USCIS would have up to 180 days to process and properly vet each individual while reducing the risk of harm to each applicant.

AR005099

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-6psj
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2518
Comment Submitted by Laura Buxbaum, Coastal Enterprises, Inc.

## Submitter Information

**Name:** Laura Buxbaum
**Address:**
  CEI, 30 Federal Street
  Suite 100
  Brunswick,  04011
**Email:** laura.buxbaum@ceimaine.org
**Phone:** 2075045873

## General Comment

See attached file(s) from Coastal Enterprises, Inc.

## Attachments

CEI Asylee proposed rule comment

AR005100



Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy, U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Washington, DC 20529-2140

November 8, 2019

Re: DHS Docket No. USCIS-2018-0001: **Removal of 30- Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications**

Dear Ms. Deshommes:

Coastal Enterprises, Inc. (CEI), appreciates the opportunity to comment on the proposed rule to remove the 30-day processing provision for asylum seekers. CEI believes that this proposed rule would have significant negative impact not only on asylum seekers, but also on employers, small businesses, communities, and the economy as a whole. We urge that this proposed rule be withdrawn or significantly rewritten.

CEI is a 41-year-old Community Development Financial Institution (CDFI) that helps to grow good jobs, environmentally sustainable enterprises, and shared prosperity in Maine and in rural regions throughout the country by integrating financing, business and industry expertise, and policy solutions. CEI envisions a world in which communities all are economically and environmentally healthy, enabling all people, especially those with low incomes, to reach their full potential. Since 1977, the CEI family of organizations has provided $1.39 billion in financing to over 2800 enterprises, creating or retaining nearly 40,000 jobs and leveraging another $2.8 billion; created/preserved over 2600 affordable homes; provided training and counseling to over 58,000 individuals and businesses; created/preserved more than 6200 child care slots; and provided leadership on state and federal policy initiatives, including consumer protection and community investment issues at the state and federal level. CEI was a founding member of the New Markets Tax Credit Coalition and helped to shape that program, and has been a leader in New Markets, community development venture capital, and other creative and high-mission capital deployment in Maine and beyond. CEI works with about 150 immigrants in Maine annually through its StartSmart program for immigrant entrepreneurs, and also provides business advising and workforce development support to businesses, including many that employ immigrants. Over 20 years, StartSmart has worked with 1,457 clients from 90 countries, helping them to start or grow 432 businesses and obtain 208 loans.

Immigrants are very important to the Maine economy, especially during this time of record low unemployment. A recent New American Economy report found that immigrants in the Portland, ME metro area contributed $1.2 billion to the area's GDP in 2016 and paid $133 million in federal taxes and $62 million in state and local taxes.[1] The same report shows that immigrants make up 9.1% of the labor force in Portland and surrounding cities. At the same time, Maine's population is aging and its workforce shrinking. Between 2011 and 2016, the population in the Portland area grew by only 1.5%, while the foreign-born population increased by 12.2%. Employers across the state are desperate to attract and retain qualified workers, and immigrants – who come here to make new lives for themselves and their families – are a critical piece of that puzzle. We think it makes no sense to create additional barriers to legal work for people who are eager to join the workforce and support themselves and their families. This proposed rule would further delay an already lengthy process, and would result in asylum seekers forced to remain dependent on charity or public benefits when they could otherwise be employed.

---

[1] https://research.newamericaneconomy.org/report/new-americans-in-portland-maine/



AR005101

As noted, the process for an asylum seeker to obtain a work permit is already a long one. By federal statute, no asylum seeker may be issued a work permit sooner than 180 days after filing an asylum application. This means that asylum seekers cannot legally be employed for nearly six months.

The proposed rule change would further lengthen this process by eliminating the requirement that USCIS decide asylum seekers' work permit application within 30 days of receipt. The proposed rule would unnecessarily delay the moment when individuals who are ready, willing to work will be able to do so, robbing them of dignity, and robbing our economy of their contributions.

Work permits are not only essential for asylum seekers to be able to work and support themselves; they are often asylum seekers' only photo identification and are also required to get a Social Security card, which in turn is often essential to get into job training programs, to enroll in college, to get a driver's license, to open a bank account, and to take many other steps towards integration into a community.

The proposed rule change will harm asylum seekers and the economy alike. The preamble to the proposed rule itself recognizes that by delaying asylum seekers' ability to work, the change will:

- Put additional demands on asylum seekers' support systems, including charities or community members;
- Cause asylum seekers lost earnings each year ranging from nearly $256 million to $775 million;
- Result in corresponding millions in lost federal payroll taxes annually;
- Cause economic damage to companies who cannot tap into this labor pool for a longer period than under the current regulation, costing them lost productivity and profits.

The proposed rule is contrary to the Administration's stated efforts (for example, with its recent revised "public charge" rule) to ensure that immigrants will be self-sufficient without the need for public benefits, by forcing asylum seekers to depend on public benefits for survival for a longer period than the already lengthy statutorily required 180 days.

USCIS states that this change is needed due to an increased volume of asylum-based work permit applications and the need for additional time in certain cases, but the rule discards the idea of hiring additional staff as a potential solution. We urge USCIS to weight the cost of additional staff against the lost wages, increased cost to public benefits, and lost economic growth in considering this change. And if USCIS officials indeed need more time to process initial asylum-based work permit applications, instead of the change that the administration is proposing, the regulation could be revised to allow asylum seekers to file their work permit applications simultaneously with their asylum applications, affording USCIS a full 180 days to decide the work permit applications. According to data in the rule, that would be enough time to decide over 96% of the initial work permit applications that USCIS receives from asylum seekers.

CEI strongly believes that this proposed rule change is bad for asylum seekers, for the communities they live in, for employers who desperately need workers, and for Maine's and the nation's economy. We urge you to withdraw this proposed rule change.

Sincerely,

Laura Buxbaum
SVP, Public Policy and Resource Development

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-553j
**Comments Due:** November 08, 2019
**Submission Type:** Web

# PUBLIC SUBMISSION

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2519
Comment Submitted by Maggie Morgan, Greater Boston Legal Services

---

## Submitter Information

**Name:** Maggie Morgan
**Address:**
  197 Friend Street
  Boston, MA, 02114
**Email:** mmorgan@gbls.org
**Phone:** 6176031715
**Organization:** Greater Boston Legal Services

---

## General Comment

See attached file(s)

---

## Attachments

Proposed Rule

AR005103



November 9, 2019

*Submitted via www.regulations.gov*

**Samantha Deshommes**
**Chief, Regulatory Coordination Division**
**Office of Policy and Strategy**
**U.S. Citizenship and Immigration Services, Department of Homeland Security**
**20 Massachusetts Avenue NW**
**Mailstop #2140**
**Washington, D.C. 20529-2140**

**RE: Opposition to Proposed Federal Rule "Removal of 30-Day Processing Provision for Form I-765 (c) (8) Employment Authorization Applications," CIS No. 2617-18 DHS Docket No. USCIS-2018-0001**

Dear Ms. Deshommes:

The Immigration Unit of Greater Boston Legal Services (hereinafter "IU" or the "Immigration Unit") submits this comment in opposition to the Department of Homeland Security's (hereinafter "DHS") Notice of Proposed Rulemaking on Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019.  We strongly oppose the proposed rule because of the devastating financial and social consequences that our clients will face as a result of delayed or stalled processing of their work authorizations if this rule goes into effect.

I.      The Immigration Unit of GBLS

Greater Boston Legal Services, a nonprofit legal aid organization, is the primary provider of legal aid in Massachusetts in matters including immigration, family law, housing, employment and disability services. Each year GBLS provides assistance to more than 10,000 working-class families and individuals in the Greater Boston area. GBLS traces its roots to the Boston Legal Aid Society (BLAS), founded in 1900. BLAS primarily served immigrants and their families, addressing a variety of legal matters. Throughout its history, GBLS has continued its commitment to serving newly arrived immigrants as their families build their lives in the Boston area. More than two decades ago, GBLS withdrew from federal Legal Services Corporation (LSC) funding so as not to be constrained in our ability to serve eligible immigrant clients.

The GBLS Immigration Unit serves approximately 1,000 individual immigrants each year, primarily serving asylum seekers. The asylum seekers GBLS represents have fled from horrific domestic violence, political violence, and other types of persecution and include unaccompanied children, adults and families, and individuals pursuing their claims while detained. IU provides individual representation to these asylum seekers before the U.S. Citizenship and Immigration Services, the Immigration Courts, the Board of Immigration Appeals, and the Federal Courts of Appeal. IU also assists all eligible asylum clients to apply for work authorization. We help a large number of clients a year with asylum-related Employment Authorization Document (EAD) applications.

In addition to asylum, we also provide individual assistance on a wide range of immigration matters, including renewal of temporary protected status and deferred action for childhood arrivals, family-based immigrant petitions, VAWA and U-Visa petitions and applications for cancellation of removal. IU also engages in appellate and impact advocacy on critical immigration issues affecting our clients and works with numerous community organizations to provide policy education and community legal education.

II.    The Proposed Rule

Currently, asylum seekers whose asylum cases have been pending without a decision for at least 150 days are eligible to apply for an EAD (if the applicant has caused delays in their asylum case, they must wait longer). Pursuant to a regulation in place since 1994, USCIS is required to adjudicate the EAD application within 30 days of receiving it. Nonetheless, USCIS routinely failed to meet the deadline until July 2018, when a federal court hearing the case *Rosario v. USCIS*, No. C15-0813JLR (W.D. Wash), ordered the government to comply with the deadline.  Since that time, USCIS has adjudicated 99% of initial EAD applications within 30 days.  Prior to the court's ruling, USCIS adjudicated 47% of initial EAD applications within 30 days, an additional 31% of applications within 60 days, and 22% of applications in more than 60 days.  One of the "chief purposes" of the 30-day deadline was "to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible." (See p. 47153, fn. 11 of the Notice).

The proposed rule would make two changes. First, the proposed rule would remove the existing regulatory requirement that U.S. Citizenship and Immigration Services (USCIS) grant or deny an initial employment authorization application within 30 days of when the asylum seeker files the Form I-765, Application for Employment Authorization (EAD application). Second, the proposed rule would remove a provision requiring that an application for renewal be received by USCIS 90 days prior to expiration of the employment authorization.

III.    Discussion

The proposed rule would have severe and immediate consequences for the asylum seekers whom IU represents. The proposed rule change will permit DHS unlimited time to determine if and when asylum seekers will be issued work authorization, during which time asylum seekers would have  no means of supporting themselves and be forced to wait indefinitely and survive on the charity of others.

Our clients seeking asylum often have to wait in the U.S. for years for their claims to be adjudicated. For example, we have many affirmative asylum applicants, with cases before USCIS who have been waiting more than four years before receiving asylum and numerous clients in defensive proceedings before EOIR who have been waiting between one and five years for their cases to be decided. The EADs that many of these clients received during the pendency of their proceedings have served as a lifeline to allow them to support themselves and their families while they wait for their claims of protection to be decided. The ability to work can be the difference between self-sufficiency and devastation.

For example, client Irma (names have been changed to protect privacy) had fled horrific domestic and sexual violence in Honduras with her young daughter. When they first arrived, they were essentially homeless and lived in a variety of shelters. After filing for asylum and later receiving an EAD, Irma was able to obtain full-time employment, which allowed her to move out of the shelter, rent an apartment for her and her daughter and enroll in a training program to improve her job prospects even further. Another client, Juan, arrived from Guatemala with nothing but a suitcase after fleeing racially motivated harm in the wake of the Guatemalan Civil War. Though penniless upon arrival, his receipt of an EAD led him to a full-time job in the roofing industry which then led him to start his own business, which now employs other workers within Massachusetts. Juan has been waiting seven years for his claim to be heard in Immigration Court but in the meantime, he has been able to provide for his family, which now includes two, thriving U.S. citizen children.

The asylum seekers whom our office represents, like Irma and Juan, come to the U.S. having fled life-threatening harm and often have few financial or family resources within the United States. Receiving timely work provides our clients with the tools to find safety and to improve their lives. The benefits of an EAD pervade all aspects of life. Clients with EADs can apply for driver's licenses. They can open bank accounts. By obtaining a job, they can secure better healthcare. They can hire attorneys to help them with various issues. They pay taxes to the government. The Rule will only compound the devastating delays that our clients face and hinder their ability to rebuild their lives and contribute their potential to society. DHS, which suffers backlogs in almost every benefit category, will have no incentive to issue a prompt decision. Many of our EAD applicants in other categories wait for months, or in some cases, years to receive their work authorization. These delays greatly reduce their ability to support themselves, have adverse effects on their children and family members, and prevent them from making full contributions to the U.S. economy as they otherwise would.

Removal of the 30-day processing requirement will also adversely affect our organization as a whole. Our organization has attorneys across many issue areas including housing and health law. If a significant number of EADs take longer to adjudicate, more asylum-seekers will need additional support, including housing and financial assistance. Our IU attorneys will find ourselves having to devote more time to providing referrals for other forms of support, including organizations that provide financial, housing, legal, or other forms of assistance. Attorneys working in other units of GBLS will be forced to divert limited resources to meet the increased and varied needs of our immigration clients, thus adversely affecting their current practice and capacity to serve existing clients.

Our clients pride themselves on their self-sufficiency and ability to overcome tough circumstances through grit and resilience. Given a chance, most immigrants, certainly most of our clients, will strive to become full, contributing members of society who support themselves and their families through their own efforts. To create a situation which forces clients to rely on outside sources of support, even as asylum seekers are largely barred from receiving public benefits, is needlessly harmful to clients' ability to secure productive lives for themselves and their children in the U.S and also creates greater pressure on public and private resources. Further, depriving asylum seekers of timely work authorization also deprives the U.S. economy of the financial and fiscal benefits that these hard-working asylum seekers contribute and has a detrimental impact on the workforce.

DHS justifies the proposed rule by pointing to an increased need for flexibility due to 1) an increasing volume of affirmative asylum applications; 2) "changes in intake and EAD document production" over the last two decades; and (3) "the need to appropriately vet applicants for fraud and national security concerns." (See p. 47155 of the Notice). However, these justifications fail to survive scrutiny. Changes in intake and document production began in 1997 and were fully implemented by 2006. The fraud and national security concerns mentioned by DHS have been implemented since September 11, 2001. Even with these purportedly burdensome concerns, DHS has been able to comply with the *Rosario* court's order requiring it process initial EAD applications in 30 days, having admitted to processing 99% of EADs within the 30-day timeline. If the agency requires additional documentation from the applicant, USCIS has the option of sending a request for evidence (RFE) and pausing the 30-day timeframe clock until the requested additional documentation is received. Further, in the event that DHS has security concerns over an individual, the incentive should be to quickly vet the applicant rather than delay.

Such reasons as offered by DHS do not justify the removal of a timeline for processing of the EADs for asylum applications. Fundamentally, DHS has proposed no alternative timeline for processing the EADs. Although it considered tripling the timeframe to 90 days from 30 days, DHS now proposes to instead remove the timeframe entirely, indicating that the agency anticipates these applications being significantly delayed. These delays will have devastating consequences for our clients who are applying for an initial EAD based on a pending asylum application. These are some of the most vulnerable clients that we serve—they have fled severe harm in their own countries and now seek to sustain themselves while they seek legal protection in the United States. This proposed rule will make it much harder for them to do so and is adverse to their interests.

For the foregoing reasons, the Undersigned respectfully request that the Department of Homeland Security abandon the proposed rule immediately.

Sincerely,


Maggie Morgan

Greater Boston Legal Services
Immigration Unit

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-mvka
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2520
Comment Submitted by Beth Strano

---

## Submitter Information

**Name:** Beth Strano

---

## General Comment

There is no good argument for removing humane timeframes for completing bureaucratic tasks which dramatically impact the survivability of families.

Asylum seekers are already confronted with a tedious and prolonged asylum process, and are often asked to wait 1-2 years before their hearings are completed. If we expect people to stay in the process, we must give them a legal path to working and supporting themselves during that time period, and we must ensure that all legal processes are held to reasonable time frames.

AR005108

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-l4vw
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2521
Comment Submitted by Beverly Oserow Rhodes

---

## Submitter Information

**Name:** Beverly Oserow Rhodes

---

## General Comment

I am an attorney in private practice in Lakewood, Colorado, concentrating my practice in the areas of US Immigration and Nationality law. I strongly oppose the proposed removal of the 30-day processing provision for asylum applicant Form I-765 employment authorization applications because these applicants already face extreme hardship by having to wait 150 days to even file the applications. Without authorization to work in the US while waiting for a decision in a pending asylum application, the applicant cannot legally support himself or herself and any family members dependent upon the applicant for support. There can be no other reason for allowing USCIS to delay processing asylum applicant work authorization applications except to penalize these applicants and to discourage them from pursuing asylum applications in the US. In the over 35 years I have been practicing in these areas of the law I have never seen our country implementing such punitive and plain mean policies. I have always believed that the US stands for freedom and for helping refugees around the world find safety and a place to thrive. The current policies in Washington are promoting the exact opposite types of treatment for those who need our help the most. Do not implement the proposed rule eliminating the 30 day processing requirement for employment authorization for asylum applicants.

AR005109

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-2d9a
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2522
Comment Submitted by Gordon Rohrbacker

---

## Submitter Information

**Name:** GORDON Rohrbacker

---

## General Comment

Do something please

AR005110

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-ssi4
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2523
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

The proposed rule only seeks to harm the very lives that seek solace from harm. This rule strives to restrict asylum seekers from being able to work and provide for themselves and any family member under their care. The delay in obtaining their work authorization will cause unnecessary hardship, including but not limited to: loss of food, risk of homelessness, lack of necessary programs that require a form of identification that is accessed through the work document, and instability in the lives of many who depend on this.
It is imperative to retain the same framework as it provides work authorizations to individuals who seek a better life.

AR005111

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2523.html[9/15/2020 4:14:34 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-sx3w
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2524
Comment Submitted by Nathaniel Damren

---

## Submitter Information

**Name:** Nathaniel Damren
**Address:**
  177 Livingston Street
  7th Floor
  Brooklyn,  11201
**Email:** ndamren@bds.org
**Phone:** 6467873277

---

## General Comment

People seeking asylum are legal immigrants, they need to be able to support themselves, and gainful employment is they way they do it. Depriving legal immigrants of work authorization will simply result in them working without authorization, which will in turn drive a great number of people into an underground economy that puts them at risk of exploitation and labor- and human-trafficking. President Trump is well aware of this reality, as he once hired a group of undocumented Polish laborers to perform construction work on the New York property that ultimately became Trump Tower, and likewise employed dozens of undocumented workers at his various golf clubs.

But if the material reality confronting the wretched of the earth does not disturb anyone at U.S. Citizenship and Immigration Services, perhaps the fact that the agency itself acknowledges that this proposed rule will result in a significant loss of tax revenue will give some pause. According to agency estimates, the proposed rule is projected to result in a loss of tax revenue ranging from $39.15 million to $118.54 million per year on account of the fact that delayed work authorization will prevent asylum-seekers and their employers from contributing to Medicare and Social Security.

AR005112

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-qzi4
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2525
Comment Submitted by Roxana Muro

---

## Submitter Information

**Name:** Roxana Muro
**Address:**
   510 w 6th street
   Los angeles,  CA,  90014

---

## General Comment

Applicants must wait 150 days before applying for a work permit. USCIS has been adjudicating work permits in 30 days thereafter for decades.

AR005113

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-waf1
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2526
Comment Submitted by Michael Mehr

## Submitter Information

**Name:** Michael Mehr
**Address:**
  100 Doyle St. Suite A
  Santa Cruz,  95062
**Email:** mike@mehrlaw.com
**Phone:** 8314255757
**Fax:** 831 425-5757

## General Comment

Please oppose this regulation. Asylee applicants should have EAD to support themselves.

AR005114

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-73uw
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2527
Comment Submitted by Judith Bernstein-Baker

---

## Submitter Information

**Name:** Judith Bernstein-Baker
**Address:**
  154 W. Hortter St
  Philadelphia,  19119
**Email:** judibernsteinbaker@gmail.com
**Phone:** 2152050991

---

## General Comment

I am strongly opposed to the elimination of the 30 rule in which an asylum applicant must received an approved EAD. The 30 day limit to approve employment authorization is essential to the well-being of asylum seekers, their children and to everyone. Since so many applicants are now single parents--particularly mothers--with children, they must have an EAD to support their family. Asylum seekers may not have any other family in the U.S. to support them. They must already wait 150 days to apply. This new rule is an attempt to overturn a court decision. Many countries provide benefits to asylum seekers; the U.S. does not and the least we can do is permit an asylum seeker, many of whom arrive with only the clothes on their backs, to work lawfully in the United States. Eliminating the 30 day adjudication time frame is nothing less than a punishment to those who seek protection.

AR005115

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-khjb
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2528
Comment Submitted by Connie Sieracki

---

## Submitter Information

**Name:** Connie Sieracki
**Address:**
   212 Guaymas Place
   Davis, Ca, 95616
**Email:** Conniesieracki@comcast.net
**Phone:** 5307501026
**Submitter's Representative:** Giramandi

---

## General Comment

Asylum seekers and others awaiting hearings should be able to work immediately. To not allow them to work is ludicrous. What do you expect them to do? Beg on the streets?

AR005116

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-obs3
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2529
Comment Submitted by Kimberly Medina

---

## Submitter Information

**Name:** Kimberly Medina
**Address:**
    308 Cherry Street
    Fort Collins,  CO,  80521
**Email:** kimbmedina@yahoo.com
**Phone:** 9703081184

---

## General Comment

Please do not eliminate the 30 day processing rule for work permits for asylum seekers. Many women and children in my community have arrived seeking asylum. They need to be able to support themselves while they legally pursue their claim for asylum. The 30 day processing rule ensures that they will not wait longer than six months to obtain employment authorization. It is necessary for humanitarian reasons to relieve the stress on our communities and families while these parents are unable to work. It is necessary for economic reasons so that these families can support our economy while they wait for their asylum claim to be processed Access to employment authorization also allows asylum applicants to hire attorneys, doctors, therapists, etc.

AR005117

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-dt2o
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2530
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

A fundamental policy behind allowing Asylum Seekers to receive work permits while having their cases pending is because these cases take an incredibly long time, by allowing applicants to work prevents them from having to resort to unlawful means for making a living, that be working under the table, or more nefarious purposes. Being able to pursue gainful employment, and pay into the system, rather than take from it.

It also prevents asylum seekers from having to be a drain on the system by applying for public benefits to sustain themselves. Again, gainful employment opportunities allows them to pay into the system. It also keeps employers in line by ensuring that both employer and employee are compliant.

Delaying Asylum Seekers from receiving work permits while their cases are pending defeats the whole purpose what the law intended to prevent.

AR005118

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-2by3
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2531
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

Asylum seekers should be allowed to work

AR005119

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-waj6
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2532
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

This proposal puts some of the most vulnerable applicants beore USCIS at even further risk for government abuse and neglect. Asylum applicants already have to wait 150 days before they can file an employment authorization document, so really that wait for them with the current 30 day deadline is 180 days without work authorization. This presents financial hardship for both the applicant and any dependent family members in an already uncertain and life-altering process. This period of time is more than reasonable for the agency to conduct sufficient background checks and screen for fraud. Any additional time allows USCIS the opportunity to delay the case, and would put asylum seekers at a disadvantage with no significant gain for the agency. The hardship USCIS feels to do their job in a timely manner is in no way comparable to an asylum applicant remaining unable to provide for a family or themselves, or receive any needed care as a result of trauma associated with their flight.

AR005120

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-on7n
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2533
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

I believe losing tax revenue while promoting racism is ridiculous. I thought this was the land of the free. Not the
land of the free(*).

*some exceptions may apply

AR005121

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-8l9b
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2534
Comment Submitted by Suzanne Susany

## Submitter Information

**Name:** Suzanne Susany

## General Comment

The 30 rule is a good rule and holds the government accountable. Asylum seekers have already been made accountable
by the 150 day timeline [180 in case of a defensive application] to show their seriousness in applying. It is cruel to make
these asylum seekers who have very little when they come into the country fleeing threats to their lives and dangers from
persecution wait longer to be able to earn their living. The 30-day rule should be kept and enforced.

AR005122

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-4wwj
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2535
Comment Submitted by Michelle Lee

---

## Submitter Information

**Name:** Michelle Lee
**Address:**
   20 Parkwood Street
   Albany,  NY,  12208
**Email:** fonanne@gmail.com
**Phone:** 510-684-8982

---

## General Comment

People with pending asylum claims need to eat just like everybody else. If anything, we should make it easier for them to work so that they can do so to support themselves and contribute to our economy.

AR005123

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2535.html[9/15/2020 4:14:35 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-etqe
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2536
Comment Submitted by Sarah Gardiner, Freedom for Immigrants

---

## Submitter Information

**Name:** Sarah Gardiner
**Address:** United States,
**Email:** sgardiner@freedomforimmigrants.org
**Phone:** 2029750600
**Submitter's Representative:** Sarah Gardiner
**Organization:** Freedom for Immigrants

---

## General Comment

See attached file(s)

---

## Attachments

Freedom for Immigrants EAD Proposed Rule Change

AR005124

November 08, 2019
*Submitted via www.regulations.gov*

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529 - 2140

Re: DHS Docket No. USCIS - 2018 - 0001 , RIN 16 15 - AC19 Comment in Response to
Proposed Rule making : Removal of 30 - Day Processing Provision for Asylum
Applicant - Related Form I - 765 Employment Authorization Applications

Dear Miss Deshommes:

I am writing on behalf of Freedom for Immigrants to express our strong opposition to the
proposed changes regarding the process time for work permits for asylum applicants
published in the Federal Register on September 9, 2019 (RIN 1615 - AC19; DHS Docket
No. USCIS - 2018 - 0001).  The government seeks to remove the 30-day processing
requirement for a work authorization document (EAD). If finalized, this proposed rule
would allow U.S. Citizenship and Immigration Services (USCIS) to indefinitely delay the
adjudication of work authorization requests, resulting in widespread lack of access to
identification, employment opportunities, and essential services for asylum seekers, to the
detriment of both asylum seekers and U.S. citizen communities.

Freedom for Immigrants is a national non-profit dedicated to the abolition of mass
incarceration of immigrants.[1] Our network of 4,500 volunteers visits immigrants in
Immigration and Customs Enforcement (ICE) detention centers throughout the country,
breaking the isolation and advocating for those detained. We also operate a national
hotline, which detained individuals can use free of charge to report abuses or request
support. Our post-release support programming matches those released from immigration
detention with the resources they need as their cases navigate through the court system.
In the policy arena, we support federal and state-level policies pushing back against the
expansion of immigration detention and promoting proven alternatives to detention.
Many of the impacted persons we serve are asylum seekers fleeing immense trauma from
their home countries.

Our comment will address the harm the proposed change to eliminate the current 30-day
EAD adjudication deadline will have to the communities we serve; the negative
economic impact of this proposed rule; and how increasing barriers to asylum-seekers'
ability to work runs counter to international laws and best practices.

---

[1] https://www.freedomforimmigrants.org/

AR005125

Harm to Asylum Seekers

Freedom for Immigrants serves asylum seekers both during their time in ICE detention and after their release. Our post-release support services include matching asylum seekers with sponsors and community-based resources as their cases work through the immigration court system. Asylum-seekers released from detention, sponsors, and community organizations report delays in obtaining employment authorization as one of the biggest and most harmful challenges facing asylum seekers.

Subjecting asylums seekers to longer periods before obtaining work authorization puts vulnerable people into a position of living in prolonged economic dependence, poverty, or seeking unauthorized employment under the table, in turn rendering them more susceptible to extortion and labor-rights violations. Asylum seekers are often dependent upon EADs to serve as a primary form of identification, without which it is much more difficult to open bank accounts, apply for a drivers' license, and register for social security numbers.

Freedom for Immigrants Community Accompaniment Coordinator Christina Hernandez stated, "All asylum seekers that I have worked with look forward to the day when they can begin working to help support themselves and their families. Asylum seekers become increasingly vulnerable to exploitation, trafficking, and economic risks if there is a delay the adjudication of work authorization requests."

Prolonging the time needed to obtain an EAD will effectively force asylum seekers to live a life of dependence, in the shadows of our society.

Economic Harm to U.S. Communities

In addition to the immediate harm to asylum seekers and their dependents, the proposed rule would result in significant, negative economic impact for communities throughout the United States.

By the Department of Homeland Security's own estimates, delays in EAD authorization under the proposed rule would result in approximately $775 in lost compensation annually. This loss in income represents a compound loss in taxes that could be re-invested in communities throughout the United States.

On November 8, New Jersey Attorney General Gurbir S. Grewal, California Attorney General Xavier Beccer, and 17 other Attorney Generals, released a letter opposing the proposed rule, highlighting the rule's economic impact.[2] In addition to loss in tax revenue, the AGs highlighted that asylum seekers disproportionately fill jobs in several key sectors, including home health care and agriculture. Without timely work authorization for asylum seekers, these industries will struggle to fill necessary jobs. New

_____

[2] https://oag.ca.gov/system/files/attachments/press-docs/2019.11.08%20EAD%20Comment_States%20AG_Final.pdf

Jersey Labor Commissioner Robert Asaro-Angelo commented, "This hurts our economy by depriving the state of employment taxes, and our employers, who need a reliable workforce to remain competitive."

Participating AGs also highlighted that further restricting asylum seekers' rights to work will put a strain on state social services. Several states provide full-funded health care to low-income children, regardless of immigration status. Minor dependents of asylum seekers forced into poverty by restrictions on their right to work will therefore be more reliant on state-funded social services, resulting in a strain on resources for all communities.

Internationally Recognized Best Practices

The United Nations Convention relating to the Status of Refugees, which has been signed by 147 countries, including the United States, explicitly protects the rights of refugees and asylum seekers to obtain work and self-employment in host countries.[3] This protection for the right to refugees and asylum seekers to access employment draws from internationally recognized rights to work.[4] Increasing barriers to asylum seekers' rights to seek employment puts the United States at odds with our commitments under international law.

Freedom for Immigrants supports community-based alternatives to detention as a cost-effective and humane alternative to immigration detention. The International Detention Coalition (IDC) is an international consortium of over 400 civil society organizations, academics, and subject matter experts working with refugees, immigrants, and asylum seekers impacted by immigration detention.[5] In a 2015 study, the IDC explored the efficacy of alternatives to detention (ATDs) throughout the world. The study found that ATDs are significantly less costly than immigration detention and demonstrate a high rate of compliance with immigration and legal requirements. At the same time, the study identified several best practices crucial to ATD success, including the ability for program participants to ensure that their basic needs are met.[6] The ability to work is critical to ensuring that asylum seekers can meet their basic needs.

Freedom for Immigrants believes that the ability for asylum seekers to work is critical to ending our current system of mass incarceration of immigrants. In fiscal year 2018 alone,

---

[3] "United Nations Convention relating to the Status of Refugees." Articles 17 and 18. https://www.unhcr.org/en-us/3b66c2aa10

[4] Asylum Access and Refugee Work Rights Coalition. "Global Refugee Work Rights Report." 2014. https://asylumaccess.org/wp-content/uploads/2014/09/FINAL_Global-Refugee-Work-Rights-Report-2014_Interactive.pdf

[5] https://idcoalition.org/

[6] International Detention Coalition. "There Are Alternatives." 2015. https://idcoalition.org/wp-content/uploads/2015/10/There-Are-Alternatives-2015.pdf

immigration detention cost the U.S. taxpayer $8.43 million dollars a day, or $3.076 for the entire year.[7]

Conclusion

The proposed rule will have a devastating impact on asylum seekers, their dependents, and local economics. Increasing barriers to asylum seekers' right to work will force vulnerable people further into the shadows and render them more susceptible to exploitation. This proposed runs counter to the United States' long held values and tradition of serving as a place of welcome and refuge to those fleeing harm. For these reasons, we urge the Department of Homeland Security to withdraw the proposed rule. Sincerely,

Sarah Gardiner
Policy Director
Freedom for Immigrants

---

[7] Benenson, Laurence. "Math of Immigration Detention, 2018 Update: Costs Continue to Multiply." National Immigration Forum. May 9, 2018. https://immigrationforum.org/article/math-immigration-detention-2018-update-costs-continue-mulitply/

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-wc2v
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2537
Comment Submitted by Diane Chappell-Daly

---

## Submitter Information

**Name:** Diane Chappell-Daly

---

## General Comment

I write to comment on the proposed rule to remove the 30 day processing requirement for the employment authorization applications filed by asylum applicants. If this time limit on EAD processing is removed, asylum applicants will have to wait longer for the the ability to be self-supporting. They already have to wait until their asylum applications have been pending for 150 days. Without a time limit on EAD processing, the applications could be stalled for months. The applicants and their families would be at risk of food and housing insufficiency, and thus are likely to become dependent on government support for a longer period. If USCIS wants more time to allow for EAD processing, the agency could allow asylum applicants to file EAD applications at an earlier date, perhaps allowing applicants to file 90 days after filling their asylum applications. It is in the interest of all of us to allow asylum applicants to be self-supporting.

AR005129

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2537.html[9/15/2020 4:14:35 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-g7rm
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2538
Comment Submitted by Stephanie Smith

---

## Submitter Information

**Name:** Stephanie Smith

---

## General Comment

I write to oppose the proposed change to remove the 30-day processing provision for Asylum applicants.

Please note that this change will result in significant harm to asylum seekers and their families, including the possibility of food scarcity and insecurity, the inability to secure valid state-issued identification documents, the risk of homelessness, difficulties obtaining health care, and other vital services provided through employment. Particularly for children, food deprivation and fears about homelessness could have a lifelong traumatic impact.

The USCIS justifies this proposed change with reference to a rise in national security threats posed by asylum seekers. However, even this stated reason would further the need for a more prompt adjudication time frame. If these applicants - who already reside in the U.S.- pose a security threat, the government should go about screening them within the current 30 day timeframe.

One alternative to the proposed change would be to shorten the waiting time before asylum-seekers are allowed to submit their applications for work authorization. Allowing asylum-seekers to submit their applications earlier could allow the department to have more time to vet each individual while reducing the risk of harm to each applicant.

AR005130

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-9cgq
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2539
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

Asylum-seekers already wait many months to receive work authorization, which is detrimental to American-based businesses that would like to hire them and to our country's tax revenues. The additional wait time reads as punitive because it is entirely unnecessary and because it burdens US-based charities and immigrant communities who seek to provide food and shelter. There is no incremental benefit to the United States whatsoever.

AR005131

# PUBLIC SUBMISSION

As of: September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-yoqd
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2540
Comment Submitted by John Achatz

## Submitter Information

**Name:** John Achatz
**Address:**
  47 Thordnisk St, Sute SB-LL-1
  cambridge, MA, 02141
**Email:** jachatz@denovo.org
**Phone:** 617-405-5481
**Organization:** Select or enter

## General Comment

See attached letter.

## Attachments

Comment on Reg Change re EADs 2019-11-08

AR005132

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2540.html[9/15/2020 4:14:35 PM]

# JOHN ACHATZ

*47 Thorndike Street*
*Cambridge, MA 02141*
*617-405-5481*
*jachatz@denovo.org*

November 8, 2019

<u>Submitted online via the Federal eRulemaking Portal</u>

Department of Homeland Security
U.S. Citizenship and Immigration Services
Office of Policy and Strategy
Chief, Regulatory Coordination Division
20 Massachusetts Avenue, NW
Washington, D.C. 20529-2140

**Re:    Comments on Removal of 30-Day Processing Provision for Asylum
         Applicant-Related Form I-765 Employment Authorization Applications
         Docket Numbers:
         CIS No. 2617-18
         DHS Docket No. USCIS-2018-0001**

Dear Sir or Madam:

I am a member of the Massachusetts bar who, in retirement, is volunteering as a legal services lawyer representing asylum seekers.  As a volunteer, I am not authorized to speak on behalf of my legal services organization, so I submit these comments in my personal capacity.  As a proud American I am appalled by the proposed regulatory amendment.

In general, my asylum clients are people who have been severely persecuted – and even tortured – by some of the most awful governments in the world.  For those of my clients who applied for affirmative asylum and received prompt interviews under the new LIFO procedure, the regulatory change makes no difference.  Their applications were adjudicated promptly.  All were granted asylum and received employment authorizations immediately.

For my other clients who did not get LIFO interviews because there are not enough asylum officers to interview all new applicants, or who have been in the USCIS backlog for years, or who are in the Immigration Court with hearings in 2020 or 2021 or 2022 or even no court date at all, the ability to get employment authorization after 180 days is critical not only for their ability to be self-sufficient, but also for their sense of personal worth and dignity.  Having been persecuted in their home countries, they should not be burdened with unnecessary delays and indignities in our country – my country.

I understand the motivation for the proposed change in regulations to be, in part, to discourage aliens from filing frivolous asylum claims and then relying on the gaps caused by an overloaded asylum system to stay in the United States and have lawful employment.  I am not writing to defend those who have meritless asylum claims.

AR005133

I am writing to say that asylum seekers should not be punished because USCIS and EOIR are insufficiently funded and staffed to adjudicate on a timely basis the asylum claims of all asylum applicants.

If USCIS and EOIR cannot hear asylum claims on a timely basis, the least that we as Americans can do is assure that asylum seekers waiting for adjudications can legally find employment and support themselves while waiting for their interviews and hearings.

Thank you for the opportunity to comment on the proposed amendment to the regulations.

Very truly yours,

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d79-6fkb
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2541
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Asylum applicants want and need to work-they are anxious to resume some semblance of normality. They are anxious to care for their families and need to work as they adjust to new environments.

Time is of the essence as without work they have no income and fewer opportunities to participate in their new community.

Asylum applicants often are willing to work in the most challenging circumstances-go to any workplace where jobs are difficult and/or dirty and you will find asylum applicants there. My own mother received care from compassionate women who were asylum applicants.

AR005135

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2541.html[9/15/2020 4:14:36 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-sh7v
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2542
Comment Submitted by Amy Taylor, Make the Road New York

---

## Submitter Information

**Name:** Amy Taylor
**Address:**
  301 Grove Street
  Brooklyn,  NY,  11237
**Email:** amy.taylor@maketheroadny.org
**Phone:** (718) 418-7690 ext. 1280

---

## General Comment

MRNY urges DHS to preserve the important 30-day processing period, which is critical to our clients, our staff, and our organization. Please find our full comment attached.

---

## Attachments

USCIS-2018-0001_MRNY Comment on Proposed Rule

AR005136



Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue, NW
Mailstop #2140
Washington, D.C. 20529-2140

November 8, 2019

**Re:** **Comments in Response to DHS's Proposed Amendments to Regulations related to processing times for initial asylum applicant's applicants for employment authorization, entitled "Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications," dated Sept. 9, 2019 (DHS Docket No. USCIS-2018-0001, 44 F.R. 47148)**

To Whom It May Concern:

Make the Road New York (MRNY) respectfully submits this comment to the Department of Homeland Security's (DHS) Notice of Proposed Rulemaking on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019. MRNY opposes the proposed rule to remove the 30-day processing period for initial employment authorization applications for asylum applicants. MRNY urges DHS to preserve the important 30-day processing period, which is critical for our clients, our staff, and our organization.

## I. <u>Make the Road New York and Interest in the Proposed Rule</u>

MRNY is a non-profit community-based membership organization with over 24,000 members dedicated to building the power of immigrant and working-class communities to achieve dignity and justice through organizing, policy innovation, transformative education, and

**BROOKLYN**
301 GROVE STREET
BROOKLYN, NY 11237
718 418 7690

**QUEENS**
92-10 ROOSEVELT AVENUE
JACKSON HEIGHTS, NY 11372
718 565 8500

**STATEN ISLAND**
161 PORT RICHMOND AVENUE
STATEN ISLAND, NY 10302
718 727 1222

**LONG ISLAND**
1090 SUFFOLK AVENUE
BRENTWOOD, NY 11717
631 231 2220

**WESTCHESTER**
46 WALLER AVENUE
WHITE PLAINS, NY 10605
914 948 8466

**WWW.MAKETHEROADNY.ORG**

AR005137

survival services. We have offices in five different parts of New York state: Bushwick, Brooklyn; Jackson Heights, Queens; Port Richmond, Staten Island; Brentwood, Long Island; and White Plains, Westchester County. Our survival services include legal assistance on immigration, family law, housing law, and employment law issues. MRNY's Immigration legal team reaches thousands of immigrants each year, and represents immigrants in all types of immigration cases, including both affirmative and defensive asylum applications.

MRNY staff, as well, represents the communities that we serve. Our organization is comprised of a workforce of 219 employees, including but not limited to U.S. citizens, lawful permanent residents, DACA recipients, TPS holders, and asylum applicants. As recently as 2018, our organization has relied on the 30-day processing rule for initial asylum applicants for hiring a crucial position in our legal team. The following is an example of staff and organizational need in the context of the 30-day rule:[1]

> Florencia: Florencia is an asylum applicant. She was a professional in her home country. She fled to the United States after being kidnapped due to her political opinion. In the United States, Florencia did not have work authorization. Because she did not have work authorization, she was forced to get a low-paying job to support herself and her minor children despite her education and skills.
>
> MRNY was looking to hire an open position in our legal department but was having difficulty finding a qualified candidate. MRNY wanted to hire Florencia but was unable to because of her lack of employment authorization. MRNY was unable to find other viable candidates. When Florencia informed MRNY that her application for employment authorization had been submitted to USCIS, MRNY interviewed Florencia and was able to offer her employment pending approval of her application, *because of* the 30-day processing times. Florencia's assistance to MRNY clients has been invaluable. Had the processing time been longer, MRNY would have been unable to hire Florencia and would have been forced to hire an underqualified candidate to work in an important position providing legal services to MRNY clients.

## II. Issue for Comment: DHS's proposed elimination of regulatory provisions requiring adjudication of EAD applications within 30 days of filing for asylum applicants requesting an initial employment authorization document

DHS proposes to eliminate the existing provisions at 8 CFR 208.7(a)(1), requiring USCIS to adjudicate initial employment authorization applications under the (c)(8) (pending asylum application) category within 30 days of the filing for Form I-765, Application for Employment Authorization. *See* DHS Proposed Rules, 84 Fed. Reg. 47148. MRNY opposes the rule change. The rule change cruelly places tens of thousands of immigrant families at risk of losing access to crucial financial support for themselves and their families; limits asylum applicants' abilities to retain counsel and pay for necessary mental health services; and fails to provide a suitable alternative to the 30-day processing period.

Asylum applicants depend on access to employment authorization as the basis of their

---

[1] Name changed to respect privacy.

ability to support themselves and their families and to reconstruct their lives after fleeing from abuse. Asylum applicants comprise a uniquely vulnerable portion of the immigrant population in the United States. By definition, an asylee is someone who will likely be persecuted in their home country based on a protected basis: race, religion, nationality, political opinion, or membership in a particular social group. 8 U.S.C. § 1101(a). Many of these applicants not only fear persecution upon return, but have also experienced the worst forms of violence, torture, and abuse before fleeing to the United States. Without employment authorization after they arrive in the United States, asylum applicants remain vulnerable to exploitation and mistreatment by employers and are prevented from integrating into their new communities.

A. *The proposed rule cruelly places tens of thousands of immigrant families at risk of losing access to crucial financial support for themselves and their families.*

When they are denied access to an employment authorization document (EAD), asylum applicants are forced to choose between working without authorization in violation of laws—frequently in abusive or exploitative work environments—or being unable to meet even their most basic food and housing needs.

Our clients without work authorization are regularly compelled to seek work in order to survive and meet their basic needs. The New York City metropolitan area has among the highest cost of living in the country.  MIT's "living wage calculator" estimates that a single person with no children must work full-time earning higher than the minimum wage in order to make a living wage. A single adult with a child needs to make more than twice the minimum wage for a living wage.[2] Without work authorization, our clients find that the jobs available to them are extremely limited and that they are paid significantly less than a living wage. The precariousness of their situation leads to severe abuses by employers.

Our clients often find themselves unavoidably subject to exploitative or unsafe work environments, because they need to work to support themselves but are unable to find better jobs without an EAD. As recognized by DHS in 2015, "[w]ithout work authorization, [immigrants] are more likely to work for employers who will hire them illegally, often at below-market wages, thereby . . . . giving unscrupulous employers an unfair advantage."  Petition for a Writ of Certiorari, *United States, et al. v. State of Texas, et al.*, 2015 U.S. S.Ct. Briefs LEXIS 4243, at *59-60 (Nov. 20, 2015). These unscrupulous employers often take advantage of employees' concerns over their lack of employment authorization by paying far-below market wages and harassing or intimidating these employees. In contrast, our clients with work authorization regularly comment that they can support themselves through better, more stable and higher-paying employment.

The following examples represent just some of our clients' dependence on authorized employment.[3]

---

[2] MIT, "Living Wage Calculator for New York-Newark-Jersey City, NY," *available at:* https://livingwage.mit.edu/metros/35620.
[3] All names changed to preserve attorney-client confidentiality.

- <u>Sandra</u>: Sandra is an asylum applicant. She lives in Westchester County. She fled her home country with her young daughter in fear for their lives. They were detained at entry, and Sandra promptly applied for asylum. Sandra was unable to work upon arrival in the United States. She and her daughter stayed with a sibling, initially, who repeatedly threatened to throw both out in the street. They had no way to pay for housing and lived in fear of being thrown onto the streets. Unable to provide for their basic needs without work authorization, Sandra and her daughter were forced to have multiple discussions about risking their lives and returning to their home countries out of economic desperation.

  Lack of employment authorization not only resulted in a precarious housing situation and Sandra's inability to pay for regular meals for herself and her daughter, it almost resulted in Sandra and her daughter being ordered removed due to their financial inability to attend their immigration court hearings. To attend immigration court, Sandra had to take the train from Westchester County to New York City. Without employment, Sandra was unable to pay for her transportation to immigration court. She had to beg and depend on third parties' willingness to lend her money to be able to attend her hearing.

- <u>Jane</u>: Jane was an asylum applicant, who was later granted CAT. She was a victim of severe domestic violence at the hands of her partner in her home country. She tried fleeing, but her partner found her every time she moved. She tried calling the police to protect her, but they failed to respond. When Jane came to the United States, the friend she was staying with took a romantic interest in her. Jane did not want a romantic relationship with the man, but was dependent on him for her support and could not leave. Jane had little mobility because she could not work due to her pending application for employment authorization. It was not until Jane received her employment authorization that she was able to save money for her own housing, gain her independence and avoid her roommate's sexual exploitation.

- <u>Emilio</u>: Emilio is an asylum applicant. As a young child, he was abused and raped for being gay. When he was a teenager, he was raped by a family friend who viewed Emilio as effeminate. Emilio attend university, with the hope of becoming a lawyer and fighting for LGBTQ rights. Several members of a local gang identified Emilio and a friend as gay. Over a period of years, they repeatedly raped and tortured them. When Emilio's friend threatened to call the police, he was killed in front of Emilio. Emilio fled to the United States in fear for his life.

  Emilio has applied for asylum, but lacks work authorization. He has been unable to find a well-paying job. And though he wants to study to be a paralegal in the United States, without work authorization, he cannot afford classes to continue his studies.

By removing the 30-day adjudication period for initial (c)(8) employment authorization applicants, DHS is forcing asylum seekers to continue in this precarious and unsustainable situation, prone to frequent abuse.

B. *The proposed rule limits asylum applicants' abilities to retain counsel and pay for necessary mental health service.*

The proposed rule limits asylum applicants' abilities to pay for necessary services, such as immigration counsel and mental health services.

i.     Inability to Retain Counsel

Without the opportunity for stable employment provided by an EAD, many asylum applicants find themselves unable to retain and pay counsel to represent them in their cases before the asylum office, immigration court, and Board of Immigration Appeals. TRAC reported that in FY 2017, 20.6 percent of asylum seekers were not represented by counsel.[4] Non-profit legal service providers like MRNY are unable to represent every asylum seeker that comes through our doors, often necessitating that an asylum applicant seek private counsel. However, it is often impossible for asylum applicants to afford private attorneys without an approved application for work authorization.

Asylum seekers are an exceptionally vulnerable population who are forced to navigate a legal system they often do not understand, in a language they cannot comprehend. Our unrepresented clients regularly comment to us on their inability to understand their own proceedings in immigration court, ICE Enforcement and Removal Operations check-ins, and asylum interviews.  Applicants depend on counsel for orientation, advice, strategy, and case preparation. The lack of access to counsel makes it nearly impossible for an asylum applicant to prepare and present their claim.  In fact, an applicant represented by counsel is five times more likely than an unrepresented individual to win their asylum claim.[5]

The following examples represent just some examples of consults we have had that demonstrate asylum applicants' dependence on authorized employment.[6]

- Johana: Johana is an asylum applicant. Johana fled repeated threats of abuse and threats by government-backed forces because of her active membership in a political opposition party. Unable to afford private counsel, Johana filled out her asylum application with the help of a notario. Because she did not speak English, Johana was unable to understand or correct the asylum application that had been filled in for her, nor did she know to seek evidence beyond her affidavit. Johana's case was denied for lack of credibility. The immigration court's decision cited the lack of documents that

[4] TRAC, "Asylum Representation Rates Have Fallen Amid Rising Denial Rates," *available at:* https://trac.syr.edu/immigration/reports/491/.
[5] TRAC, "Asylum Representation Rates Have Fallen Amid Rising Denial Rates," *available at:* https://trac.syr.edu/immigration/reports/491/.
[6] All names changed to preserve attorney-client confidentiality.

Johana submitted and could have easily presented to the court had she been advised and represented by counsel.

- <u>Alicia</u>: Alicia is an asylum applicant. She came to the United States fleeing domestic violence and death threats with her young children. When Alicia came to the United States, she had no support. Alicia attempted to retain non-profit services, but due to lack of capacity, was referred between multiple non-profit organizations. As Alicia was unable to secure work that paid well enough for her to afford a private attorney, she was unable to retain a private attorney. As she continued to search for a private attorney she could afford, Alicia was forced to represent herself at various master calendar hearings.

- <u>Erfan</u>: Erfan is an asylum applicant. He fled to the United States from his home country. He was detained at the border, passed a credible fear interview, and was released. He spent several months searching for pro bono representation and was unable to find it. He decided to hire a private attorney, but was unable to earn sufficient income to support himself and pay legal fees without work authorization. He was forced to borrow money to pay attorney's fees for representation. When Erfan's application was denied, he told his attorney he wanted to appeal. The attorney quoted an appeal fee to Erfan that was impossible for Erfan to pay. With the help of a non-profit, Erfan filed a notice of appeal pro se. He has been actively seeking new representation for over four months, but is unable to find representation. He is still paying installments for his prior attorney and lacks the financial resources to hire new counsel.

By removing the 30-day adjudication period for initial (c)(8) employment authorization applicants, DHS is creating a situation where asylum applicants find their ability to retain counsel in danger.

### ii.     Lack of Access to Mental Health Services

Access to mental health services is critical for many asylum applicants. Histories of trauma, abuse, and persecution manifest in Post-Traumatic Stress Disorder, depression, anxiety disorders.  and other diagnoses of mental health disorders. Unfortunately, many of our clients' daily struggle for subsistence compounds their mental health issues, while their lack of access to employment authorization and well-paying jobs means that they cannot afford to pay for the care they need. While community and non-profit organizations often seek to provide services and counseling at low cost or free of charge, even low cost is often too much for an individual who does not have work authorization and can barely cover their basic survival needs. Non-profit capacity to provide free services is limited and unable to reach the growing need. As a result, our clients' PTSD and other mental health issues are not addressed, wreaking havoc on their lives and inhibiting our clients' abilities to process and present information about their past and episodes of trauma to counsel, to the asylum office, and to the Executive Office for Immigration Review.

The following examples represent the importance of authorized employment on the ability to access mental health services.[7]

- <u>Julian</u>: Julian is an asylum applicant. From a very young age, he was beaten and sexually abused in his home country. The abuse continued into adolescence, when he came out as a gay man. Following his flight to the United States, Julian could not afford mental health services. Unable to cope with his history of trauma, he was forced to engage in self-medication – for example, with alcohol – in an attempt to escape his past.

- <u>Gloria</u>: Gloria is an asylum applicant. Gloria fled her home country after being raped and repeatedly attacked near her house. She reported the attacks and rape to the police, but the police did not investigate or provide protection. Gloria was diagnosed with PTSD and was receiving private therapy in her home country following her rape. Since receiving employment authorization, Gloria has been able to access mental health services on a sliding fee scale.

  Before receiving employment authorization, Gloria was unable to continue treatment in the United States. Instead, she was forced to work long hours in childcare following her arrival, which did not permit time off or sufficient income to pay for any amount of care. Though she requested help, various non-profits and community service providers informed her that they were at capacity and requested she wait six or more months for treatment.

  While searching for treatment, Gloria attempted to work with her immigration attorney to prepare her asylum application. At each interview with her attorney, Gloria became extremely upset and unable to continue. She and her attorney were forced to engage in much of their work over sporadic e-mail correspondence to provide Gloria with time and emotional space she needed to address each question.

C. <u>The proposed rule fails to provide a suitable alternative to the 30-day processing period.</u>

Under the proposed rule, DHS would unbind itself from the 30-day processing period requirement, but the agency fails to propose or provide an alternative processing period. This lack of proposed processing period is extremely concerning. As noted above, employment authorization is necessary for asylum applicants' subsistence, access to mental health services, and access to counsel. Any delay in employment authorization, correspondingly decimates an asylum applicant's ability to retain counsel, access extremely necessary mental health services, and provide for their most basic needs: shelter, clothing, and food.

The lack of a proposed processing period is particularly concerning where DHS appears to base its arguments on logical fallacy and lack of investigation. For example, instead of

---

[7] All names changed to preserve attorney-client confidentiality.

providing a new processing period, DHS says that it "assumes. . . adjudications will align with DHS processing times achieved in 2017," and that it "intends to meet these timeframes." 84 F.R. 47156. However, DHS likewise states that a large part of the reason for the need for additional time is the "historic asylum backlog" and increased number of (c)(8) applications since 8 CFR 208.7(a)(1) was promulgated. 84 F.R. 47153. DHS fails to justify how it intends to comply with even the unacceptable pre-*Rosario* processing times in light of the increased backlogs and the historic correlation between increased applications and increased processing times.

DHS additionally reports redistributing its workforce to comply with the 30-day period following *Rosario v. USCIS*, No. C15-0813JLR (W.D. Wash). However, in the proposed rule, DHS posits that it cannot meet the 30-day processing times through new hires, because any new hires would require training and some applications would still require additional time for full vetting. Relying on these unfounded assertions, DHS has failed to consider the cost of hiring additional employees in order to promptly adjudicate these applications. 84 F.R. 47157. Such failure to engage in even the most basic and logical investigation is unacceptable given the potential harm to asylum applicants imposed by the proposed rule change.

In short, DHS claims that it is unable to sustainably comply with the 30-day adjudication period for initial (c)(8) EAD applications but fails to provide an alternative period. Instead it provides a possible alternative goal based on a logical fallacy, and intentionally decided not to fully investigate the cost associated with continued compliance with the 30-day deadline. For our clients and other asylum applicants, every day without work authorization increases financial instability and hurts their ability to support their most basic needs, retain counsel, or access mental health services.

### III.   <u>Conclusion</u>

MRNY urges DHS to preserve the important 30-day processing period, which is critical to our clients, our staff, and our organization. We appreciate the opportunity to comment on the proposed rule elimination.

Sincerely,

//s// *Amy S. Taylor*
Amy S. Taylor
Co-Legal Director
Make the Road New York

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-5l36
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2543
Comment Submitted by Claire R. Thomas, New York Law School Asylum Clinic

---

## Submitter Information

**Name:** Claire R. Thomas
**Address:**
New York Law School, 185 West Broadwa
Office C348
New York,  New York,  10013
**Email:** claire.thomas@nyls.edu
**Phone:** 2124312320
**Submitter's Representative:** Claire R. Thomas
**Organization:** New York Law School Asylum Clinic

---

## General Comment

See attached file(s)

---

## Attachments

NYLS Asylum Clinic Comments to DHS Docket No. USCIS 2018-0001 Asylum Seeker Employment Authorization Applications

AR005145



New York Law School Legal Services, Inc.

**Asylum Clinic**
185 West Broadway, New York, NY 10013-2921
**T** 212.431.2892 **F** 917.398.1488
www.nyls.edu/clinics

November 8, 2019

*Submitted via www.regulations.gov*

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

Re:     **DHS Docket No. USCIS-2018-0001; Comments on proposed rulemaking
           re: Removal of 30-day Processing Provision for Asylum Applicant-Related
           Form I-765 Employment Authorization Applications**

Dear Ms. Deshommes:

The New York Law School Asylum Clinic respectfully submits this comment to the Department of Homeland Security's Notice of Proposed Rulemaking on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019.

Our clinic represents immigrant clients and argues cases in the New York Immigration Court and before the Newark and New York Asylum Offices on behalf of refugees fleeing persecution in their home countries and seeking safety in the United States. We work closely with our clients to help them prepare their asylum applications based on horrific circumstances that have given them no choice but to flee to the United States. We trust that our clients will receive fair and humane treatment while pursuing their legal claims, including the opportunity to provide for themselves and their families.

We are writing to express our profound opposition to the Department of Homeland Security's proposal to eliminate the 30-day processing requirement for asylum applicant-related employment authorization applications. We respectfully request that the proposed rule be rescinded and that the Department of Homeland Security reconsider its misguided attempt to deter asylum-seekers by imposing unwarranted obstacles to legal employment.

## I.     Our Clients Will Suffer Unjustified Harm as a Result of the Proposed Rule

Our clinic represents vulnerable individuals who have been forced from their home countries to escape the threat of persecution. When they reach the United States, many of them have no family or community to support them. Without prompt authorization to pursue legal means of income, their access to food, housing, and medical treatment will be eroded. Our clients are already among the most

AR005146

vulnerable populations to exploitation and trafficking. Revoking their ability to work legitimately while they exercise their legal right to request asylum will exacerbate these risks, exposing them to dangerous situations similar to those from which they are fleeing. Many of our clients come to the United States with small children who clearly cannot provide for themselves. For parents, the 30-day processing requirement for EAD's is critical to ensure they can put food on the table for their families without relying on public benefits. Further, EAD's enable our clients to obtain valid ID's, which are required in order to obtain a number of social services. If they cannot work and cannot obtain those services, they will be left entirely without means to meet their basic human needs. Our clients come to the United States seeking safety and hope. To strip them of the dignity drawn from providing for their families is to repudiate our moral imperative to help those in dire need.

One of our current clients, D, is a Honduran woman who fled to the United States with her daughter to escape the terror her violent uncle inflicted on the females in her family. Once here, she then suffered extraordinary abuse at the hands of her daughter's father, from whom she was she was eventually able to separate. As she waits for the BIA to hear her asylum appeal, she works as a server at a restaurant, allowing her to provide for herself and her daughter. Regarding the value of having an EAD, D says,

> "It is important for me as an asylum seeker to have a work permit because I can work to get my children ahead. I have more opportunities to support them. I can have a Driver's License. I can walk with more certainty that they cannot deport me."

## II.    The proposed rule will force a number of our clients to become public charges.

USCIS admits that delaying EAD authorization will cause lost compensation to asylum applicants ranging from $255.88 million to $774.76 million in taxable income per year. Considering the administration's recent emphasis on deterring immigrants who may become a public charge, restricting our clients' ability to work legally is counterproductive. As the proposed rule provides no replacement adjudication deadline, our clients will be left with no means of survival and thus, no other option but to seek the minimal public benefits for which they are eligible. If the government does not wish to financially support asylum seekers who are already present in the country, it must allow them to support themselves legally, as our clients currently do.

## III.   More efficient alternatives exist for adjudicating employment authorization applications that would inflict less harm on our clients.

If USCIS needs more time to process work authorization applications from asylum seekers, there is a simple solution. Rather than requiring our clients to wait until their asylum applications have been pending 150 days to apply for work authorization, USCIS could allow them to do so after 120 days. This would allow for a 60 day adjudication process without indefinitely postponing the ultimate receipt of an EAD, as the proposed rule currently does. Removing the 30-day processing requirement without providing any alternative deadline makes clear that USCIS expects adjudication of applications to be extensively delayed. Leaving our clients dangling in the wind with no guarantee for when they can expect to enter the United States workforce is not only irresponsible, it is inefficient.

AR005147

## IV. Conclusion

The Proposed Rule sharply contradicts a basic principle of United States immigration law since our nation's earliest immigration statutes were passed: self-sufficiency as stated in §1601 of Title 8 of the US Code. Self-sufficiency starts with promptly providing bona fide asylum applicants with employment authorization within the processing time prescribed in the regulations. As USCIS is currently able to process 99% of applications within the 30-day timeframe required by law, there is simply no basis to suggest that the Service is incapable of prompt adjudication.

If the crises of other nations have forced so many from their home countries that USCIS has difficulty processing their requests for legal work opportunities, it must solve that problem with the most responsible methods possible. Entirely removing any time restriction on the processing of asylum-related work authorization applications indefinitely leaves our clients without any means of obtaining food, housing, medical care, and childcare. In our highly developed, highly educated nation, it is absurd to suggest that doing so is the most effective or efficient way to improve our immigration system. It certainly is not the most responsible. For these reasons, we respectfully request that the proposed rule be rescinded.

Thank you for the opportunity to submit these comments. We appreciate your consideration. Please do not hesitate to contact Professor Claire R. Thomas should you have any questions about our comments or require further information.


Respectfully,


Kelly Keown
Law Student Intern
New York Law School Asylum Clinic


Claire R. Thomas, Esq.
Director, Asylum Clinic
New York Law School

AR005149

AR005150

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-d8vf
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2544
Comment Submitted by Norman Archer, Housing Works

---

## Submitter Information

**Name:** Norman Archer
**Address:**
  81 Willoughby St.
  Brooklyn,  NY,  12201
**Email:** n.archer@housingworks.org

---

## General Comment

See attached comment.

---

## Attachments

HousingWorks_Comment_Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

AR005151



To: U.S. Department of Homeland Security

From: Housing Works, Inc.

We write in opposition to the recent U.S. Department of Homeland Security proposal to remove the 30-day processing provision for asylum applicant-related form I-765 employment authorization document (EAD) applications.

Housing Works is a healing community of people living with and affected by HIV/AIDS. Our mission is to end the dual crisis of homelessness and AIDS through advocacy, provision of life-saving services, and entrepreneurial businesses that sustain our effort. Housing Works is the nation's largest community-based AIDS services organization, founded in 1990 on the simple premise that housing is the threshold step for improving the emotional and physical health of people with HIV experiencing homelessness. Since that time, Housing Works has housed and served over 20,000 New Yorkers with HIV/AIDS and has won nationwide recognition for developing innovative, client-centered models of housing, health care services for hard-to-reach populations. Housing Works has also created the nation's most successful job training and placement program for people with HIV/AIDS, and it has pioneered the use of socially conscious entrepreneurial ventures to achieve organizational economic stability.

Housing Works' Asylum Project was created to meet urgent needs and provide housing, legal and employment assistance for asylum seekers fleeing imminent violence and oppressive laws in their countries of origin due to due to their sexual orientation, presumed sexual orientation, HIV status and/or work as LGBT/HIV advocates. Many program participants held university degrees and most had left behind professional jobs in healthcare, human services and other highly-qualified fields. In addition to legal assistance, the highest priority of our Asylum Project participants was to secure work authorization as quickly as possible to achieve self-sufficiency and to facilitate their integration into the United States. Indeed, almost all program participants graduated from the program within one year by securing employment and becoming tax-paying U.S. residents.

Based on our experience, we believe that the proposed rule would have serious negative health consequences for our communities. Forcing asylum seekers to wait even longer for work authorization would further risk the health, safety, and very lives of the refugees requesting protection in the United States. Under the current system, asylum seekers must wait 150 days before applying for an EAD. The existing five-month wait period for asylum seekers to work puts them in vulnerable situations, including homelessness, hunger, and limited access to healthcare.[1] The proposed rule would eliminate the current requirement that U.S. Citizenship and Immigration Services (USCIS) process EAD applications within 30 days — meaning that asylum seekers could wait more than six months before being able to apply for jobs. Even now, with guidelines in place, the agency fails to meet the 30-day mandate in more than half of cases.

Considering the above concerns, we urge DHS to withdraw this proposed rule and instead allow the 30-day EAD processing timeframe to remain in place, or alternatively, to allow asylum seekers to apply for an EAD concurrently with their asylum application. Housing Works calls for the government to build policies that support orderly access to humanitarian protection and equip asylum seekers with the ability to support themselves while their cases are pending. We urge USCIS to champion policies that recognize asylum seekers' contributions to our economy and build pathways for their full integration into our workforce.

1.   https://www.humanrightsfirst.org/sites/default/files/Work_Authorization.pdf

AR005152

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-a2xk
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2545
Comment Submitted by Sarnata Reynolds, The Immigration Hub

---

## Submitter Information

**Name:** Sarnata Reynolds
**Address:** United States,
**Email:** sarnata@theimmigrationhub.org
**Phone:** 4152607394

---

## General Comment

Submitted via http://www.regulations.gov

November 8, 2019

Samantha Deshommes, Chief
Regulatory Coordination Division
Office of Policy and Strategy,
US. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529

RE: DHS Docket No. USCIS-2018-0001, RIN 1615-AC19
Removal of 30-Day Processing Provision for Asylum Seekers Initial Employment Authorization Document
Applications

Dear Chief Deshommes:

The Immigration Hub submits these comments in response to the Department of Homeland Securitys (DHS)
Notice of Proposed Rulemaking (NPRM) entitled Removal of 30-day Processing Provision for Asylum
Applicant-Related Form I-765 Employment Authorization Applications published on September 9, 2019.

AR005153

The Immigration Hub is a national organization dedicated to advancing fair and just immigration policies through strategic leadership, innovative communications strategies, legislative advocacy and collaborative partnerships. The organization is comprised of former congressional staff, executive branch officials and immigration policy advocates with deep roots in advocacy and communications and decades of collective experience. We believe in an inclusive society where immigrants are able to thrive and contribute fully to their communities, and where America recognizes immigrants as intrinsic to our national identity and heritage.

GENERAL COMMENTS

Since 1994, the U.S. government has committed to issuing work permits to asylum seekers who are processing their cases before the Asylum Office and Executive Office for Immigration Review. This is good for our economy, as asylum seekers and refugees have higher labor force participation rates than U.S. citizens, and they become a net economic positive for the country within only 8 years of arrival. For asylum seekers, the ability to take up employment is key to regaining a sense of security as they recover from trauma, torture, and flight. Employment is also one of the most effective ways to support the integration of asylum seekers and their families because it facilitates their ability to become a part of a community and put down strong roots.

The Trump administration has not provided any rational justification for changing the current process, and there are well-documented adverse consequences. Getting rid of the 30-day period for issuing work permits would both undermine the ability of asylum seekers to make economic contributions to their new country, and their security as they attempt to recover and integrate into their new communities. Therefore, DHS should withdraw the NPRM Removal of 30-day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications.

Please see the attached document for arguments in support of this position.

Thank you for the opportunity to submit these comments. We appreciate your consideration. Please do not hesitate to contact Sarnata Reynolds, Director of Policy for the Immigration Hub. at sarnata@theimmigrationhub.org should you have any questions about our comments or require further information.

Sincerely,


Sarnata Reynolds
Director of Policy
The Immigration Hub

---

# Attachments

EAD comments 11.8.19

AR005154

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2545.html[9/15/2020 4:14:36 PM]



November 8, 2019
Samantha Deshommes, Chief
Regulatory Coordination Division
Office of Policy and Strategy,
US. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529

**RE: DHS Docket No. USCIS-2018-0001, RIN 1615-AC19**
**Removal of 30-Day Processing Provision for Asylum Seekers' Initial Employment**
**Authorization Document Applications**

Dear Chief Deshommes:

The Immigration Hub submits these comments in response to the Department of Homeland
Security's (DHS) Notice of Proposed Rulemaking (NPRM) entitled "Removal of 30-day
Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization
Applications" published on September 9, 2019.

The Immigration Hub is a national organization dedicated to advancing fair and just immigration
policies through strategic leadership, innovative communications strategies, legislative advocacy
and collaborative partnerships. The organization is comprised of former congressional staff,
executive branch officials and immigration policy advocates with deep roots in advocacy and
communications and decades of collective experience. We believe in an inclusive society where
immigrants are able to thrive and contribute fully to their communities, and where America
recognizes immigrants as intrinsic to our national identity and heritage.

**GENERAL COMMENTS**

Since 1994, the U.S. government has committed to issuing work permits to asylum seekers who
are processing their cases before the Asylum Office and Executive Office for Immigration
Review. This is good for our economy, as asylum seekers and refugees have higher labor force
participation rates than U.S. citizens, and they become a net economic positive for the country
within only 8 years of arrival. For asylum seekers, the ability to take up employment is key to
regaining a sense of security as they recover from trauma, torture, and flight. Employment is also
one of the most effective ways to support the integration of asylum seekers and their families
because it facilitates their ability to become a part of a community and put down strong roots.

AR005155

The Trump administration has not provided any rational justification for changing the current process, and there are well-documented adverse consequences. Getting rid of the 30-day period for issuing work permits would both undermine the ability of asylum seekers to make economic contributions to their new country, and their security as they attempt to recover and integrate into their new communities. Therefore, DHS should withdraw the NPRM "Removal of 30-day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications."

ARGUMENTS

**The 30-day processing provision undermines the economy and national security without any policy justification.**

USCIS does not beat around the bush. In proposing this rule change, the agency directly admits that all levels of government will lose tax revenue as a result. Specifically, USCIS projects a loss of $39.15 million to $118.54 million per year as a result of delays in the issuance of work permits because asylum seekers and their employers will not be able to contribute to Medicare and social security.

Over the last twelve months, USCIS has been able to decide over 99% of EADs within the 30-day timeframe, including any research or other types of vetting that may be required before issuance of the work permit. Yet, in this proposed rule change, USCIS asserts that it requires more time and resources to make a decision on each case. This is nonsense. As USCIS admits, the agency has been well able to adequately vet the amount of requests in a timely fashion. To the extent the agency is concerned about the presence of threats among applicants for a work permit, putting a priority on the faster processing of applications is a sounder policy response than letting applications pend for months, or even years.

**The 30-day processing provision undermines stability and the ability of asylum seekers to integrate into their communities without any sound policy justification.**

Asylum seekers seeking protection in the United States are often recovering from trauma and earnest to regain dignity and stability for themselves and their families. Subjecting them to indefinite waits for work permits would put this process of recovery and resilience on hold. In the months or years asylum seekers were left waiting, they would essentially be losing wages that would otherwise have been put to good use in local markets, community centers, housing and rentals. Without an income source, asylum seekers and their families would not be able to provide for themselves, a worst case scenario that undermines dignity and recovery. USCIS admits that if this proposed rule were to go into effect, asylum seekers could lose between $255.88 million and $774.76 million in taxable income per year.

PROPOSED ALTERNATIVE

Currently, the law requires that asylum seekers wait 180 days before being able to receive a work permit. By regulation, asylum seekers cannot submit their application for work authorization until their asylum applications have been pending for 150 days, which then requires that USCIS

process applications for work permits within a 30-day timeframe. Instead of expanding the processing time to address USCIS' concerned that the 30-day timeframe is too big a challenge for staff and resources, it could shorten the 150-day waiting period substantially. For example, by permitting asylum seekers to file their work permit applications after 60 days, USCIS officers would gain 120 days to review and process them, thereby creating more flexibility in their schedules and a much more manageable workload. Even better, this approach would be a net positive for local communities and the national economy, and it would support the recovery and integration of these new Americans.

Thank you for the opportunity to submit these comments. We appreciate your consideration. Please do not hesitate to contact Sarnata Reynolds, Director of Policy for the Immigration Hub. at [sarnata@theimmigrationhub.org](mailto:sarnata@theimmigrationhub.org) should you have any questions about our comments or require further information.

Sincerely,


Sarnata Reynolds
Director of Policy
The Immigration Hub

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-x94b
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2546
Comment Submitted by John Willshire, Greater Boston Legal Services

## Submitter Information

**Name:** John Willshire
**Address:**
  HIRC at GBLS
  197 Friend Street
  Boston,  ME,  02114
**Email:** jwillshire@law.harvard.edu
**Phone:** 617-515-3042

## General Comment

November 9, 2019

Submitted via www.regulations.gov

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

RE: Opposition to Proposed Federal Rule Removal of 30-Day Processing Provision for Form I-765 (c) (8) Employment Authorization Applications, CIS No. 2617-18 DHS Docket No. USCIS-2018-0001

Dear Ms. Deshommes:

I am a Lecturer of Law at Harvard Law School and Lead Attorney at Greater Boston Legal Services. I submit this comment in opposition to the Department of Homeland Securitys (hereinafter DHS) Notice of Proposed

AR005158

Rulemaking on Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019. I strongly oppose the proposed rule because of the devastating financial and social consequences that our clients and other asylum seekers will face as a result of delayed or stalled processing of their work authorizations if this rule goes into effect.

I. The Proposed Rule

Currently, asylum seekers whose asylum cases have been pending without a decision for at least 150 days are eligible to apply for an EAD (if the applicant has caused delays in their asylum case, they must wait longer). Pursuant to a regulation in place since 1994, USCIS is required to adjudicate the EAD application within 30 days of receiving it. Nonetheless, USCIS routinely failed to meet the deadline until July 2018, when a federal court hearing the case Rosario v. USCIS, No. C15-0813JLR (W.D. Wash), ordered the government to comply with the deadline. Since that time, USCIS has adjudicated 99% of initial EAD applications within 30 days. Prior to the courts ruling, USCIS adjudicated 47% of initial EAD applications within 30 days, an additional 31% of applications within 60 days, and 22% of applications in more than 60 days. One of the chief purposes of the 30-day deadline was to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible. (See p. 47153, fn. 11 of the Notice).

The proposed rule would make two changes. First, the proposed rule would remove the existing regulatory requirement that U.S. Citizenship and Immigration Services (USCIS) grant or deny an initial employment authorization application within 30 days of when the asylum seeker files the Form I-765, Application for Employment Authorization (EAD application). Second, the proposed rule would remove a provision requiring that an application for renewal be received by USCIS 90 days prior to expiration of the employment authorization.

It is very clear to me that the proposed rule will have a very severe and harmful affect on asylum seekers whom I and my office represents, as well as other asylum seekers throughout the U.S. The proposed rule change will permit DHS unlimited time to determine if and when asylum seekers will be issued work authorization, during which time asylum seekers will have no means of supporting themselves and be forced to wait indefinitely and survive on the charity of others. The harm caused will severely negatively affect their rights as asylum seekers under the Refugee Convention and persons under international human rights law (i.e. Convention of the Rights of Children and Covenant of Economic, Social and Cultural Rights). This
For the foregoing reasons, I respectfully request that the Department of Homeland Security abandon the proposed rule immediately.

Sincerely,


John Willshire Esq.
Lecturer on Law
Harvard Immigration and Refugee Clinic at
Greater Boston Legal Services
197 Friend St.
Boston, MA 02114
jwillshire@law.harvard.edu

AR005159

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-8d1p
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2547
Comment Submitted by Michael Hethmon, Immigration Reform Law Institute

---

## Submitter Information

**Name:** Michael Hethmon
**Address:**
    25 Massachusetts Ave. N.W.
    Suite 335
    Washington,  DC,  20001
**Email:** mhethmon@irli.org
**Phone:** 202-232-5590
**Submitter's Representative:** Michael Hethmon
**Organization:** Immigration Reform Law Institute

---

## General Comment

Please see the attached public comment (6 pages) of the Immigration Reform Law Institute (IRLI).

Summary: IRLI supports both proposed amendments to Employment Authorization Document (EAD) processing regulations for asylum applicants.

The three broad operational reasons discussed in the NPRM for removing a hard 30-day processing deadline are clear, lawful, and reasonable: (1) growth in asylum application backlogs; (2) the centralization of EAD document production to improve fraud screening; and (3) the added burdens of national security background screenings.

IRLI believes the agency has under-emphasized a fourth factor: the adverse effects of the injunction issued in Rosario v. USCIS. The collateral harm to Americas immigration enforcement system caused by this judicially-mandated redeployment of scarce and limited personnel and adjudication resources constitutes an independent and urgent justification for the NPRM.

The proposed removal of the 90-day deadline for EAD renewals correctly recognizes that the streamlining authorized under the 2017 AC21 Final Rule is adequate to identify and restrict automatic renewals for applicants whose asylum requests have been denied.

AR005160

# Attachments

DHS USCIS_IRLI Public Comment_30-Day Processing Provision for Asylum-Related EADs_FINAL_11-8-2019

AR005161



25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
202.232.5590 | 202.464.3590(fax)
www.irli.org

**Board of Directors**
Hon. Elizabeth A. Hacker (Ret.)
Hon. Mahlon F. Hanson (Ret.)
Jeffrey R. Parkin
Daniel A. Stein

**Executive Director
& General Counsel**
Dale L. Wilcox[1]

**Director of Litigation**
Christopher J. Hajec[2]

**Senior Counsel**
Michael M. Hethmon[3]
Ralph L. Casale[4]

**Staff Counsel**
Mark S. Venezia[5]
Lew J. Olowski[6]

**Director of Attorneys
United for a Secure America**
Lorraine G. Woodwark[7]

**Of Counsel**
John M. Miano[8]

*Founded in 1986, the Immigration
Reform Law Institute (IRLI) is a
public-interest legal education and
advocacy law firm dedicated to
achieving responsible immigration
policies that serve national
interests.*

*IRLI is a supporting organization
of the Federation for American
Immigration Reform.*

[1] Admitted in DC & IN
[2] Admitted in DC & PA
[3] Admitted in DC & MD
[4] Admitted in DC, VA, MD, NY, & CT
[5] Admitted in DC & VA
[6] Admitted in DC & MD
[7] Admitted in CA only; DC bar pending,
under supervision by Dale L. Wilcox
[8] Admitted in DC, NJ, & NY

November 8, 2019

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Ave. NW
Washington, DC 205290-2140

<u>VIA Federal eRulemaking Portal</u>

**DHS Docket No. USCIS-2018-0001: Public Comment of Immigration Reform Law Institute Regarding Removal of 30-Day Processing Provisions for Asylum Applicant-Related Employment Authorization Applications**

Dear Chief Deshommes:

The Immigration Reform Law Institute (IRLI) respectfully submits this public comment to the United States Citizenship and Immigration Service (USCIS) in response to the agency's notice of proposed rulemaking (NPRM) published in the Federal Register. 84 Fed. Reg. 47148 (Sept. 9, 2019).

IRLI is a non-profit public interest law organization that exists to defend individual Americans and their local communities from the harms and challenges posed by mass migration to the United States, both lawful and unlawful. IRLI works to monitor and hold accountable federal, state, and local government officials who undermine, fail to respect, or fail to comply with our national immigration and citizenship laws. IRLI also provides expert immigration-related legal services, training, and resources to public officials, the legal community, and the general public.

AR005162

**Summary**

IRLI supports both proposed amendments to Employment Authorization Document (EAD) processing regulations for asylum applicants.

The three broad operational reasons discussed in the NPRM for removing a hard 30-day processing deadline are clear, lawful, and reasonable: (1) growth in asylum application backlogs; (2) the centralization of EAD document production to improve fraud screening; and (3) the added burdens of national security background screenings. IRLI believes the agency has under-emphasized a fourth factor: the adverse effects of the injunction issued in *Rosario v. USCIS.* The collateral harm to America's immigration enforcement system caused by this judicially-mandated redeployment of scarce and limited personnel and adjudication resources constitutes an independent and urgent justification for the NPRM.

The proposed removal of the 90-day deadline for EAD renewals correctly recognizes that the streamlining authorized under the 2017 AC21 Final Rule is adequate to identify and restrict automatic renewals for applicants whose asylum requests have been denied.

**Comments and Analysis**

IRLI supports the decision of the Department of Homeland Security to amend 8 C.F.R. 208.7 ("Employment Authorization"). The NPRM would remove the existing requirements in clauses 208.7(a)(1) and 208.7(d), respectively, that: (1) a request for an employment authorization document (EAD) submitted by an applicant for asylum be granted or denied by USCIS within 30 days from the filing date of the employment authorization request; and (2) that an application for renewal be submitted no later than 90 days prior to expiration of the existing request. 84 Fed. Reg. 47148, 47170. The NPRM would amend USCIS regulations in full compliance with the procedures prescribed in 8 U.S.C. §1158(d)(2). By this process the agency has provided the fullest notice-and-comment opportunity available under the Administrative Procedure Act for amendments of regulations. *See* 5 U.S.C. § 553.

The analysis by the agency as to the need for the proposed rule change, its legality, and the reasonableness of the proposed amendments is persuasive. No statutory impediment exists to repeal of either the 30-day processing deadline or the 90-day renewal application deadline. The

INA is clear that while DHS must authorize an "alien *granted* asylum" (emphasis added) to "engage in employment in the United States and provide the alien with appropriate endorsement of that authorization," 8 U.S.C. § 1158(c)(1)(B), an "*applicant* for asylum" is "not entitled to employment authorization," 8 U.S.C. § 1158(d)(2). Congress delegated sole discretion to the Secretary of DHS to provide such authorization "under regulation," but imposed a time limitation on the exercise of that discretion, whereby "an applicant who is not otherwise eligible for employment authorization shall not be granted such authorization prior to 180 days after the date of filing of the application for asylum." *Id.*

The agency persuasively describes three significant factors that have imposed major operational strains on the EAD issuance process: (1) the massive growth in both defensive and affirmative asylum applications and adjudication backlogs, which has "grossly outpaced Service Center Operations resources," 84 Fed. Reg. 47154; (2) the Department of Homeland Security's ongoing conversion to centralized application processing and production of tamper-resistant documents; and (3) the expansion in national security-driven vetting requirements since the 9/11 attacks, *id.* The NPRM describes in convincing detail the operational basis for "extended adjudication and processing times for cases with potential eligibility issues discovered during background checks" that did not occur when the current 30-day deadline was implemented in 1994. 84 Fed. Reg. 47155.

However, there is a fourth factor whose adverse impact is not adequately conveyed in the NPRM executive summary: The scale of litigation-driven disruption to USCIS' management of its skilled force of EAD application reviewers. A federal district court in Seattle, Washington granted ongoing nationwide injunctive relief to a class of EAD applicants represented by several anonymous aliens. *See Rosario et al. v USCIS*, C15-813-JLR, Doc. Nos. 127 (Sealed Order) and 128 (Judgment by Court) (W.D. Wa July 26, 2018). In *Rosario*, the Seattle district court evidently compelled rigid literal compliance by USCIS with 8 C.F.R. § 208.7(a)(1)—the 30-day EAD processing deadline for asylum applicants--notwithstanding any of the agency's equally compelling need to delegate limited personnel or resources to the adjudication of numerous other immigration benefit and relief applications. 84 Fed. Reg. 47153.

The diversion of resources ordered by the *Rosario* court is impacting the status of millions of non-citizens, in large part lawfully-admitted non-immigrants, whose good-faith compliance with our nation's immigration laws ought to afford them priority in the allocation of limited agency adjudication resources. The entire case file—an essential part of the record on which the NPRM is based—remains (upon the motion of anonymous aliens) sealed and inaccessible for review by the public. Such secrecy undermines the intent and effectiveness of the APA. IRLI finds this opacity particularly harmful to the Secretary's core duties of "enforcement of … laws relating to the immigration … of aliens" and "to control and guard the boundaries and borders of the United States against the illegal entry of aliens … ." 8 U.S.C. §§ 1103(a)(1), (5), 84 Fed. Reg. 47149 (citing § 1103(a)). This unexplained (to the public) judicial intrusion into a field of long-standing executive prerogative is sufficiently adverse to the public interest to independently constitute good cause for the NPRM.

It is notable that the special interests and voluntary agencies (VOLAGs) who oppose the NPRM have not argued that it is *ultra vires* or in any way an abuse of agency regulatory authority. Rather, they simply complain that it is unfair to deny applicants the automatic access to employment and its benefits that Congress purposely limited only to successful asylees. For example, the Florence Immigrant and Refugee Rights Project claims in its comment that "the right to seek safety and protection in the United States is unequivocal."

That premise is simply untrue. Asylum is a discretionary grant by a generous nation. 8 U.S.C. § 1158(b)(1)(A). Commenters like the Florence Project or the Church World Service liken U.S. asylum law to a commons, where the public goods of legal residence can be exploited without limits, regardless of its ultimate unsustainability. "Decreasing access to the tools that allow asylum applicants to meet their basic needs … is undercutting that fundamental right [to protection in the United States]." Public comments of Florence Project, at 3.

Prior to the ongoing judicial micro-management of USCIS' limited adjudication resources under the *Rosario* injunction, the agency reports that it has been able to process less than half of all EAD applications from asylum applicants within the 30-day deadline. 84 Fed. Reg. 47156. However, 78% of EAD applications were completed within 60 days. *Id*. The concerns alleged by

commenters that "EAD applications from asylum seekers will be delayed indefinitely" are thus false. Public comments of the Florence Project, at 3.

Some commenters suggested that the solution is for USCIS to significantly expand its workforce to hire and train additional employment authorization adjudicators and dedicate them to processing EADs for asylum applicants. *See, e.g.,* public comments of Church World Service, at 1 ("DHS does not appear to be interested in hiring additional officers to deal with the backlog …."). What these proposals ignore is Congress' mandate that USCIS benefits processing costs must be funded through user fees. *See* 8 U.S.C. § 1158(d)(3), 8 U.S.C. § 1356.

Fees are not currently collected to process EADs for asylum applicants. But as the NPRM notes, earlier this year President Trump directed DHS to proposed new regulations to impose fees to cover the cost the cost of adjudicating applications. 84 Fed. Reg. 47149 (citing *Presidential Memorandum for the Attorney General and Secretary of Homeland Security on Additional Measures to Enhance Border Security and Restore Integrity to Our Immigration System* (April 29, 2019)). IRLI believes that the agency should not be compelled to arbitrarily adhere to a rigid and disruptive processing deadline for "guaranteed" 30-day asylum EAD processing, unless and until user-provided fee revenue is available to fully fund the needed dedicated agency personnel and resources.

### Elimination of the 90-Day Renewal Application Deadline

IRLI does not oppose the second proposed amendment, to eliminate the current 90-day EAD renewal application deadline. As the NPRM explains, the 2017 AC21 Final Rule amended 8 CFR 274a.13 to provide for the automatic extension of valid existing EADs up to 180 days for a variety of renewal applicants. 84 Fed. Reg. 47150.

IRLI believes the three pre-conditions in the 2017 Rule for automatic extension eligibility will adequately ensure that renewal applications are not automatically granted to applicants whose asylum applications since have been denied. Namely, these are the preconditions that the request: (1) is properly filed before the expiration date; (2) is based on the same status classification as the expiring EAD; and (3) is pursuant to a status classification that does not require adjudication of an underlying application or petition.

Respectfully submitted,

Immigration Reform Law Institute

*By* Michael M. Hethmon, Senior Counsel

AR005167

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-8ga1
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2548
Comment Submitted by Shaleen Morales

---

## Submitter Information

**Name:** Shaleen Morales

---

## General Comment

Delays in asylum seekers getting their work authorization (Employment Authorization Document or "EAD") approval can lead to:
- Lost income to the asylum seeker and their family
- Food insecurity
- Inability to secure a valid ID. A work permit and a social security number (SSN) are often necessary requirements to applications for a state ID.
- Risk of homelessness/housing insecurity
- Inability to access health insurance (most state ACA health exchanges require a SSN and work authorization materials to qualify)
- Vulnerability to exploitation, trafficking, and underground economy risks
- Lack of access to community service agencies, shelters, and social service programs (many of whom require some form of valid ID, proof of residency, or proof of income)
- Loss of ability to support themselves and their families, and
- Feelings of fear, desperation, and overall mental health concerns.

The proposed change puts millions at risk. First, the rule change affects the most vulnerable populations. Asylum seekers need help and assistance so they are able to contribute to our community. Asylum seekers would lose wages and benefits as a result of this delay putting a strain on them, their families and the U.S. community. USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per yer. This puts people at risk to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increases the risk for asylum seekers to become a public charge.

Second, the government would lose tax revenue as a result. USCIS projects a loss of $39.15 million to $118.54 million per year because a delay in work authorization will ultimately prevent asylum seekers and employers from contributing into the system the U.S. government is attempting to "protect."

AR005168

Additionally, the law is currently written to require asylum seekers to wait 180 days before they may be granted authorization to work. They are permitted to submit their application after 150 days, giving USCIS the 30-day timeframe in question to process the requests. If USCISs goal is to have more time to process each request in order to increase flexibility and free up resources to work on other applications, then it could easily shorten the waiting time before asylum-seekers are allowed to submit their application. If USCIS feels that a 60-day timeframe would be more beneficial, then it may allow applications to be submitted after 120 days, rather than 150. Allowing asylum-seekers to submit their applications earlier could allow the department to have up to 180 days to process and properly vet each individual while reducing the risk of harm to each applicant.

Finally, USCIS has reported that it has been able to decide over ((% of EADs within the 30-day timeframe for over the past year. USCIS has proven its ability to adequately vet the amount of requests in a timely fashion. The need for a speed process is compounded by the fact that EAD applicants are people already residing in the U.S. If vetting must be done to prevent security risks, then having people unvetted living in the U.S. is contrary to the department's states interests.

AR005169

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-mcg1
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2549
Comment Submitted by Jaime Langton

---

## Submitter Information

**Name:** Jaime Langton

---

## General Comment

Currently asylum seekers are not eligible to receive employment authorization unless their application has been pending for 180 days or more. Asylum seekers can apply for employment authorization at the 150 day mark. If DHS is truly concerned about fraud and/or security and wants to eliminate the 30 day processing requirement, why not also make it possible to submit the application for employment authorization sooner? For example, if DHS needs 60 days to review biometrics, it could also allow asylum seekers to apply for employment authorization at 120 instead of 150 days. It is also important to remember that giving employment authorization has no bearing on the merits of a person's asylum claim. It is an ancillary benefit to the application. Further, delaying employment authorization has nothing to do with, as others have commented, "securing borders." Also, it is important to keep in mind that, if asylum seekers are allowed to accept employment, they will also be paying taxes. USCIS admits that it projects a loss of revenue in the amount of $39.15 million to $118.54 million because delayed employment authorization will also prevent asylum seekers and their employers from contributing to medicaid and social security. Finally, thee national security argument seems tenuous considering USCIS also reported that it was able to adjudicate roughly 99% of these employment authorizations within 30 days as required by law last year. It is unclear why then now need additional time when they claim they adjudicated almost all employment authorization applications within the required timeframe last year.

AR005170

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-p325
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2550
Comment Submitted by Deborah Dyson

---

## Submitter Information

**Name:** Deborah Dyson

---

## General Comment

I am a retired immigration lawyer. During my practicing days, I represented many asylum seekers, mostly in immigration court; since retiring almost five years ago, I have volunteered with various nonprofits, representing people before the Asylum Office. In my experience, asylum seekers are amazingly resilient & resourceful people: needing to get out of home countries that were no longer safe for them, they made it here somehow, and they are making it here somehow. And they don't expect much, just the security that was lacking at home and an opportunity to get by - to provide for their kids and contribute to their communities. Why wouldn't we want them to be authorized to work as soon as possible and for as long as it takes to decide their claims? I don't remember ever meeting an asylum seeker who had a big bank account to rely on - they need to work. Delaying work authorization forces them to work illegally to survive, and that means they are vulnerable to exploitation. The paperwork for work authorization is not elaborate, not particularly burdensome. The government should be obliged to process work authorization within 30 days; long delays are gratuitously cruel and totally counter-productive.

AR005171

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-xodh
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2551
Comment Submitted by Emily Correll

---

## Submitter Information

**Name:** Emily Correll

---

## General Comment

This particular change does not seem to make sense. The asylum seekers I have known want to be self-supporting as soon as they can. This seems to fly in the face of the need to have people working to be self-supporting as soon as possible. The immigrants I know want to work hard at whatever jobs are available to them. This would seem to contradict the need to keep people off public assistance.

AR005172

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-6k3a
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2552
Comment Submitted by Dave Powell

## Submitter Information

**Name:** Dave Powell
**Address:**
   CA,
**Email:** davep0456@yahoo.com

## General Comment

I feel that any new delays i the issuance of work permits creates special financial herd ships on people who are emigrating to the USA.

The sooner people can receive a work permit, the sooner they can obtain employment and the sooner they can be assimilated into our culture

AR005173

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2552.html[9/15/2020 4:15:12 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-4juh
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2553
Comment Submitted by Francis Johnson

---

## Submitter Information

**Name:** Francis Johnson
**Address:**
   7-8 Rolling Hills
   Lenox, MA, 01240
**Email:** frankj0609@gmail.com
**Phone:** 7818013494

---

## General Comment

Dear Sirs and Madams:

I am contacting you regarding the proposed regulation that would eliminate the 30-day deadline within which U.S. Citizenship and Immigration Services is required to adjudicate requests for employment authorization by applicants for political asylum. I wish to state my unqualified opposition to such regulation.

I was a U.S. immigration officer with the former Immigration and Naturalization Service for 15 years. I then practiced U.S. immigration law with a small immigration firm, during which time I served for ten years as an adjunct faculty member with an accredited and long-established law school, teaching Immigration Law. After 29 years, I retired from the practice of law two years ago, although I continue to represent an asylum-seeking family from Central America on a pro bono basis. The primary client is the mother of two young children; Mom has an employment authorization document, duly issued by USCIS. Without the ability to work, this woman would simply not be able to support her family. She is a taxpayer. And, for what it's worth, she works as a hotel housekeeper in a large metropolitan area, a job few American citizens care to take.

The proposed regulation to do away with the 30-day time period to adjudicate EAD requests by asylum seekers is wholly unwarranted. It appears to yet another way for this Administration to restrict and discourage lawful immigration to teh United States. And let's not forget that political asylum is a lawful means of immigration.

Sincerely,

AR005174

Francis E. Johnson
Lenox, MA 01240

AR005175

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-t2k3
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2554
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

This is an absurd proposal. Humane reasons aside, 1. USCIS admits that all levels of government will lose tax revenue as a result of the proposed rule change. USCIS projects a loss of $39.15 million to $118.54 million per year because delayed work authorization will prevent asylum seekers and their employers from contributing to Medicare and social security. 2. USCIS has reported that it has been able to decide over 99% of EADs within the 30-day timeframe for over the past year. Therefore, USCIS has proven its ability to adequately vet the amount of requests in a timely fashion. This is yet another attempt by the Trump administration to act in xenophobic manner and it is disgusting.

AR005176

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-j3ai
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2555
Comment Submitted by Kathryn Thornton, Ropes & Gray LLP

## Submitter Information

**Name:** Kathryn Thornton
**Address:**
    Washington,  DC,
**Email:** kathryn.c.thornton@gmail.com

## General Comment

Dear Ms. Deshommes,

I, through my employer Ropes & Gray LLP, have provided pro bono legal services to indigent asylum seekers.
For all of these clients, we submitted Employment Authorization Document (EAD) applications. I submit these
comments in opposition to the Proposed Rule Removal of 30-Day Processing Provision for Form I-765 (c)(8)
Employment Authorization Applications (Sep. 9, 2019), DHS Docket No. USCIS-2018-0001 (hereinafter, the
Rule). The Rule would eliminate the requirement that DHS adjudicate initial requests for employment
authorization by asylum applicants within 30-days of filing.

The Rule will have significant and long-lasting negative effects on the ability of my asylum clients to support
themselves and their loved ones while they are waiting for their claims to be heard. By definition, an asylum
seeker is an individual who has suffered grave harm, including torture and sexual violence on account of a
statutory protected ground, and who flees his or home country with very few possessions and little support or
financial resources. Asylum seekers turn to the U.S. for a safe haven and protection. This rule to eliminate the
30-day processing time for work authorization will undermine asylum seekers abilities to sustain themselves.
The proposed rule change will allow DHS to have unlimited time to decide if and when asylum seekers will be
issued work authorization, during which time asylum seekers would have no means of supporting themselves and
be forced to wait and survive on the charity of others. The Rule will only compound the devastating delays that
many asylum seekers face. DHS, which suffers backlogs in almost every benefit category, will have no incentive
to issue a prompt decision.

Further the Rule is not in the economic interest of the United States which benefits greatly from the contributions
of refugees and asylum seekers. It compounds the impact of the already lengthy 180-day waiting period before

AR005177

asylum seekers are eligible for work authorization and is unnecessary given that DHS has shown itself capable of near complete compliance with the 30-day adjudication requirement. DHSs argument that the proposed rule is due in part to fraud concerns is contradictory since DHS should want to expedite EAD determinations and quickly vet applications, as it currently does, to detect and investigate any concerns about applications rather than create extensive delays.


Sincerely,
Kathryn C. Thornton

AR005178

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-7ul3
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2556
Comment Submitted by Elizabeth Foydel, International Refugee Assistance Project

## Submitter Information

**Name:** Elizabeth Foydel
**Submitter's Representative:** Elizabeth Foydel
**Organization:** International Refugee Assistance Project

## General Comment

see attached

## Attachments

IRAP Comment - DHS Docket No. USCIS-2018-001 - Asylum EAD - 8 Nov 2019

AR005179



Samantha Deshommes

Chief, Regulatory Coordination Division

Office of Policy and Strategy

U.S. Citizenship and Immigration Services, Department of Homeland Security

20 Massachusetts Avenue NW

Mailstop #2140

Washington, D.C. 20529-2140

DHS Docket No. USCIS-2018-0001

84 F.R. 47148

**Re: Notice of Proposed Rulemaking and Request for Comment on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications**

November 8, 2019

**To Whom It May Concern:**

The International Refugee Assistance Project respectfully submits the following comments to the Department of Homeland Security's Notice of Proposed Rulemaking and Request for Comment on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. DHS-2018-0001, 84 F.R. 47148, issued September 9, 2019.

**Interest in the Proposed Rule**

The International Refugee Assistance Project (IRAP) provides comprehensive legal services to refugees and displaced persons. Since our establishment, we have provided legal assistance to thousands of displaced persons seeking legal pathways from conflict zones to safe countries. IRAP provides pro bono legal representation, legal advice, and expert referrals to refugees all over the world.

One Battery Park Plaza, 4th Floor, New York, NY 10004

refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005180



IRAP's goal is to ensure that available services and legal protections go to those who are most in need. Our clients include LGBTI individuals, religious minorities subject to targeted violence, survivors of sexual and gender-based violence, children with medical emergencies for which local treatment is not available, and interpreters being hunted down by the Islamic State, militias, and the Taliban in retaliation for their work with the United States and NATO. Our clients also include individuals who are seeking asylum in the United States and individuals in the United States who are seeking family reunification with members of their family still outside of the country.

**Department of Homeland Security Notice**

On September 9, 2019, the Department of Homeland Security (DHS) published a Notice of Proposed Rulemaking ("NPRM") on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications ("the Rule"), DHS Docket No. USCIS-2018-0001, in the Federal Register at 84 F.R. 47148.[1]

The Rule would remove the existing regulatory requirement that U.S. Citizenship and Immigration Services (USCIS) grant or deny an initial employment authorization application within 30 days of when the asylum-seeker files the Form I-765, Application for Employment Authorization (EAD application). The Rule would also remove a provision requiring that an application for renewal be received by USCIS 90 days prior to expiration of the employment authorization.[2]

Currently, asylum-seekers whose asylum cases have been pending without a decision for at least 150 days, not including "any delays caused or requested by the applicant," are eligible to apply for an EAD.[3] Pursuant to 8 CFR 208.7(a)(1), a DHS regulation in place for more than two decades, USCIS is required to adjudicate initial EAD applications within 30 days of when the applicant files a

---

[1] Notice of Proposed Rulemaking and Request for Comment on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-001, 84 F.R. 47148, September 9, 2019, https://www.govinfo.gov/content/pkg/FR-2019-09-09/pdf/2019-19125.pdf ["Notice"].
[2] Notice at p. 47148.
[3] Notice at p. 47160.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005181



Form I-765.[4] One of the "chief purposes" of the 30-day deadline was "to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible."[5]

However, USCIS routinely failed to meet this required timeframe until July 2018, when a federal court ordered the government to comply in *Rosario v. USCIS* ("*Rosario*").[6] In FY 2017, prior to the *Rosario* ruling, the government adjudicated 47% of initial EAD applications within 30 days, an additional 31% of applications within 60 days, and 22% of applications in more than 60 days.[7] Since the *Rosario* ruling, the government has adjudicated 99% of initial EAD applications within 30 days.[8] If USCIS requires additional documentation from an applicant, the agency can send a request for evidence (RFE), which in turn pauses the clock on the 30-day timeframe.[9]

Although DHS has been able to process these applications within the 30-day timeframe post-*Rosario*, DHS says that in order to comply with the court's order it has been forced to "redistribute[] its adjudication resources," and the proposed elimination of the 30-day requirement would allow those redistributed resources to be reallocated, "potentially reducing delays in processing of other applications, and avoiding costs associated with hiring additional employees."[10]

The Rule would not only remove the 30-day timeline for adjudicating EAD applications, but also fail to substitute any timeframe at all. Although USCIS has been able to adjudicate nearly 100% of applications within the 30-day timeframe following the court's mandate in *Rosario*, indicating that

---

[4] Notice at p. 47153, footnotes 10-11 (citing to "Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization," 62 F.R. 10318, Dec. 5, 1994).

[5] Notice at p. 47153, footnote 11 (citing to "Inspection and Expedited Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 F.R. 10312, 10337, Mar. 6, 1997).

[6] *Rosario v. USCIS*, No. C15-0813JLR (W.D. Wash).

[7] Notice at p. 47162.

[8] *Rosario v. USCIS*, Document No. 146-1, Compliance Report, "United States Citizenship and Immigration Services (USCIS) I-765 - Application for Employment Authorization Eligibility Category: C08, Pending Asylum, Initial Permission to Accept Employment, Completions by Processing Time Buckets, FY15 - FY19 (Through June 30, 2019) Aggregated by Fiscal Year and Month," Aug. 6, 2019, *available at* https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf ["*Rosario* Compliance Report"].

[9] Notice at p. 47160.

[10] Notice at p. 47150.

One Battery Park Plaza, 4th Floor, New York, NY 10004

refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005182



the agency is capable of adjudicating under the 30-day deadline, DHS decided to "propose[] to remove any processing timeframe"[11] at all, because "[m]aintaining any adjudication timeframe for this EAD would unnecessarily constrict adjudication workflows."[12]

Whatever time the agency takes for processing is in addition to the at least 150 days an asylum-seeker must already have waited on their pending asylum application in order to be eligible to legally work in the United States.

In the NPRM, DHS estimates the cost of the proposed rule change as $255.88 million to $774.76 million annually in lost compensation to asylum applicants and $39.15 million to $118.54 million annually in losses to the federal government in the form of lost contributions to Medicare and Social Security.[13] DHS does not estimate many other potential costs, including losses to businesses that currently employ asylum-seekers, losses to asylum-seekers' families and networks, losses to organizations that provide services to asylum-seekers, and losses to federal, state, and local governments in the form of lost income tax.

The proposed Rule would likely significantly delay many asylum-seekers' work authorization, and fails to provide appropriate explanation for the change, consider reasonable alternatives, or consider the full impact of the Rule on a variety of stakeholders. The Rule would prevent people already traumatized by the persecution they fled in their country of origin from being able to fulfill subsistence needs and to access healthcare, legal counsel, and drivers' licenses. If these asylum-seekers are unable to provide for themselves and their families, the charities and organizations that provide aid and/or services to them will likely be forced to raise additional resources to meet the increased demand for their services. If asylum-seekers are delayed in entering legal employment, cities, states, and the federal government could lose significant annual tax revenue, and private businesses will experience financial losses when they cannot find labor for positions that asylum-seekers would have filled. Pushing more asylum-seekers into the shadow economy will also obstruct the Department of Labor from fulfilling its mission. USCIS has already

---

[11] Notice at p. 47166.
[12] Notice at p. 47167.
[13] Notice at p. 47150.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005183



demonstrated its ability to adjudicate these work authorization applications in a timely manner, and should continue applying a 30-day timeframe.

I.   **The proposed Rule will delay, likely for a substantial amount of time, adjudication of initial EAD applications from asylum-seekers.**

The NPRM recognizes that the proposed Rule will delay adjudication of initial EAD applications from asylum-seekers, and assumes that the pre-*Rosario* 2017 adjudication timeframes would apply.[14] In other words, the Notice suggests that after waiting a minimum of 150 days to file an EAD application, the majority of asylum-seekers' applications would not be adjudicated until an additional 60 days had passed and nearly one-quarter of EAD applications would still be pending for more time still – *i.e.*, after the asylum-seeker had waited for a total of 210 days (150 + 60).[15]

While even based on the agency's estimates, the proposed Rule would result in substantial processing delays, the agency underestimates the extent of the delay likely to result from the Rule. First, as the agency notes, "the number of initial [asylum] applicants and renewals has risen sharply over the last five years" in conjunction with the increase in applications for asylum.[16] Nonetheless, the agency assumes that going forward, the rate of initial EAD applications will stop increasing and flatline – based only on speculation about the impact of various asylum-related policies.[17]

The agency makes contradictory statements regarding the current pipeline of EAD applications and likely outcome if the proposed Rule is adopted. On the one hand, DHS proposes this role because it faces "a historic asylum application backlog, which in turn increases the numbers of applicants eligible for pending asylum EADs."[18] On the other hand, the NPRM states that "USCIS…assumes that if this proposed Rule is adopted, adjudications will align with DHS processing times achieved in FY 2017 (before *Rosario v. USCIS* court order),"[19] even though the

---

[14] Notice at p. 47162.
[15] Notice at p. 47162, Table 9.
[16] Notice at p. 47161-62 & Table 8.
[17] Notice at p. 47162.
[18] Notice at p. 47149.
[19] Notice at p. 47149.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005184



International Refugee
Assistance Project

agency states that the volume of applications has significantly increased from FY 2017. The agency considered and rejected an alternative 90-day timeframe on the basis that 90 days "would not provide USCIS with the certainty and flexibility it needs,"[20] suggesting that the agency anticipates taking significantly longer than 30 days to process applications for work authorization.

Even if the number of initial EAD applications were to flatline, processing times would remain the same only if USCIS devoted the same number of personnel hours to processing, and there is no indication in the NPRM that it would do so. Indeed, as the USCIS Ombudsman noted in her 2019 Report to Congress, the number of agency "production hours" spent on EAD adjudication has been steadily declining since FY 2016.[21] The last time DHS eliminated a processing deadline (the 90-day processing deadline for most EAD applications), processing times surged, with approximately half of applications requiring more than 90 days to adjudicate and a substantial percentage requiring more than 9 months.[22] This delay came despite the fact that USCIS stated when the deadline was eliminated that it "remained 'committed to the current 90-day processing goal'" and "would be 'unable to adjudicate applications within 90 days in only a small percentage of cases.'"[23] Notably, the increasing processing delays mostly predated the *Rosario* decision in the final quarter of FY 2018 and thus were unrelated to any reallocation of agency resources in response to the court order.[24]

Because the agency underestimates the amount of processing delays likely to result from the proposed Rule, its cost calculations are incorrect, understating even those costs that the NPRM estimates to asylum-seekers and to the federal government.

---

[20] Notice at p. 47167.
[21] Citizenship and Immigration Services Ombudsman, "Annual Report 2019," July 12, 2019, at p. 81, Figure 5.11, https://www.dhs.gov/sites/default/files/publications/dhs_2019_ombudsman_annualreport_verified.pdf ["USCIS Ombudsman's Report"].
[22] USCIS Ombudsman's Report at p. 80 & Figure 5.10.
[23] USCIS Ombudsman's Report. at p. 77 (quoting Department of Homeland Security, Notice of Proposed Rulemaking, "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 80 F.R. 81899, 81929 (Dec. 31, 2015)).
[24] USCIS Ombudsman's Report at p. 77.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005185



International Refugee
Assistance Project

## II.     The agency's stated purposes fail to explain its proposed rule change.

As an initial matter, DHS explains its reasons for proposing the rule change as follows: (1) "the increased volume of affirmative asylum applications and accompanying Applications for Employment Authorization," (2) "over two decades of changes in intake and EAD document production," and (3) "the need to appropriately vet applicants for fraud and national security concerns."[25] Each of these reasons fails to explain the proposed rule change.

To the extent the agency is concerned about the growing number of asylum applications and accompanying EADs, eliminating the 30-day timeframe will only increase the burden on the agency. It will necessarily increase the backlog confronting the agency, which will cause each application to take longer to process, as the USCIS Ombudsman explained in her 2019 Report to Congress, which noted the "'domino' impact" that an increasing backlog can have on processing times, "lead[ing] to each [application] taking longer to process."[26] The Ombudsman noted that USCIS has suffered from insufficient EAD staffing for years, and even before the July 2018 *Rosario* decision, "it was apparent that USCIS did not have sufficient staff to handle the volume in some of the I-765 adjudication lines (perhaps all adjudication lines)" and "[p]rocessing times had already slowed in all I-765 categories."[27]

Indeed, USCIS' own data shows that just as the number of EAD applications was growing in FY 2017, the amount of hours agency staff spent adjudicating EAD applications *was substantially declining*. Specifically, the number of hours the agency spent on adjudicating EAD applications ("production hours") dropped by more than 10 percent in FY 2017,[28] just as the number of EAD applications increased by nearly 10 percent.[29] The number of production hours declined again in

---

[25] Notice at p. 47155 ("In sum, DHS is proposing to eliminate the 30-day processing provision at 8 CFR 208.7(a)(1) because of the increased volume of affirmative asylum applications and accompanying Applications for Employment Authorization, over two decades of changes in intake and EAD document production, and the need to appropriately vet applicants for fraud and national security concerns.").
[26] USCIS Ombudsman's Report at p. 80.
[27] USCIS Ombudsman's Report at p. 81.
[28] USCIS Ombudsman's Report at p. 81, Figure 5.11 (622,918 - 551,761.75 = 71,156.25; 71,156.25 / 622,918 = 11.4%).
[29] USCIS Ombudsman's Report at p. 75, Figure 5.4 (2,370,000 - 2,170,000 = 200,000; 200,000 / 2,170,000 = 9.2%).

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005186



International Refugee
Assistance Project

FY 2018.[30] Unsurprisingly, the result has been "a marked increase in the percentage of unadjudicated filings in inventory pending 3 months or longer since 2016" – even before the *Rosario* court's order.[31] It is little wonder that the USCIS Ombudsman identified "insufficient staffing" as one of the "main factors" leading to growing processing times for EAD applications,[32] and the Ombudsman recommended that the agency "[a]ugment USCIS' staffing resources to enable [the agency] to devote more production hours to EAD processing," and specifically advised against "simply realign[ing] existing staffing resources" given the existing backlogs.[33]

Second, while DHS states that "over two decades of changes in intake and EAD document production" have made the 30-day deadline from March 1997 untenable,[34] the only intake and production changes identified in the NPRM were introduced in January 1997[35] – *before* the 30-day adjudication deadline was codified in the regulation. Those changes were then "fully implemented" 13 years ago in 2006.[36] There is no indication that USCIS struggled to adjudicate applications in the mid-2000s after the changes were fully implemented. Nor is there any indication that DHS or USCIS struggled to meet their "core mission" after the changes were fully implemented. Indeed, centralizing application filing locations and card production would logically appear to maximize efficiency and decrease processing time, and the agency does not explain why the contrary result would be expected. And, of course, since the *Rosario* order in July 2018, the agency has succeeded in processing 99% of applications within the 30-day timeframe,[37] demonstrating that it is capable of doing so if it devotes sufficient resources.

Third, while the agency claims that it "has been unable to meet the 30-day processing timeframe in certain cases due to changes to the agency's vetting procedures and increased background checks," the only changes it identifies were implemented in response to the September 11, 2001

---

[30] USCIS Ombudsman's Report at p. 75, Figure 5.4.
[31] USCIS Ombudsman's Report at p. 80.
[32] USCIS Ombudsman's Report at p. 80.
[33] USCIS Ombudsman's Report at, p. 84.
[34] Notice at p. 47155.
[35] Notice at p. 47154 n. 17 ("In January 1997, the former INS began issuing new, more secure EADs from a centralized location").
[36] Notice at p. 47154 & n.17.
[37] *Rosario* Compliance Report.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005187



attacks[38] – nearly 20 years ago. The only changes the agency identifies that are associated with specific dates are the creation of the Application Support Centers; the creation of the Office of Fraud, Detection and National Security; and the Homeland Security Presidential Directive – all of which occurred 15 years ago in 2004.[39] As above, there is no indication that USCIS struggled to adjudicate applications in the mid-2000s after the changes were fully implemented, or that DHS or USCIS struggled to meet their "core missions" after the changes were fully implemented. And, as above, the agency has processed 99% of applications within the 30-day timeframe ordered by the *Rosario* court, and has not alerted the court to any unique problems posed by completing security vetting within that timeframe.

Notably, the USCIS Ombudsman's 2019 Report to Congress included a 15-page section devoted to challenges USCIS was facing with "timely adjudication" of EAD applications, and the section failed to identify any issues resulting from intake and production changes or security and vetting changes.[40] Rather, the Ombudsman identified processing delays as the result of insufficient staffing, increased volume of EAD applications, and problems with the data management system, the latter of which have since been "solved" by a long-planned conversion of the database in February 2018 which provided "immediate relief in terms of time-savings on EAD adjudications."[41]

## III. The agency has failed to consider reasonable alternatives to the proposed Rule.

The agency does not consider reasonable alternatives to address the stated concerns motivating the proposed Rule. For example, the agency could:

---

[38] Notice at p. 47154-55.
[39] Notice at p. 47154.
[40] USCIS Ombudsman's Report at p. 70-84.
[41] USCIS Ombudsman's Report at p. 81-82.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005188



International Refugee
Assistance Project

**A.  Hire more officers and introduce a stop-clock for applications referred to the Background Check Unit and the Service Center Fraud Detection Operation.**

First, the agency failed to consider the most obvious alternative to the proposed Rule and that which USCIS' own Ombudsman strongly recommended in the 2019 Report to Congress: augmenting staff to enable more production hours to be devoted to EAD processing.[42] The USCIS Ombudsman's Report recommending augmenting staffing was published in July 2019, but the NPRM fails to even acknowledge USCIS' own Ombudsman's recommendation, let alone address why it did not consider hiring more officers. Rather, the NPRM states that while USCIS "could hire more officers," it has failed to estimate such costs.[43]

To the extent the agency addresses hiring at all, its analysis fails to explain why it did not consider this reasonable alternative. The agency notes that hiring "would not immediately and in all cases shorten adjudication timeframes" given that "additional time would be required to onboard and train new employees" and "for certain applications, additional time is needed to fully vet an applicant, regardless of staffing levels."[44] With respect to the first point about immediacy of the solution, it is hard to imagine that the rulemaking process – which at a minimum requires drafting the NPRM and undertaking the necessary agency and inter-agency reviews, a 60-day comment period, time to review and consider the comments, and a 60-day period before the final rule can go to effect – is any faster than hiring and onboarding new officers. As to the second point about vetting, the agency does not explain why it did not consider the simple option of adding a stop-clock for the small percentage of applications[45] referred to the Background Check Unit (BCU) and Service Center Fraud Detection Operation (CFDO), akin to the stop-clock currently in place for applications that require Requests for Evidence (RFEs). Just as a Request for Evidence pauses the 30-day processing timeframe until additional documentation is received,[46] a new stop clock for

---

[42] USCIS Ombudsman's Report at p. 84.
[43] Notice at p. 47164.
[44] Notice at p. 47164.
[45] The agency's FY 2017 data suggests that 16% of approved EAD applications required some additional vetting. *See* Notice at p. 47162, Table 9.
[46] Notice at p. 47160.

10

AR005189



BCU and CFDO referrals could pause processing from the time of referral until additional information is received from BCU and/or CFDO.

**B. Eliminate the current 150 day period asylum-seekers currently must wait before filing their EAD applications.**

As discussed in the Maine Business Immigration Coalition's comment,[47] to the extent the agency is motivated by a concern about having more time to adjudicate applications, another reasonable alternative would be to eliminate the current regulation-imposed waiting period for asylum-seekers to file their initial EAD applications. By statute, asylum-seekers would remain ineligible for an EAD until their asylum cases had been pending for at least 180 days, but USCIS would then have 600% more time to adjudicate initial EAD applications – including those that required additional vetting.

**IV. As a result of the increased time-frame for adjudication of their work authorization applications, vulnerable asylum-seekers will be unable to meet their basic needs and the demands of their U.S. asylum cases.**

Extended periods of unemployment leave asylum-seekers unable to provide for themselves and their families – and create additional obstacles to accessing healthcare, obtaining legal counsel for their asylum applications, and obtaining drivers' licenses. Without the ability to work legally, asylum-seekers may also be forced to turn to the shadow economy, where they are at risk of exploitation and further trauma.

As one IRAP client currently seeking asylum has said, waiting for work authorization is "a really crazy time when you have no source of income, how about your medical situation? your food? the place you'll live?" Our client stated that if she did not have someone helping her, "I would end up

---

[47] Maine Business Immigration Coalition, Public Comment, "Re: USCIS 2018-0001: Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications," Oct. 30, 2019, *available at* https://www.regulations.gov/document?D=USCIS-2018-0001-0078 ["Maine Business Immigration Coalition Comment"].

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005190



in the streets. If you don't have work authorization or an ID from the government, basically nobody recognizes you as a real person here."

A.  **Asylum-seekers delayed in entering the workforce will be unable to afford food and shelter for themselves and their families.**

DHS notes in proposing the Rule that the lost compensation to asylum applicants could range from $255.88 million to $774.75 million annually,[48] but a figure alone cannot capture the magnitude of such loss of income to asylum-seekers who have already been unable to work for at least 180 days, and often since they fled their country of origin.

Forced to flee to escape persecution, asylum-seekers must abandon – usually abruptly – their homes, possessions, and livelihoods. What savings they have might be used to finance the journey to a safe country, leaving many with little to live on when they arrive.[49] Until an asylum-seeker is either granted asylum or work authorization, they are eligible for few, if any, social service benefits in the United States.[50]

Every day without work thus renders asylum-seekers less able to afford basic necessities like housing, transportation, and food for themselves and their families. Without proof of a stable income, asylum-seekers have difficulty finding a landlord willing to rent them housing. Already living with the trauma of what they have fled, asylum-seekers – including children, the elderly, and those living with disabilities or serious health conditions – are especially vulnerable to the fresh trauma of extreme poverty in the United States, from food insecurity to homelessness.

A Human Rights Watch report describes the case of Khaled, an asylum-seeker who was unable to afford stable housing and had to try to find a place to sleep in bus stations and airports with his

---

[48] Notice at p. 47150
[49] *See, e.g.*, Sarah R. Sherman-Strokes, The Conversation, " Charging asylum application fees is the latest way the US could make immigrants pay for its red tape," May 13, 2019, https://theconversation.com/charging-asylum-application-fees-is-the-latest-way-the-us-could-make-immigrants-pay-for-its-red-tape-116404.
[50] Human Rights Watch, " 'At Least Let Them Work': The Denial of Work Authorization and Assistance for Asylum Seekers in the United States," 2013, at p. 15, *available at* https://www.refworld.org/docid/5285fc0c4.html ["Human Rights Watch Report"].

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005191


wife and two young children. Another asylum-seeker in the report, Maria, was forced to bounce between the homes of distant relatives with a child and a newborn baby, dependent upon them for shelter and having to move when a relative became fed up with providing for her and her children.[51]

Lack of a fixed address or transportation can also obstruct asylum-seekers from receiving notification of, and being present at, immigration court dates[52] – and missing those court dates can jeopardize their asylum cases. When an asylum-seeker fails to appear at any immigration court hearing, the immigration judge can order them removed *in absentia* – meaning that they could be deported to their country of origin, despite having passed a credible fear interview demonstrating their fear of being persecuted if returned to their country, rather than remaining in the United States with an opportunity to finish presenting their case for asylum.[53]

> **B. Asylum-seekers will be unable to access necessary physical and mental healthcare.**

So long as their work authorization is delayed, asylum-seekers can access neither employer-sponsored health insurance plans, nor self-financed healthcare, nor most government-funded social and medical benefits in the United States.[54]

---

[51] Human Rights Watch Report at p. 32.

[52] Obed Manuel, *Dallas Morning News*, "Almost 100% of asylum-seeking families with legal aid are showing up to court, analysis finds," June 19, 2019, https://www.dallasnews.com/news/immigration/2019/06/19/almost-100-of-asylum-seeking-families-with-legal-aid-are-showing-up-to-court-analysis-finds/.

[53] *See* the Asylum Seeker Advocacy Project at the Urban Justice Center and the Catholic Legal Immigration Network, Inc., "Denied a Day in Court: The Government's Use of In Absentia Removal Orders Against Families Seeking Asylum," 2018, at p. 10, https://asylumadvocacy.org/wp-content/uploads/2018/04/Denied-a-Day-in-Court.pdf (citing to INA § 240(b)(5), 8 U.S.C. § 1229a(b)(5) ("Any alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . .)).

[54] Human Rights Watch Report at p. 16(citing the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, P.L. 104-193, categorizing asylum-seekers as "nonqualified" immigrants and explicitly excluding them from eligibility for many social welfare benefits).

AR005192



According to data analysis by the United States Census Bureau published in 2017, employer-based health insurance covered 55.7% of the U.S. population for some or all of the calendar year.[55] Without employment, an asylum-seeker cannot obtain health insurance through the workplace, and, without an income, will typically be unable to purchase private health insurance or cover the cost of healthcare out-of-pocket. Asylum-seekers only become eligible to access affordable healthcare through Marketplace coverage, for example, only if they are (a) granted employment authorization or (b) under the age of 14 and have had an asylum application pending for at least 180 days.[56] With some exceptions for certain populations, such as children or pregnant persons, asylum-seekers with pending cases do not qualify for state or federal health benefits apart from urgent emergency room care.[57]

Asylum-seekers are often in serious need of physical and mental healthcare on a non-emergency basis, due to the trauma experienced in their home countries as well as to harsh conditions and further trauma they may have experienced on their journeys to the United States. From physical injuries and malnutrition to post-traumatic stress disorder, a variety of healthcare needs can fall outside the scope of the emergency coverage asylum-seekers are able to obtain until they receive work authorization. For example, Abdul, a asylum-seeker included in a Human Rights Watch report, had been brutally beaten in his home country in Bangladesh, but had only seen a doctor once since arriving in the United States because he could not work and so could not afford treatment for a serious arm injury from the beating.[58]

The inability to legally work, moreover, can in and of itself exacerbate existing mental and emotional health problems. Asylum-seekers who wish to be self-sufficient, productive members of their communities are blocked from employment that would allow them to do so. A Human Rights Watch report documents the experiences of asylum-seekers who felt a loss of dignity, independence, and worthiness, and who experienced increased depression and anxiety when left

---

[55] Jessica C. Barnett, Edward R. Berchick, United States Census Bureau, "Health Insurance Coverage in the United States: 2016," Report No. P60-260, Sept. 12, 2017, https://www.census.gov/library/publications/2017/demo/p60-260.html (see "Highlights," point 3).
[56] Healthcare.gov, "Immigration Status and the Marketplace," https://www.healthcare.gov/immigrants/immigration-status/ [last accessed Nov. 7, 2019].
[57] Human Rights Watch Report at p. 27.
[58] Human Rights Watch Report at p. 28.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005193



without anything to occupy their time as they waited for work authorization.[59] Josiane, an asylum-seeker and rape survivor, told Human Rights Watch that not being able to work for years while her asylum application was pending "'kills you emotionally...Just sitting on your own, one year, two years, three years, five, doing nothing, just sitting there, kills you. I was so depressed.' "[60] The same report quoted Dr. Joanne Ahola, a psychiatrist and the medical director of the Weill Cornell Center for Human Rights, as stating that work may be the "'most important thing'" in rehabilitating traumatized asylum-seekers, as it gives them a sense of purpose and a "'distraction from thinking about traumatic experiences.' "[61]

   **C.  Asylum-seekers will have extreme difficulty obtaining the legal representation they need to navigate their asylum cases – which could lead to deportation back to life-threatening danger in their countries of origin.**

Without an income, asylum-seekers are unable to pay for what is likely the most outcome-determinative factor in their U.S. asylum case: legal representation. The Transactional Records Access Clearinghouse at Syracuse University analyzed U.S. immigration court records and found that the odds of gaining asylum are five times higher for asylum-seekers with legal representation. Without representation, "the deck is stacked against an asylum seeker. Statistically, only one out of every ten win their case."[62] Furthermore, demand has significantly outpaced supply, leaving an increasing proportion of asylum-seekers unable to obtain representation even under existing work authorization regulations.[63]

The stakes in an asylum case can be literally life-or-death: a successful asylum case wins safety in the United States, while a negative decision results in deportation back to the country of origin, in which the applicant had faced persecution. As a past president of the American Immigration Lawyers Association has noted, the time and difficulty of preparing an asylum case relates not to the strength of the case, but to the difficulty of accessing evidence to meet the particular and

---

[59] Human Rights Watch Report at p. 27-30.
[60] Human Rights Watch Report at p. 28.
[61] Human Rights Watch Report at p. 30.
[62] TRACImmigration, Transactional Records Access Clearinghouse, "Asylum Representation Rates Have Fallen Amid Rising Denial Rates," Nov. 28, 2017, https://trac.syr.edu/immigration/reports/491/.
[63] *Id.*

15

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005194



specific standards of U.S. asylum law.[64] In addition to the complexity of U.S. immigration law, language barriers[65] and experiences of trauma add layers of difficulty to asylum-seekers accessing a full and fair consideration of their asylum cases. Delaying work authorization prevents asylum-seekers from accessing the legal assistance they need to navigate their case.[66]

### D. Without work authorization, asylum-seekers in several states will be unable to obtain state-issued identification, including a driver's license, and to access transportation.

In several states, asylum-seekers must show their employment authorization documentation – and/or have a social security number, for which they would need employment authorization – to apply for an official state identification card or driver's license.[67]

Access to official identification is often required to access social services, including shelters.[68] According to a survey conducted by the National Law Center on Homelessness and Poverty on

---

[64] Philip Bump, *Washington Post*, "Most migration to the U.S. costs money. There's a reason asylum doesn't," Apr. 30, 2019, https://www.washingtonpost.com/politics/2019/04/30/most-migration-us-costs-money-theres-reason-asylum-doesnt/.

[65] Jennifer Medina, *New York Times*, "Anyone Speak K'iche' or Mam? Immigration Courts Overwhelmed by Indigenous Languages," Mar. 19, 2019, https://www.nytimes.com/2019/03/19/us/translators-border-wall-immigration.html.

[66] Mica Rosenberg, Reade Levinson and Ryan McNeill, *Reuters*, "They fled danger at home to make a high-stakes bet on U.S. immigration courts," Oct. 17, 2017, https://www.reuters.com/investigates/special-report/usa-immigration-asylum/.

[67] *See, e.g.*, Georgia Department of Driver Services, "Information for Non-US Citizens," https://dds.georgia.gov/information-non-us-citizens; Kentucky Department of Motor Vehicles, "Non-U.S. Citizens," at https://drive.ky.gov/driver-licensing/Pages/Non-US-Citizens.aspx#required-documentation; Louisiana Department of Safety, Office of Motor Vehicles, "Driver's License Issuance for Aliens Temporarily Residing in Indiana," http://web01.dps.louisiana.gov/Omv1.nsf/58c968bd569b099986256cdc000806eb/b5f27a9c7f2a864186256b6f004a2e8f?OpenDocument; Mississippi Driver Service Bureau, "Non-U.S. Citizens Status Verification," https://www.driverservicebureau.dps.ms.gov/Security/Non_US_Status_Verification; South Carolina Department of Motor Vehicles, "International Customers: Designated Branches for People Who Are Not US Citizens," http://www.scdmvonline.com/Driver-Services/International-Customers [last accessed Nov. 7, 2019].

[68] *See, e.g.*, Teresa Wiltz, *Pew*, "Without ID, Homeless Trapped in Vicious Cycle," May 15, 2017, https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2017/05/15/without-id-homeless-trapped-in-vicious-cycle; Mileka Lincoln, *Hawaii News Now*, "Without ID, many homeless are unable to get help or into shelters," July 18, 2014, https://www.hawaiinewsnow.com/story/26058747/without-id-many-homeless-are-unable-to-get-help-or-into-shelters/; HandUp, *Medium*, "Why losing your photo ID when you're homeless, keeps you

16

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005195



photo ID barriers after the September 11, 2001 terrorist attacks in New York – after which more shelters began implementing a photo ID requirement – 54.1% of homeless persons in a given month were denied access to shelter or housing services due to lack of photo identification.[69]

In New York City, for example, there is a "right to shelter," according to which the city "provides temporary emergency shelter to every man, woman, and child who is eligible for services, every night."[70] But local shelters require submission of identification documents, such as a "benefits card from public assistance, a green card, driver's license, government ID, passport or visa, or an employment ID with a picture" or "[i]f you do not have a photo ID, other identification can include a birth certificate, social security card, Medicaid card or pay stub."[71] An asylum-seeker without work authorization is generally ineligible for public assistance from which they would get a benefits card or Medicaid card; will not have a green card, an employment ID, a social security card, or pay stub; may not have fled to the U.S. with a passport or birth certificate, and will have difficulty obtaining those from their country of origin; and, as noted above, can also be blocked from obtaining a U.S. driver's license or other form of state-issued identification without being able to show work authorization documents.

Access to transportation via a driver's license is critical for asylum-seekers with pending applications, who jeopardize their cases if unable to show up at every court hearing – and the immigration court in question may be far away from their place of residence and/or difficult to access via public transportation.

---

homeless," Mar. 14, 2016, https://medium.com/@HandUp/why-losing-your-photo-id-when-you-re-homeless-keeps-you-homeless-a9adc2130156.

[69] National Law Center on Homelessness and Poverty, "Photo Identification Barriers Faced by Homeless Persons: The Impact of September 11," April 2004, p. 5, https://nlchp.org/wp-content/uploads/2018/10/ID_Barriers.pdf.

[70] NYC Department of Homeless Services, "Shelter," https://www1.nyc.gov/site/dhs/shelter/shelter.page [last accessed Nov. 8, 2019].

[71] Coalition for the Homeless, "I Need Shelter," https://www.coalitionforthehomeless.org/get-help/i-need-shelter/#4 [last accessed Nov. 8, 2019].

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005196



### E. If unable to work legally, financially desperate asylum-seekers may turn to exploitative shadow economy employment.

Unable to legally work but in need of wages to meet the needs outlined above, asylum-seekers may turn to work in the shadow economy, which presents dangers of its own.[72] The type of work may be legal, but engaging in it without work authorization puts an asylum-seeker at the mercy of their employer. National and international media have documented the abuses experienced by immigrant workers in industries ranging from agriculture[73] and seafood processing[74] to live-in domestic help.[75]

Under threat of being reported to immigration authorities and put at risk of deportation, immigrants are often underpaid and mistreated. This includes verbal and physical abuse, wage theft, and unsafe working conditions. The power imbalance between employee and employer encourages abusive and exploitative relationships.[76] As the Organisation for Economic Co-operation and Development has noted, "exploitation can be more extreme the more vulnerable the workers"[77]; asylum-seekers are especially vulnerable due to the trauma they have already experienced and the risk of being deported back to a country that is not just their country of origin, but also the country where they are at serious threat of persecution.

---

[72] Nicole Narea, *Vox*, "A new Trump administration proposal could put asylum seekers out of a job," Sept. 11, 2019, https://www.vox.com/policy-and-politics/2019/9/11/20853362/trump-work-permit-asylum.

[73] Tim Swarens, *Indianapolis Star*, "Migrant workers in Indiana: They harvest our food, but risk labor trafficking," Oct. 11, 2018, https://www.indystar.com/story/opinion/columnists/tim-swarens/2018/10/11/invisible-harvest-how-migrant-workers-who-harvest-indianas-crops-vulnerable-exploitation/934423002/.

[74] Jana Kasperkevic, *Guardian*, "Migrant workers in US seafood industry exposed to forced labor conditions," June 8, 2016, https://www.theguardian.com/business/2016/jun/08/us-seafood-workers-abuse-immigration-temporary-labor.

[75] Sarah Holder, *CityLab*, "The Price of Domestic Workers' Invisible Labor in U.S. Border Towns," June 25, 2018, https://www.citylab.com/equity/2018/06/the-price-of-domestic-workers-invisible-labor-in-us-border-towns/563087/.

[76] Human Rights Watch Report at p. 33-34.

[77] OECD, "Shining Light on the Shadow Economy: Opportunities and Threats," 2017, at p. 8, https://www.oecd.org/tax/crime/shining-light-on-the-shadow-economy-opportunities-and-threats.pdf.

AR005197



International Refugee
Assistance Project

**V.** **Increased need from asylum-seekers who cannot work will strain the capacity of organizations and charities providing them with shelter, food, and legal services.**

If asylum-seekers are delayed in entering the workforce and unable to financially support themselves, they will be dependent on others - particularly privately- or government-funded organizations and charities - to meet their needs for shelter, food, legal representation, etc.

The increased demand for assistance will strain the capacity of entities that are often already underfunded and stretched thin.

Shelters, for example, are already beyond capacity in many places in the country. In Arizona, "[n]onprofit groups that operate shelters for migrant families near Arizona's border with Mexico are full and over-capacity." The mayor of one Arizona city issued an emergency declaration this year after the number of asylum-seeking families in need of shelter being released by U.S. Customs and Border Protection exceeded available housing and resources.[78] Media reported on shelters, churches, and volunteers stepping in to help families who, after presenting themselves at the southern border to request asylum, "had nowhere to spend the night" and "did not have bus tickets, money or functioning phones."[79] In Maine, the city of Portland struggled to find longer-term housing for hundreds of asylum-seekers in its overflowing emergency shelters and Governor Janet Mills issued an emergency rule change to the state's General Assistance Program making asylum-seekers eligible for food, housing, and medical care vouchers.[80]

Non-profit and state funded legal service providers also face demand much greater than supply for pro bono legal aid in U.S. immigration proceedings. Major legal aid centers and bar associations around the country, including for the New York Bar and the District of Columbia Bar,

---

[78] Rafael Carranza, *AZ Central*, "Shelters in southern Arizona run out of space for migrant families," Apr. 17, 2019, https://www.azcentral.com/story/news/politics/border-issues/2019/04/17/migrant-shelters-full-capacity-arizona-mexico-border-yuma-emergency-declaration/3499739002/.
[79] Jude Joffe-Block, *Public Radio International*, "Arizona volunteers form 'underground' network to house migrants released by ICE," Mar. 26, 2019, https://www.pri.org/stories/2019-03-26/arizona-volunteers-form-underground-railroad-house-migrants-dumped-ice
[80] Sarah Matusek, *Christian Science Monitor*, "Among those helping Maine's new arrivals: Other immigrants," Aug. 13, 2019, https://www.csmonitor.com/USA/Society/2019/0813/Among-those-helping-Maine-s-new-arrivals-Other-immigrants.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005198



have already noticed an increased demand in recent years.[81] With fewer asylum-seekers able to afford private immigration attorneys, more asylum-seekers will turn to pro bono legal assistance.

If asylum-seekers are delayed in receiving work authorization, many will turn to these sources of free assistance – and organizations and charities, already inundated and now struggling to meet increased demand, will bear the burden of responding to more requests and finding new or increased sources of funding to meet increased costs. Notably, the NPRM failed to even attempt to estimate the significant costs to community organizations of the proposed Rule.

**VI.    The Rule has not sufficiently considered its significant economic impacts, including loss of tax revenue at multiple levels of government and financial loss to businesses that employ asylum-seekers.**

Although the Department of Homeland Security's proposal acknowledges economic costs to other stakeholders, the proposal fails to calculate properly, if at all, costs like loss of tax revenue at the local, city, and state levels and costs to private U.S. businesses.

The agency's assessment of economic impact is rooted in its calculation of lost compensation to asylum-seekers, an estimated $225.88 million to $774.76 million annually. However, DHS is probably underestimating the lost compensation figures – for instance, by assuming minimum wage compensation and that recipients of work authorization "would not have been in the labor force long, and would thus not be expected to earn relatively high wages".[82]

Upwardly Global, a national organization that has extensive experience assisting asylum-seekers and asylees who have secured work authorization in finding employment, challenges these calculations. Upwardly Global has noted that its program participants "arrive in the U.S. with

---

[81] *See, e.g.*, New York State Bar Association, "Immigration Pro Bono Initiative," http://www.nysba.org/immigration/ [last accessed Nov. 8, 2019] (describing "growing and evolving immigration legal needs around the country and New York State"); D.C. Bar, "D.C. Attorneys Respond to Demand for Immigration, Asylum Assistance," Apr. 18, 2017, https://www.dcbar.org/about-the-bar/news/dc-bar-pro-bono-center-asylum-training.cfm; Claire Bushey, *Chicago Business*, "Demand for services strains local immigrant group," July 26, 2019, https://www.chicagobusiness.com/law/demand-services-strains-local-immigrant-group (describing how "demand from low-income immigrants for [the National Immigrant Justice Center]'s legal services has exploded").
[82] Notice at p. 47163.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist

AR005199



college degrees or technical certification from their home countries; half bring experience in STEM, healthcare, or finance fields. The above-average salaries they command after securing an EAD illustrate the premium that U.S employers place on their skills and experience."[83] Asylum-seekers who have completed the organization's job-coaching, networking, and skill-building programs "earn an average of $54,875 annually, significantly higher than the national annual mean wage of $51,960," and several of its program alumni earn salaries in the six figures, suggesting that "DHS estimates of the [Rule's] wage and tax impacts are likely low."[84]

Moreover, even if one assumes a minimum wage to calculate the lower bound of the range of lost compensation to asylum-seekers, the agency has utilized the only $8.25 per hour in its calculations, which it describes as "prevailing minimum wage." DHS states that "without solid a priori information we believe that providing a range with the lower bound relying on the prevailing minimum wage is justifiable." However, as DHS itself notes, "many states have their own minimum wage, and, even within states, there are multiple tiers."[85] Currently, 28 of 50 U.S. states, plus the District of Columbia, have minimum wages greater than the $8.25 utilized by the agency in its calculations, suggesting that DHS has underestimated even the lower bounds of compensation to asylum-seekers by assuming too low a compensation rate.[86]

## F. The Rule fails to fully account for significant lost annual tax revenue at the city, state, and federal levels.

The DHS Notice states that "[i]t is difficult to quantify income tax losses because individual tax situations vary widely."[87] However, just as DHS estimated lost compensation to asylum-seekers and lost contributions to employment tax programs due to delay in asylum-seekers entering the

---

[83] Upwardly Global, "Upwardly Global's Public Comment on Work Authorization for Asylum Seekers," Oct. 10, 2019, https://www.upwardlyglobal.org/all-news/upwardly-globals-public-comment-work-authorization-asylum-seekers/ ["Upwardly Global Comment"].
[84] Upwardly Global Comment.
[85] Notice at p. 47163.
[86] Maine Business Immigration Coalition Comment ( (citing to National Conference of States Legislatures, "State Minimum Wages | 2019 Minimum Wage by State," Jan. 7, 2019, http://www.ncsl.org/research/labor-and-employment/state-minimum-wage-chart.aspx).
[87] Notice at p. 47150.

AR005200



workforce,[88] DHS can also fully consider the concomitant tax losses – particularly given that the losses could be in the millions of dollars, and would impact government at local, state, and federal levels.

DHS calculates, based on its figures for lost compensation to asylum-seekers, the Rule would lead to a significant 15.3% loss to the federal government from other major employment tax programs, particularly Medicare and social security.[89] The agency estimates that these employment tax losses to the federal government would range from $39.15 million to $118.54 million annually, plus "additional federal income tax losses not estimated here."[90]

These significant employment tax losses suggest that annual income tax loss at multiple levels of government could also be significant, and DHS makes no attempt to calculate these annual losses. Moreover, the greater the lost compensation to asylum-seekers, the greater the lost tax revenue and losses to employment tax programs. If, as Upwardly Global and the Maine Business Immigration Coalition have stated, DHS's calculations of lost compensation are too low, then DHS has also accounted for or considered the full scope of lost tax contributions, including both employment tax losses and income tax losses.

>    G. **The Rule would cause significant financial loss to businesses that rely on asylum-seekers' skills and labor.**

Delaying work authorization decisions will negatively impact companies that "would have hired the asylum applicants had they been in the labor market earlier".[91] DHS estimates that, "if impacted companies are able to easily find reasonable labor substitutes for the positions the asylum applicant would have filled, they will bear little or no costs," and that if, conversely, these companies are unable to find reasonable labor substitutes, then the Rule's estimated maximum

---

[88] Notice at p. 47149-50.
[89] Notice at p. 47150.
[90] Notice at p. 47150.
[91] Notice at p. 47150.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005201


International Refugee
Assistance Project

cost is $774.16 million annually – the agency's calculation of maximum lost annual compensation to asylum-seekers.[92]

However, if DHS has underestimated lost compensation to asylum-seekers, then the potential financial repercussions for private businesses are also larger than projected. Moreover, impacted companies are unlikely to "easily find reasonable labor substitutes." Upwardly Global notes that in its experience working with 50 employers across the country, "asylum seekers often occupy hard-to-fill jobs in the U.S. workforce" and that half of its program participants, including asylum-seekers, "come to the U.S. with backgrounds in the STEM and healthcare fields, industries with well-documented worker shortages."[93]

The Maine Business Immigration Coalition, a coalition of Maine businesses, chambers of commerce, and associations, has stated that "[i]mmigrants are critical to Maine's ability to have a strong economy," as they are a "significant source of newcomers who stem our state's population decline" at a time when "Maine's labor shortage is reaching a crisis point, hindering business growth and causing some businesses to contract." The Coalition also noted that in its experience with asylum-seekers in the state, the asylum-seekers "are highly educated, are eager to work, and have skills that Maine's employers and economy need[sic]."[94]

Asylum-seekers often fill positions that others in the United States either cannot or will not fill. Many business sectors rely heavily on the labor of immigrants, including asylum-seekers. These sectors range from agriculture and meatpacking to healthcare.[95] Asylum-seekers may come with credentials that are in short supply in the U.S. workforce, and often bring special skill sets or experiences that make them uniquely qualified to perform certain work. For instance, asylum-

---

[92] Notice at p. 47150-51.
[93] Upwardly Global Comment.
[94] Maine Business Immigration Coalition Comment.
[95] *See, e.g.*, Stacey Vanek Smith and Cardiff Garcia, *NPR*, "Worker Shortage Hurts California's Agriculture Industry," May 3, 2018, https://www.npr.org/2018/05/03/607996811/worker-shortage-hurts-californias-agriculture-industry; Alfred Corchado, *Seattle Times*, "Companies squeezed by labor shortage welcome immigrants," May 22, 2018, https://www.seattletimes.com/business/companies-squeezed-by-labor-shortage-welcome-immigrants/; Shelly Hagan, *Bloomberg*, "Immigrants Help to Alleviate U.S. Health Care Staffing Shortage," June 3, 2019, https://www.bloomberg.com/news/articles/2019-06-03/immigrants-help-to-alleviate-u-s-health-care-staffing-shortage.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005202



seekers may have linguistic skills in languages uncommon in the United States or knowledge of cultures not widely present here; their own lived experiences may give them the appropriate background and sensitivity to work with other individuals who have experienced some type of trauma. If credentials are in shortage or skills are rare, then by definition a company will bear the costs of a difficult search to fill that position – or bear the costs of not being able to fill their labor need at all.

**VII.  DHS has not considered the negative impact on other U.S. government agencies, such as the Department of Labor.**

If asylum-seekers are delayed in receiving work authorization, some will be forced to turn to shadow economy employment to support themselves and their families. Anxiety and panic among undocumented workers about the immigration status and possible deportation prevents Department of Labor (DOL) subagencies like the Wage and Hour Division and the Occupational Safety and Health Administration from fulfilling their mandate to enforce employment laws, especially with regards to vulnerable immigrant workers.

In a *Guardian* report from 2017, multiple current and former DOL employees said that anti-immigrant policies and rhetoric had "caused panic among exploited undocumented workers across industries, preventing labor officials from conducting investigations and enforcing employment laws." One DOL employee described how these workers were "'not just refusing to talk to us. They're running away from us,'" when describing what happened when DOL investigators arrived at a worksite. These employees refused to speak with DOL officials, even when DOL officials clearly identified themselves, and even refused to accept back wages, out of fear of immigration consequences including deportation – a situation corroborated by internal DOL emails reviewed by the *Guardian*. According to the same sources, the Wage and Hour Division of the DOL is receiving fewer complaints from workers.[96]

---

[96] Sam Levin, Guardian, "Immigration crackdown enables worker exploitation, labor department staff say," Mar. 30, 2017, https://www.theguardian.com/us-news/2017/mar/30/undocumented-workers-deportation-fears-trump-administration-department-labor.

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org  |  twitter.com/RefugeeAssist  |  facebook.com/RefugeeAssist



Reduced complaints and inability to follow through on violations of, and therefore to enforce, labor laws, have led to what two DOL sources described as an atmosphere of low morale and frustration within the agency, which empowers abusive employers to exploit very vulnerable populations. This "threatens to disrupt a key function of the labor department, which is supposed to operate independently from immigration authorities."[97] Longer wait times for work authorization will lead to more asylum-seekers pursuing unauthorized employment – and asylum-seekers, who come to the United States fleeing persecution and often mortal danger in their countries of origin – are especially likely to fear the immigration consequences of engaging with any branch of the U.S. government. The Rule will therefore exacerbate challenges to core DOL functions, a consequence that the Notice of Proposed Rulemaking has not considered.

**Conclusion**

For the above reasons, IRAP strongly recommends that the Department of Homeland Security withdraw the portion of the Rule that would eliminate the 30-day for processing timeframe for USCIS to adjudicate initial Applications for Employment Authorization by asylum-seekers.

Thank you for your time and consideration.

Sincerely,

*Elizabeth Foydel*

Elizabeth Foydel
Deputy Policy Director
International Refugee Assistance Project
One Battery Park Plaza, 4th Floor
New York, NY 10004

---

[97] *Id.*

One Battery Park Plaza, 4th Floor, New York, NY 10004
refugeerights.org | twitter.com/RefugeeAssist | facebook.com/RefugeeAssist

AR005204

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-d7ro
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2557
Comment Submitted by Diane Legomsky.

---

## Submitter Information

**Name:** Diane Legomsky.
**Address:**
    3101 E SAINT JAMES CT
    BLOOMINGTON, IN, 47401
**Email:** diane.legomsky@gmail.com
**Phone:** 8128222778

---

## General Comment

The new proposed rule on removing the 30-day deadline in which asylum applicants must receive their employment authorization will further harm asylum seekers and will leave them open to great victimization. If an asylum seeker does not have work authorization, s/he cannot always find an agency or private person to take care of their needs. Some cities have agencies/charities/churches that will give them money or vouchers for rent and food, but only for so long, and not long enough to hold out for work authorization. As a result, they often work "under the table" -- the work is grueling, long hours, and pay less than minimum wage. They are still homeless and hungry, despite having done everything possible to fend for themselves.

Think, also, about their children. The asylum seekers are running from unimaginable danger and harm, from gangs to hunger to persecution. They have made the treacherous trek to the U.S., choosing not to reside in Mexico because of dangers there equal in severity to those in their home country. What will happen to their children? Will they be taken away because the parents are seen as "neglectful", even though they are simply without funds or other resources?

The U.S. does have the resources to help them. Considering all the NGO's and the private individuals in this country, can we honestly say that we are "out of room" or "out of money"? We cannot. Does the U.S. have a moral obligation to allow these individuals in need to seek employment? We do. Are these individuals taking jobs away from U.S. citizens? They are not. These jobs have been left unfilled.

Given the extremely high increase in various applications ranging from citizenship to asylee status to visas to green cards, USCIS is taking in sufficient funds to hire more staff and thus process work authorization

AR005205

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2557.html[9/15/2020 4:15:13 PM]

applications much more quickly. Increasing our homeless population by refusing to let these individuals seek honest work will not help our country, and will further burden our municipalities, upon whom the cost of homelessness falls.

There is no good reason to delay the work authorization applications, and only harm. This applies in moral, religious, economic, and political ways. Please rethink this policy.

AR005206

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-pzai
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2558
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Eliminating the 30-day EAD processing for asylum applicantsa rule that has been in place for decadesis an invitation for government irresponsibility, and for the agency to not do the job they were funded to do. If the government wants to eliminate this rule, then if must eliminate the money that it gave to the agency for this purpose. Keeping that money, and not doing the job is theft! Moreover, the governments allegations that it seeks to do this to respond to national security and fraud concerns are false. Background checks begin immediately upon filing of the asylum application. After filing, applicants wait 5 months before they can apply for a work permit. Checks are generally completed by the time asylum applicants file for a work permit. Having worked for DHS for nearly two decades, I can attest to the fact that background, identity, and security checks are done online through various databases; and can be done fairly quickly. Eliminating this rule will NOT make our Nation safer. In fact, it wont do anything other than encourage many agency employees to not do their jobs. An agency who in 6 months cant determine the identity of an applicant, or whether the person is a security risk, or if the application is fraudulent is inept; and will never be able to do the job regardless of how much time its given. The mandated 30-day timeframe actually INCREASES security by forcing the agency to do its job quickly, and allows it to take immediate action if it finds that an applicant is a security risk. Eliminating the 30-day period DECREASES security because it will allow individuals who may be a threat, or may have fraudulent applications to remain in our country for a longer period of time. Between the 5-month waiting period to apply, and the 30-day issuance period, asylum applicants already wait 6 months before work authorization is granted them. That is more than enough time for the agency to conduct the investigations it needs.

AR005207

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-dw70
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2559
Comment Submitted by Veronica Rossini, Tent Partnership for Refugees and National Immigration Forum

---

## Submitter Information

**Name:** Veronica Rossini
**Organization:** Tent Partnership for Refugees and National Immigration Forum

---

## General Comment

Please see letter attached.

---

## Attachments

Comment on Removal of 30-Day Processing Provision 110819

AR005208



TENT



NATIONAL
IMMIGRATION
FORUM

Samantha Deshommes, Chief
Regulatory Coordination Division,
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529-2140

DHS Docket No. USCIS-2018-0001
84 F.R. 47148

November 8, 2019

Re: Notice of Proposed Rulemaking and Request for Comment on Removal of 30-Day
Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization
Applications

To Whom It May Concern:

We respectfully submit the following comments to the Department of Homeland Security's
Notice of Proposed Rulemaking and Request for Comment on Removal of 30-Day Processing
Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications,
DHS Docket No. DHS-2018-0001, 84 F.R. 47148, issued September 9, 2019.

Interest in the Proposed Rule:

We are companies whose operations in the United States would be adversely affected by the
proposed rule.

Comments on the Proposed Rule:

We are concerned that the proposed rule would hurt our ability to attract and retain talent in our
workforce. Many of the undersigned companies already have asylum-seekers in our workforce
and many will have need to hire members of this population in the months ahead, as we seek to
fill gaps in our workforce.[1]

---

[1] For example, Amplio Recruiting, a staffing agency, has placed asylum-seekers into a number
of jobs.

We are also concerned that barring many thousands of work-eligible individuals from the workforce, at a time that businesses across the country face labor shortages, would inevitably create negative pressure on our suppliers and vendors, driving up our costs.[2]

Finally, we are concerned that if individuals waiting for asylum determinations were prohibited from working lawfully for significantly longer periods, many would seek to work unlawfully. They would do so at significantly higher risk of abuse, exploitation, forced labor, and human trafficking, which damage our communities.

Conclusion:

For the above reasons, we urge the Department of Homeland Security to retain the current 30-day processing requirement for initial asylum employment authorization applications.

Sincerely,

| | |
|---|---|
| Airbnb | F5 Networks |
| Amplio Recruiting | Indow |
| Ben & Jerry's | Lithic Technology |
| Chobani | Thesis |
| DoorDash | Uniqlo |
| DSM | Veracity |
| Epicodus | Western Union |
| Evviva Brands | |

---

[2] *See* Alexia Fernandez Campbell, "The US is experiencing a widespread worker shortage. Here's why." Vox (March 18, 2019), https://www.vox.com/2019/3/18/18270916/labor-shortage-workers-us (detailing the growing labor shortage in the United States and citing data released by the US Department of Labor Bureau of Labor Statistics); Eduardo Porter, "Short of Workers, U.S. Builders and Farmers Crave More Immigrants," The New York Times (April 3, 2019), https://www.nytimes.com/2019/04/03/business/economy/ immigration-labor-economy.html.

AR005210

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-dh3b
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2560
Comment Submitted by Nitza Ben-Yehuda

---

## Submitter Information

**Name:** Nitza Ben-Yehuda
**Address:**
  149 North Hamel Drive
  Beverly Hills,  CA,  90211
**Email:** nitzabeny@sbcglobal.net
**Phone:** 310-659-8811
**Fax:** 310-659-9601

---

## General Comment

This proposed rule will increase the number of homeless people on our city streets and cause the government a substantial loss in tax revenue..

AR005211

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-gdmn
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2561
Comment Submitted by Elissa Steglich

---

## Submitter Information

**Name:** Elissa Steglich

---

## General Comment

Timely work authorization is vital to the well-being of asylum seekers, their families, and their communities. As an immigration practitioner, I have witnessed deteriorating service from USCIS. Without deadlines, the agency fails to adjudicate critical applications. The 30-day deadline is necessary to ensure administrative accountability. USCIS has no reason to seek this change other than to turn its back on our country's citizens in waiting. I strongly object to the proposed change.

AR005212

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2561.html[9/15/2020 4:15:13 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-rfnp
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2562
Comment Submitted by Jessica DeLoureiro

---

## Submitter Information

**Name:** Jessica DeLoureiro
**Address:**
   MA,

---

## General Comment

I am deeply disturbed about this proposed regulation and I adamantly oppose it. I work with asylum seekers in Massachusetts, and an Employment Authorization document ("work card") is essential to an asylum seeker's ability to sustain and support themselves during the lengthy, often years-long, process. Removing their ability to obtain an Employment Authorization document within thirty days of processing only further isolates and hinders asylum seekers as they attempt to assimilate into the United States, provide for themselves, and rebuild their lives.

Asylum seekers are already required to wait 150 days after filing their asylum application before they can even apply for an Employment Authorization document. Removing the 30 processing time will cause even further delays. In many other categories of applications for Employment Authorization documents, we are currently seeking 6-9 months delays (and in some cases, even longer delays). To permit asylum seekers, some of the most vulnerable immigrants in the United States, to wait longer delays is cruel and unnecessary. Asylum seekers are already incredibly vulnerable in that they are fleeing for their lives and seeking safety in the United States; moreover, they often lack sufficient identification documents and do not have familial ties to support them as they seek safety. Their Employment Authorization document allows them some stability during this incredibly difficult period. This proposed regulation only creates additional road blocks against asylum seekers, and for no cause.

Additionally, delays in employment authorization can lead to:

1) Lost income to the asylum seeker and their family
2) Food insecurity
3) Inability to secure a valid ID. A work permit and a social security number (SSN) are often necessary requirements to applications for a state ID.

AR005213

4) Risk of homelessness/housing insecurity
5) Inability to access health insurance (most state ACA health exchanges require a SSN and work authorization materials to qualify)
6) Vulnerability to exploitation, trafficking, and underground economy risks
7) Lack of access to community service agencies, shelters, and social service programs (many of whom require some form of valid ID, proof of residency, or proof of income)
8) Loss of ability to support themselves and their families
9) Feelings of fear, desperation, and overall mental health concerns

There is also a national security issue here - a speedier process to adjudicate employment authorization properly protects our national security. Adding additional delays to the process threatens our security.

Finally, this proposed regulation is unreasonable. if USCIS's goal is to have more time to process each request in order to increase flexibility and free up resources to work on other applications, then it could easily shorten the waiting time before asylum-seekers are allowed to submit their application. If USCIS feels that a 60-day timeframe would be more beneficial, then it may allow applications to be submitted after 120 days, rather than 150. Allowing asylum-seekers to submit their applications earlier could allow the department to have up to 180 days to process and properly vet each individual while reducing the risk of harm to each applicant.

I wholeheartedly oppose this regulation to add more roadblocks against asylum seeker's ability to sustain themselves.

AR005214

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-v26j
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2563
Comment Submitted by Brynne O'Neal, Asylum Access

## Submitter Information

**Name:** Brynne O'Neal
**Address:**
   555 12th St, 5th Floor
   Oakland, CA, 94607
**Email:** brynne.oneal@asylumaccess.org
**Phone:** 1.510.891.8700
**Submitter's Representative:** Brynne O'Neal
**Organization:** Asylum Access

## General Comment

Asylum Access is a global organization that promotes refugee work rights around the world. We provide legal services to help refugees receive work authorization and advocate for refugee work rights in Latin America, Asia, and Africa. Our expertise shows that when refugees can rebuild their lives, nations thrive. We oppose the removal of the 30-day deadline for USCIS to adjudicate work authorization requests.

As an organization that has worked with governments around the world to increase the realization of refugee work rights, we are disturbed to see this attempt to roll back work rights for refugees in the United States. Every country should be making it easier and faster for refugees to work in the formal economy, not adding delays. Self-sufficiency is very important to our clients. Refugees struggle to survive and rebuild their lives when they are forced to wait for years to gain work authorization. We have seen countries benefit when they allow refugees to support themselves and their families during their time in the country, whether they end up staying permanently or not.

In this comment, we will provide evidence that promptly providing work authorization to asylum-seekers benefits refugees and host countries. Refugees with work authorization create jobs, fill gaps in the economy, pay taxes, and spend money in the local economy. Refugees without authorization are vulnerable to exploitation, abuse, and human trafficking. This regulation risks leaving refugees without work authorization for months or years longer than the current deadline. It should not be enacted.

AR005215

See our full comment in the attached file.

---

# Attachments

Asylum Access Comment on Removal of 30 Day Work Authorization Deadline

AR005216

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2563.html[9/15/2020 4:15:13 PM]




555 12th St, 5th Floor
Oakland, CA 94607
+1.510.891.8700
www.asylumaccess.org

<u>Asylum Access Comment on Removal of 30- Day Processing Provision for Asylum Applicant</u>

Asylum Access is a global organization that promotes refugee work rights around the world. We provide legal services to help refugees receive work authorization and advocate for refugee work rights in Latin America, Asia, and Africa. Our expertise shows that when refugees can rebuild their lives, nations thrive. We oppose the removal of the 30-day deadline for USCIS to adjudicate work authorization requests.

As an organization that has worked with governments around the world to increase the realization of refugee work rights, we are disturbed to see this attempt to roll back work rights for refugees in the United States. Every country should be making it easier and faster for refugees to work in the formal economy, not adding delays. Self-sufficiency is very important to our clients. Refugees struggle to survive and rebuild their lives when they are forced to wait for years to gain work authorization. We have seen countries benefit when they allow refugees to support themselves and their families during their time in the country, whether they end up staying permanently or not.

In this comment, we will provide evidence that promptly providing work authorization to asylum-seekers benefits refugees and host countries. Refugees with work authorization create jobs, fill gaps in the economy, pay taxes, and spend money in the local economy. Refugees without authorization are vulnerable to exploitation, abuse, and human trafficking. This regulation risks leaving refugees without work authorization for months or years longer than the current deadline. It should not be enacted.

<u>Data shows the benefits of work authorization</u>

When refugees participate in formal labor markets, they contribute to host economies and communities in a variety of ways. A 2016 report by Philippe LeGrain -- the most comprehensive study available on how refugees contribute to host countries -- found that refugees "help create jobs, raise the productivity and wages of local workers, lift capital returns, stimulate international trade and investment, and boost innovation, enterprise and growth."[1] More specifically, the study found that "investing one Euro in welcoming refugees can yield nearly two Euros in economic benefits within five years." This is a result of the unique dividends refugees provide, including their ability to fill gaps in economies, their tendency to repay debt through contribution to social welfare, and their propensity to start businesses which then employ locals.

Importantly, refugees can only unlock these and other economic benefits if their work rights are respected and protected. Without these rights, refugees are unable to start businesses, pay taxes, and have more limited interactions with the local economy. Below is a summary of positive outcomes associated with formalized refugee economic inclusion.

<u>Refugees fill gaps in the economy</u>. A recent study by the Center for Global Development shows that, when given the right to work, refugees fill gaps that make businesses more productive and stimulate industries. Lower-skilled refugee workers can make space for host workers to work in

---

[1] Legrain, P. (2016). Refugees Work: A Humanitarian Investment that Yields Economic Dividends. Tent. Available at: http://www.opennetwork.net/wp-content/uploads/2016/05/Tent-Open-Refugees-Work_V13.pdf

AR005217



higher-paying and higher-skilled jobs.[2] Higher skilled refugee workers can provide complementary skills to native workforces; even economies with high unemployment often have shortages in occupations requiring specific skills.[3]

Refugees create jobs. Refugees and migrants are known for their entrepreneurial spirit: after all, 40% of Fortune 500 companies are founded by immigrants and refugees, or their children.[4] In Turkey, the largest refugee-hosting country in the world, Syrian refugees reportedly provide a living for at least 7% of their Turkish compatriots through the businesses they have started.[5] In Kampala, Uganda, refugee business-owners' employees are 40% Ugandans, outnumbering any other nationality by far.[6] Further research shows that refugee entrepreneurs develop financial networks between their own businesses and other suppliers in the region using contacts from their community or from past business experience.[7] These expanded networks lead to further market expansion and job creation.

Refugees who work in the formal economy spend more and pay taxes, benefiting host countries. Many refugees work informally in countries where they have no formal work rights; as a result, governments lose out on tax revenue. In addition, refugees without legal status or the legal right to work consume less than those who are documented. A study in the US showed that undocumented immigrants in the US consumed about 40 percent less than documented immigrants, probably due to their unstable situation and lack of access to financial services.[8] In addition, of course, they are likely to earn less when they have such a precarious Status.

Providing workplace protections for refugees reduces abuse, exploitation, human trafficking, smuggling and forced labor for everyone. When refugees have no legal right to work, they are susceptible to exploitation without any means of redress. Unscrupulous employers may even prefer to hire refugees knowing that they can withhold pay and abuse their workers with no consequences; such practices negatively affect native workers as well as the image of the country as a whole. Refugees are particularly at risk of human trafficking due to their lack of legal status and the risky journeys they have to take as a result of forced displacement, among

[2] Clemens, M., Huang, C. and Graham, J. (2018). The Economic and Fiscal Effects of Granting Refugees Formal Labor Market Access. Tent/Center for Global Development. Available at: https://www.tent.org/wp-content/uploads/2018/10/TENT_LMA_Policy-Brief.pdf.

[3] Legrain, id.

[4] Anderson, S. (2011). "40 Percent of Fortune 500 Companies Founded by Immigrants or Their Children." Forbes. Available at: https://www.forbes.com/sites/stuartanderson/2011/06/19/40-percent-of-fortune-500-companies-founded-by-immigrants-or-their-children/#2f92f2644a59.

[5] Hurriyet Daily News (2019). Welcoming refugees, Turkey now reaps economic benefits. Available at: http://www.hurriyetdailynews.com/welcoming-refugees-turkey-now-reaps-economic-benefits-146208.

[6] Betts, A., Bloom, L., Kaplan, J. and Omata, N. (2014). Refugee Economics: Rethinking Popular Assumptions. Humanitarian Innovation Project, University of Oxford. Available at: https://www.rsc.ox.ac.uk/files/files-1/refugee-economies-2014.pdf.

[7] Omata, N. (2018). "Refugees' engagement with host economies in Uganda". Forced Migration Review 58: pp. 19-21. Available at: https://www.fmreview.org/economies/omata.

[8] Dustmann, C., Fasani, F. and Speciale, B. (2017). "Illegal Migration and Consumption Behavior of Immigrant Households." Journal of the European Economic Association 15(3), pp. 645-691. Available at: https://academic.oup.com/jeea/article-abstract/15/3/654/3054461?redirectedFrom=fulltext.



other reasons.[9] Formal integration into the workforce reduces the likelihood refugees will fall victim to trafficking.

In addition, without the legal right to work, refugees are forced to find any means to support themselves and their families. Thus, greater potential exists for refugees to be exploited and drawn into shadow economies including drug trafficking and other crimes.[10] Granting the right to work thus provides not only economic, but also security benefits for host countries.

Job creation, the filling of gaps in host economies, increased spending and tax revenue, reduced exploitation and abuse, and a myriad of other benefits can only be realized if formal work rights are granted to refugees. Delaying work authorization delays these benefits and hurts refugees.

<u>This regulation opens the door to unacceptable delays</u>

With increasing backlogs in asylum decisions, refugees can end up waiting for years for an asylum ruling. Removing the 30-day deadline opens the door to refugees waiting months or years for work rights. USCIS has shown itself capable of meeting the 30-day deadline. Refugees who need to support themselves cannot wait any longer. They should be allowed to start contributing to the U.S. economy as soon as possible. The government must not enact this rule.

---

[9] Wilson, A.P. (2011). "Trafficking risks for refugees." Third Annual Interdisciplinary Conference on Trafficking. Available at:
https://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1003&context=humtraffconf3
[10] Venugopal, G. (2018). "Asia Refugee Policy Analysis." XChange. Available at: http://xchange.org/asia-refugee-policy-analysis/.

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-kwfr
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2564
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

The proposed change to the 30 day regulation is vindictive and must NOT be instituted. I work with asylum seekers who have been hurt and tortured in unspeakable ways. They have sacrificed everything to make the journey to the US where they have heard we respect human rights.

These people typically come with only the clothes on their back. Some do not know a soul in the US. Some have worked along the way to subsidize their trip here. In most cases they are willing to do the jobs citizens do not want, such as working in slaughter houses and chicken processing plants. These are things we take for granted. Someone must do this work so we can enjoy our ridiculously low prices on beef, pork and chicken.

These people need the meager hand up that the 30 day regulation gives them. It really is not asking much. Please keep the regulation the way it now stands.

AR005220

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-dvp4
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2565
Comment Submitted by Bitta Mostofi, NYC Mayor's Office of Immigrant Affairs

## Submitter Information

**Name:** Bitta Mostofi
**Address:**
  253 Broadway 14th Floor
  New York, NY, 10007
**Email:** yfarhang@moia.nyc.gov
**Phone:** 646-634-8631
**Organization:** NYC Mayor's Office of Immigrant Affairs
**Government Agency Type:** Local
**Government Agency:** NYC Mayor's Office of Immigrant Affairs

## General Comment

See attached file(s)

## Attachments

FINAL Comment re EAD Asylees 11.8.19-CSB Signed (002) (002)

AR005221



BITTA MOSTOFI
COMMISSIONER
OFFICE OF IMMIGRANT AFFAIRS

November 8, 2019

*Via electronic submission*

**RE:** **Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765**
**CIS No. 2617-18; DHS Docket No. USCIS-2018-0001**

Dear Chief Samantha Deshommes,

The City of New York ("the City") through its Mayor's Office of Immigrant Affairs ("MOIA") and Department of Social Services (DSS) submits this comment to oppose the Department of Homeland Security's ("DHS") proposed rule entitled "Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765," which was published in the Federal Register on September 9, 2019 ("Proposed Rule").[1] The Proposed Rule joins a slew of attacks on the asylum application process, such as the Migrant Protection Protocol and the Third Country Transit Bar.[2] The Proposed Rule would remove the regulation that requires USCIS to adjudicate initial work authorization applications filed by individuals with pending asylum applications within 30 days. In so doing, the rule would further disadvantage an already vulnerable population, and would create an economic ripple effect that would harm families, employers, and businesses. This would result in severe negative consequences for asylum seekers in New York City – not only for them, but also for their families, including U.S. citizen children. As a result, the rule will significantly harm the social and economic wellbeing of the City.

When a person files an I-589 application for asylum and withholding of removal, the pending application confers eligibility to apply for an employment authorization document

---

[1] Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765, 84 Fed. Reg. 47148 (proposed Sept. 9, 2019).
[2] *See c*omment in opposition to Asylum Eligibility and Procedural Modifications (8/15/2019).

1

("EAD"), ie. a work permit, following a 150 day waiting period.[3] Under the current regulatory framework, after the person waits 150 days and files for the work permit, USCIS generally has an additional 30 days to adjudicate the application, and since July 2018, USCIS has been under court order to comply with this 30 day deadline.[4] Eligibility for employment authorization is essential to an asylum seeker's economic self-sufficiency because asylum seekers often wait months or years for adjudication of their asylum cases. The current requirement that USCIS adjudicate work authorization applications in 30 days is intended to limit the amount of time asylum seekers are delayed from obtaining work authorization and achieving economic stability.

Removing the 30-day processing provision for those with pending asylum applications would delay adjudications of work authorization applications. While currently, an individual seeking asylum has to wait a total of 180 days to obtain work authorization, DHS anticipates that under the Proposed Rule, USCIS adjudication processing times would be roughly equivalent to those in FY 2017. DHS reported that in FY 2017 less than 50% of applications were adjudicated within the 30-day timeframe and 22% of applications were not adjudicated within 60 days.[5] Authorizing a return to these types of delays will exacerbate the already dire financial circumstances facing many seeking asylum. For example, in some cases, City residents could be left with no means of supporting themselves for more than 210 days. This would be a drastic departure from longstanding policy and the recent court order in *Rosario v. USCIS*.[6]

New York City is proud to be a city that so many immigrants call home, and recognizes that asylum seekers awaiting employment authorization may be in need of support from the social safety net in the form of emergency food and shelter. Instead of working to expedite the process, so that asylum seekers can support themselves and their family members, the Proposed Rule would further delay their eligibility to enter the work force and may necessitate further reliance on the emergency social safety net the City provides.

The City may also suffer a loss in tax revenue as a result of the implementation of the Proposed Rule. DHS's own estimate is that the nationwide effect of lost compensation to asylum applicants could be significant—between $255.88 million and $774.76 million. The loss of compensation to asylum-seekers who are delayed in entering the job market may translate into lost income tax and other revenue to local governments like New York City.

For these reasons, the City strongly opposes the Proposed Rule, and calls upon DHS to withdraw it.

## 1. The Proposed Rule departs from prior agency policy without reasonable basis

On September 9, 2019, DHS published the Proposed Rule in the Federal Register. The Proposed rule would amend regulations to remove the requirement of USCIS to adjudicate initial EAD applications for pending asylum applicants within 30 days. Generally, when a person files for asylum affirmatively, USCIS has jurisdiction over the application, and when a person files defensively in the context of removal proceedings, EOIR has jurisdiction.[7] Currently, an

---

[3] 8 USC § 1158(d)(2); 8 CFR § 208.7(a)(1); 8 CFR § 274a.12(c)(8); 8 CFR § 274a.13(d).
[4] *Rosario v. USCIS,* No. 2:15-cv-00813-JLR (W.D. Wash.), appeal pending, *NWIRP v. USCIS*, No. 18-35806 (9th Cir.).
[5] These adjudication processing delays would be on top of the 150 waiting period to seek work authorization.
[6] Id.
[7] 8 C.F.R. § 208.2; see also USCIS Affirmative Asylum Procedures Manual (2016) at 68 ("The USCIS Asylum Division has jurisdiction to adjudicate the asylum application filed by an alien physically present in the U.S., unless and until a charging document has been served on the applicant and filed with EOIR, placing the applicant under the

individual applying for asylum in either posture may submit an initial EAD application at any point after 150 days have elapsed since the date either USCIS or EOIR received their asylum application, if no delays have been caused by the applicant.[8] USCIS must then adjudicate the EAD application within 30 days of the date of filing.[9] The current rule recognizes the economic hardship faced by asylum seekers during the asylum application process, and it enables them to work lawfully while they wait for their cases to be decided, if their cases are delayed more than 180 days through no fault of their own.[10]

For context, prior to 1994, asylum applicants could apply for an EAD at the same time they applied for asylum. In 1994, the then-Immigration and Naturalization Service (INS) promulgated a regulation to "streamline the adjudication of asylum applicants" and also "restrict employment authorization to applicants for asylum…whose claims have been pending more than 150 days."[11] This rule provided that asylum applicants could apply for work authorization after their applications were pending for 150 days and that the INS would adjudicate those applications within 30 days. In making this change, the agency was aware that "applicants with pending asylum claims will wait longer than required at present to receive employment authorization" and envisioned that "few applicants would ever reach the 150-day point."[12] In this version of the rule, a provision was made for an interim EAD if an adjudication was not made within 30 days.[13] However, in 1997, the agency removed the provision that permitted interim EADs if an application was not adjudicated within 30 days.[14] One of the "chief purposes" of the 30-day deadline, as part of the larger regulatory amendments issued in January 1995, was "to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible,"[15] The focus on expediency was reinforced by how the agency described the proposed rule: "The INS will adjudicate these applications for work authorization within 30 days of receipt, regardless of the merits of the underlying asylum claim."[16] Courts have interpreted this elevation of the 30-day deadline above the merits of the underlying asylum claim to reflect that the balance of equities has been struck in favor of adhering to the deadline so that applicants can obtain employment authorization.[17]

The rationale of the then-INS in selecting 150 days was because it was a period "beyond which it would not be appropriate to deny work authorization to a person whose claim has not

---

jurisdiction of Immigration Court.") (emphasis added); id. at 69 ("Jurisdiction remains with EOIR until proceedings have been terminated or the applicant departs from the U.S.").

[8] 8 CFR § 208.7(a)(1).

[9] 8 CFR § 208.7(a)(1); *see* 8 U.S.C. § 1158(d)(2).

[10] 8 C.F.R. § 208.7(a)(1), 1208.7(a)(1); see also 8 U.S.C. § 1158(d)(2). (CHECK CITES)

[11] Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization (Proposed Rule), 59 Fed. Reg. 14,779, 14,779 (Mar. 30, 1994); see also Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization (Final Rule), 59 Fed. Reg. 62,284 (Dec. 5, 1994).

[12] 59 Fed. Reg. at 14,780.

[13] 59 Fed. Reg. at 14,785.

[14] Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures (Proposed Rule), 62 Fed. Reg. 444, 464 (Jan. 3, 1997); Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures (Interim Rule), 62 Fed. Reg. 10,312, 10,340 (Mar. 6, 1997)

[15] *See Rosario* (citing 62 Fed. Reg. at 10,318 (1997)).

[16] *See Rosario* (citing 50 Fed. Reg. at 14,780 (1994)).

[17] *See Rosario* (citing 50 Fed. Reg. at 14,780 (1994)).

been adjudicated."[18] The purpose of promulgating the 30-day deadline on top of that 150-day waiting period was to cabin what was already—in the agency's view—an extraordinary amount of time to wait for work authorization. Despite the clear position of the then-INS, that 180 days was already an "extraordinary" amount of time to wait for work authorization, DHS now states that this Proposed Rule is necessary because they allege that the 30-day adjudicatory timeframe is no longer realistic or feasible. Capitulating to USCIS' supposed inability to comply with the 30-day adjudicatory timeframe is not only contrary to the clear purpose of the regulation's creation, it is also not accurate. In 2018, the United States District Court of the Western District of Washington ruled in favor of a class of immigrants and ordered USCIS to comply with their 30-day adjudicatory timeframe.[19] Since the *Rosario* Court ordered USCIS to comply with the 30-day adjudicatory timeframe, DHS reports that over 99% of the work authorizations for individuals with pending asylum applications have been processed within the 30-day timeline.[20] This demonstrates that USCIS is more than capable of processing these applications within the regulatory timeframe. DHS argues that USCIS should not have to comply with this timeframe and should be allowed to process applications in a timeframe closer to its Fiscal Year 2017 rates, which DHS states, is the "baseline" for USCIS' performance. In FY 2017 (the year prior to *Rosario*), USCIS, by its own admission, adjudicated less than 50% of work authorization applications within 30 days.

DHS argues that those adjudication timeframes are an accurate depiction of the time USCIS needs to adjudicate EAD applications because of the need for additional vetting of applications that raise security and fraud concerns. However, according to the text of the Proposed Rule, in FY 2017, 53% of applications were not adjudicated within the 30-day timeframe, but only 19% of the total number of applications required "additional vetting." In addition, 3% of the total number of applications required additional vetting and were still processed in 30 days. That means that at most, only 16% of the total number of applications that were not adjudicated within 30 days were the result of "additional vetting," leaving the other 37% of applications not adjudicated within the 30-day timeframe unexplained. Furthermore, DHS defines "additional vetting" as cases that either needed to be sent to the Background Check Unit (BCU) and the Center Fraud Detection Operations (CFDO) or where USCIS sent out a request for more evidence (RFE). When USCIS issues an RFE, the regulatory clock counting the 30 days stops for that application, meaning that the time from when the RFE is issued until the time USCIS receives the additional information is not counted towards the 30-day timeframe.[21]

### 2. DHS's own Ombudsman provides alternative recommendations

Asylum seekers are a vulnerable population having fled persecution in their home countries, and having made the perilous journey to the United States to seek refuge. Inexplicably, rather than working to make the asylum process more efficient and effective for those fleeing persecution, our federal government continues to attack the process that gives these people a

---

[18] 50 Fed. Reg. at 14,780.
[19] *Rosario v. USCIS,* No. 2:15-cv-00813-JLR (W.D. Wash.), appeal pending, *NWIRP v. USCIS*, No. 18-35806 (9th Cir.).
[20] https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf.
[21] 8 C.F.R. § 103.2(b)(10)(i).

pathway towards safety and stability. This Proposed Rule comes at a time when immigrants passing through third countries are being denied the ability to apply for asylum regardless of the merits of their claims, and where asylum seekers are being forced to wait in Mexico while their asylum applications are processed.[22] This Proposed Rule would further contribute to the already hostile environment for immigrants, particularly those applying for asylum. While the administration has claimed these changes are necessary due to limited resources, this justification does not withstand scrutiny. Rather than continuing to create barriers for asylum applicants, DHS should follow the advice of its own Ombudsman, who provided a number of viable solutions to DHS' concerns around USCIS compliance with the 30-day time frame.

DHS's 2019 annual report outlines three main challenges with initial EAD application processing times: increased filing volume, technological challenges, and insufficient staffing.[23] USCIS reports that technology problems significantly hampered EAD processing times. Between approximately September 2017 and February 2018, the data management system the NBC uses to process EADs (CLAIMS 3) operated more slowly than usual.[24] The DHS Ombudsman recommended that USCIS: hire more staff, accelerate the incorporation of the Form I-765 into eProcessing, implement a public education campaign, and improve the process around resubmissions of Form I-765 due to "service error."[25] The City believes that in lieu of the Proposed Rule, that DHS should take the advice of its own Ombudsman and make the changes outlined above. Furthermore, it should be noted that in FY 2018, EAD receipts filed by individuals who were granted or were seeking asylum accounted for only 18% of the total number of EAD receipts. [26] USCIS' inability to adequately adjudicate work authorization applications is not created by the batch of work authorizations addressed by the Proposed Rule, and as such, this problem will not be solved by delaying these adjudications further. DHS should continue to work with USCIS to make their adjudicatory process more efficient, so that work authorizations across all categories, including those coming from individuals with pending asylum applications, can be adjudicated within the regulatory guidelines set out by DHS.

## 3. Conclusion

For the reasons articulated above, we call upon DHS to withdraw the Proposed Rule and continue to work towards compliance with its 30-day adjudicatory timeframe.

Sincerely,

---

[22] *See* Asylum Eligibility and Procedural Modifications, EOIR Docket No. 19–0504; A.G. Order No. 4488–2019 (7/16/2019); Migrant Protection Protocols Implementation Memo, https://www.dhs.gov/sites/default/files/publications/19_0129_OPA_migrant-protection-protocols-policy-guidance.pdf, (1/25/2019).
[23] https://www.dhs.gov/sites/default/files/publications/dhs_2019_ombudsman_annualreport_verified.pdf
[24] https://www.dhs.gov/sites/default/files/publications/dhs_2019_ombudsman_annualreport_verified.pdf
[25] https://www.dhs.gov/sites/default/files/publications/dhs_2019_ombudsman_annualreport_verified.pdf
[26] USCIS annual report



Bitta Mostofi
Commissioner
NYC Mayor's Office of Immigrant Affairs

Steven Banks
Commissioner
Department of Social Services, HRA-DHS

AR005227

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-e281
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2566
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Asylum seekers should be allowed to work as soon as possible. It both contributes to our economy, and allows them to begin creating the connections necessary to succeed.

AR005228

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-6c4n
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2567
Comment Submitted by Julia Tempesta

---

## Submitter Information

**Name:** Julia Tempesta
**Address:**
  21 Colborne Rd.
  Brighton,  MA,

---

## General Comment

I oppose Proposed Rule "Removal of 30-Day Processing Provision for Form 1-765(c)(8). Immigrants make America great!

Sincerely,

Julia Tempesta

AR005229

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-yx24
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2568
Comment Submitted by Ryan Garrett

---

## Submitter Information

**Name:** Ryan Garrett
**Address:** United States,
**Email:** rgarr0066@gmail.com
**Phone:** 815-793-4838

---

## General Comment

To Whom It May Concern,

My name is Ryan Garrett, and I am a Concerned Citizen of the United States of America. I am a legal assistant who works to assist immigration attorneys in their day to day functions. I have been at this job for almost two years now. In my time here, I have grown a deep respect for the immigrants of this country who face immense hardship to be here. I have worked closely with Asylum Seekers in this job and met countless clients who have needed our services to file their asylum application. I can tell you that one thing is the same between all of the Asylum Seekers I assist: FEAR. They are afraid, and rightfully so. Many are running from those that wish to persecute them, many of them who have shown proof that they would not survive 6 months if they were forced to return because of their beliefs or their choices. No one should have to live like that, and we fight everyday to ensure that doesnt happen.

So, when I hear that they want to remove the 30 -Day Processing Provision for Asylum Applicants, frankly, it pisses me off. These people have done everything the government has asked them to do, while being in a constant state of fear. They have even waited months without any remedy to not being able to work, and many of them have experienced financial hardship. All they ask for is the opportunity to support themselves while the government adjudicates their case. To tell them that we cannot adjudicate at least this in 30 days and would basically putting them in purgatory, is wrong. USCIS has been adjudicating about 99 percent of these cases in 30 days currently. They can do it and they should be held to a high bar, especially when in many cases where we are deciding if someone lives or someone dies. I understand that this may seem dramatic, but I would argue that my statements, in many cases hold horribly true.

I would encourage you to understand that this decision would lead to lost income for families seeking asylum and innocent people will suffer. There will be an increase in food insecurity, risk of homelessness, and a loss of access to community service agencies that could otherwise assist them. All because we are annoyed by deadlines.

AR005230

We will also lose tax revenue from Asylum Seekers who would otherwise be working, a consequence that frankly makes me question whether much thought has been put into this proposal. I ask that you please consider your decision carefully and keep in your heart that there are real people at stake here. People, not just immigrants. People I believe we should be proud to protect and who will ultimately make this country a more rich place. But we must stand strong in our effort to help them, and hold ourselves to the highest bar, even if it difficult because I know in my heart that is the right thing to do. Please do not remove the 30 day deadline. Thank you.

Sincerely,

Ryan Garrett

AR005231

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-gd3g
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2569
Comment Submitted by Jean Bruggeman, Freedom Network USA

## Submitter Information

**Name:** Anonymous Anonymous
**Submitter's Representative:** Jean Bruggeman
**Organization:** Freedom Network USA

## General Comment

Freedom Network USA opposes this rule change as it would be harmful to human trafficking survivors seeking protection in the US, as explained in the attached.

## Attachments

AsylumEADProcessingRuleCommentFNUSA

AR005232



November 8, 2019

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

RE: DHS Docket No. USCIS-2018-0001, 84 F.R. 47148

To Whom It May Concern:

Freedom Network USA (FNUSA) respectfully submits this comment to the Department of Homeland Security's Notice of Proposed Rulemaking on Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019.

FNUSA, established in 2001, is a coalition of 68 non-governmental organizations and individuals that provide services to, and advocate for the rights of, trafficking survivors in the United States. Our members include survivors themselves as well as former prosecutors, civil attorneys, criminal attorneys, immigration attorneys, and social service providers who have assisted thousands of trafficking survivors. Together, our members provide services to over 2,000 trafficking survivors each year.[1]

FNUSA is opposed to the DHS proposal which would delay the issuance of EADs for asylum seekers. FNUSA and our members support survivors from throughout the world who come to the US to seek protection from human trafficking. They have been abused and exploited by family members, neighbors, and government officials. They have been persecuted and suffered retaliation when they have attempted to flee the exploitation. They have been denied their freedom, safety, and income. Access to employment is a key element in their physical and psychological recovery.

Considering DHS' own reports that it is now deciding over 99% of EADs within the 30-day processing timeline, it is clear that DHS is generally able to address fraud and security concerns within the current timeframe and process. Therefore, there is no justification to compounding

---

[1] Freedom Network USA 2018 Member Report, available at
https://freedomnetworkusa.org/app/uploads/2018/04/FRN-Member-Report-Digital-FINAL.pdf.

the severe harm already suffered by trafficking survivors and others seeking protection from the US.

I can be reached at [jean@freedomnetworkusa.org](mailto:jean@freedomnetworkusa.org) if you have any questions or need any further information or explanation.

Sincerely,

Jean Bruggeman
Executive Director
Freedom Network USA

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7a-ecqm
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2570
Comment Submitted by Esther Yoo

---

## Submitter Information

**Name:** Esther Yoo

---

## General Comment

I oppose the removal of the 30-day processing provision for asylum applicant-related Form I-765 Employment Authorization Applications. The EAD is crucial to helping asylum seekers support themselves in this country. Without the EAD, one of my asylum clients had to receive local and state benefits to survive. As soon as he received his EAD, he got a job that was appropriate for his level of education and training. His company was also located in an area that had a severe shortage of people qualified for his position, so both sides benefited. He no longer receives any public benefits, and he is fully self-sufficient. Prolonging the process of receiving an EAD will only harm a vulnerable population as well as our communities.

AR005235

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-r86k
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2571
Comment Submitted by Julie Anonymous, Catholic Community Services

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

My name is Julie and I am the program manager for an outreach program with Catholic Community Services working with homeless adults and families in King County. This regulation will cause asylum seekers to not be able to afford food and likely face homelessness, which we see a lot of in our outreach program. Please do not pass this regulation taking away protection from those seeking asylum.

AR005236

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-a1ba
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2572
Comment Submitted by Benjamin Brooks, Whitman-Walker Health

## Submitter Information

**Name:** Benjamin Brooks
**Submitter's Representative:** Benjamin Brooks
**Organization:** Whitman-Walker Health

## General Comment

Whitman-Walker Health (WWH or Whitman-Walker) submits these comments in response to the Notice of Proposed Rulemaking (NPRM or Notice) Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, filed September 9, 2019, 84 Fed. Reg. 47148. Whitman-Walker Health opposes the portion of the proposed rule removing regulatory requirements to adjudicate employment authorization applications within 30 days because it will have negative impacts on our clients by creating further delays and barriers to employment authorization, is counter to public policy, and the analysis in the NPRM is insufficient. Whitman-Walker is not opposed to the portion of the rule removing the provision requiring that the application for renewal must be received by USCIS 90 days prior to the expiration of the employment authorization. See attached for our complete comments.

## Attachments

WWH Comments on Updated Recommendations 2019

AR005237

| | |
|---|---|
| Proposed Update of ) | |
| the CDC's 2006 Revised Recommendations for HIV ) | Docket No. CDC-2019-0069 |
| Testing of Adults, Adolescents, and Pregnant Women ) | |
| in Health-Care Settings ) | |

Whitman-Walker Health (Whitman-Walker or WWH) submits these comments in response to the Centers for Disease Control and Prevention's August 26, 2019 notice, 84 Fed. Reg. 45495, regarding updating the Recommendations for HIV Testing of Adults, Adolescents, and Pregnant Women in Health-Care settings.

### INTEREST AND EXPERIENCE OF WHITMAN-WALKER HEALTH

Whitman-Walker Health is a Federally Qualified Health Center serving greater Washington, DC's diverse urban community, including individuals who face barriers to accessing care, and with a special expertise in HIV care and serving lesbian, gay, bisexual, transgender and questioning/queer (LGBTQ) populations. We empower all persons to live healthy, love openly, and achieve equality and inclusion. WWH services include primary medical care, HIV and LGBTQ specialty care, mental health care, substance use disorder treatment services, psychosocial support, early intervention services, public benefits and insurance navigation, nurse-focused case management, HIV and STI screening, legal services, youth programs, and two onsite pharmacies – one in Northwest DC and one in Southeast DC. WWH has achieved Level 3 Patient Centered Medical Home accreditation from the National Committee for Quality Assurance. Our team provides high quality, affirming health care to more than 20,700 individuals annually and is the medical home to more than 10,000 patients. The center has five sites and a team of more than 280 highly educated and practically experienced staff. Our diverse patient populations include African Americans; Latinx individuals; gay and

AR005238

bisexual men and lesbian and bisexual women; individuals with substance use disorders; and low-income and homeless individuals.

Whitman-Walker has been a nationally recognized leader in HIV treatment and prevention for almost four decades. In calendar year 2018, we provided health care to 3,505 people living with HIV. We serve more than 25% of the District of Columbia's reported HIV-positive population, many of them low-income or members of otherwise underserved communities. Eighty-three percent of our patients living with HIV are virally suppressed – a success rate much higher than the national and DC averages for people living with HIV, and comparable to the success rate for Ryan White-funded programs.

Whitman-Walker's Medical, Behavioral Health and Community Health Departments have been at the forefront of HIV education and prevention since the earliest days of the epidemic. In 2018, we provided rapid HIV tests to 8,849 individuals, and our walk-in Sexual Health and Wellness clinics, which offer STI and HIV testing, served 1,719 individuals. In 2018, our STI testing program diagnosed approximately 9% of the new HCV cases, 27% of the new cases of primary and secondary syphilis; more than 18% of the new cases of gonorrhea; and more than 9% of the new cases of chlamydia in the District of Columbia. Whitman-Walker also has more than 1,000 patients on PrEP, and has instituted a low-barrier "PrEP clinic" to make it easier for individuals who would benefit to start and remain adherent to the therapy.

WWH has been conducting clinical research since 1987, when the first HIV treatments were being tested. Our studies investigate new ways to prevent or treat diseases in our community, particularly infectious diseases. Our research priorities also include new treatments for opioid addiction, the health and wellness priorities of LGBTQ youth, and improving HIV prevention and treatment for sex workers. WWH's current research studies include the search

AR005239

for a cure for HIV, clinical trials that test the long term effects of HIV treatments on cardiac health and cognitive impairment, and the safety and efficacy of treatments for people living with HIV who use opioids; as well as behavioral studies that look at such topics as disease prevention and medical adherence for special populations at elevated risk of HIV acquisition, such as transgender women and young men of color who have sex with men.

### COMMENTS ON UPDATING HIV TESTING RECOMMENDATIONS

The recent data from the 2019 Annual HIV, Sexually Transmitted Infections (STIs), Hepatitis, and Tuberculosis (TB) Surveillance Report for the District of Columbia indicates increased rates of STI infections among adults aged 55 or over.[1] Rates of STIs are an indicator of risk of HIV exposure and transmission. We recommend, based on epidemiological information and evolving understandings of the sexual habits of older adults, that **CDC recommendations should be updated to include recommendations for annual HIV screening for adults older than 64**. To remove the potential for provider and patient potential bias, we believe annual screening is indicated for all sexually active people, regardless of age. The stereotype that older adults are not sexually active is not only inaccurate; it jeopardizes the public health and the health of individual older persons, and their sexual partners, by reducing the likelihood that they will be diagnosed and treated.

The CDC should strengthen the language of recommendations for annual screenings for people "at high risk for HIV." The current recommendations defines high risk as people living in high prevalence areas and people in high prevalence populations, defined by a diagnostic yield of more than 1 per 1000 patients screened. The current recommendations do not align with

---

[1] Annual Epidemiology & Surveillance Report: Data Through December 2018. Washington, DC: District of Columbia Department of Health; HIV/AIDS, Hepatitis, STD, & TB Administration, 2019. Accessed 10/28/19 at https://dchealth.dc.gov/publication/hahsta-annual-epidemiology-surveillance-report-2019.

AR005240

provider and patient understanding of what constitutes high risk. That is, providers and patients routinely fail to classify themselves or their patients as "at high risk of HIV acquisition." **The language should be changed to more accurately reflect provider and patient expectations of "high risk" populations or locations to encourage more frequent screenings**. The CDC should take care to find destigmatizing language that accurately describes the risk portfolio of people in high prevalence areas and populations and reflects general expectations. The recommendations should be effective at motivating patients to receive HIV testing and should assist providers in recognizing when patients are indicated for HIV prevention services. Similarly, **we recommend that the CDC strengthen the language of recommendations for HIV screenings for people seeking treatment for STIs.** While the language of the current recommendations is clear, providers are not routinely following CDC guidelines. The language of the recommendations should be updated to be more aligned with provider and patient expectations to encourage more frequent screenings for HIV based on diagnosis of or exposure to STIs.

Finally, we note that the third-generation Rapid HIV test presents substantial benefits in some healthcare settings and non-clinical settings where it is difficult to link patients to care. Rapid-HIV tests are highly reliable at detecting HIV antibodies in people exposed to HIV for longer than 3 months, which is efficacious for those with infrequent testing. Results are available with 20 minutes, facilitating anonymous HIV clinics by reducing the barriers to follow-up with patients after testing. Third-generation Rapid HIV tests allow clinicians to link newly diagnosed people with care and treatment quickly. They provide peace of mind for people with potential exposures to HIV, and provide an opportunity for clinicians to link people to HIV prevention modalities like PrEP. The current language includes language that supports the use of

AR005241

rapid HIV tests.  We comment that **the updated recommendations should strengthen the language recommending the use of third-generation Rapid HIV tests.**  In particular, we comment that the language regarding Rapid HIV tests should be moved to the "recommendations" section instead of the "additional considerations" section.

CONCLUSION

Whitman-Walker appreciates this opportunity to provide information on updates to the CDC HIV testing recommendations.  Please feel free to contact us if we can be of assistance in any other way.

Respectfully submitted,

Benjamin Brooks, JD, MPH, Assistant Director of Policy
Daniel Bruner, JD, MPP, Senior Director of Policy
Juan Carlos Loubriel, Director of Community Health and Wellness

WHITMAN-WALKER HEALTH
1377 R Street, NW
Washington, DC 20009

October 28. 2019

AR005242

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-m13r
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2573
Comment Submitted by Jillian Kong-Sivert

## Submitter Information

**Name:** Jillian Kong-Sivert
**Address:**
   5412 W Maldonado Rd
   Laveen,  AZ,  85339
**Email:** Jkongsiv@gmail.com
**Phone:** 6022371214

## General Comment

Completing an affirmative or defensive application for asylum is a daunting task. Finding an attorney or advocate to help is also a daunting task. The difficulties of doing so may already eat up many months of effort. On top of that, waiting five months in order to ask for work permission is a tremendous hardship. If we take seriously that he person has left a bad situation on an emergency basis (And this is the case even if it turns out that the persecution/ torture claimed is not cognizable under the law), then our law already asks that person to live off of the charity of others for nigh on a year before we grant permission for that person to begin contributing. Having jumped through all of these legal hurdles, it is just simply cruel not to allow this person who has already been vetted and demonstrated compliance with out rules to wait any longer than absolutely necessary for that permission. Conversely, if the goal is to dissuade the cynical exploitation of our asylum and human rights protections, then making work permits harder to obtain perversely hurts only those people who do not have the luxury of strategizing their preferred forum and abusing our visa system.

AR005243

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-r21r
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2574
Comment Submitted by Alisa Kaufman

---

## Submitter Information

**Name:** Alisa Kaufman

---

## General Comment

I am a former Deputy District Attorney and former Asylum Officer. The Office of Chief Counsel recruited me to work in deportation because of my commitment to the law and my abilities. In other words, I'm not a bleeding heart liberal. I am, however, very aware of the hardships asylum applicants suffer when they are doing their best to follow the law and cannot lawfully work to support themselves and their families. The One Year Bar was created to deter asylum seekers from using the process to obtain work permits without having valid asylum claims. This goal is met by the current status of the law and regulations. Elimination of the 30 day regulation places greater hardships on people who have already suffered so much that they have left everything and everyone behind. Even if they are able to have family members with them, they are isolated in a new culture. I believe they should get work permits sooner, rather than later. Allowing an asylum applicant to work benefits the US because applicants often take jobs US citizens don't want to do. Work also provides support and structure to an applicant's life, which benefits his or her mental health. Processing a work permit within 30 days is therefore not only good for our economy, it is also the humane and moral action to take.

I am also aware that DHS regularly violates its own regulations. So to eliminate this regulation will exacerbate an already erratic adjudication process. I suggest that some of the money allocated for enforcement, which is so much more than ICE needs, be directed to USCIS to provide more staffing for more effective processing of applications. You could easily eliminate much of the economic waste at ICE (I have personally seen ICE buy new computers and other furnishings just to use up funds to avoid losing the money in the future) and have enough funds left over to process EADs more timely.

AR005244

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-7m8r
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2575
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

We do not want to do anything that discourages folks who are willing and able to work from working.
This goes against everything this country was built on.

AR005245

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-lh2k
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2576
Comment Submitted by Shannon Minter, National Center for Lesbian Rights

## Submitter Information

**Name:** Shannon Minter

## General Comment

The National Center for Lesbian Rights is pleased to submit comments in response to the Department of Homeland Securitys (DHS) Notice of Proposed Rulemaking (NPRM) on Removal of 30-Day Processing Provision for Asylum Applicant Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001; 84 F.R. 47148. DHS justifications for issuing the proposed rule are arbitrary and capricious and do not outweigh the harm the rule will unnecessarily cause to LGBT survivors of severe persecution. DHS proposal through this NPRM to eliminate the 30-day processing provision will severely disadvantage survivors of persecution and abuse such as our clients. We therefore strongly oppose DHS proposed rule and instead urge you to maintain the 30-day adjudication deadline currently required by the regulations. Our complete comments are in the attached PDF document. We look forward to your detailed feedback on these comments.

## Attachments

NCLR Comment Removal of 30 Day Processing

AR005246

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2576.html[9/15/2020 4:15:14 PM]



NATIONAL OFFICE
870 Market St Suite 370
San Francisco CA 94102
tel 415 392 6257
fax 415 392 8442
info@nclrights.org
www.nclrights.org

November 8, 2019

*Submitted via* www.regulations.gov

Samantha Deshommes, Chief
Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security

**Re: Comments in Response to Proposed Rulemaking: Removal of 30- Day Processing Provision for Asylum Applicant - Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001; 84 F.R. 47148**

Dear Chief Deshommes,

The National Center for Lesbian Rights is pleased to submit the following comments in response to the Department of Homeland Security's (DHS) Notice of Proposed Rulemaking (NPRM) on Removal of 30-Day Processing Provision for Asylum Applicant – Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001; 84 F.R. 47148.

I. **Introduction**

The National Center for Lesbian Rights is a national legal organization committed to advancing the civil and human rights of lesbian, gay, bisexual, and transgender (LGBT) people and their families through litigation, legislation, policy, and public education. Through our Immigration Project, we have successfully represented hundreds of LGBT asylum-seekers in the U.S. in their immigration proceedings. Our clients have fled persecution and abuse because of their sexual orientation and gender identity including forced conversion therapy, sexual assault and rape, and attempts to kill or seriously injure them, at the hands of homophobic or transphobic members of society, law enforcement and other government representatives, and even their own families.

Most of our clients are severely traumatized and indigent, and have limited support systems for assistance with basic life necessities like housing and healthcare while awaiting employment authorization from United States Citizenship and Immigration Services (USCIS). Currently, regulations require USCIS to adjudicate an asylum applicant's initial application for an Employment Authorization Document (EAD) within 30 days of filing. 8 CFR 208.7(a)(1). **DHS' proposal through this NPRM to eliminate this requirement will severely disadvantage survivors of persecution and abuse such as our clients. We therefore strongly oppose DHS' proposed rule and instead urge you to maintain the 30-day adjudication deadline currently required by the regulations.**

AR005247


NATIONAL CENTER FOR LESBIAN RIGHTS

II. **DHS' Justifications for Issuing the Proposed Rule are Arbitrary and Capricious and Do not Outweigh the Harm the Rule will Unnecessarily Cause to LGBT Survivors of Severe Persecution**

A.   The Proposed Rule is Arbitrary and Capricious

DHS asserts that eliminating the 30-day EAD adjudication period is necessary to make USCIS' fraud detection efforts more effective. Yet, USCIS is already permitted to take more time for EAD processing, by requesting additional documents from an applicant where deemed necessary, for example, where fraud is suspected. The proposed rule cannot, therefore, be justified on this basis and is arbitrary and capricious.

B. Delaying EADs will Further Harm Traumatized LGBT Survivors of Persecution

Under the proposed rule, asylum seekers could be forced to wait for EADs indefinitely, with no recourse or end in sight. While DHS considered replacing the 30-day adjudication timeframe with 90-days, the current proposed rule provides no timeframe at all, such that significant delays could be the new norm facing asylum seekers.

Asylum applicants who have endured severe trauma are in desperate need of resources to rebuild their lives. Many LGBT survivors have little or no support network in the U.S. they can rely on for life's necessities, and will face significant financial hardship. This includes the chronic threat or lived reality of homelessness, and the hunger and health problems that accompany it.

Furthermore, asylum applicants are ineligible for federal public assistance. With their ability to earn income delayed or worse - effectively foreclosed, survivors will be unable to access much-needed mental and physical health services. If pro bono or low-cost legal services are unavailable where a survivor lives, they will be unable to pay for a lawyer. Survivors' cases are complex, and representation often means the difference between safety or being returned home to face additional violence or even death.

Keeping survivors in poverty further compounds trauma, prolongs or delays healing, and prevents them from integrating into society, depriving communities of their contributions and productivity as members of the work force. Transgender people of color, who are a significant number of NCLR's clients, are particularly vulnerable to factors that drive poverty.[i] Subjecting them to potentially indefinite wait times for an EAD creates an additional barrier to employment, a key factor in avoiding poverty.

LGBT people already face discrimination and harassment from employers at significant levels.[ii] LGBT immigrants may feel less able to report or oppose discrimination because they depend on their particular employer for survival. Asylum seekers without employment authorization may be forced to participate in the 'shadow economy' in order to survive, and are at the mercy of unscrupulous employers. In addition to discrimination or harassment, employees may face withheld wages, less

pay than originally agreed to, demands to work very long hours, abusive conditions, and threats and incidents of violence at work. Working without authorization may also jeopardize asylum claims.

Work authorization for asylum applicants simultaneously facing domestic violence in the US can literally mean the difference between life or death. LGBT people experience domestic violence at equal or higher rates to heterosexual people.[iii] Close to 100% of survivors of domestic violence report suffering financial abuse.[iv] Almost all of NCLR's clients are survivors of domestic violence and abuse. Denying or delaying an asylum-seeker's ability to find legitimate work gives their abusers a powerful tool of abuse and control, and is directly contrary to the purpose of the Violence Against Women Act, which has been codified in U.S. immigration law, and reauthorized numerous times by Congress.[v]

### III. The Proposed Rule Poses a Burden for NCLR

If USCIS' EAD adjudication timeframe is no longer in effect as proposed by DHS, asylum seekers' need for longer-term non-legal assistance will increase. This will put an additional burden on NCLR staff's capacity to effectively meet the needs of current and future clients who will now need more help avoiding homelessness and hunger while waiting for work authorization.

### IV. Conclusion

Keeping asylum seekers in a state of poverty while waiting for their claims to be heard will not deter them from escaping life-threatening persecution at home. Furthermore, the current 30-day EAD adjudication timeline does not compromise the effectiveness of USCIS' current fraud detection measures. The proposed rule is simply unnecessary and confers minimal, if any, benefit for the government, while punishing survivors who already endure chronic economic instability and for which taxpayers and communities ultimately pay the price. We urge DHS to abandon the proposed rule and maintain the current 30-day regulatory timeframe for initial asylum seeker EAD processing.

We look forward to your detailed feedback on these comments. Please contact me at sminter@nclrights.org or 415-392-6257 for additional information.

Respectfully,

Shannon Minter
Legal Director

---

[i] National Center for Transgender Equality (2016) *The Report of the 2015 U.S. Transgender Survey*. https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf

**NCLR** NATIONAL CENTER FOR LESBIAN RIGHTS

ii The Williams Institute. (2011) *Documented Evidence of Employment Discrimination & Its Effects on LGBT People*.
http://williamsinstitute.law.ucla.edu/wp-content/uploads/Sears-Mallory-Discrimination-July-20111.pdf

iii National Center for Injury Prevention and Control of the Centers for Disease Control and Prevention. (2013) *The National Intimate Partner and Sexual Violence Survey: 2010 Findings on Victimization by Sexual Orientation*. http://www.cdc.gov/violenceprevention/pdf/nisvs_sofindings.pdf. See also, Brown, Taylor N.T. and Herman, Jody L., Intimate Partner Violence and Sexual Abuse among LGBT People: A Review of Existing Research (2015) https://williamsinstitute.law.ucla.edu/wp-content/uploads/Intimate-Partner-Violence-and-Sexual-Abuse-among-LGBT-People.pdf.

iv See, e.g., Postmus, J. L., Plummer, S. B., McMahon, S., Murshid, N. S., & and Mi Sung Kim, M. S. (2012). Understanding economic abuse in the lives of survivors. Journal of Interpersonal Violence, 27(3),411–430, Adams, A, Sullivan,C, Bybee, D, & Greeson, M. (2008), Development of the scale of economic abuse. **Violence Against Women**, 13, 563-588.

v Congressional Research Service *The Violence Against Women Act (VAWA): Historical Overview, Funding, and Reauthorization* (2019) https://fas.org/sgp/crs/misc/R45410.pdf

AR005250

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-ckko
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2577
Comment Submitted by Benjamin Brooks, Whitman-Walker Health

## Submitter Information

**Name:** Benjamin Brooks
**Submitter's Representative:** Benjamin Brooks
**Organization:** Whitman-Walker Health

## General Comment

Whitman-Walker Health (WWH or Whitman-Walker) submits these comments in response to the Notice of Proposed Rulemaking (NPRM or Notice) Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, filed September 9, 2019, 84 Fed. Reg. 47148. Whitman-Walker Health opposes the portion of the proposed rule removing regulatory requirements to adjudicate employment authorization applications within 30 days because it will have negative impacts on our clients by creating further delays and barriers to employment authorization, is counter to public policy, and the analysis in the NPRM is insufficient. Whitman-Walker is not opposed to the portion of the rule removing the provision requiring that the application for renewal must be received by USCIS 90 days prior to the expiration of the employment authorization. See attached for our complete comments.

## Attachments

Comments of WWH on DHS Notice of Proposed Rule Revising Regulations on Time limits for adjudicating EAD applications

AR005251

**BEFORE THE UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, AND UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES**

| | | |
|---|---|---|
| Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications | ) ) | [DHS Docket No. USCIS 2018-0001] |

*Submitted via Federal eRulemaking Portal: http:// www.regulations.gov.*

Whitman-Walker Health (WWH or Whitman-Walker) submits these comments in response to the Notice of Proposed Rulemaking (NPRM or Notice) "Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications," filed September 9, 2019, 84 Fed. Reg. 47148.

Whitman-Walker Health opposes the portion of the proposed rule removing regulatory requirements to adjudicate employment authorization applications within 30 days because it will have negative impacts on our clients by creating further delays and barriers to employment authorization, is counter to public policy, and the analysis in the NPRM is insufficient. Whitman-Walker is not opposed to the portion of the rule removing the provision requiring that the application for renewal must be received by USCIS 90 days prior to the expiration of the employment authorization.

EXPERTISE AND INTEREST OF WHITMAN-WALKER HEALTH

Whitman-Walker Health is a community-based, Federally Qualified Health Center (FQHC) offering primary medical care and HIV specialty care, community health services and legal services to residents of the greater Washington, DC metropolitan area. WWH has a special mission to the lesbian, gay, bisexual and transgender members of our community, as well as to all Washington-area residents of every gender and sexual orientation who are living with or otherwise affected by HIV. In calendar year 2018, more than 20,000 individuals received health

1

AR005252

services from Whitman-Walker. Given our commitment to caring for everyone in the community and the demographics of the Washington, DC metropolitan area, a substantial number of our health care patients are foreign-born, and many of them have filed for various forms of immigration relief.

Since the mid-1980s, Whitman-Walker has had an in-house Legal Services Department. Because of our commitment to holistic health care, which includes addressing the legal and social determinants of health (and ill-health), for more than three decades our in-house Legal Services Department attorneys and legal advocates, with the assistance of hundreds of volunteer attorneys throughout the area, has provided information, counseling, and representation on a wide range of immigration-related services to WWH patients, to individuals living with HIV, and to foreign-born lesbian, gay, bisexual and transgender (LGBT) individuals and families. We have a robust immigration practice, particularly for LGBT individuals seeking asylum or other relief from removal under our immigration laws. Many of our clients come to the U.S. fleeing persecution in their countries of birth because of their sexual orientation or gender identity. Many of our clients seeking asylum are isolated and ostracized from family support systems and as a result are alienated and unable to access community and family supports due to experiences of homophobia and transphobia.

Although our patients and clients come from every income level, substantial numbers are lower-income. Because of the difficult circumstances in which they have come to the U.S. – for instance, fleeing persecution in their countries of birth – many if not most of our immigration clients and foreign-born health care patients have limited means, particularly until their employment authorization documents are received and they are able to make new lives for themselves and becoming fully contributing members of our society.

AR005253

## THE PROPOSED RULE WILL HARM OUR PATIENTS, CLIENTS, AND OUR ORGANIZATION

The changes in the proposed rule that eliminate the regulatory requirement that applications for employment authorizations be decided within 30 days will have major negative impacts on our clients by creating further delays and barriers to employment. It is extremely important for asylum applicants to receive employment authorization as expeditiously as possible. The cost to our clients and patients by delays in employment authorization are harmful beyond the lost wages. They limit access to health insurance and, therefore, limit access to health care – which not only threatens them personally but also jeopardizes the public health. They also perpetuate housing insecurity. They keep individuals whose cases are still being adjudicated from becoming contributing members of society, forcing them to continue to live in poverty and face the ill health resulting from the chronic stress attendant to these conditions.

The proposed rule will limit access to health insurance for asylum applicants, limiting their access to preventive healthcare services and increasing the risk of bankruptcy and poverty. Employment authorization documents provide access to employment and the potential for employer sponsored health insurance. Additionally, the statutory requirements of the Affordable Care Act (ACA) have been interpreted to limit access to the ACA exchanges to asylum applicants 180 days after submitting their application for asylum. (45 C.F.R. § 155.2; 77 FR 18310 (March 27, 2012)) The Centers for Medicare & Medicaid rely on the employment authorization document as proof of eligibility for enrolling in an exchange plan.[1]

---

[1] HealthCare.gov, Immigration documentation types, *accessible via*
https://www.healthcare.gov/immigrants/documentation/

AR005254

In addition to the proposed rule's negative impact on asylum seekers, the rule will negatively impact safety-net providers, including Whitman-Walker.  As an FQHC, we are a community-based organization that provides services to all ages, regardless of their ability to pay.  We use our valuable resources operating programs assisting our clients in navigating the public benefit and private insurance systems across Virginia, Maryland, and Washington, DC.  Shifting patients to employer-sponsored insurance coverage, or coverage purchased on the exchanges created by the Affordable Care Act is essential to our fiscal sustainability and the good stewardship of our resources.  Access to insurance on the ACA exchange is contingent on employment authorization documents.  By increasing delays in employment authorizations, the proposed rule would limit access to healthcare; harming both asylum applicants and the organizations that serve them.

THE PROPOSED RULE IS COUNTER TO PUBLIC POLICY

This proposed rule is counter to the government's objectives of personal responsibility and fiscal sustainability.  Employment authorizations allow for asylum applicants to begin to build self-reliance and to contribute to the communities where they live.

The proposed rule is detrimental to the Government's goals of reducing fraud, identity theft, and human trafficking.  By increasing the wait times for employment authorizations, the government will increase the number of people who, in desperation, may resort to working with false documents, working without documents, or of being trafficked into exploitative labor situations.

Delaying employment authorizations will likely increase vulnerability to labor trafficking.  This is particularly true for LGBT asylum applicants, who are especially vulnerable to all forms of trafficking because LGBT immigrants are often without support from family

AR005255

networks, due to family rejection and societal animus. Many LGBT asylum applicants flee persecution in their country of origin, only to find themselves homeless in the United States after family members refuse to accept them. Prolonged joblessness exacerbates their dire circumstances and places them at extremely high risk of labor trafficking by predatory criminals. The timely processing and issuing of asylum-pending work authorization documents is a crucial step towards ensuring the safety and well-being of an already vulnerable population.

### The Analysis of the Proposed Rule is Insufficient

The OMB's regulatory guidance requires that proposed rules provide enough information for agencies and the public to determine the costs and benefits of proposed regulatory changes. (OMB, Circular A-4, 2003) The OMB recognizes that the distribution between those who pay the costs and receive the benefits is an essential part of the analysis required for proposed rules. The DHS' NPRM fails to fulfill these regulatory requirements to provide information on the distribution of costs and benefits by failing to estimate their own costs of complying with existing regulations.

DHS completed an analysis of the economic harms to immigrants and small businesses, but has not estimated their own costs. (84 Fed. Reg. 47149) Without determining the level of funding necessary to meet their regulatory and court-ordered adjudicatory deadlines, the public and the government do not have the information necessary to determine the costs or benefits of this proposed rule. Failing to consider the costs of complying with existing regulations and court orders is particularly callus as the majority of the costs; hundreds of millions of dollars of lost wages, decreased productivity, and tax losses, fall to asylum seekers, who are some of the most vulnerable and precarious members of our communities. (84 Fed. Reg. 47150)

AR005256

The cost analysis in the NRPM demonstrates that changing the regulations to remove the 30-day processing requirements for employment authorizations for asylum applicants will result in immense harm to communities of asylum applicants and is detrimental to the Federal Treasury. Without additional information, we cannot analyze if the 30-day requirement is reasonably set to balance the immense harm to asylum applicants of delaying employment authorization and the identification checks that USCIS must undergo to issue the authorizations.

Additionally, we find DHS' arguments of necessity wholly unconvincing. The NPRM cites additional security requirements instituted since 9/11 as the cause of their need for additional processing times. (84 Fed. Reg. 47154) We find this unconvincing because USCIS has met its I-765 processing requirements for 99% of applicants for April, May, and June of 2019, during which they received applications equal to or above the elevated rates they cite as reason for the regulatory change.[2]

REMOVING THE 90-DAY EAD RENEWAL REQUIREMENT IS BENEFICIAL TO OUR PATIENTS

We support removing the duplicative and burdensome 90-day filing requirement for renewal of EAD for asylum applications. The proposed regulatory change brings the regulations in agreement with existing policies and reduces barriers to accessing employment for asylum applicants by instituting a less stringent regulatory scheme.

---

[2] United States Citizenship and Immigration Services (USCIS) I-765 - Application for Employment Authorization Eligibility Category: C08, Pending Asylum Initial Permission to Accept Employment Completions by Processing Time Buckets FY15 - FY19 (Through June 30, 2019) Aggregated by Fiscal Year and Month *available at* https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf

AR005257

CONCLUSION

Thank you for this opportunity to submit comments.  We would be happy to provide any additional information that might be helpful.

Respectfully submitted,

Benjamin Brooks, Assistant Director of Policy
Daniel Bruner, Senior Director of Policy
Denise Hunter, Senior Staff Attorney
Connor Cory, Staff Attorney

WHITMAN-WALKER HEALTH
1377 R Street NW, Suite 200
Washington, DC  20009

November 8, 2019

AR005258

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-7grj
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2578
Comment Submitted by Margaret Baker on behalf of South Bay People Power

---

## Submitter Information

**Name:** Margaret Baker
**Address:**
  861 Vista Way
  Chula Vista,  CA,  91911
**Email:** mbakerdrph@gmail.com

---

## General Comment

On behalf of South Bay People Power, I am writing in strong opposition to the proposed change to the rule change regarding removal of the 30-day processing provision for asylum applicants using Form I-765 for Employment Authorization Applications.

South Bay People Power is a non-partisan, proactive group of residents of San Diego County who live near the US-Mexico international border. We are dedicated to promote policies and practices that reflect the values of justice, fairness and civil rights and to encourage civic engagement among all members of our diverse community.

This proposed elimination of the rule that has been working well for our country and the asylum-seekers as well is absolutely cruel and senseless. We demand that the rules stand as they have been operating, to avoid further confusion and cruelty to individuals who are willing to work, pay taxes, support their families and community, and follow the law. To eliminate the 30-day rule will create chaos, increase the backlog of cases, and prevent individual asylum-seekers and their families from participating lawfully in the economy and from caring for themselves.

We challenge the misguided proponents of such a rule-change to answer the following questions:
1) How can you ensure that the application process will not end up in a bottle-neck with an indefinite bureaucratic backlog of cases?
2) How can you ensure a fair process for individuals and the advocates and sponsors of asylum-seekers who are hanging on by a thread, trying to follow the rules and get a chance to work in a timely and predictable manner?
3) Why in the world would you propose changing a process that IS WORKING for individual asylum-seekers as

AR005259

well as for the local communities?

4) How do you expect law-abiding asylum-seekers from supporting themselves, their families and participating in the economy if the 30-day rule has been eliminated?

5) Will there be alternative means of support available for families seeking asylum and the nonprofit agencies trying to facilitate and support their efforts to seek asylum in the United States, as is their RIGHT!?

Since October of 2018, I and other members of South Bay People Power have been volunteering to receive asylum-seekers when they are released by ICE and Customs and Border Patrol in San Diego County. We have heard their stories of abuse, terror and escape from their countries of origin. We have tried to ease the immediate needs for shelter, food and medical care upon their release from detention; and have also helped them cope with the distress, confusion and additional pain due to their experiences while in custody of the immigration system. We are appalled at their stories of abuse and mistreatment.

Once the asylum-seekers have identified the families who will sponsor them, our concern and support doesn't end. We try to help them with everything from material needs of food, clothing, diapers, housing, transportation, medical care, and legal representation. But no matter what we do to support them, it will not be enough! They arrive at our border with nothing... but their desire to live free from fear... but to LIVE. They all need and deserve the ability to EARN a living.

The loss of income to asylum-seekers will cause an unreasonable about of harm to this already-vulnerable community. The lost wages and benefits will not only strain their ability to support themselves and their families, but will result in lost compensation an estimated $255.88 million to $774.76 million in TAXABLE INCOME per year (according to USCIS estimates). USCIS admits that all levels of government will lose tax revenue as a result of the proposed rule change. USCIS projects a loss of $39.15 million to $118.54 million per year because of delayed work authorization will prevent asylum seekers and their employers from contributing to Medicare and social security. This lost tax revenue for our government is absurd!

For these reasons, plus the fundamental value of providing a haven for asylum-seekers, we vehemently oppose the rule change. We see it as part of this administration's effort to make the United States a hostile destination for individuals fleeing persecution in their countries of origin. We will continue to protest abhorrent efforts such as the third-country transit bar, the proposed wide-sweeping public charge rule, and the institution of the so-called (and CRUEL!) Migrant Protection Protocols. By removing the ability of asylum-seekers to gain meaningful employment within a short and predictable timeframe, the current administration effectively turns asylum seekers into the very public charges it seeks to exclude. Additionally, this policy change would make the work authorization process more predictable and inefficient by removing the ability to hold USCIS accountable to any deadline.

As community members in the southern California border region MOST impacted by the admission of asylum-seekers, we demand NO CHANGE to the current rule!

AR005260

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-r88s
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2579
Comment Submitted by Emily Leung, Justice Center of Southeast Massachusetts

## Submitter Information

**Name:** Emily Leung
**Address:**
    Justice Center of Southeast Massachusetts
    62 Main Street, Suite 302
    Brockton,  MA,  02301
**Email:** eleung@justicema.org
**Phone:** 5086380153

## General Comment

See attached file(s)

## Attachments

Justice Center of Southeast MA - Public Comment DHS Docket No. USCIS-2018-0001

AR005261

# *JUSTICE CENTER OF SOUTHEAST MASSACHUSETTS LLC*

*Subsidiary of South Coastal Counties Legal Services, Inc.*
*Serving Southeastern Massachusetts, Cape Cod & Islands*

*Submitted via* www.regulations.gov

November 8, 2019

Regulatory Coordination Division, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Washington, DC 20529-2140

**Re: Docket ID USCIS-2018-0001-0001- Public Comment Opposing Proposed Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, FR Doc. 2019-19125 Filed 9-09-19; 84 FR 47148, 47148-47170**

To Whom It May Concern:

We are writing on behalf of the Justice Center of Southeast Massachusetts in response to the Department of Homeland Security's (DHS, or the Department) Notice of Proposed Rulemaking (NPRM or proposed rule) to express our strong opposition to the removal of the 30 day processing provision of the Form I-765 for asylum applicants, USCIS Docket ID 2018-0001-0001, published in the Federal Register on September 9, 2019.

The Justice Center of Southeast Massachusetts, a subsidiary of South Coastal Counties Legal Services, provides free civil legal services to indigent and elderly individuals in our service area. We serve communities in Plymouth, Bristol, Dukes, Nantucket, and Barnstable Counties, as well as residents of the towns of Avon and Stoughton. Our mission is to achieve equal justice for the poor and disadvantaged through community based legal advocacy. The Justice Center of Southeast Massachusetts provides civil legal services in the areas of housing, family law, education, immigration, and benefits. We serve immigrants, citizens, and mixed status families in each of our practice areas. Our immigration practice serves low-income individuals applying for asylum who would be adversely affected by the proposed removal of the 30 days processing provision for their Employment Authorization Documents.

We object to the removal of the 30 day processing provision as it would create an additional and undue burden on our asylum seeking clients, many of whom have arrived to the United States in vulnerable positions and have already had to wait months to apply for work authorization. We fear that without this deadline in place, adjudication times could be extended indefinitely, leaving our clients without a way to support themselves and their families. Rather than removing the 30 day processing rule, we would advocate that DHS, and its component agency USCIS, look into alternative and internal ways to reduce the backlog and processing inefficiencies, first and foremost by hiring additional employees, an alternative that was not

given sufficient analysis in this proposed rule. The removal of the 30 day deadline is estimated to cost between $295 and $893 million a year in lost compensation and income taxes because asylum seekers who want to work will not be able to, showing that the proposed rule is not only economically wasteful but also cruel from a humanitarian perspective.

I.      **The proposed changes will place a significant and unnecessary burden on asylum seekers as it will result in longer EAD adjudication wait times.**

Asylum seekers already must wait at least 180 days without employment authorization and with the proposed rule change that time period could become indefinitely long. Under the proposed rule change there will be no incentive for USCIS to complete the EAD processing for asylum applicants in a timely manner. USCIS assumes without providing justification that they will be able to process applications in the same amount of time as they did in FY 2017 with the removal of the 30 day processing rule, but they provide no evidence that the can meet these processing times. This intention to meet FY 2017 timeframes is contradicted by the "Growth of Receipts and Backlog" under III.1 "Background and Discussion of Proposed Rule." This section specifically cites the increase in EAD applications and growing asylum backlog as major causes of delays in adjudication. The affirmative asylum backlog as of March 12, 2018 stood at 317,395, and from 2013 to 2017 USCIS reports a 417.43% increase in initial EAD applications from those with pending asylum cases.

Concluding that 2017 processing timeframes are plausible without addressing the trending increase in applications is an assertion that is not supported by data. No data from 2018 or 2019 is included in this proposed rule, yet the data exists and demonstrates generally that adjudication times have increased for most immigration applications from FY 2017-FY 2018 and from FY 2018-FY 2019. Processing times for EAD applications, not including DACA applicants, increased from 3.1 months to 4.2 months from FY 2017- FY 2018, and then from 4.2 months to 4.5 months for FY 2018- FY 2019.  Processing times have also increased for: adjustment of status for asylees and refugees, adjustment of status for family members, employment-based adjustment of status, naturalization, T-Visa applications, U-Visa applications, petitions for alien relatives, applications for a travel documents, refugee/asylee relative petitions, TPS applicants and others.[1] With backlogs across the board and a steady upward trend of adjudication times, an assumption of FY 2017 adjudication levels is not reasonable and simply not based in fact.

Even if USCIS could maintain the timeframes from FY 2017, that still leaves more than half of applicants with EAD applications that are not processed in the 30 day time period, and 22% of applicants waiting over 60 days. As will be addressed below, asylum seekers already face an extreme burden with the current waiting times. A rule that opens them up to lengthier waiting periods is unnecessary. As part of the *Rosario*[2] class action ruling, USCIS was ordered to submit status reports indicating compliance with the 30-day adjudication requirement.[3] In

---

[1] United States Customs and Immigration Services "Historical National Average Processing Time for All USCIS Offices" (August 31, 2019) https://egov.uscis.gov/processing-times/historic-pt
[2] *Rosario v. USCIS*, Case No. C15-0813JLR (W.D. Wash. July 26, 2018).
[3] *Id*.

December 2018, DHS reported adjudicating 96.3% of asylum-seekers' initial applications for employment authorization within 30 days, and an average rate of 92.7% for the first quarter of 2018, demonstrating that USCIS is capable of completing applications in accordance with *Rosario* when the proper resources are directed towards it.[4] While DHS asserts that it cannot divert these resources in the long term because it pulls resources from other priorities and time sensitive matters, it fails to provide any details about which other priorities are being impacted and how those matters compare with the long standing rule that has recognized the particular vulnerabilities of asylum seekers. Removing the 30-day timeframe is going to allow resources to be diverted away from the adjudication of EAD's for asylum seekers and thus will increase processing times that will likely be slower than the FY2017 numbers due to the increase in applications and the backlog, and the overall slow down in USCIS processing times.

Asylum seekers are a vulnerable population that typically left their home countries under duress and may not have family or community to assist them in the United States. Without the 30 day processing requirement, asylum seekers could be left without legal authorization to work for well over 180 days. Federal law already prohibits asylum seekers from accessing most federally funded social benefits like SNAP or SSI, making work authorization one of their only means of economic survival.[5] Because asylum seekers come to the United States fleeing persecution and violence, they often lack familial ties and community to aid in supporting them during the 180 day window within which they cannot receive an EAD. Prolonging this already lengthy processing time would leave many of them dependent on unknown others (nonprofits, community organizations, etc.), directly contradicting DHS's recent emphasis on immigrant self sufficiency.[6] Issuing work permits in a timely manner is the most effective way for asylum seekers to not need government or community provided financial assistance.

Additionally, because asylum seekers also do not have a right to free legal counsel, should they want to be represented in their asylum case, they would have to pay legal fees. Studies show that the most important factor in asylum cases is representation in court, with those retaining representation being 3 times more likely to receive asylum.[7] The inability to apply for an EAD for 150 days, coupled with the removal of the 30 day processing requirement, could leave asylum seekers without the ability to work for a much longer period of time, thus undermining their ability to seek proper legal representation for their cases.

---

[4] American Immigration Council "Court Decision Ensures Timely Adjudication of Employment Applications Filed by Initial Asylum Applicants" (March 27, 2019) available at https://www.americanimmigrationcouncil.org/sites/default/files/practice_advisory/court_decision_ensures_timely_a djudication_of_employment_applications_filed_by_initial_asylum_applicants.pdf

[5] U.S.C., 2009, http://www.law.cornell.edu/uscode/text/8/1611 (accessed November 6, 2013), Title 8, Section 1611(a)

[6] US Department of Homeland Security "DHS Announces New Proposed Immigration Rule to Enforce Long-Standing Law that Promotes Self-Sufficiency and Protects American Taxpayers" (September 22, 2018) available at https://www.dhs.gov/news/2018/09/22/dhs-announces-new-proposed-immigration-rule-enforce-long-standing-law-promotes-self

[7] Andrew Schoenholtz, Jaya Ramji-Nogales, Philip G. Schrag "Refugee Roulette: Disparities in Asylum Adjudication", 60 Stan. L. Rev. 295 (2007) available at https://scholarship.law.georgetown.edu/cgi/viewcontent.cgi?article=2914&context=facpub

AR005264

Some asylum seekers suffer from mental and physical health issues as a result of persecution and violence in their home countries. Without employment authorization they cannot even purchase health care under the ACA, deterring them from going to a hospital or medical center. Without the ability to work, applicants may become more socially and economically isolated from the communities they live in. Dr. Joanne Ahola, a medical of the Weill Cornell Center for Human Rights and the Research Institute Without Walls, says "Work may be the single most important thing in rehabilitating traumatized asylum seekers." Furthermore she says that the purpose of a job can give an asylum seeker can also dually function as a "distraction from thinking about traumatic experiences.[8]

Prolonging adjudications of EADs indefinitely, as the removal of the deadline could cause, may spur asylum seekers to work unauthorized by virtue of survival. This leaves them vulnerable to exploitation by employers who know the asylum applicant is not authorized to work. Undocumented immigrant workers tend to lack bargaining power and will not complain about workplace disputes or wage theft out of fear of employer retaliation. It is estimated that 2.4 million immigrant workers in the 10 largest states lose 48 billion annually to wage theft.[9]

Furthermore, there have been reports that the administration is seeking to lengthen the waiting period even more, up to one year, before allowing asylum seekers to apply for employment authorization, which would further exacerbate all the issues raised herein.[10] DHS references this proposed change to EAD eligibility for asylum seekers in the current proposed rule as a mitigating factor in determining the potential costs of the current regulation, but fails to provide a reasonable basis for changing the eligibility framework for asylum seekers to gain employment authorization.


## II.      In past regulations, the reasoning behind the 30 day deadline was clearly stated.

Asylum seekers are the only class of applicants that have deadlines on EAD processing times. As described in the class action *Rosario v. USCIS*, there has been a focus on expediency for asylum seekers since the regulatory amendments of January 1995. The 30 day deadline was put into place to "ensure that bona fide asylees are eligible to obtain employment as quickly as possible," (62 FR at 10318). INS also chose the 150 day waiting period specifically saying "ideally…few applicants would ever reach the 150 day point" (59 FR 14779, 14780). The average wait time for adjudication of asylum applicants from FY 2017 to FY 2019 is about 701

[8] Human Rights Watch, *At Least Let Them Work: The Denial of Work Authorization and Assistance for Asylum Seekers in the United States*, (November 12, 2013) ISBN: 978-1-62313-0749, available at https://www.refworld.org/docid/5285fc0c4.html
[9] Michael Felsen, M. Patricia Smith, *Wage Theft is a Real National Emergency*, The American Prospect, (March 5 2019) https://prospect.org/power/wage-theft-real-national-emergency/
[10] Julia Ainsley, *Trump Administration Weighs Restricting Asylum-Seekers from Working*, NBC News, November 4, 2019, available at https://www.nbcnews.com/politics/donald-trump/trump-administration-weighs-restricting-asylum-seekers-working-n1076146

days.[11] In this proposed rule, DHS recognizes the legislative history of the 30 day rule in III.1 "Elimination of 30 Day Processing Timeline" and the subsequent footnote 11. However stating that the reasoning behind the 30 day deadline is "outdated" and that it is "untenable notwithstanding its humanitarian goals" simply disregards the original intent of the deadline. The legislative history is clear in that humanitarian goals are of the utmost importance in EAD adjudications for asylum seekers. Asylum seekers still face many of the same vulnerabilities they did in 1995 independent of the number of asylum seekers present and independent of the backlog. While INS could not have predicted the current immigration system backlogs we see in 2019, their reasoning in the regulatory amendments still holds. 150 days is already too long and the 30 day deadline on EADs should be used as a safe-guard to ensure that applicants are not without work authorization for more than 180 days.

### III.   Inefficiencies in USCIS EAD processing practices do not warrant a rule change and DHS has failed to fully consider a clear alternative.

The report does not calculate the cost of hiring additional USCIS workers to speed up processing times and address the backlog, despite the fact that the cost of this alternative is presumably available to the organization in its hiring information and historical hiring practices. The report states that, "Hiring more officers would not immediately and in all cases shorten adjudication timeframes because (1) additional time would be required to onboard and train new employees and (2) for certain applications, additional time is needed to fully vet an applicant, regardless of staffing levels." To address the first reasoning, once employees are on boarded and trained, they would be able to adjudicate applications and reduce the number in the backlog. The report does not provide any information to suggest that the time taken to onboard new employees would be so great as to not affect the backlog of applications in the long run. To address the second, the report does not define nor state how many applications fall into the category of "certain" applications. Even if 50% of the applications require additional time, reducing delays in the other 50% is still reducing the backlog and expediting the process for half of the applicants. Adding staff members to the Background Check Unit or the team responsible for fraud detection would reduce the time needed to process even those applications that are flagged for additional measures. Additionally, DHS fails to provide any data to demonstrate that additional time would be required, "regardless of staffing level," though it makes this assertion in the rule. DHS' own data demonstrates that a 30 day processing window, only 3 percent of the cases required additional vetting, while 42% did not and within the 60 day processing window, only 10 percent of applications required additional vetting, while 68% did not. The data demonstrates that the issue of additional vetting is a minority issue and that proper staffing may be able to resolve these problems as the *Rosario* class has been able to demonstrate adjudications of over 90% of cases within 30 days. Therefore, DHS' reasoning for not engaging in analysis of hiring more employees is flawed and they have failed to demonstrate a reasonable basis for the

---

[11] 11 TRAC Immigration "Average Time Pending Cases Have Been Waiting in Immigration Courts as of September 2019" (accessed November 11, 2019) available at
https://trac.syr.edu/phptools/immigration/court_backlog/apprep_backlog_avgdays.php

rule changes, which by their own calculation will be harmful to asylum seekers, their communities, businesses, the government, and the overall economy.

Furthermore, DHS fails to sufficiently consider potential alternatives to their proposal of entirely eliminating any processing time requirements on EADs for asylum seekers. DHS in analyzing a potential alternative 90 day processing time for asylum EADs states that it did not propose that alternative because "it would not provide USCIS with the certainty and flexibility it needs to fulfill its core mission." DHS does not indicate how the alternative hinders its ability to fulfill its core mission nor do they indicate what agency mission is being potentially being fulfilled. Thus they fail to provide a reasonable basis for not considering this alternative more completely. Once again their own data indicates that they would likely be able to process 92% of applications within 90 days, without having to divert resources from other functions, thus, it seems very likely that they could meet this timeframe with a minimal increase of resources, an analysis that they refuse to engage in. Due to this rule's disregard of the clear alternative and the relevant factors associated with it, it violates the Administrative Procedures Act. The agency failed to consider "an important aspect of the problem" which is staffing levels at USCIS.[12] We strongly urge that alternatives to removing the 30 day processing rule are given the analysis they deserve and that appropriate analysis of the cost and impact of additional staffing be conducted.

### IV. The cost-benefit analysis understates costs and does not provide sufficient analysis of the benefits.

It is in the economic interest of the United States to provide work authorization in a timely manner. Researchers found that during the 10 years between 2005 and 2014, refugees and asylees here from 1980 onwards contributed $63 *billion* more to government revenues than they used in public services.[13] Refugees and asylees also engage in entrepreneurial projects and employment at a much higher rate that US born citizens, creating small businesses and thus jobs that drive growth in the US economy.[14]

The cost estimates USCIS has provided for this proposed regulation are incomplete and understated. The proposed rule explicitly says that "it does not include additional costs to businesses for lost profits and opportunity costs or the distributional impacts for those in an applicant's support network." Search costs and opportunity costs to businesses, while difficult to determine on the macro economic level that would be required by this report, are not insignificant and should not be treated as such. There is a huge cost to those in the support network of the asylum seeker which is also ignored. The analysis does not address the financial burden that would be placed on the families of asylum seekers or community organizations that would have to support them if adjudication times are delayed. The rule acknowledges that it

[13] Julie Hirschfeld Davis and Somini Sengupta "Trump Administration Rejects Study Showing Positive Impact of Refugees" The New York Times, (September 18, 2017) available at https://www.nytimes.com/2017/09/18/us/politics/refugees-revenue-cost-report-trump.html
[14] National Immigration Forum "Immigrants as Economic Contributors: Refugees Are a Fiscal Success Story for America" (June 14, 2018) available at https://immigrationforum.org/article/immigrants-as-economic-contributors-refugees-are-a-fiscal-success-story-for-america/

"could decrease disposable income of families" but then subsequently concludes that "the benefits of the action justify the potential financial impact on the family." The families of asylum seekers may not have a disposable income and to make that assumption ignores a key cost. Furthermore, the description of the benefits does not clearly demonstrate that it will "justify" the potential impact on families. By DHS' own estimates the upper bounds of potential costs of the change to the US economy are upwards of $800 million dollars annually (lost wages and tax losses), which are the costs prior to considering additional burdens that DHS fails to calculate (opportunity cost and search cost to employers, strain on asylum seekers' networks). The cost estimates that have been provided are likely understated, especially given that DHS is estimating costs based on adjudication times of FY2017, and as DHS has failed to even calculate many of the costs, yet the potential benefits of the proposed rule are minimal at best and certainly do not justify the costs.

The benefits of the proposed rule are either not calculated, or lacking in analysis and detail. No quantitative benefits are calculated for a rule that has a quantitative cost of $255.88 million in lost wages and $39.15 million in employment tax loss annually *at the low end*. These minimum projected costs do not even include the potential opportunity costs, search costs, and costs to family and support networks. The qualitative benefits of the proposed rule are: reduced opportunity costs to the federal government, having more time to address fraud and national security concerns, providing up to date processing time information to applicants, reduced adjudication time for other applications, not having to hire additional employees to meet the 30 day deadline required by *Rosario*, and the "end [of] future litigation over the 30-day adjudication timeframe." The reduced opportunity costs to the government are not estimated or described. The amount of potentially fraudulent applications is not estimated or described, nor is the additional time it takes the adjudicate those. The monetary benefits of not having to hiring additional workers is not described or estimated. And as has been discussed above in Part I., there is no evidence provided to suggest that removing adjudication standards is going to speed up the adjudication process. Finally, listing an end of litigation and compliance with *Rosario* as a benefit to the proposed rule goes against case law. *Motor Vehicle Manufacturers Association v. State Farm Insurance*, states that an agency rule is arbitrary and capricious if the "the agency has relied on factors which Congress has not intended it to consider."[15] Noncompliance with a regulation and potential future litigation cannot be the factors that Congress intended USCIS to consider in the creation of this proposed rule.

Additionally, the high cost of this rule violates Executive Order 13771 on "Reducing Regulation and Controlling Regulatory Costs." The executive order states in Section 3(a) that, "Beginning with the Regulatory Plans (required under Executive Order 12866 of September 30, 1993, as amended, or any successor order) for fiscal year 2018, and for each fiscal year thereafter, the head of each agency shall identify, for each regulation that increases incremental cost, the offsetting regulations described in section 2(c) of this order, and provide the agency's best approximation of the total costs or savings associated with each new regulation or repealed regulation." The offsetting regulations in this order are to be eliminated to decrease costs and

---

[15] Motor Vehicle Manufacturers Association v. State Farm Insurance 463 U.S. 29, 42-44 (1983)

AR005268

thus offset "any new incremental costs associated with new regulations". This rule clearly violates Executive Order 13771 as it has estimated costs between $295 and $893 million dollars to the US economy (plus additional tax revenue loss and uncalculated costs), with no quantitative economic benefits estimated. No offsetting regulations were identified nor were subsequent offsetting costs estimated.[16]

Again, because this proposed rule failed to take into account or fully analyze many relevant factors related to the costs and benefits of removing the 30-day timeframe, it violates the APA.

### V.     This rule is built around an unfounded assumption of fraudulent activity by asylum seekers and national security concerns.

This report consistently uses "fraud" as a catch all term for processing inefficiencies. USCIS mentions the need to "allow sufficient time to address national security and fraud concerns, and to maintain technological advances in document production and identity verification" while at the same time discussing the anti-fraud measures that are already built into the EAD adjudication process. These added security measures and technological advances were implemented over a decade ago and have been a part of the EAD adjudication process well before the increase in the backlog of applications in recent years. USCIS established the Fraud Detection and National Security Directorate in 2004[17] and USCIS has been working on automation of immigration benefits and digitizing the processes since 2005.[18] If there are inefficiencies in the technology or in fraud detection, removing adjudication standards is not going to solve those inefficiencies. As discussed above, USCIS has demonstrated that it is able to adjudicate over 90% of applications in 30 days, while maintaining its document production and identify verification measures. While we acknowledge that the security related processes for EAD applications need to remain in place, USCIS needs to address delays in these processes themselves instead of just removing standards. The majority of EAD applications are not fraudulent, so therefore proposing a rule change based on a minority of applications does not truly address the backlog.

DHS cites the events of September 11, 2001 and the increased vetting procedures and safety checks that resulted from it, as a cause of their inability to meet the 30-day deadline. However, none of the individuals involved in the 9/11 attacks were asylum seekers. In fact nearly all were on tourist or business visas and would not have been entitled to apply for work

---

[16] Executive Order 13771 "Presidential Executive Order on Reducing Regulation and Controlling Regulatory Costs" (January 30, 2017) available at https://www.whitehouse.gov/presidential-actions/presidential-executive-order-reducing-regulation-controlling-regulatory-costs/

[17] Donald K. Hawkins, , "Privacy Impact Assessment for the Fraud Detection and National Security Directorate", Department of Homeland Security, (December 16, 2014) (https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-fdns-september2015.pdf

[18] Office of the Inspector General, "USCIS Automation of Immigration Benefits Processing Remains Ineffective", (March 9, 2016)  https://www.oig.dhs.gov/assets/Mgmt/2016/OIG-16-48-Mar16.pdf

authorization documents. Utilizing 9/11 as an example of the need for increased vetting of asylum seekers is a clear attempt to invoke fear while distorting the facts.[19]

DHS has provided no evidence that fraud and security concerns are one of the reasons that adjudication times have not been able to be maintained as these changes have been in effect for 15 or so years. Fraud and national security seem to be reasons invoked by DHS with no corresponding data and if in fact the processing time issues are the result of increased receipts, a simple increase in resources would solve the issue, rather than removing standards entirely.

## VI. This proposed rule demonstrates continued political bias towards Central American asylees.

Central American immigrants to this country have historically faced political bias and continue to do so under the current administration. It is estimated that from 1981 to 1990, over a million Guatemalans and Salvadorans came to the United States fleeing violence in their home countries. The Reagan administration tended to characterize them as "economic migrants" and many were pressured into agreeing to "voluntarily return" to their home countries. In 1984, asylum approval ratings for Guatemalans and Salvadorans were under 3%.[20] In 1985 a group of religious organizations filed a class action lawsuit alleging that US Immigration was engaging in discriminatory practices. The case, American Baptist Churches v. Thornburgh, which typically gets referenced as the ABC settlement agreement, ultimately was approved by federal court in January of 1991. It ordered reconsideration of over 250,000 asylum applications by members of the class action and also included stipulations regarding adjudication of EAD applications for members. If EAD applications were not adjudicated within 60 days, class members automatically were entitled to work authorization.[21]

This 30 day deadline removal would disproportionately harm the growing group of Central American asylum seekers, showing that the political bias continues to the present day. From FY 2016 to FY 2017 asylum seekers from the Northern Triangle countries of El Salvador, Guatemala, and Honduras increased by 25% and are still on the rise.[22] Additionally, in FY 2018 Guatemala and El Salvador were the 2nd and 3rd largest countries of origin respectively for received affirmative asylum applications led only by Venezuela.[23] The Trump administration has shown time and time again their hostility towards Central American immigrants through policy and verbal comments. This administration is responsible for the "third country" asylum ban, which prohibited immigrants from applying for asylum if they were unable to show they applied

[19] Robert Farley, "9/11 Hijackers and Student Visas", (November 24, 2015) available at https://www.factcheck.org/2013/05/911-hijackers-and-student-visas/

[20] Susan Gzesh "Central Americans and Asylum Policy in the Reagan Era" Migration Policy Institute (April 1, 2006) available at https://www.migrationpolicy.org/article/central-americans-and-asylum-policy-reagan-era

[21] Am. Baptist Churches v. Thornburgh, 760 F. Supp. 796, 805 (N.D. Cal. 1991)

[22] Maureen Meyer, Elyssa Pachico, "Fact Sheet: U.S. Immigration and Central American Asylum Seekers", WOLA (February 1, 2018) available at https://www.wola.org/analysis/fact-sheet-united-states-immigration-central-american-asylum-seekers/

[23] Jie Zong, Jeanne Batalova, and Micayla Burrows, "Frequently Requested Statistics on Immigrants and Immigration in the United States", Migration Policy Institute, (March 14, 2019) available at https://www.migrationpolicy.org/article/frequently-requested-statistics-immigrants-and-immigration-united-states#Refugees

in every other country they went through en route to the United States. This ban vastly reduces the number of individuals that will be able to apply for asylum at the US border, and disproportionately harms Central Americans asylum seekers and refugees who will invariably have to transmit through a third country to reach the US border.[24] Another Trump Administration policy called the Migrant Protection Protocols also disproportionately harms Central American immigrants. Individuals who cross into the US over the US-Mexican border without proper documentation "may be returned to Mexico and wait outside of the U.S. for the duration of their immigration proceedings, where Mexico will provide them with all appropriate humanitarian protections for the duration of their stay."[25] Since the program began in January 50,000 asylum seekers and migrants have been forced to wait in dangerous border towns, many of them belonging to vulnerable populations such as pregnant women, LGBTQ persons, and those with serious medical issues. There are already over 340 public reports of rape, kidnapping, torture, and other violent attacks in these border towns. The majority of those sent to wait in Mexico are from Cuba, El Salvador, Guatemala, Honduras, Nicaragua, and Venezuela, again showing further animosity towards this group of migrants.[26]

Animus is not a proper basis for a proposed rule or rule change and thus is in violation of the Administrative Procedures Act. Additionally, racial and country of origin motivated animus is in violation of the equal protection clause of the Fourteenth Amendment, which further renders this rule unconstitutional.

## VII. Conclusion

This proposed rule that would result in the elimination of the 30-day processing time of EAD applications for asylum seekers will have wide reaching adverse effects. Our asylum seeking clients need the ability to work in order to provide for themselves and their families and any delay in the length of time that they cannot do so is an undue burden. Removing the deadline goes against the original intention of the rule which was to adjudicate asylum applicant's EADs as quickly as possible due to their vulnerability. If the 30-day deadline is removed, there is little evidence to support that processing times will not be delayed even longer due to the backlog and the steady increase in processing times for all immigration related applications. The cost-benefit analysis understates costs, estimates an economic drain on the US economy of over $250 million dollars minimum on an annual basis, and is in direct violation of Executive Order 13771, the Administrative Procedures Act, and the Fourteenth Amendment. The clear alternative of hiring additional workers was not addressed or given sufficient analysis and the assumption of a high number of fraudulent applications is not supported by data. Therefore this proposed rule appears to be designed to further political bias against Central American asylum seekers, and asylum seekers more generally. For all these reasons, we urge DHS not to implement the proposed

---

[24] Department of Homeland Security, Department of Justice, EOIR, U.S. Citizenship and Immigration Services, *Asylum Eligibility and Procedural Modifications*, 84 Fed. Reg. 33829 (July 16, 2019).
[25] Department of Homeland Security "Migrant Protection Protocols" (January 24, 2019) available at https://www.dhs.gov/news/2019/01/24/migrant-protection-protocols
[26] Human Rights First, "Orders from Above: Massive Human Rights Abuses Under Trump Administration Return to Mexico Policy", (October 2019) https://www.humanrightsfirst.org/sites/default/files/hrfordersfromabove.pdf

AR005271

change to the processing of employment authorization documents for asylum seekers. We further request that the agency and any other reviewing agency consider the contents of our citations (including any articles that are linked to in our footnotes) together with our comments.

Sincerely yours,

Emily Leung, Supervising Attorney, Immigration Unit
The Justice Center of Southeast Massachusetts, LLC
Subsidiary of South Coastal Counties Legal Services, Inc.
62 Main Street, Suite 302, Brockton, MA 02301-4040
Direct Line: (508) 638-0153

Jill O'Bryan, AmeriCorps Legal Advocates of Massachusetts
Justice Center of Southeast Massachusetts, LLC
Subsidiary of South Coastal Counties Legal Services, Inc.
62 Main Street, Suite 302, Brockton, MA 02301-4040
Direct Line: 508-586-0570

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-igmp
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2580
Comment Submitted by Janessa B

---

## Submitter Information

**Name:** Janessa B

---

## General Comment

We need to retain the 30-day deadline for approving asylum seekers' work permits. Donald's proposed
elimination is simply unethical and uncalled for. Allowing asylum seekers the dignity of work benefits our
society as well as their lives and eases their assimilation.

AR005273

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-wym0
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2581
Comment Submitted by Julian Gross

---

## Submitter Information

**Name:** Julian Gross

---

## General Comment

Please keep the 30-day deadline -- it's only fair, and it will help our system run smoothly! Don't let everyone get stuck in an endless bureaucratic backlog!

AR005274

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-wx2b
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2582
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

As an Immigration Attorney, I worked with asylum seekers every day. They are one of the most vulnerable groups to enter the United States, They are forced to leave their home countries because their lives are at risk and their government is unable or unwilling to protect them. They often come with very little. Having a work permit allows them to support themselves and their families during the processing of their asylum applications. This processing can take many years due to the backlog in the immigration court that has only been exacerbated by this administration's policies of re-calendering previously closed cases and not allowing Immigration Judges to manage their own dockets through continuances, administration closure, or termination of cases. Asylum seekers would lose wages and benefits as a result of delayed entry into the U.S. labor force, straining their ability to support themselves and their families. USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year. The loss of income to asylum-seekers will cause an outsized amount of harm to this already-vulnerable community. A lack of income means not being able to afford food, housing, medical treatment, health insurance, or legal representation. Furthermore, individuals will be unable to secure a valid ID (needed for many social services) and be increasingly vulnerable to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increases the risk that people coming to the United States will become a public charge.

Furthermore, the United States benefits from this group working. USCIS admits that all levels of government will lose tax revenue as a result of the proposed rule change. USCIS projects a loss of $39.15 million to $118.54 million per year because delayed work authorization will prevent asylum seekers and their employers from contributing to Medicare and social security.

AR005275

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-89s4
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2583
Comment Submitted by Bridget Ott

## Submitter Information

**Name:** Bridget Ott
**Address:**
    Phoenix,  AZ,  85048
**Email:** bridgetott1014@gmail.com

## General Comment

The employment authorization card is very important. It allows asylum seekers to work and contribute to the economy. It serves as a federal ID. There are only positive benefits of the EAD card. Delaying the time it takes for an asylum seeker to get this card severely hinders an individuals ability to work, attain self sufficiency, and get off of public benefits.

AR005276

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-ix5s
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2584
Comment Submitted by Stacey Simon, IMPRINT

---

## Submitter Information

**Name:** Stacey Simon
**Email:** ssimon@wes.org
**Organization:** IMPRINT

---

## General Comment

See attached file(s)

---

## Attachments

IMPRINT COMMENT NOV 8

AR005277



November 8, 2019

Ms. Samantha Deshommes
Chief, Regulatory Coordination Division Office of Policy and Strategy
U.S. Citizenship and Immigration Services Department of Homeland Security
20 Massachusetts Avenue NW, #2140
Washington, DC 20529

**Re: Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765
Employment Authorization Applications (DHS Docket No. USCIS-2018-0001)**

Dear Ms. Deshommes:

IMPRINT submits this comment on the proposed rule: Removal of 30-Day Processing Provisions for
Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No.
USCIS-2018-0001, which will result in extreme hardship for asylum seekers and their families and also
negatively impact the U.S. economy.

IMPRINT is a national coalition of nonprofit organizations active in the emerging field of immigrant
professional integration. Working closely with partners in government, community agencies, higher
education, business, and other sectors, IMPRINT raises awareness of the talents and contributions of
foreign-educated immigrants and refugees and advocates for federal, state, and local policies that
facilitate the integration of immigrant professionals into the U.S. economy.

IMPRINT strongly opposes the proposed rule by U.S. Citizenship and Immigration Services (USCIS)
seeking to remove the thirty-day requirement for USCIS to make a decision on an asylum seeker's
employment authorization application. Under the proposed rule, USCIS would have no deadline by
which to make a decision on such applications resulting in potentially indefinite delays.

Many asylum seekers (as well as refugees and immigrants) come to the U.S. with in-demand skills and
training, yet they often face insurmountable obstacles when they seek to rejoin their professions.
Healthcare professionals, teachers, and engineers, among many others, come to the U.S. seeking refuge,
leaving behind not only their countries but also their careers. The federal government should be making it
easier, not harder for them to contribute to the economy and well-being of their communities.

**The proposed rule harms asylum seekers and their families.** Asylum seekers must already wait at
least six months after they submit their asylum applications before they are eligible to work. Any further
delay caused by eliminating the 30-day application processing rule would be inhumane. According to
Human Rights First, "the inability to work for at least six months after requesting asylum already leaves
many asylum seekers, who are often traumatized and vulnerable, in precarious situations—homeless,
unable to feed themselves and their children, and struggling to get health care. Increasing that wait period
could have devastating consequences."[1]

DHS acknowledges the negative impact the proposed rule will have on families but offers no solutions
for families who will suffer as a result:

---

[1] Human Rights First, *New Work Authorization Rule for Asylum Seekers Could Have Devastating Consequences* (Sept. 2019);
available at: https://www.humanrightsfirst.org/press-release/new-work-authorization-rule-asylum-seekers-could-have-devastating-
consequences.

AR005278



> *"DHS has determined that the proposed rule may delay the ability for some initial applicants to work, which could decrease disposable income of families . . . [H]owever, DHS has determined that the benefits of the action justify the potential financial impact on the family."*

**The proposed rule negatively impacts asylum seekers' ability to contribute to the U.S. economy.** According to USCIS data, the lost compensation to asylum applicants could range from approximately $255.88 to $744.76 million annually. Annual employment tax losses to the government could range from $39.15 to $118.54 million. This will leave vulnerable people who have endured unspeakable trauma with no way to provide for themselves while they indefinitely await decisions on their work authorization. According to the U.S. Bureau of Labor Statistics as of September 2019 there were seven million unfilled job openings.[2] The proposed rule will exacerbate these labor shortages.

**The proposed rule is not a solution and further undermines long-standing U.S. asylum policy.** USCIS has a well-documented history of violating the 30-day rule. In the proposed rule, USCIS states, "[i]n FY 2017, prior to the Rosario v. USCIS court order, the adjudication processing times for initial Form I-765 under the Pending Asylum Applicant category exceeded the regulatory set timeframe of 30 days *more than half the time*." (Emphasis added.)*.* As a result, in 2018, a court ordered USCIS to comply with the 30-day rule. USCIS has also delayed the adjudication of affirmative asylum applications. As of March 2018, according to USCIS, there were 317,395 affirmative asylum applications on the backlog.

Despite these extensive backlogs, USCIS acknowledges they have not attempted to determine the cost of hiring additional staff to reduce the backlogs. According to the proposed rule, "USCIS could hire more officers, *but has not estimated the costs of this* and therefore has not estimated the hiring costs that might be avoided if this proposed rule were adopted." (Emphasis added.)

After a well-documented history of delays in adjudicating applications, USCIS now claims this proposed rule – which will only create further delay – is necessary to address purported concerns of fraud in the employment authorization application process and to meet a national security vetting process that has been in place *for more than fifteen years* alongside the 30-day adjudication rule. However, nowhere in the proposed rule does USCIS offer any evidence of fraud related to the employment authorization process.

For the reasons outlined in this comment, IMPRINT urges USCIS to rescind the proposed rule titled *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications.*

Sincerely,

Stacey Simon
Director, IMPRINT Coalition

---

[2] U.S. Department of Labor Bureau of Labor Statistics, *Job Openings and Labor Turnover Summary* (Nov. 2019); available at: https://www.bls.gov/news.release/jolts.nr0.htm.

AR005279

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-lwpp
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2585
Comment Submitted by Morgan Weibel

---

## Submitter Information

**Name:** Morgan Weibel

---

## General Comment

As an attorney who represents survivors of gender-based violence as they seek asylum, I know how critical it is that they have access to the employment authorization our nation has promised to them. Without it every day further endangers individuals who are sometimes financially dependent on abusers and entraps them in dangerous relationships. It is our duty to ensure our government can meet it's own promises to vulnerable individuals who are seeking safety here. An essential part of that protection starts with access to legal work and we need to ensure that we are providing that to them.

AR005280

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-tpwg
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2586
Comment Submitted by Jordan Cunningham

## Submitter Information

**Name:** Jordan Cunningham
**Address:**
  140B Hanson Street
  Wellington,  Wellington,  New Zealand,  6021
**Email:** Jordanbrookscunningham@gmail.com

## General Comment

Asylum seekers need to have efficient access to earn a living and by removing the rule that they must be given the work Visa in the 30 day window means the government can continue to draw out the process, putting these people in an incredibly challenging position. If USCIS can do these in the 30 day window currently, they must continue to do so. I am firmly opposed to this proposed change. Do not allow USCIS to become even less efficient at their job.

AR005281

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-893c
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2587
Comment Submitted by Michael Karr

---

## Submitter Information

**Name:** Michael Karr

---

## General Comment

Keep the 30 day rule for EADs. Asylum seekers needs to work while there cases are being processed

AR005282

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-fjqm
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2588
Comment Submitted by Youman, Madeo & Fasano, LLP

---

## Submitter Information

**Name:** Anonymous Anonymous
**Organization:** Youman, Madeo & Fasano, LLP

---

## General Comment

Asylum-seekers leave their homes and flee their countries for a myriad of reasons. Whether it is political
violence, racially-motivated mistreatment, abuse due to gender or sexual orientation, or some other iteration of
base human cruelty, these individuals somehow find the strength and courage to uproot themselves and often
their families as well to escape the unimaginable situations in which they find themselves. To find safety,
asylum-seekers often must leave behind most of the trappings of the life they had led in their home countries
belongings abandoned, homes deserted, jobs forgone, assets lost. Yet asylum-seekers who come to the United
States for refuge do so willingly because they know, or at least believe, that here they will find a reprieve from
the danger and pain they experienced, and will be enabled to rebuild their lives and support themselves while
making their claims for asylum. This fundamental desire will not be possible if the Department of Homeland
Security amends the federal regulations and eliminates the 30-day adjudication rule for asylum applicants work
authorization applications.

As an inherently vulnerable class of people, asylum-seekers are put at a substantially higher risk when, having
come to this country with little more than the clothes on their backs, their ability to legally work here is
unreasonably and substantially delayed. Without the work authorization to which they are entitled as asylum
applicants, these individuals who have already suffered greatly are forced to suffer further by losing access to the
income that provides them stability and security. It is neither logical nor humane to intentionally subject these
individuals to higher chances of food insecurity, homelessness, and emotional distress when doing so would
create broader and more sweeping societal repercussions. The entire purpose of providing work authorization to
asylum applicants was to ensure that they had the means to work and provide for themselves as quickly as
possible a goal in service of both the countrys economy and the dignity of the asylum applicants themselves. See
62 FR 10312, 10318. Removing the 30-day adjudication rule flies in the face of the intent of this provision.

This unnecessary regulatory change would also constitute a self-inflicted wound to our economic output. The
text of the proposed rule itself concedes that hundreds of millions of dollars worth of economic activity would be

AR005283

interrupted by the implementation of this rule. Moreover, both the federal and state governments would loss access to the associated tax revenue. It is wholly irrational to bemoan the finite capacity of the government to process work authorization applications and then successively implement a change that will further deprive it of the financial resources it requires.

This issue is not a frivolous diversion of partisanship or politics. Rather, it goes to the core of our fundamental understanding of good government and American ideals. It is incumbent upon the federal government to exercise the power with which it has been vested in a responsible, productive, and efficient manner and in furtherance of the people it serves. Moving forward with the elimination of the 30-day adjudication rule for asylum applicants work authorization applications would represent a rejection of this sacred duty.

Respectfully submitted by Youman, Madeo & Fasano, LLP

AR005284

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-bbae
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2589
Comment Submitted by Cindy Schlosser

---

## Submitter Information

**Name:** Cindy Schlosser

---

## General Comment

I was born and raised on a farm, where working means survival, and family and community are also central to that survival. If one member of the community cannot work because of illness, a farming accident, etc., others have their back. This is the way of life in rural America. Our American values of caring for others and supporting people's right to support themselves through hard work needs to extend to all people in need, regardless of where they were born.

I have interviewed, worked, and lived with hundreds of asylum seekers from all over the world over the past 10+ years. Asylum seekers are human. They come to us seeking safety from horrors that many people living in the U.S. cannot imagine. All human beings deserve to seek safety. Eliminating the 30-day deadline for adjudicating work permits for asylum seekers sends a message that we will not allow their flight from violence to safety. This rule is shameful to me, as someone who grew up believing in the need to care for one another, regardless of who they are or where they come from.

What strikes me about rules like this that receive strong support among people who typically express care and concern for others, is that the majority of people I have met who are fleeing to us for safety often share their same values of hard work, family, and care for others. No - we absolutely should not place further barriers in front of people who need safety and way to support themselves and their families into safety. No to eliminating the 30-day deadline.

AR005285

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-bcgb
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2590
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous
**Address:**
  Mendocino,  95460

## General Comment

I feel that asylum seekers should be able to work and support themselves as soon as possible. We certainly need them and they will benefit from having the work.

AR005286

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-j4kv
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2591
Comment Submitted by Sofia Deak

---

## Submitter Information

**Name:** Sofia Deak

---

## General Comment

This proposed rule is so detrimental to local businesses here in San Diego. Many large hotels and restaurants rely on asylum seekers with an EAD to ensure sufficient operations and staff numbers, and these delays are unnecessary and prevent employable adults from contributing to their community. Additionally, having asylum seekers unnecessarily waiting around for EAD makes them susceptible to dangerous or predatory or illegal employment options. It is unfair and unhealthy for local community members as well as those who are new to an area and requesting asylum, and hurts the economy as well as negatively impacts family well-being, including for children, to allow these delays to go into effect.

AR005287

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-7xol
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2592
Comment Submitted by Karen Anderson

---

## Submitter Information

**Name:** Karen Anderson
**Address:**
  2208 Muir Woods Pl
  Davis,  95616
**Email:** bandk4@hotmail.com
**Phone:** 9169473070

---

## General Comment

I strongly object to this proposed rule. Asylum seekers already have to wait 180 days before they can even apply for work authorization. Then processing and review can take another 30 days. Adding another delay to this already lengthy process is arbitrary and inhumane. We should be encouraging asylum seekers to seek work as soon as possible.

AR005288

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7b-sbir
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2593
Comment Submitted by Diane Simon

## Submitter Information

**Name:** Diane Simon
**Address:**
 633 Lake Terrace Circle
 Davis, CA, 95616
**Submitter's Representative:** John Garamendi
**Government Agency Type:** U.S. House of Representatives

## General Comment

Asylum seekers need to be allowed to work and support themselves as soon after they can apply to work as possible!

AR005289

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-8jff
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2594
Comment Submitted by William Sharma-Crawford

---

## Submitter Information

**Name:** William Sharma-Crawford

---

## General Comment

There is no lawful enforcement reason to allow USCIS to delay processing of Asylum EAD's. They are not short handed, there is no crisis. This is simply a tactic to make seeking a lawful benefit as unpleasant as possible.

AR005290

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-15nl
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2595
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

These people come to get out of danger and start a new lufe.help them and review their case. Let them live not jeopardize their life bc they seek support from USA

AR005291

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-r1k9
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2596
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Asylum seekers need to receive Employment Authorization in a timely manner so that they can support themselves, or the United States will no longer be a beacon of freedom and refuge for the oppressed. The door to seeking asylum will be closed to all except the rich.

AR005292

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-fuzg
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2597
Comment Submitted by Ellen Fitzsimmons

---

## Submitter Information

**Name:** Ellen Fitzsimmons
**Address:**
  3521 Pine Street
  Omaha, NE, 68105
**Email:** elkafit@yahoo.com

---

## General Comment

I oppose any changes that would delay work permits for individuals lawfully seeking asylum. Constitutional and human rights are guaranteed to all people - wealthy or not. Delaying or denying work permits for individuals with pending asylum applications would make waiting for asylum adjudication impossible for all but the wealthy. Asylum should be available for all those seeking safety and freedom from persecution.

AR005293

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-znux
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2598
Comment Submitted by Kelly Morgan

---

## Submitter Information

**Name:** Kelly Morgan
**Address:**
    338 Pawtucket Street
    Lowell, MA, 01854
**Email:** kcmorgn@gmail.com

---

## General Comment

I am submitting this comment in my personal capacity to express my opposition to this proposed rule. I am an immigration attorney at a nonprofit legal aid organization in Massachusetts. The majority of my clients are women who are raising children on their own and who have survived domestic violence and/or sexual assault. Many are applying for asylum based on these forms of persecution.

My asylum clients come to the United States committed to following the rules in place and obtaining protection from persecution through legal means. When I tell them that it will be a long time before they are authorized to work, they resign themselves to finding ways of surviving without working. Often this means relying on family, friends or community organizations that are already over burdened for shelter and food. The inability to work when they first arrive here is an incredible obstacle for all of my clients, yet they wait. Many of my clients do not even file their asylum applications until nearly a year after their entry into the United States, given the massive backlog in the immigration courts and delay in filing notices to appear. So for many, it is already at least a year and a half before they are able to begin contributing their skills and hard work to their new communities. Further delay will be incredibly detrimental to asylum seekers like my clients as well as their children.

One of my clients is a lesbian from a country that criminalizes homosexuality, who was raped and rejected by her family when her sexuality became public. She was earning a PhD at the time. When she arrived in the United States, she was consumed by anxiety and eager to resolve her case as soon as possible. Knowing that pursuant to the USCIS "first in, last out" policy she could be scheduled for an interview immediately after filing, we waited months, while we collected extensive documentation of her persecution claim and while she worked with a therapist to be able to talk about her trauma. After filing, however, additional months dragged on, and she still was not scheduled for an interview, even once she put her name on the "short list." During this time, she

AR005294

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2598.html[9/15/2020 4:15:17 PM]

expressed feelings of extreme guilt for relying on community organizations for housing and food and being unable to give back despite her high level of education and her transferrable professional experiences. Unable to work, my client applied to a local university and was accepted into a graduate program, which she was only able to attend thanks to financial support from the community, because her EAD had still not arrived. As this client's story shows, the wait is already too long.

Elimination of the current rule that requires EAD adjudication within thirty days would have harmful direct and indirect consequences. It will endanger families, overburden public community resources, and eliminate opportunities for asylum-seekers to share their skills and experience with their host communities. It will put people like my clients in an impossible position of having to choose between their safety and their basic needs.

AR005295

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-2dna
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2599
Comment Submitted by Elizabeth Samelson

---

## Submitter Information

**Name:** Elizabeth Samelson

---

## General Comment

Ive just come back from a mission trip in Malawi providing clean protected water in far reaching villages. Our teams were met with generosity and acceptance and gratitude. I cant imagine how the asylum seekers must feel to the hostility of the USA. Here we are a nation of plenitude rooted and developed by immigrants. All of us come from an ancestory of immigrants. Its unjust to mistreat people that are escaping persecution, abuse, and poverty for a chance for a better life in America. They are asking for a chance. Instead they are facing exploitation, food insecurity, and inability to support their families because they cant get work permits. I cant imagine the fear and desperation they must feel.
I dont support the change in this regulation. Humanity does not support this regulation.

AR005296

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-r6m9
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2600
Comment Submitted by Brianna Krong

---

## Submitter Information

**Name:** Brianna Krong

---

## General Comment

I respectfully submit this comment to the Department of Homeland Securitys Notice of Proposed Rulemaking on Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001 ("the Rule"), issued September 9, 2019.

I urge USCIS to maintain the regulatory provision stating that the agency has 30 days from the date an asylum applicant files the initial Form I-765 to grant or deny that initial employment authorization application.

Doing away with the 30 day deadline as proposed in the new Rule will lead to delays for asylum seekers in obtaining employment authorization, in violation of the current statutory and regulatory scheme. Under U.S. law, asylum seekers have a right to apply for employment authorization as soon as their cases have been pending for at least 150 days. The 30 day deadline allows asylum seekers to obtain employment authorization once 180 days have passed without a decision, as provided for in the Immigration and Nationality Act and its implementing regulations.

This six month wait already causes immense hardship, as asylum seekers are not eligible for most forms of social welfare benefits, meaning that they must be self-reliant, as working is the only way they may support themselves. Eliminating the 30 day deadline will put asylum seekers at increased risk of homelessness, hunger, trafficking, and coercive employment practices. Delaying asylum seekers' ability to enter the workforce will also deprive our communities of the labor contributions that asylum seekers can provide with work authorization.

USCIS must reject the Rule.

AR005297

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-dym0
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2601
Comment Submitted by Madelane Suarez, Yolo Interfaith Immigration Network

## Submitter Information

**Name:** Madelane Suarez
**Address:**
  643 College St. Apt H
  Woodland,  CA,  95695
**Email:** lane.suarez@gmail.com
**Phone:** 5305749904
**Organization:** Yolo Interfaith Immigration Network
**Government Agency Type:** Federal
**Government Agency:** DHS

## General Comment

First and foremost, it is not illegal to seek asylum in the U.S. The current policies about asylum seekers seem to treat these unfortunate individuals and their families as if they are criminals or are committing a crime just for seeking asylum. These people are FLEEING FOR THEIR LIVES, not on vacation to the U.S. or traveling thousands of miles on a whim. I believe they should be allowed to seek employment while awaiting their asylum hearings, without further delay. Even the current wait is untenable. Please allow these people to find work as soon as possible, so that they can support themselves and their families. I will be very happy when the current policies can be rolled back and we can once again be a more humane country.

AR005298

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2601.html[9/15/2020 4:15:17 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-oota
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2602
Comment Submitted by Yasmin Voglewede

---

## Submitter Information

**Name:** Yasmin Voglewede
**Address:**
  118 Broadway, Suite 517
  San Antonio,  TX,  78205
**Email:** yasminv@elvoralaw.com
**Phone:** 2109079736

---

## General Comment

I'm an immigration attorney and I've been in this type of business for over 12 years. 10 of those years were with Catholic Charities where I assisted victims of crime, refugees, and asylum applicants. My first case was with a young woman who had been stalked and raped by a man with connections to the police and government in her home country. When she came here, she was 8 months pregnant, penniless, and homeless. When she finally received her work permit, she thrived, and now her child is successful in school, and she is living free of fear.

Asylum seekers come to this country to escape their persecutors. They come here with only the clothes on their back, and by denying them the opportunity to work, you are adding to that persecution. It's not going to keep people from coming here to look for safety. People will always come, and it's our responsibility as a nation of immigrants to be fair and welcoming, not cruel.

The courts have already found that delaying a work permit is wrong. If you go through with delaying work permits, interested parties will sue, and the government will waste more tax payer money defending a case that was already settled.

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2602.html[9/15/2020 4:15:17 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-9s3t
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2603
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

The proposal to eliminate 30 day EAD processing for asylum applicants is prudent for the Government to be responsible/verify Identification of foreign aliens, many of who are coming and using fake IDs; or tied to terror organizations and/or cells, and for the agency to do its job!

While Applicants are required to wait 150 days after filing for asylum to apply for work authorization, huge backlogs due to our prosperity and job abundance-many are escaping solely for economic reasons and to obtain a social security number. are hige backlogs already burdening theIt's during this time, as soon as the I-589 application is filed, that USCIS begins background checks. The 30 day rule as intended is to prevent fraudulent asylum seekers and for the public safety and benefit of our country. The alleged undue hardship to asylum seekers is outweighed by clearances and the safety to the American people as a whole. As the agency is already overburdened by some 1,000,000 pending applicants it is not feasible to determine in 6 months whether an application is fraudulent, or an applicant is a security risk. Once one is deemed wetted only then should we bestow privilege of EAD and Social. The 5 month waiting period is a reasonable balance between the agency's need to investigate claims and an applicant's human need to seek employment while awaiting a decision on the asylum application. Not all countries are technologically advanced, to vet a persons identification, many countries don't have proper record keeping protocols. Simply put, people come to our great country for economic reasons, and stay indefinitely after being ordered removed. EAD / Social is a privilege NOT a right!

As the strongest economic superpower of the world it behooves us to 1st and far most insure the safety of our fellow American citizens, LPRs, foreign students, and the like. People are entering USA not because they have valid threats of past pr future persecution, but because of the money they can make here. Only perhaps 10% of asylums are approved for a reason by CIS and/or Immigration Court. Times have changed. After 9/11 the world is NOT the same. What worked 10 or 15 years ago cannot work in todays world of affairs.

AR005300

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-3i6q
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2604
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I oppose removal of the 30 day process provision for asylum-seekers. Asylum seekers are people in need of
urgent care and they dont need further roadblocks to create a better life for their families. Historically the
American way is to open the doors forasylum-seekers and to allow them to go through a process that is fair.
Please dont remove this 30 day process.

AR005301

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-ftz8
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2605
Comment Submitted by Harper Jean Tobin, National Center for Transgender Equality

## Submitter Information

**Name:** Harper Jean Tobin
**Address:**
  1133 19th Street NW
  Suite 302
  Washington, DC, 20036
**Submitter's Representative:** Harper Jean Tobin
**Organization:** National Center for Transgender Equality

## General Comment

See attached file.

## Attachments

USCIS EAD deadline comment 11 8 19

AR005302



Samantha Deshommes, Chief
Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

November 8, 2019

**Re: Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765
Employment Authorization Applications; Proposed Rule (DHS Docket No. USCIS-2018-
0001)**

The National Center for Transgender Equality (NCTE) submits the following comments in
opposition to the Department's Proposed Rule, which would remove the 30-day processing
timeline for asylum-seekers' applications for employment authorization (EAD).

Founded 2003, NCTE works to improve the lives of the nearly two million transgender people in
the United States and their families through sound public policy, public education, and
groundbreaking research. NCTE has worked with countless employers as well as local, state, and
federal agencies on equal employment opportunity (EEO) and other policies and enforcement
efforts. In 2015, NCTE conducted the U.S. Transgender Survey, the largest survey to date of
transgender people with nearly 28,000 respondents from all 50 states.

A very large number of transgender immigrants are asylum-seekers, fleeing often life-threatening
violence in countries around the world. NCTE regularly hears from asylum-seekers and
immigration attorneys who are struggling to meet their basic needs without work authorization
during the long pendency of their legal immigration claims. NCTE is not a social service
organization but we frequently hear from these individuals because they are not sure where to
turn, especially given the social stigma that still faces transgender people. NCTE tries to connect
individuals and their counsel whenever possible with information and resources concerning
social and legal services in their areas. We also regularly communicate with service providers
and attorneys looking for advice in serving asylum-seekers. Adherence to the 30-day timeline
long established by regulation helps address these needs, and would be exacerbated by its repeal.

AR005303

## USCIS has failed to follow settled rulemaking requirements

Supreme Court precedents make clear that an agency must "pay[] attention to the advantages *and* the disadvantages"[1] of adopting a regulation, and that an agency action may be arbitrary and capricious if it "failed to consider an important aspect of the problem.[2] Executive Orders 12866 and 13563 permit agencies to propose a rule only after conducting an accurate assessment of costs and benefits, and after reaching a reasoned determination that the benefits outweigh the costs and that the regulations are tailored "to impose the least burden on society."[3] Executive Order 12866 requires agencies to "assess *all* costs and benefits" and "should select those approaches that maximize *net* benefits."[4] Even those costs or benefits that are "difficult to quantify" are "nevertheless essential to consider."[5]

In addition, under the Administrative Procedure Act and binding Supreme Court precedent, when an agency seeks to change regulations in a manner that departs from prior policy, the agency must provide a "reasoned analysis for the change."[6] Since the Department previously chose to implement section 208(d)(2) of the INA through rulemaking, a reasoned analysis is required when amending or repealing such regulation. An agency change in regulation should not be based on solely a policy disagreement. Agencies have ample latitude to change existing policies; however, when agencies change course, the presumption is "*against* changes in current policy that are not justified by the rulemaking record."[7]

As Justice Kennedy wrote in *FCC v. Fox Television Stations, Inc.*:

> Where there is a policy change the record may be much more developed because the agency based its prior policy on factual findings. In that instance, an agency's decision to change course may be arbitrary and capricious if the agency ignores or countermands its earlier factual findings without reasoned explanation for doing so. An agency cannot simply disregard contrary or inconvenient factual determinations that it made in the past, any more than it can ignore inconvenient facts when it writes on a blank slate.[8]

This is particularly true with respect to section 208(d)(2) of the INA, where the existing rule was the product of not one but two public comment periods drawing a large number of comments from a variety of stakeholders. Thus, USCIS's proposal to rescind the 1994 rule requires a reasoned explanation for the change in the agency's position, acknowledging the agency's settled course of action, its previous findings of fact and legal reasoning, and any reliance interests.

## USCIS failed to consider important economic and non-economic costs

---

[1] *Michigan v. EPA*, 135 S.Ct. 2699, 2707 (2015) (emphasis in original).
[2] *State Farm*, 463 U.S. at 43.
[3] Exec. Order 13563 § 1(b)(2), 76 Fed. Reg. 3821 (Jan. 21, 2011); Exec. Order 12866 § 1(b)(11), 58 Fed. Reg. 51735 (Oct. 4, 1993).
[4] Exec. Order 12866, Regulatory Planning and Review (Sept. 30, 1993) (emphasis added).
[5] Exec. Order 12866 § 1(a) (1993).
[6] *Motor Vehicles Mfrs. Ass'n v. State Farm Ins.*, 463 U.S. 29, 30 (1983).
[7] *Id.* at 42 (emphasis in original).
[8] 556 U.S. at 537 (Kennedy, J., concurring in part and in judgment).

AR005304

USCIS improperly fails to estimate or otherwise consider numerous potential economic and noneconomic costs to this rule, including:

- Costs to businesses that currently employ asylum-seekers;
- Costs to small businesses patronize by asylum-seekers who would lose earned income;
- Economic and non-economic costs to asylum-seekers' families, including financial hardships and potential impacts on housing and food security, nutrition, physical and mental health, and family relationships;
- Costs to organizations that must provide services to asylum-seekers who are eligible for EAD but have not received it;
- Costs to local, state, and federal governments in the form of lost tax revenue;
- Costs to the integrity of the asylum system, because eligible individuals are unable to obtain documents and assistance necessary for a fair adjudication of their asylum claims due to delays in obtaining lawful employment; and,
- Costs to fairness and consistency for individuals, families, and employers.

USCIS discounts some costs of the Proposed Rule as simply involving "transfers" from some workers to others, but this is not true. USCIS considers only who will receive wages from a given position, but other costs are involved. Workers with legal authorization who do not get a job can apply for another job. Workers who are eligible for EAD but do not receive it due to long delays cannot work at all, any can suffer profound economic and non-economic costs over and above lost wages as financial and personal problems caused by unemployment accumulate. These hardships can affect every aspect of a worker's life and that of their family, and can cause them to require assistance from charities and state and local government agencies which they otherwise would not require.

## USCIS failed to adequately explain its rejection of the 1994 rule

USCIS claims that the 30-day rule in place for 25 years is no longer practicable based on changed circumstances. The department points to various facts that have changed in 25 years, but fails to explain how they render adherence to the 30-day timeline, or any other timeline, impossible. USCIS certainly does not establish that current circumstances make adherence to this timeline dramatically more unreasonable that it was at any time in the past quarter century, during which national security needs, migration flows, and agency resources have gone through countless changes.

Moreover, the agency's claim is counterfactual. USCIS claims that it is "unable" to meet *any* timeline, let alone the 30-day timeline, but it has in fact met the 30-day deadline in virtually all recent cases.

## USCIS failed to explain its rejection of regulatory alternatives

It is also arbitrary and capricious for DHS to propose eliminating the well-grounded 30-day timeline without proposing any alternative, reasonable timeline. The Administrative Procedure Act and Executive Order 12866 require agencies to consider regulatory alternatives. "When

considering revoking a rule, an agency must consider alternatives in lieu of a complete repeal."[9] USCIS states that it rejected both the alternatives of leaving the current 30-day rule in place, and of a longer 90-day rule, because it is "unable to plan its workload and staffing needs with the level of certainty that a binding timeframe may require."[10] Yet the "binding timeframe" has been in place for 25 years, and to the extent that USCIS points to changed circumstances that could conceivably justify a longer timeframe, it does not explain why these circumstances make *any* timeframe impossible. USCIS already has tools at its disposal to exercise flexibility when needed, such as the ability to toll the 30-day deadline while it collects additional information on an application.

Similarly, USCIS claims that cannot adhere to any timeframe because it "has no way of predicting what national security and fraud concerns may be or what procedures would be necessary in the future."[11] It is a tautology that the agency cannot predict the future, but this is not an argument against this rule any more than it is an argument against all rules. The future has been unpredictable since at least 1994, and USCIS has not explained how its inability to predict the future of human history is fundamentally different today than it was 25 years ago. Here too, the agency has failed to provide a "reasoned analysis for the change."

### USCIS should withdraw the Proposed Rule

Because the 1994 rule has proven workable and beneficial, and because the agency has failed to consider important costs of repeal or regulatory alternatives or otherwise adequately explain its reversal, USCIS should withdraw the Proposed Rule and continue to implement the longstanding 30-day timeline.

---

[9] *Becerra v. U.S. Dept. of the Interior*, 381 F.Supp.3d 1151, 1169 (N.D. Cal. 2019). *See also Public Citizen v. Steed*, 733 F.2d 93, 103–05 (D.C.Cir.1984) (NHTSA suspension of tire-grading regulation was arbitrary and capricious because agency failed to pursue available alternatives); *ILGWU v. Donovan*, 722 F.2d at 815–18 (failure to consider less far-reaching choices than complete rescission of homework restrictions was arbitrary and capricious); *Office of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1440 (D.C. Cir. 1983) (FCC's failure to give sufficient consideration to modification, rather than elimination of programming log requirements was arbitrary and capricious); *Action on Smoking & Health v. CAB*, 699 F.2d 1209 (D.C. Cir. 1983), *opinion supplemented by* 713 F.2d 795 (D.C. Cir. 1983) (CAB's failure to consider alternatives to rescission of certain restrictions on smoking in airplanes mandated remand).
[10] 84 F.R. 47167.
[11] *Id.*

AR005306

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-qlxd
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2606
Comment Submitted by Milagros Cruz

## Submitter Information

**Name:** Milagros Cruz
**Address:**
  195 Church Street
  11th floor
  New haven,  CT,  06510
**Email:** milagros@milagroslaw.com
**Phone:** 8607600422
**Fax:** 8607606283

## General Comment

Please do not eliminate the 30 day processing provision for I-765 first time asylum seekers. On the one hand, we want anyone in the country who is working to work with authorization and to legitimately pay their taxes, On the other hand, the adding on of obstacles to achieve what we as US Citizens want (obstacles meaning eliminating processing deadlines and granting work authorizations) is not the American way. As a citizen I too want all people who work in the USA to Work legally, support yourself and your family. The Botton line is if someone is legally entitled to pursue protection from the United States Government--My government..then I want them to have legal work authorization as soon as possible so they can start contributing to the the United States Government --my government. The faster the asylum seeker is authorized the work the faster the eliminations of underground financial networks that most likely sprouted out of necessity to pay for basic sustenance.

Lets make it easier for people to work and pay there taxes and make it all happen a lot faster. It is counterintuitive to slow this process down. Mostly, as a United States Citizen, I'd rather see immigrants getting acculturated to paying for services in the United States faster. The faster the better!

AR005307

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-360d
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2607
Comment Submitted by Charles Walker

---

## Submitter Information

**Name:** Charles Walker
**Address:**
  1528 Santa Rosa St.
  Davis,  95616
**Email:** cfwalker@ucdavis.edu
**Phone:** 5302047563

---

## General Comment

Asylum seekers should be allowed to work as soon as possible. It's inhumane not to allow this.

AR005308

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-imlp
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2608
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

This proposed regulation is harmful to everyone in the United States, regardless of status. There will be a significant loss in tax revenue if people are unable to legally work in the United States. Some may choose not to work or people may choose not to hire them. Further, while some people may not choose to work without a work permit or not hire someone without a work permit, some will work for employers who are willing to hire and, possibly, exploit asylum seekers. Government resources would have to expended to police and punish unfair working conditions.

Individuals need to be able to work and support their family during the years it take to adjudicate an asylum case. If the applications don't have to be adjudicated in 30 days, it could it take six months to adjudicate them. Someone could not be able to work at all for over a year.

This proposal is a backdoor attempt at discouraging asylum seekers from coming to the United States. Rather than the United States fix its asylum system, they are trying to demoralize and discourage asylum seekers. As demoralizing and discouraging as this may be, many of these people fear for their lives and will still apply for asylum.

AR005309

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2608.html[9/15/2020 4:15:18 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-d9ii
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2609
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

Hello,
I am against the removal of the 30-Day Processing provision for asylum applicants. Our immigration process is
already slow and bogged down. Let's keep things moving and allow asylum seekers to work. Immigrants provide
an economic boost to our economy and do a lot of necessary work.
Thank you!

AR005310

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-i93f
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2610
Comment Submitted by Jane McKendry

## Submitter Information

**Name:** Jane McKendry
**Address:**
2240 Muir Woods Place
Davis, 95616

## General Comment

Asylum seekers want to be productive residents, and we need their work. They should be allowed to work as soon as possible.

AR005311

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-4xow
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2611
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

A timely issued (within 30 days) Employment Authorization Document (EAD) is essential to enabling asylees to support themselves and their families (thus not becoming a public charge), to integrate into the community (be engaging in gainful employment and meeting community members through employment), to contribute and give to the community that welcomes them. Asylum seekers greatly contribute to the United States when given the opportunity. I urge USCIS to reject this rule change and continue to process EADs for asylum applicants within 30 days.

AR005312

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7c-2dtw
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2612
Comment Submitted by Margaret Loeffelholz

## Submitter Information

**Name:** Margaret Loeffelholz
**Address:** United States,
**Email:** maggiecl@bu.edu
**Phone:** 781-474-3505

## General Comment

Please see attached file.

## Attachments

Margaret Loeffelholz Comment DHS Docket No. USCIS-2018-0001

AR005313

Department of Homeland Security
U.S. Citizenship and Immigration Services
Office of Policy and Strategy
Chief, Regulatory Coordination Division
20 Massachusetts Avenue, NW
Washington, D.C. 20529-2140

November 8, 2019

RE:    **Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765**
       **Employment Authorization Applications**
       **Docket Numbers: CIS No. 2617-18; DHS Docket No. USCIS-2018-0001**

Dear Sir or Madam:

I am writing this comment in opposition to the proposed rule, "Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications," DHS Docket No. USCIS-2018-0001.

As a student at Boston University School of Law, and in my prior work in education, I have worked closely with individuals seeking asylum in the United States. For each of these noncitizens, the ability to work while awaiting adjudication of their asylum claim enabled them to provide basic necessities such as food and housing to their families, to pay for immigration counsel, or even to afford to continue their education after graduating high school. To delay their receipt of an Employment Authorization Document ("EAD") would impose an unnecessary burden not only on these individuals entitled to stay in the United States, but on their families and communities who benefit from their participation in the workforce.

One of my former students, Francine,[1] arrived in the United States as an 18-year old, fleeing brutal violence in Burundi. After receiving housing support from a local church, she enrolled in high school. Francine excelled. Her knowledge of English enabled her to participate in honors classes, and she immediately became a leader within the school. One year after arriving in the U.S., she submitted an asylum application. Around this time, Francine's peers and guidance counselors began discussing college options. Francine dreamed of attending college, but she was met with harsh news: her immigration status made her ineligible for federal or state financial aid. The only way she could afford tuition was to pay out of her own pocket. Thankfully, she received her EAD the summer after graduating high school. She had just enough time to save money for two classes at a community college, making her eligible for a local scholarship providing funding for two more courses. Years would pass before Francine's asylum was

---

[1] Name changed to protect the privacy of this individual.

approved. Each semester, she worked hard to afford tuition on top of food and rent. However, because she had access to work authorization, Francine was able to graduate three years later.

Unpredictable and lengthy delays in EAD processing times, such as those sanctioned under this rule change, would have destroyed Francine's path to college. And Francine's story is not unique. The delay of an EAD by even two or three more weeks can be a devastating setback, particularly for young adults who are supporting themselves.

In my time at Boston University School of Law, I have worked with many asylum seekers through my *pro bono*, clinical, and internship experiences. Each of these noncitizens has been incredibly eager to work and to contribute to their families. Work has other benefits as well. The workplace is where many asylum seekers learn English and successfully integrate into communities across the United States. Working also provides a way to pay for immigration counsel attorney, which is particularly crucial in regions where *pro bono* representation is scarce.

When noncitizens are banned from working, it strains the communities where they live. Cities and states suffer from lost tax revenue and a shortage of workers. Furthermore, asylum seekers unable to work to pay for housing and food are left to rely on the kindness of neighbors, community organizations, and municipal funds. Many, including families, become homeless. The simple solution to this cost is to promptly adjudicate applications for EADs for asylum seekers, who are entitled by statute to work in the United States 180 days after applying for asylum. This rule moves in the opposition direction.

Further delays in processing work permits are both unjustifiably detrimental to the livelihood of asylum seekers in the United States, and unnecessary. There is a simpler, mutually beneficial solution. Through the same notice and comment procedure, USCIS could propose to permit asylum applicants to file a Form I-765, Application for Employment Authorization, concurrently with their Form I-589, Application for Asylum and Withholding of Removal, or at an earlier point in the asylum clock. By moving up the timeline for Form I-765 submissions, USCIS would have sufficient time to receive, screen, and process applications and conduct the necessary security-related processes undertaken for each EAD application.

As USCIS itself acknowledges, this rule change would impose an incredible cost upon asylum seekers and the communities where they live. I strongly oppose this rule. It should be withdrawn, or revised to maintain the 30-day processing time restriction and allow for earlier Form I-765 submissions.

Sincerely,

Margaret Loeffelholz
J.D. Candidate, Boston University School of Law
765 Commonwealth Avenue
Boston, MA 02215

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-wo3r
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2613
Comment Submitted by Joanna Gaughan

## Submitter Information

**Name:** Joanna Gaughan

## General Comment

What is the point in making it take longer for people to get work authorization? Then either they have to work
without authorization, or if they don't work, people will complain that they are not contributing, are freeloaders,
etc.

AR005316

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-6ejp
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2614
Comment Submitted by Elizabeth Letcher

---

## Submitter Information

**Name:** Elizabeth Letcher
**Address:**
  check state bar address 172986
  CA,  94110
**Email:** esl@elizabethletcher.com

---

## General Comment

Do not leave people in limbo. Process their applications in a timely fashion and keep the 30 day processing provision. Don't pay attention to the vapid bot-driven comments.

AR005317

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-kjpf
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2615
Comment Submitted by Linda Sternberg

---

## Submitter Information

**Name:** Linda Sternberg
**Address:**
    Davis,  CA,  95616

---

## General Comment

Asylum seekers should be allowed to work as soon as possible.
Not to allow asylum seekers to seek work as soon as possible is irrational, mean-spirited and illogical. We want asylum seekers to support themselves while they await a decision.

AR005318

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-qetw
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2616
Comment Submitted by Ella Rawls, Arizona Justice For Our Neighbors

---

## Submitter Information

**Name:** Ella Rawls
**Address:**
   PO Box 11181
   Tucson, AZ, 85734
**Email:** ella@azjfon.org

---

## General Comment

My name is Ella Rawls and I am the staff attorney at Arizona Justice For Our Neighbors, a non-profit legal
services organization located in Tucson, Arizona. We offer immigration assistance to immigrants including
asylum seekers needing assistance with employment authorization documents.

If this proposed rule is put into effect, it will harm asylum seekers - those individuals who are trying to seek
safety within the United States. This rule would create a decrease in taxable revenue to state government as well
as the federal government. The increased delay to adjudication of the employment authorization applications
means a greater national security risk, as it indicates a delay in the vetting of individuals already present within in
the United States. Lastly, if what USCIS needs is merely more time to process the applications, why not allow
for the applications to be submitted earlier, thus allowing additional time for adjudication?

Harm to Asylum Seekers:
These individuals show bravery, resilience and courage to stay alive and reach a place of safety - the United
States. Even in the face of the terrible threats and harm they have faced in their home countries, they have a
desire to contribute to the United States by paying taxes, and supporting the U.S. economy. By allowing this
regulation to go forward, you deprive each asylum seeker from the potential for self-sufficiency. They do not
WANT to become a public charge, but by removing the swift adjudication of the employment authorization
application, they are unable to gain an income. This delay means they are FORCED to rely on the kindness of
others and will be increasingly vulnerable to exploitation, trafficking, and underground economic risks. A lack of
income means not being able to afford food, housing, medical treatment, health insurance, or legal
representation.

AR005319

**Lost Tax Revenue for the Government:**
USCIS admits that all levels of government will lose tax revenue as a result of the proposed rule change. USCIS projects a loss of $39.15 million to $118.54 million per year because delayed work authorization will prevent asylum seekers and their employers from contributing to Medicare and social security. These losses in taxable revenue makes an impact on each state because it delays each asylum seeker's ability to obtain a social security card, then to obtain gainful employment, which means less taxable revenue for EVERY state.The asylum seekers I have met and worked with want to contribute back to the United States- the place that is granting them safety from their persecutors.

**Increased Delay Contrary to National Security Interests.**
In the notice, USCIS makes frequent reference to a rise in national security threats as a reason to spend more time and resources on each decision. However, USCIS has reported that it has been able to decide over 99% of EADs within the 30-day time-frame for over the past year. Therefore, USCIS has proven its ability to adequately vet the amount of requests in a timely fashion. Moreover, its argument regarding increased threats serves only to prompt the need for a speedier process to properly protect national security, rather than its request to delay the process further. This need for a speedier process is further compounded by the fact that the EAD applicants are asylum-seekers already residing in the United States. If vetting must be done to prevent security risks, then having unvetted people in the U.S. subjected to a potentially indefinite review period seems contrary to the departments stated interests.

**Proposed Alternative:**
As the law is currently written, asylum seekers must wait 180 days before they may be granted authorization to work. They are permitted to submit their application after 150 days, giving USCIS the 30-day timeframe in question to process the requests. If USCISs goal is to have more time to process each request in order to increase flexibility and free up resources to work on other applications, then it could easily shorten the waiting time before asylum-seekers are allowed to submit their application. If USCIS feels that a 60-day timeframe would be more beneficial, then it may allow applications to be submitted after 120 days, rather than 150. Allowing asylum-seekers to submit their applications earlier could allow the department to have up to 180 days to process and properly vet each individual while reducing the risk of harm to each applicant.

Please consider who this rule will impact. Each asylum seeker I have worked with has a deep fear of returning to their home country because they face certain death if they return to their homeland. No one wants to leave the comfort and familiarity of their homeland for the unknown and uncertainty that seeking asylum/shelter/safety in a different country. This is a last resort in order to remain alive.

AR005320

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-tyij
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2617
Comment Submitted by RD David

---

## Submitter Information

**Name:** RD David
**Address:**
  2210 Muir Woods pl
  Davis,  CA,  95616
**Email:** Rf52rd@sbcglobal.net
**Phone:** 530 758 8804

---

## General Comment

Asylum seekers should be able to work asap thank you

AR005321

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2617.html[9/15/2020 4:15:19 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-2dsy
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2618
Comment Submitted by Jordan Cunnings, Innovation Law Lab

## Submitter Information

**Name:** Jordan Cunnings
**Address:**
  PO Box 8382
  5th Floor
  Portland, OR, 97207
**Email:** jordan@innovationlawlab.org
**Phone:** 9712772857

## General Comment

Please see the attached comment from Innovation Law Lab.

## Attachments

USCIS-2018-0001 Innovation Law Lab Comment

AR005322


**INNOVATION LAW LAB**

November 8, 2019

Submitted via www.regulations.gov

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, DC 20529-2140.

Re: DHS Docket No. USCIS-2018-0001, Comments in Response to the Proposed Rule *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications*

Dear Chief Deshommes,

Innovation Law Lab submits these comments in response to the Department of Homeland Security's (DHS) Notice of Proposed Rulemaking (NPRM) entitled "Removal of 30-day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications" published on September 9, 2019.

Innovation Law Lab is a nonprofit organization dedicated to upholding the rights of immigrants and refugees. Founded in 2014 in response to the mass detention and deportation of asylum-seeking immigrant families, Innovation Law Lab specializes in the creation of scalable, highly replicable, and connected sites of resistance that create paradigm shifts in immigration representation, litigation, and advocacy. By bringing technology to the fight for immigrant justice, Innovation Law Lab empowers advocates to scale their impact and provide effective representation to immigrants in detention and in hostile immigration courts across the country.

We write to share our grave concerns with the Proposed Rule, *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications* (hereafter "Proposed Rule"). The Proposed Rule would remove the regulatory requirement that initial Employment Authorization Document (EAD) applications for asylum applicants be adjudicated within 30 days of submission. Innovation Law Lab strongly opposes this change and urges DHS to withdraw or amend this portion of the Proposed Rule, as it would cause significant harm to asylum seekers and their families; abandons the agency's prior position without reasonable explanation; is contrary to the United States' international commitments; and would be detrimental to national interests and the public welfare.

1

AR005323

1. **The Proposed Rule Would Harm Asylum Seekers by Limiting Their Ability to Support Themselves and Their Families.**

Eliminating the 30-day processing deadline for EAD applications would severely jeopardize asylum seekers' ability to support themselves and their families during the often years long pendency of their asylum cases. Under existing regulations, asylum-seekers are already required to wait 150 days after filing their asylum applications to apply for work authorization in the United States. 8 C.F.R. § 208.7(a). The current regulation requiring USCIS to process EADs within 30 days operates as a mechanism whereby USCIS is held accountable to adjudicate EADs in a timely manner. Without this regulation in place, EAD adjudications will more likely than not take significantly longer to adjudicate. For example, in 2017, it took USCIS over 271 days to adjudicate 10,103 EAD applications. *See Gonzalez Rosario v. USCIS*, 365 F.Supp.3d 1156, 1162 (W.D. Wash. 2018) (citing SAR at 90). This delay is unacceptable and removing the 30-day processing deadline for EAD applications would likely result in significant EAD processing delays, which in turn would unnecessarily postpone asylum seekers' entry into the U.S. labor force and result in the loss of desperately needed wages and benefits.[1]

The loss of income that would result from implementation of the Proposed Rule will cause disproportionate harm to this already vulnerable community and will deprive asylum seekers of the ability to afford food, housing, medical treatment, health insurance, or legal representation. Moreover, because asylum seekers often lack valid identity documents, delays in EAD adjudication would also impact asylum seekers' ability to access many social services and put them at even greater risk of exploitation and trafficking. The Proposed Rule will further delay asylum seekers' ability to work in the United States and will also vastly increase the risk that asylum seekers coming to the United States will become a public charge.

2. **The Proposed Rule Would Be an Arbitrary and Capricious Exercise of Authority.**

If adopted, the Proposed Rule would be an arbitrary and capricious exercise of authority by the DHS. Such an action would violate the Administrative Procedure Act, which requires the government to provide a well-reasoned, evidence-based justification for proposed rulemaking, including rescission of a prior regulation.[2] When an agency's "prior policy has engendered serious reliance interests . . . [i]t would be arbitrary or capricious to ignore such matters."[3] In such cases, "a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy."[4]

---

[1] Indeed, USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year.

[2] "[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). *See also Dept. of Commerce v. New York*, 139 S.Ct. 2551, 2567 (2019): "The Administrative Procedure Act embodies a 'basic presumption of judicial review,'" *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967), and instructs reviewing courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U. S. C. § 706(2)(A).

[3] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009).

[4] *Id.* at 516.

AR005324

The Proposed Rule provides no such reasoned explanation. In justifying the Proposed Rule, the government claims that its purpose is "to ensure USCIS has sufficient time to receive, screen, and process applications" and to "reduce opportunities for fraud and protect the security-related processes undertaken for each EAD application." Neither of these justifications provides a reasoned explanation for ignoring the concerns about expedient work authorization that underlie the existing regulation.

One of the "chief purposes" behind adopting a 30-day processing deadline was "to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible," 62 Fed. Reg. at 10,318 (1997). Indeed, the government consciously set a 30-day deadline due to concern over the length of the 150-day waiting period. 50 Fed. Reg. at 14,780. While hoping that most applicants would have their applications adjudicated before that time, the government set the 150-day limit because it was a period "beyond which it would not be appropriate to deny work authorization to a person whose claim has not been adjudicated." *Id.* Thus, as explained by the judge in *Rosario*, "the purpose of promulgating the 30-day deadline on top of that 150-day waiting period was to cabin what was already—in the agency's view—an extraordinary amount of time to wait for work authorization." *See Gonzalez Rosario*, 365 F. Supp. 3d at 1160–61.

The government's prior concerns about expeditious work authorization are only heightened in the current context of significant backlogs in the adjudication of asylum applications. For asylum applicants in removal proceedings, there is a current backlog of over one million active cases.[5] This backlog results in significant delays. Over 650,000 individuals in immigration proceedings are in courts where the average wait time for an individual's next hearing is three or four years.[6] And for many of these individuals, their next hearing is merely a scheduling ("master calendar") hearing, leading to even more waiting before their asylum case is finally adjudicated on its merits.[7]

The government's concerns about sufficient processing time and security-related processes do not support a rescission of the previous regulation. There is no reason why expanding processing time must conflict with expedient resolution of asylum seekers' applications for work authorization. Under the current law, asylum seekers must wait 180 days before they may be granted authorization to work. They are permitted to submit their applications after 150 days, giving USCIS the 30-day timeframe in question to process the requests. If the government seeks a longer processing time, it could amend the regulations to allow asylum seekers to submit their work authorization applications earlier – thus allowing the government more time for processing and vetting, while preserving the expediency of the overall process and reducing the risk of harm to applicants.

Nor does the government's purported concern about "fraud" justify the rescission of the previous regulation. In passing the original regulation, the government explicitly determined that it would "adjudicate [asylum seekers'] applications for work authorization within 30 days of receipt, regardless of the merits of the underlying asylum claim." 50 Fed. Reg. at 14,780 (1994). As the court in *Rosario* explained, the government thus considered the possibility of

---

[5] *See* TRAC Immigration, *Crushing Immigration Judge Caseloads and Lengthening Hearing Wait Times* (Oct. 25, 2019), https://trac.syr.edu/immigration/reports/579/.
[6] *Id.*
[7] *Id.*

3

AR005325

unsuccessful asylum applications and nevertheless chose the "elevation of the 30-day deadline above the merits of the underlying asylum claim." *Gonzalez Rosario*, 365 F. Supp. 3d at 1160–61.

### 3. The Proposed Rule Violates the United States' International Commitments.

The Proposed Rule will violate the United States' international commitments by furthering the Trump Administration's systemic attacks on asylum seekers and undermining the internationally recognized right to work.

#### A. The Proposed Rule Is Part of the Trump Administration's Systematic Effort to Deter Asylum Seekers.

The Trump administration has enacted numerous harmful policies aimed at undermining the legal rights of asylum seekers. This Proposed Rule is yet another attempt by the Trump administration to impose an unwarranted barrier on asylum seekers in an effort to prevent individuals fleeing violence from exercising their internationally recognized right to seek asylum.

This Proposed Rule is part and parcel of this administration's efforts to make the United States a hostile destination for individuals fleeing persecution in their countries of origin. These efforts include the administration's metering policy, which dramatically reduces the number of asylum seekers who are inspected and processed at ports of entry along the U.S.-Mexico border, as well as the "Remain in Mexico" policy and the third-country transit rule. In addition to preventing asylum seekers from obtaining meaningful employment within a short and predictable timeframe, the proposed rule would remove the ability to hold USCIS accountable to any deadline for adjudicating asylum seekers' EAD applications. This lack of accountability could be especially devastating in the current context of asylum adjudication, in which asylum seekers in removal proceedings may wait over four years for their case to be heard in immigration court.[8]

The government must take care that it implements its regulations in a manner that does not violate the United States' commitment to facilitate the protection of meritorious asylum seekers.[9] By sabotaging the asylum system, the Trump administration has instead made a mockery of the United States' international reputation as a country that respects human rights and the rule of law.

#### B. The Proposed Rule Contradicts the Internationally Recognized Right to Work

The right to work is an internationally recognized human right enshrined in the Universal Declaration of Human Rights and international law recognizes the right to work as a vital

---

[8] *See* TRAC Immigration, *Crushing Immigration Judge Caseloads and Lengthening Hearing Wait Times* (Oct. 25, 2019), https://trac.syr.edu/immigration/reports/579/.

[9] *See* United Nations High Commission for Refugees, 1951 Convention Relating to the Status of Refugees, 30–31, available at http://www.unhcr.org/en-us/3b66c2aa10.

AR005326

foundation for the realization of other human rights, such as the right to life. The right to work is incorporated into the International Covenant on Economic, Social and Cultural Rights (ICESCR), a binding international treaty. Article 6 of the ICESCR provides that all individuals, regardless of citizenship status, have the right to the opportunity to earn a living by work freely chosen or freely accepted.[10] The Committee that oversees the compliance of ICESCR has confirmed that this right applies "to everyone including non-nationals, such as refugees, asylum seekers, stateless persons, migrant workers and victims of international trafficking, regardless of legal status and documentation." *Id.* The right to work is further enshrined in Article 45 of the Organization of American States (OAS), Article XIV of the American Declaration on the Rights and Duties of Man, and Article 6 of the Additional Protocol to the American Convention on Human Rights in the Area of Economic, Social and Cultural Rights. The Office of the United Nations High Commissioner for Human Rights (UNHCHR) directs nation states to grant asylum-seekers the right to work during the pendency of their cases.

The proposed rule eliminating the 30-day processing provision for asylum applicant-related employment authorization applications is contrary to these well-recognized international laws and standards.

### 4. The Proposed Rule Is Harmful to National Interests and the Public Welfare

The proposed rule is harmful to both the national interest and the public welfare. Eliminating the 30-day processing deadline for asylum applicant work permits would harm both the country's economy and national security.

First, as USCIS itself has conceded, government agencies across sectors will lose tax revenue under the proposed rule change. The delay in issuing work authorizations will prevent persons with pending asylum applications from earning income out of which they pay taxes, and will also limit contributions to programs like Medicare and Social Security. The loss projections are not insignificant- USCIS anticipates losses of $39.15 million to $118.54 million every year.

Second, by delaying eligibility for work authorization, the proposed rule change will move persons with pending asylum applications away from economic independence and towards reliance on charitable programs and other social safety networks. Without a concrete processing deadline, applicants would be left without a way to hold the agency accountable to timely adjudication of their applications, leading to increased uncertainty and instability for persons fleeing persecution.

Third, USCIS repeatedly relies on a supposed increase in national security threats as justification for the proposed lengthened adjudications period. But a closer look reveals that this reasoning is disingenuous. USCIS has been able to decide 99% of EADs within the 30-day

---

[10] *See* UN General Assembly, *International Covenant on Economic, Social and Cultural Rights, International Covenant on Civil and Political Rights and Optional Protocol to the International Covenant on Civil and Political Rights*, 16 December 1966, A/RES/2200, available at: https://www.refworld.org/docid/3b00f47924.html.

AR005327

timeframe for over the past year.[11] There is no better proof of the agency's capacity to appropriately review and adjudicate applications in a reasonable timeframe. Moreover, if national security threats are a concern, the agency would likely want to move even more quickly on applications in order to adequately protect national interests, especially because the applicants in question are living in the United States.

## 5. Conclusion

For the above stated reasons, Innovation Law Lab strongly opposes the government's Proposed Rule. In addition to its arbitrary and capricious nature, if allowed to take effect, the Proposed Rule will cause untold harm to asylum-seeking individuals and their families, contradict our international commitments, and undermine our national interests and public welfare.

Thank you for the opportunity to submit these comments. Please do not hesitate to contact us should you have any questions about our comments or require further information.


Stephen Manning
Executive Director
Innovation Law Lab


Tess Hellgren
Staff Attorney/Justice Catalyst Legal Fellow
Innovation Law Lab


Jordan Cunnings
Staff Attorney
Innovation Law Lab


Kelsey Provo
Staff Attorney
Innovation Law Lab

---

[11] https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf.

AR005328

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-wqp5
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2619
Comment Submitted by Mary O'Neill

---

## Submitter Information

**Name:** Mary O'Neill
**Address:**
  6400 Gilmet Drive
  Presque Isle, MI, 49777
**Email:** moneill16@excite.com
**Phone:** 9895952448

---

## General Comment

There is no need for this change. We have the money to process these people fast and efficiently. This is just another Trump being Mean to Others! This is sick and Un-American period!

AR005329

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-3p5o
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2620
Comment Submitted by Siobhan Waldron, Immigrant Legal Defense

---

## Submitter Information

**Name:** Siobhan Waldron
**Address:**
  1322 Webster Street, Suite 300
  Oakland, CA, 94612
**Email:** siobhan@immigrantlegaldefense.org
**Phone:** 5104790972
**Fax:** 5108903103

---

## General Comment

My name is Siobhan Waldron and I am a Managing Attorney and co-founder of Immigrant Legal Defense, a non-profit organization based in Oakland, California that specializes in removal defense. I am writing to oppose the proposed regulation to eliminate the 30-day adjudication period for initial EADs for asylum seekers. Timely and efficient adjudication of EADs for asylum seekers help ensure that non-citizens have an ability to obtain gainful employment and a means to safely, consistently, and confidently support themselves and their communities.

AR005330

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-dn6e
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2621
Comment Submitted by Paul Hurst

---

## Submitter Information

**Name:** Paul Hurst

---

## General Comment

I'm writing to urge you to support President Trump's immigration reforms. I understand there is a comment period ending today.

We need this for our nation's safety.

AR005331

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-1rc0
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2622
Comment Submitted by Todd Mildon, Central Washington Justice for Our Neighbors

---

## Submitter Information

**Name:** Todd Mildon
**Address:**
  Central Washington Justice for Our Neighbors
  210 N Ruby St Suite 5
  Ellensburg,  WA,  98926
**Email:** todd@cwjfon.org
**Phone:** (509) 899-9038

---

## General Comment

My name is Todd Mildon. I am the board president at Central Washington Justice for Our Neighbors (CWJFON).

CWJFON welcomes immigrants by providing free, expert immigration legal services to low-income immigrants, refugees and asylum seekers. We also engage in advocacy for immigrant justice and offer education to communities of faith and to the public.

Therefore, my CWJFON colleagues and I have extensive, first-hand experience with asylum seekers. We know the negative impact this proposed rule will have on the people we serve every day.

Our asylum-seeking clients have very limited financial resources. Just like most of our low-income neighbors - both citizens and non-citizens - if they cannot work, they cannot survive.

Any delay in permitting our clients to work will cause harm. Even a few days of delay means a few days without income. Anyone who has lived without savings and without income knows what this means: Hunger, homelessness, no access to doctors, fear, anxiety, and eventually hopelessness.

The proposed rule is likely to cause long or indefinite delay. It will therefore cause extreme harm.

Why would we cause this harm to our asylum-seeking sisters and brothers? Why would we cause this harm to

AR005332

anyone? To do so is moral failure. It is a failure of our basic human responsibility to love others as we love ourselves. American can do better. American must do better.

To prevent this suffering of asylum seekers and their families, all we need to do is reject this proposed rule. Reject the rule and keep processing claims for work authorization within 30 days. Our government is already doing this. Why stop? Why cause needless suffering?

I urge our government to live up to its duty to our sisters and brothers. I urge our government to reject this proposed rule.

Thank you,

Todd Mildon
Central Washington Justice for Our Neighbors
Ellensburg, Washington

AR005333

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-gsnh
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2623
Comment Submitted by Daniel Costa, Economic Policy Institute

## Submitter Information

**Name:** Daniel Costa
**Email:** dcosta@epi.org
**Organization:** Economic Policy Institute

## General Comment

See attached file(s)

## Attachments

EPI_EAD_asylum_30-day_NPRM_2019_final

AR005334

# Economic Policy Institute

November 8, 2019

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

*Submitted via regulations.gov\**

**Re: Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I–765 Employment Authorization Applications**

The Economic Policy Institute submits this comment on the Department of Homeland Security's *Notice of Proposed Rulemaking: Removal of 30-Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications*, RIN 1615–AC19, DHS Docket No. USCIS-2018-0001, posted September 9, 2019.

**About EPI**:
The Economic Policy Institute (EPI) is a nonprofit, nonpartisan think tank created in 1986 to include the needs of low- and middle-income workers in economic policy discussions. EPI conducts research and analysis on the economic status of working America, proposes public policies that protect and improve the economic conditions of low- and middle-income workers, and assesses policies with respect to how well they further those goals. EPI examines the economic landscape and analyzes what is happening to workers and working families, regardless of immigration status. EPI has long had an interest in examining and safeguarding the wages and working conditions of all workers, and has published research relating to labor standards for U.S. workers and migrant workers. EPI has offered a comprehensive plan to reform the U.S. immigration system in a way that uplifts labor standards, raises wages, and leads to a more broadly shared prosperity.

<u>**EPI opposes**</u> the Department of Homeland Security's (DHS) proposed rule regarding the removal of the 30-day processing requirement for Employment Authorization Document (EAD) applications submitted by applicants for asylum, because it could leave tens of

thousands, and possibly even hundreds of thousands, of asylum-seekers without access to basic labor standards protections—perhaps indefinitely—despite their need to work in order meet their basic survival needs.

## I. Substance of the proposed rule.

The proposed rule from the U.S. Department of Homeland Security (DHS) would remove the existing regulatory requirement that its subagency, U.S. Citizenship and Immigration Services (USCIS), grant or deny an initial employment authorization application within 30 days of when the asylum-seeker files the Form I-765, Application for Employment Authorization. The form I-765 is the USCIS form used to apply for an Employment Authorization Document (EAD)—otherwise known as a work permit—which allows the non-citizen beneficiary to work lawfully in the United States. The proposed rule would also remove an existing provision that requires applications for EAD renewals to be received by USCIS 90 days prior to their expiration date.

## II. Delaying EADs for asylum-seekers will degrade U.S. labor standards by leaving asylum-seekers without workplace rights in practice, making them more vulnerable to employer exploitation.

Asylum-seekers who apply for EADs but do not get them in a timely manner will face the same challenges that unauthorized migrant workers face in the workplace, many of which are well known. Unauthorized migrant workers who lack work authorization are not fully protected by U.S. labor laws and are often afraid to complain about unpaid wages and substandard working conditions because employers can retaliate against them by taking actions that can lead to their deportation. This imbalanced relationship gives employers extraordinary power to exploit and underpay these workers, ultimately making it more difficult for similarly situated U.S. workers to improve their wages and working conditions.

The exploitation faced by migrant workers without work authorization is not theoretical. A landmark study and survey of 4,300 workers in three major cities found that 37.1% of unauthorized immigrant workers were victims of minimum wage violations, as compared with 15.6% of U.S.-born citizens. Further, an astounding 84.9% of unauthorized immigrants were not paid the overtime wages they worked for and were legally entitled to.[1]

As a result of the proposed rule, employers will have increased access to an exploitable workforce of asylum-seekers who lack work authorization—a workforce that could

---

[1] Annette Bernhardt et al., *Broken Laws, Unprotected Workers: Violations of Employment and Labor Laws in America's Cities*, Center for Urban Economic Development, National Employment Law Project, and UCLA Institute for Research on Labor and Employment, 2009.

eventually number in the hundreds of thousands—who are *not* undocumented and *are lawfully present* in the United States, because they have availed themselves of a legal process that is available to persons fleeing persecution under U.S. law. However, lawfully present asylum-seekers will face the same challenges in the workplace as unauthorized immigrant workers by virtue of lacking work authorization.

Considering that few asylum applicants qualify for public assistance or virtually any social safety net programs, those without EADs will face a difficult choice: either work without an EAD or be homeless and starve. Since asylum-seekers will virtually have no choice but to work without authorization, the ultimate result of the proposed regulation will be to increase the number of workers employed in the informal labor market in the United States, which will decrease the bargaining power of similarly situated U.S. workers and degrade labor standards overall. And from the perspective of asylum-seekers, many of whom are already dealing with the effects of trauma, the proposed rule will add insult to injury because their precarious economic situation will jeopardize their ability to obtain humanitarian protection: working without an EAD in order to survive will increase the likelihood that asylum-seekers will get caught working unlawfully, which could jeopardize their claims for asylum in immigration court.

### III. The proposed rule will push many asylum-seekers who could be self-sufficient workers into extreme poverty.

Applicants with pending asylum claims have little to no access to public assistance or social safety net benefits. But if they are issued an EAD after the minimum 180-day waiting period, they can initiate employment without restrictions for almost any employer. Being able to earn a living and become self-sufficient by virtue of being employed allows asylum-seekers to provide for themselves and their families, and to live with dignity while they attempt to reestablish their lives after suffering the traumatic event of being persecuted in their countries of origin.

The proposed rule could create long delays for EAD approvals for asylum-seekers, including indefinite waits for many. Not being able to work lawfully will have severe negative impacts on the lives of asylum-seekers and their families. Without an EAD that gives them access to an income, asylum-seekers will not be able to afford housing, food, clothes, and other basic necessities. Unless a family member, friend, or charity offers them assistance, they are likely to be homeless and hungry, and without access to medical care. Without an EAD, it will be difficult for asylum-seekers to obtain drivers' licenses, an attorney to represent them—in what are usually lengthy and complex legal proceedings, or financial services and other basic necessities that many people take for granted, but that are essential for navigating modern life.

DHS's estimates that the proposed rule will result in asylum-seekers annually losing $255.88 to $774.76 million in income—somewhere between one-quarter and three-quarters of a billion dollars. If we make the assumption that most asylum-seekers are likely to be employed in the low-wage labor market (as DHS assumes), these amounts represent tens of thousands of asylum-seekers who will not have access to this income and who will be quickly pushed into extreme poverty as a result. In their public comment to this proposed regulation, Upwardly Global—a national organization that assists asylees and asylum-seekers who have EADs to find work—challenges DHS's estimate and believe it undercounts the income losses to asylum-seekers with EADs.

Where will this one- to three-quarters of a billion dollars (or more) that sustains life for asylum-seekers come from? DHS cannot reasonably assume that charitable organizations will pick up the slack. Instead, asylum-seekers who were previously self-sufficient will have to beg for food on American streets.

**IV. DHS should retain the 30-day timeline to prevent lengthy and indefinite wait times for EADs.**

DHS has failed to propose a new timeline that they view as a reasonable maximum processing time with which to adjudicate EADs for asylum-seekers. Having no maximum timeline will have the practical impact of allowing DHS to divert resources away from adjudicating EADs for asylum-seekers, resulting in unreasonably long, and even indefinite wait times. DHS's own estimates of wait times before the *Rosario v USCIS* court order[2] in mid-2018—which enjoined USCIS from taking longer than 30 days to process EADs for asylum applicants—reveal that prior to the court's ruling, USCIS adjudicated 47% of initial EAD applications within 30 days, 31% within 60 days, and 22% of applications took longer than 60 days. But since the *Rosario* court order, 30 days has been enough time to for USCIS adjudicators to vet and process 99% of initial EAD applications from asylum-seekers. Therefore USCIS has shown that—even in the face of higher caseloads—it is capable of adjudicating EADs within the 30-day timeline. And in the cases where more time and information are required, USCIS already has a valid option: adjudicators may issue requests for evidence (RFE) to applicants, which has the effect of pausing the 30-day clock until the requested information is received.

Before taking the extreme measure of eliminating the 30-day time requirement—despite already having an option to pause applications that require additional vetting—USCIS should fully consider whether hiring additional adjudicators would allow the agency to continue completing its core functions and increased workloads while also complying with

---

[2] *Rosario v. USCIS*, No. C15–0813JLR (W.D. Wash. July 26, 2018), https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/rosario_v_uscis_judgment.pdf.

the 30-day timeline, and what the cost would be, and the impact (if any) on fees across the agency. The fact that USCIS has not already done such an analysis in the proposed rule is strong evidence that it has not considered all the feasible alternatives to leaving asylum-seekers without access to lawful employment.

## V. DHS has taken a number of disturbing measures to restrict the asylum process.

Currently, asylum-seekers whose asylum cases have been pending without a decision for at least 150 days are eligible to apply for an EAD (although if the applicant has caused delays in their asylum case, they must wait longer). As noted above, pursuant to an existing regulation USCIS is required to adjudicate the EAD application within 30 days of receiving it. Recent news reports have suggested that DHS is now considering doubling the wait time before asylum-seekers can initially apply for EADs (which then triggers the 30-day timeline).[3] If both regulations are implemented, asylum-seekers will go from waiting six months before they can work lawfully in the United States to waiting one year—just to apply—and then will be expected to endure an unknown and indefinite wait time before they are authorized to work. In the meantime, asylum-seekers who do not have access to the social safety net will somehow need to eat, clothe themselves and their families, and have a roof over their head.

In addition, the administration is implementing a third-country transit bar and the Migrant Protection Protocols (MPP), commonly referred to as the "Remain in Mexico" policy, as well as expedited processing for "family unit" asylum cases. Taken together, all of these policies and actions are evidence that the Trump administration is intentionally making it more difficult for individuals who seek humanitarian protection at the Mexico-U.S. border to ever be granted protections under U.S. asylum law—and increasingly, is making it more difficult for any asylum-seeker to ever apply or even be considered for those protections.

It should not be official U.S. policy to avoid considering the valid claims of persons fleeing persecution and to force them into the informal labor market in order to survive.

## VI. Conclusion: DHS should abandon the proposed rule and keep the 30-day timeline in place.

DHS has not offered a valid justification for why it should move forward with eliminating the 30-day timeline, nor has it considered all of the costs and benefits involved in making this regulatory change. The few estimates DHS has provided in the proposed rule suggest that the financial hardships to asylum applicants due to loss of income will be significant—and their income will not be easily replaced, if at all, leaving asylum applicants desperate for food

---

[3] Hamed Aleaziz, "Trump Officials Are Seeking To Double The Time Asylum-Seekers Must Wait To Legally Work," *BuzzFeed News*, April 10, 2019, https://www.buzzfeednews.com/article/hamedaleaziz/uscis-asylum-work-permit-delay-trump.

and basic necessities, and homeless on American streets. DHS has failed to show a compelling reason for causing such hardship, nor have they proved that the 30-day processing timeline is unsustainable under the current system. As a result, DHS should not implement this proposal, and should continue to allow asylum-seekers to obtain EADs after 180 days total, 150 days plus the 30-day timeline for adjudications.

Sincerely,

Daniel Costa
Director of Immigration Law and Policy Research
Economic Policy Institute

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-yzgt
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2624
Comment Submitted by Amy Lee

---

## Submitter Information

**Name:** Amy Lee

---

## General Comment

This proposal is based on the false premise that asylum seekers are coming to the U.S. to work or as the Trump Administration would like people to believe, to take away jobs from citizens and to commit crimes. I work as a nonprofit immigration lawyer and my asylum clients are coming to the US to flee violence and persecution in their home country, not simply to work and certainly not to come crimes. In fact, many of these asylum seekers are children, but their parents need these work permits to survive in the U.S. While asylum seekers are waiting for their cases to be adjudicated, they need to be able to support themselves and their families. They have to pay for housing, food and basic necessities, just like the rest of us. Government assistance isn't available for these folks. Delaying the processing of work permits will make these asylum seekers more likely to be exploited in the underground economy, like human trafficking. This proposal will increase the likelihood of homelessness. Asylum seekers already have to wait 150 days to even apply for work permits. If USCIS is concern about the backlog and time it takes to process work permits, then they should allow asylum seekers to apply for work permits before 150 days, instead of making applicants wait to apply and then wait longer to receive their work permits.

Asylum seekers with work permits work and contribute to the growth of our economy. They work in jobs that the majority of citizens do not want. They grow and pick our produce. They cook and serve our food. They watch our children. They clean our offices and homes. They are our neighbors and friends. They deserve to be treated with dignity. Let's stop issuing policies like these that are mean spirited and based on fear.

AR005341

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-witf
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2625
Comment Submitted by Gail Brandt

## Submitter Information

**Name:** Gail Brandt
**Address:**
   4780 190th Street N
   Forest Lake,  MN,  55025
**Email:** Gbrandt4780@gmail.com
**Phone:** 612-749-5131

## General Comment

Removing the deadline allows the agency to selectively deny an applicant by simply failing to take action. It a likely to lead to inconsistent decisions. If a longer timeline than 30 days is needed to process applications due to volume or verification, the administration should propose an appropriate timeline rather than eliminate it.

AR005342

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-kvhk
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2626
Comment Submitted by Annie McDermott

---

## Submitter Information

**Name:** Annie McDermott

---

## General Comment

My name is Annie and I am a law student who works with asylum seekers. My clients are good, resilient, and hard-working people who love the United States. They believe in the American Dream and want to contribute economically. So why increase barriers to strengthening our work-force?

This proposed rule will hurt the United States economy. USCIS admits that all levels of government will lose tax revenue as a result of the proposed rule change. USCIS projects a loss of $39.15 million to $118.54 million per year because delayed work authorization will prevent asylum seekers and their employers from contributing to Medicare and social security.

I see many comments here about "illegals" when this proposed rule will undoubtedly lead to an increase in "illegal" work. Let us remember that these asylum seekers are trying not to work illegally as they are applying for work authorization. So why force unauthorized work or lost wages? Is that really what the American people, USCIS, and our government wants to encourage? Asylum seekers should be able to legally work and contribute economically to the United States with few roadblocks.

AR005343

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-ybq0
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2627
Comment Submitted by Anna Winter

---

## Submitter Information

**Name:** Anna Winter

---

## General Comment

We are a sovereign nation an as American citizens we have the right to that. We also have the right to be protected by regulated immigration policies that do not allow for illegal immigrants to have the freedom of access to our country nor to the benefits that we as Americans are entitled to. Illegal immigrants are precisely that, they are illegal and criminal laws should apply to them. There should be appropriate time each each immigrant to be properly vetted before receiving entry to our country. Instead of trying to abolish our borders an our sovereignty, strengthen them.

Thank You

AR005344

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-bifd
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2628
Comment Submitted by Sarah Wernsing

---

## Submitter Information

**Name:** Sarah Wernsing

---

## General Comment

It makes no sense to prevent asylum seekers from working while they wait for their cases to be decided and their claims to be processed!! This would just ensure that they are dependent on charity, relatives, or community handouts. It is much more financially beneficial to our whole economy if they can support themselves and their families while they wait. Also, under both U.S. and international law, seeking asylum is legal. This kind of rule change penalizes people for exercising their legal right to seek asylum.

AR005345

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-2jwz
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2629
Comment Submitted by Abigail Taylor

---

## Submitter Information

**Name:** Abigail Taylor

---

## General Comment

This new regulation will further delay work permit applications for asylum seekers, leaving many of the most vulnerable among us to be forced to work under the table for less money than they are worth. I heartily disagree with this new regulation and oppose this change.

AR005346

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-xnse
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2630
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

This is an immoral and unethical regulation.

AR005347

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-f3ma
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2631
Comment Submitted by Johanna Torres

## Submitter Information

**Name:** Johanna Torres

## General Comment

They are going to work anyways. Allow them to work in a way that can effectively pay into our dying social security system and the IRS.

AR005348

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-l0n0
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2632
Comment Submitted by Justin Talbott

---

## Submitter Information

**Name:** Justin Talbott
**Address:**
  3370 23rd St
  San Francisco, CA, 94110
**Email:** justin96talbott@gmail.com
**Phone:** 4153781364

---

## General Comment

I am writing IN OPPOSITION to the proposed rule change regarding the Removal of 30- Day Processing
Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications.

This proposed rule change will irrevocably harm a population that is already vulnerable. Asylum seekers in the
US are already some of the most vulnerable, in part because they have to wait six months to file for a work
permit in the first place. Further delaying the time in which a work permit will come for these asylum seekers
puts them at risk of predatory employers. Without a work permit, many asylum seekers are forced to work under
the table to support themselves and their families. Often, they make less money than they are entitled to under
federal law. Without timely receipt of work permits, these people may never get the opportunity to have stable
employment and income.

Asylum seekers are also in a vulnerable position because they are often recent arrivals to the US. Work permits
allow them to receive stable work and begin to build their lives here in the US without having to worry about
employment instability. This is crucial for their access to justice. With steady, reliable work, they can budget
their income to pay for legal support in their cases. Stable income also gives them more control over their
housing options. This allows them to pursue their cases without having to worry about USCIS sending notices to
the wrong address or trying to change their asylum office/immigration court location.

Finally, this regulation would further prevent asylum seekers from obtaining valuable identification
documentation in the US. Often, asylum seekers fled their countries in haste and did not have time to arrange for
identity documents such as passports or consular ID card to arrive. Thus, they arrive to the US with little in terms

AR005349

of identification which prevents them from accessing basic services in the US like banks and airports. Work permits allow them to obtain a social security number and an identification card.

In summary, this proposal puts asylum seekers in the US in further risk. As they adjust to life in the US, stable employment is a huge part of their new lives. It allows them to control their own income and provide for their families. Further delays in work permit processing times will only cause more uncertainty and vulnerability in the lives of asylum seekers at a very crucial stage of their lives. I oppose this change.

AR005350

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-q1x9
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2633
Comment Submitted by Jennifer Brown

---

## Submitter Information

**Name:** Jennifer Brown
**Address:**
  Po Box 965
  Willamina, OR, 97396
**Email:** jbrodies@icloud.com

---

## General Comment

30 Days for Venting is a Insult , And A Security Threat to the USA , I Support My President in this Mive to make this Time way Longer , Making it Mire Secure to THE AMERICA PEOPLE

AR005351

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2633.html[9/15/2020 4:15:21 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-3hnk
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2634
Comment Submitted by Kevin Wong

---

## Submitter Information

**Name:** Kevin Wong

---

## General Comment

Please DO NOT enact this regulation. This regulation would do more harm to the United States than benefit it. Asylum seekers are in this country because life is untenable in their native land. Further delaying work permits and not allowing them to work to earn a living while they await a ruling on their status is inhumane. Furthermore, it would incur a much higher societal cost as well as personal cost to asylum seekers in terms of dignity and well-being. Again, please do not enact this unhelpful regulation.

AR005352

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-pibc
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2635
Comment Submitted by Rosie Hidalgo on behalf of Casa de Esperanza

---

## Submitter Information

**Name:** Rosie Hidalgo
**Address:**
   Casa de Esperanza: National Latin@ Network for Healthy Families and Communities
   540 Fairview Ave. N
   St. Paul, MN, 55104
**Email:** rhidalgo@casadeesperanza.org
**Phone:** 651-646-5553

---

## General Comment

See attached file(s)

---

## Attachments

Asylum EAD 30 day rule 2019.11.8-OG

AR005353

November 8, 2019

Via Federal e-Rulemaking Portal
https://www.regulations.gov/docket?D=USCIS-2018-0001

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, DC 20529-2140

RE:    Request for Comments on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications (Sept. 9, 2019) DHS Docket No. USCIS-2018-0001

Dear Ms. Deshommes,

On behalf of Casa de Esperanza, we are submitting comments in response to the Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications (September 9, 2019) (hereinafter, the Rule). Casa de Esperanza requests that USCIS maintain the regulatory provision stating that USCIS has 30 days from the date an asylum applicant files the initial Form I-765, Application for Employment Authorization (EAD application) to grant or deny that initial employment authorization application. The proposed rule change would reverse more than a century of immigration law, policy, and practice, making it more difficult for asylum seekers to begin working and rebuilding their lives. Additionally, Casa de Esperanza has grave concerns regarding the significant harm that the proposed rule change would have on immigrant survivors of domestic violence, sexual assault, trafficking and other gender-based violence.

Casa de Esperanza was founded in 1982 in Minnesota to provide emergency shelter and support services for women and children experiencing domestic violence. Additionally, in 2009 Casa de Esperanza launched the National Latino Network for Healthy Families and Communities, which is a national resource center that provides training & technical assistance, research, and national policy advocacy focused on addressing and preventing gender-based violence, primarily in Latino and immigrant communities. Casa de Esperanza also serves on the Steering Committee of the National Task Force to End Sexual and Domestic Violence and the Alliance for Immigrant Survivors.

Our organization continues to work directly with immigrant victims of domestic and sexual violence seeking services and safety. Additionally, our research staff has been involved in community participatory research projects that highlight the experiences and needs of immigrant

women and their children. Based upon these experiences, we strongly oppose the proposed rule change.

**The EAD process will take longer**: Eliminating the 30-day deadline for responding to an EAD application, as the Rule proposes to do, will inevitably result in delays for asylum seekers in obtaining their employment authorization in violation of the current statutory and regulatory scheme. Asylum seekers have a right under U.S. law to apply for employment authorization once their cases have been pending without a decision for at least 150 days. The 30 day deadline for USCIS to respond to the application allows the asylum seeker to obtain employment authorization as soon as 180 days has passed without a decision on her case, as provided for in the Immigration and Nationality Act[1] and its implementing regulations.[2] This six month period was a compromise carefully struck to balance the government's goal of adjudicating claims promptly with asylum seekers' need to work to support themselves and their families.[3]

**Asylum seekers need to work as soon as possible to avoid economically precarious and socially vulnerable situations**: Asylum seekers are not entitled to most forms of social welfare benefits and can support themselves only by working. Delaying their employment authorization beyond the current six-month period puts them at even greater risk of hunger, potentially abusive living situations, or homelessness, as well as trafficking and other coercive employment practices. Most asylum-seekers have experienced trauma and harm either in their home country or on their journey to safety. This is particularly the case for women asylum seekers as well as LGBTQ asylum seekers.[4] As long as they not able to work, they remain in a highly vulnerable situation having to rely on others, including individuals who may be harming them.

**Asylum seekers, like survivors of gender-based violence, must be self-reliant given the unavailability of social services**: The sooner asylum seekers can begin to work, the sooner they can be, and begin to feel, self-reliant. The Executive Committee of the Office of the United Nations High Commissioner for Refugees, of which the United States is a member, has recognized that asylum seekers are capable of attaining self-reliance if provided with an opportunity to do so.[5] Providing asylum seekers with an early opportunity to work also recognizes the lack of social services provided by the U.S. government to asylum seekers.

**Employment can help asylum seekers move from dependence on others to contributing to society**: Once employed, an asylum seeker can become a contributing member of U.S. society,

---

[1] 8 U.S.C. 1158(d)(2).

[2] 8 C.F.R. 208.7(a)(1).

[3] *See* Migration Policy Institute, *The U.S. Asylum System in Crisis: Charting a Way Forward*, Sept. 2018.

[4] *See* UN High Commissioner for Refugees (UNHCR), *Women on the Run: First-hand Accounts of Refugees Fleeing El Salvador, Guatemala, Honduras, and Mexico*, 26 October 2015, available at: https://www.refworld.org/docid/56307e2a4.html [accessed 5 November 2019].

[5] Executive Committee Conclusion No. 93 (LIII) 2002, in UN High Commissioner for Refugees (UNHCR), *A Thematic Compilation of Executive Committee Conclusions (7th Edition)*, June 2014, available at: https://www.refworld.org/docid/5698c1224.html [accessed 1 November 2019].

and can take pride in providing for herself and her family. This sense of empowerment is particularly important for women refugees and because it allows them to begin to heal from their traumatic experiences and regain their confidence.[6]

The current six month wait for employment authorization is difficult enough for asylum seekers. The Rule's proposal to eliminate the 30-day requirement will cause unnecessary suffering, increase the vulnerability of an already traumatized population, and deprive the government of the important skilled labor the asylum seeker can provide. We call upon USCIS to reject this proposed Rule.

Thank you for the opportunity to submit comments. Please do not hesitate to contact Casa de Esperanza to provide further information.

Respectfully submitted,

Rosemarie Hidalgo, J.D.
Senior Director of Public Policy

Casa de Esperanza: National Latin@ Network for Healthy Families and Communities
540 Fairview Ave. N
St. Paul, MN 55104
Tel: 651-646-5553

---

[6] Women's Refugee Commission, *Refugee women's path to equality and self-reliance*, March 7, 2019, available at
https://www.womensrefugeecommission.org/blog/3458-refugee-women-s-path-to-equality-and-self-reliance.

AR005356

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7d-arhu
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2636
Comment Submitted by Jordan Blimbaum

## Submitter Information

**Name:** Jordan Blimbaum
**Address:**
    2066 Mackinnon Ave
    Cardiff by the Sea,  California,  92007-1714
**Email:** blimbaum@gmail.com
**Phone:** 2169738934

## General Comment

We need our immigrants to work as soon as possible. My grandparents were refugees and they worked hard to build this country.

AR005357

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-enm7
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2637
Comment Submitted by Virginie Bock

---

## Submitter Information

**Name:** Virginie Bock
**Address:**
  2229 Shasta drive
  Davis,  California,  95616
**Email:** Virginie.bock@gmail.com

---

## General Comment

Asylum seekers should be able to work as soon as possible in order to be able to support themselves while waiting.

Extending the authorized delay to be able to work is cruel, heartless and shameful!!

Virginie Bock

AR005358

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-sw99
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2638
Comment Submitted by Diane Walker

---

## Submitter Information

**Name:** Diane Walker

---

## General Comment

The removal of the obligation to adjudicate the work permits to asylum seekers 30 days after a work authorization is more senseless cruelty from the Trump administration. It's part of the mythology the administration has concocted which says that asylum seekers aren't really fleeing horrible conditions in their own country, they're just coming to this country because they don't really like it at home, and if we make it tough for them, they'll turn around and go home.

There's no empirical basis for this point of view, It's wishful thinking from an administration that wants to keep the country homogenized. Perhaps it's not even wishful thinking. but deliberate callousness as to whether people who don't look or speak like us live or die.

Like most policies based on fear, it's also just dumb. Asylum seekers could be contributing to the economy and paying taxes, while they want for their status to be determined. Forcing them to live without income makes them more vulnerable to exploitation, crimes, and trafficking.

The removal should not go into effect. It's just one more bad, heartless, brainless decision that will need to be reversed when the xenophobes currently in power are impeached or voted out.

AR005359

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-9k6x
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2639
Comment Submitted by Jordan Blimbaum

## Submitter Information

**Name:** Jordan Blimbaum
**Address:**
  2066 Mackinnon Ave
  Cardiff by the Sea,  California,  92007-1714
**Email:** blimbaum@gmail.com
**Phone:** 2169738934
**Government Agency Type:** Federal
**Government Agency:** USCIS

## General Comment

Commenting on USCIS-2018-0001: our asylum seekers need to begin working as soon as possible.

AR005360

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-g1xd
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2640
Comment Submitted by Elizabeth Smoyer

---

## Submitter Information

**Name:** Elizabeth Smoyer
**Address:**
    4101 Glenellen Court 2A
    Mishawaka,  IN,  46545
**Email:** elizabethsmoyer@icloud.com

---

## General Comment

As a religious sister and believer that each of our immigrant brothers and sisters are human beings deserving of our respect and support, I strongly oppose the removal of the 30 day processing Provision for Asylum Seekers needing to secure work permits.
I see this proposed change as a violation of the common good for which we each of us and our government are responsible to work for in the name of justice and decency.
In hearing the stories of my sisters who have worked and continue to serve at our Southern border, our asylum seeking sisters and brothers' desire is to work and support their families. To delay their fulfilling this desire is a violation of their human rights.
ANYTIME we violate the human dignity of another person, we are VIOLATING OUR OWN HUMAN DIGNITY

Rulings such as these strike a knife in the heart of our democracy, our values and the survival of our nation. Changes such as this are punishment for people seeking good. These changes are actions that give expression to our sinful attitudes and blindness.Anytime any of us treats another without respect and with meanness we are doing the same to ourselves.

On a more pragmatic note, how can we afford to turn down the taxes our working immigrant sisters and brothers will pay? Our national debt is already unsustainable and destructive of our life together on a national, state and local level.

Please do not carry out this rule change.

AR005361

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-y75t
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2641
Comment Submitted by Linda Warren

## Submitter Information

**Name:** Linda Warren

## General Comment

I strongly OPPOSE this mean-spirited, inhumane proposal.

There are already process deadlines in place for asylum seekers which make it difficult enough. Honestly these people wouldn't be seeking asylum if they were in good shape, but even under current laws, they have to wait 150 days after filing their asylum application before they're eligible to apply for work authorization. After they apply for work authorization the USCIS has 30 days to process it.

BUT NOW, the USCIS is failing to meet the 30 day deadline, quite often delaying the process for months! This creates a ridiculous hardship for those already down on their luck. In July 2018, a judge ordered that the USCIS must comply with the current 30-day timeline. SO, here comes this proposal, that would COMPLETELY REMOVE the 30-day processing deadline.

Are the families and individuals seeking asylum supposed to just starve? This is completely amoral, & not in accordance with American values.

NO to this proposal!

AR005362

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-6e47
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2642
Comment Submitted by Carl Bergquist, CHIRLA - Coalition for Humane Immigrant Rights

## Submitter Information

**Name:** Carl Bergquist
**Submitter's Representative:** Isabel Sanchez on behalf of the Coalition for Humane Immigrant Rights (CHIRLA)
**Organization:** CHIRLA - Coalition for Humane Immigrant Rights

## General Comment

On behalf of the Coalition for Humane Immigrant Rights (CHIRLA), we submit these comments in response and opposition to this Department of Homeland Security's Notice of Proposed Rulemaking (NPRM). CHIRLA calls on DHS to withdraw this NPRM, thus maintaining the crucial 30-Day processing provision for work permits for asylum seekers. Our full comments have been attached. Thank you.

## Attachments

USCIS-2018-0001 EAD Asylum CHIRLA Comment 8 November 2019

AR005363



**CHIRLA**
Coalition for Humane
Immigrant Rights



November 8, 2019

Samantha Deshommes, Chief
Regulatory Coordination Division
Office of Policy and Strategy,
US. Citizenship and Immigration Services,
Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529

**RE: DHS Docket No. USCIS-2018-0001, RIN 1615-AC19**
**Removal of 30-Day Processing Provision for Asylum Seekers' Initial**
**Employment Authorization Document Applications**

Dear Chief Deshommes:

On behalf of the **Coalition for Humane Immigrant Rights (CHIRLA), the
largest statewide immigrant rights organization in California**, I write in
opposition to the Department of Homeland Security (DHS) proposed rule that
would eliminate the 30-day time frame within which U.S. Citizenship and
Immigration Services (USCIS) must adjudicate Applications for Employment
Authorization (EAD) Form I-765 for asylum seekers.

Working under the false and cynical assumption that most asylum claims are
fraudulent, this proposed rule is textbook collective punishment for the
overwhelming majority in the vein hope of catching the white whale of fraud.

**California would be particularly hard hit by this rule**. In FY 2015-17, the state
was the residence of nearly half of all immigrants who successfully filed for
affirmative asylum nationwide. DHS does not track defensive asylum applications
by state of residence, but it is fair to assume that many in this category also reside
in California. Annual Flow Report, DHS, Office of Immigration Statistics, March





2019. Delays in the lawful granting of work permits to these thousands of immigrants mean lost income, tax revenue and suffering for their families, our communities and the state as a whole.

**Under current regulations**, after a wait of a minimum of 180 days with no decision or in the event of an affirmative grant, asylum seekers may apply for employment authorization. While the regulations state that a decision must be given within 30 days from filing this application, the Government has not always abided by this. In 2018, in *Rosario v. USCIS*, a federal district court ordered that the government comply with this timeframe, which it then did.

Until the Immigration and Nationality Act (INA) is revised to once again allow concurrent filings for asylum and employment authorization, as was the case before 1994, this is **a compromise that addresses the needs of both the government and more importantly, the asylum seeker.**

**With a growing backlog in the immigration courts, these EADs are more important than ever** for the asylum seekers and their families. As they wait for their case to be adjudicated, it allows them to support their families, contribute to the community and to integrate themselves into what may become their new home. Crucially, EADs often also serve as the only government-issued identification document for asylum seekers.

Making asylum seekers dependent on others for their income and unnecessarily delaying their authorized entry into the labor market is **highly counterproductive** to both the national interest of the United States and the individual well-being of asylum seekers and their families.

Rather, and as others have suggested, **USCIS could propose a rule allowing for earlier submission of EAD applications**. Currently, an asylum seeker must wait 150 days after filing for asylum to do so, and then the Government has 30 days to adjudicate it. If the Government needs more time, it could allow for application



submissions after e.g. 120 days. This would then give it 60 days to adjudicate while remaining within 180 day minimum before issuance.

This would be in the spirit of the law to extend work permits for those whose cases, through no fault of their own, are mired in immigration court. Instead, **this proposed rule would create utter uncertaint**y for those individuals and their families, and fail to hold the Government accountable at all.

As the *Rosario* Court highlighted, **the Government per its own words is bound to "adjudicate these applications. . .regardless of the merits of the underlying asylum claim."** The rationale for doing so is that asylum seekers are often "waiting - often for years - to have their asylum applications resolved." That was intolerable to the court, and we submit that eliminating the 30-day time frame altogether will put countless asylum seekers back in a pre-Rosario limbo that is no less tolerable. Gonzalez Rosario v. United States Citizenship & Immigration Servs., 365 F. Supp. 3d 1156, 1160-61 (W.D. Wash. 2018).

Ultimately, this is not just **a cruel rule**, but it is **shortsighted**. What if in six months asylees that meet this Administration increasingly restrictive eligibility critieria appear? They too will see greater delays in processing EADs. Burying this protection for those arriving today will impact those arriving tomorrow as well.

We respectfully request that you rescind it forthwith.


Sincerely,


Angelica Salas

Executive Director, CHIRLA



AR005366

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-sd1k
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2643
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am a Board Certified immigration attorney with 30 years of experience, 10 of which were as the staff attorney then supervising attorney at a non-profit that provided legal assistance to immigrants. Since then I have been a partner in a large well-respected immigration law firm for almost 15 years, and for the last five years the founder of my own well-respected immigration law firm.

Over the years I have represented many immigrants who were asylum applicants, so Ive had the opportunity to observe my clients in terms of their need for employment authorization and their experiences in obtaining employment authorization, as well as the benefits to the United States in having such individuals be able to work. It is important for individuals who are applying for asylum to be able to work to support themselves and their families, pay taxes and social security to the government, and to prevent them from becoming public charges. Currently, applicants must wait 150 days after filing for asylum in order to apply for their work permits; then, the USCIS has 30 days to adjudicate the applications.

It would be detrimental to our economy and to these asylum applicants and their families for them to be forced to wait over 180 days to be able to support themselves.

If the concern is that 30 days does not give USCIS enough time to adjudicate these applications, then the regulations could be changed to allow asylum applicants to apply for employment authorization sooner than 150 days, perhaps within 30 days after filing, and to give the USCIS 60 or 90 days in which to adjudicate the applications.

When I began doing this work, there was no wait time for applying for an employment authorization document (EAD).

The best solution would be for the Form I-765 to be filed concurrently with the I-589 and for the USCIS to be allowed 90 days (which is a reasonable amount of time) in which to adjudicate the I-765 application for employment authorization.

There should be a solution where USCIS has a reasonable time to adjudicate (e.g. 90 days) and the applicants do not have to wait more than 90 days in which to obtain employment authorization.

That would be a win-win for all, as applicants could begin supporting themselves much more quickly, taxes and social security would be paid sooner, and the USCIS could have more than the current 30 days in which to

AR005367

adjudicate the I-765s.

If the USCIS is not willing to cut the wait time of 150 days for filing (which has always seemed excessive and counterproductive to our economy and these families), then the 30 days should continue to be the processing time, since it is in the public interest for these applicants to become self-sufficient as quickly as possible.

AR005368

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-7r6r
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2644
Comment Submitted by Lisa Laurel Weinberg, De Novo Center for Justice and Healing

---

## Submitter Information

**Name:** Lisa Laurel Weinberg
**Address:**
  De Novo Center for Justice and Healing
  47 Thorndike Street, SB-LL-1
  Cambridge, MA, 02141
**Email:** lweinberg@denovo.org
**Phone:** 6176611010
**Fax:** 6176611011
**Submitter's Representative:** Lisa Laurel Weinberg
**Organization:** De Novo Center for Justice and Healing
**Government Agency Type:** Local

---

## General Comment

Submitted online via the Federal eRulemaking Portal

Department of Homeland Security
U.S. Citizenship and Immigration Services
Office of Policy and Strategy Chief
Regulatory Coordination Division
20 Massachusetts Avenue
NW Washington, D.C. 20529-2140

RE: Comments on Removal of 30-Day Processing Provision for Asylum Applicant Related Form I-765
Employment Authorization Applications
Docket Numbers: CIS No. 2617-18 DHS Docket No. USCIS-2018-0001

My name is Lisa Laurel Weinberg. I am an immigration attorney at the non-profit organization De Novo Center
for Justice and Healing (De Novo). De Novo is a 501(c)(3) non-profit organization that provides free civil legal
aid and affordable mental health counseling in Cambridge, Massachusetts. At De Novo, we provide free legal

AR005369

representation to low income individuals in their immigration, family law, housing, and disability cases. We also provide mental health counseling to low income individuals. In the immigration unit we have four immigration attorneys and one Department of Justice BIA accredited representative. We represent asylum seekers in affirmative and defensive asylum claims. Our clients are victims of human rights violations including political violence, torture, gender-based violence and other types of persecution.

Work permits are critical to allow our clients to provide for themselves while their asylum claims are being adjudicated. The proposed changes will put our clients at risk of homelessness, hunger, mental health break downs, and personal danger while they wait for their claims to be adjudicated. Asylum seekers are legally permitted to be in the United States while their asylum claims are pending. Forcing people who are legally present in the United States to survive without a work permit or delaying their work permit is unconscionable and is contrary to the public interest.

The time it takes for an asylum application to be adjudicated is extremely unpredictable. It could take months or years. During that time while asylum claims are pending, our clients rely on their work permits to become economically self-sufficient. This proposed rule change is at direct odds with the underlying intent of the statute allowing asylum seekers to work which is to allow and promote personal and economic self-sufficiency for individuals who are present in the United States under the color of law.

Because this proposed rule change places a serious burden on the most vulnerable immigrants, we strongly oppose the proposed regulation and request that it be withdrawn. We respectfully request that USCIS continue processing asylum-based EAD applications pursuant to its current policy and practices that require adjudication within 30 days of filing.

We appreciate your consideration and thank you for the opportunity to submit these comments. Please contact our Executive Director Mojdeh Rohani at mrohani@denovo.org should you have any questions about our comments or require further information.

AR005370

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-a4ft
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2645
Comment Submitted by Cecillia Joseph

---

## Submitter Information

**Name:** Cecillia Joseph
**Address:**
  2307 Muir Woods
  Davis, CA, 95616
**Email:** cmljoseph@yahoo.com

---

## General Comment

I for one would like asylum seekers to support themselves whenever possible while awaiting their chance to be heard. I do not want to have to support them any longer than the 180 days already required. Give them a chance to prove that they can be valuable citizens and contribute to the country.

AR005371

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-eu08
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2646
Comment Submitted by Bettina Mok

---

## Submitter Information

**Name:** Bettina Mok
**Address:**
   1868 Kahakai Dr.
   Honolulu,  HI, (98614
**Email:** bettinamok@yahoo.com

---

## General Comment

The proposed rule to remove the 30-day processing provision for Asylum application is dangerous and un-American. By removing the ability of asylum seekers to gain meaningful employment within a short and predictable timeframe, the federal administration effectively turns asylum seekers into the very public charges it seeks to exclude. Additionally, this policy change would make the work authorization process more unpredictable and inefficient by removing the ability to hold USCIS accountable to any deadline.

Proposed Alternative: As the law is currently written, asylum seekers must wait 180 days before they may be granted authorization to work. They are permitted to submit their application after 150 days, giving USCIS the 30-day timeframe in question to process the requests. If USCISs goal is to have more time to process each request in order to increase flexibility and free up resources to work on other applications, then it could easily shorten the waiting time before asylum-seekers are allowed to submit their application. If USCIS feels that a 60-day timeframe would be more beneficial, then it may allow applications to be submitted after 120 days, rather than 150. Allowing asylum-seekers to submit their applications earlier could allow the department to have up to 180 days to process and properly vet each individual while reducing the risk of harm to each applicant.

AR005372

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-h9ba
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2647
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

Worst government ever! You all hate anyone you perceive as different and try to make things harder for people! I dont get it! First you want immigrants to be able to provide for themselves and their families and then you want to put regulations and restrictions making it impossible for them to work! Something is wrong with this picture! Bunch of hypocrites! Drain the swamp-start with this administration! Out only to enrich yourselves and your families! MOST CORRUPT ADMINISTRATION EVER!! In the language this government understands BAD VERY BAD AND VERY SAD!

AR005373

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-5bk4
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2648
Comment Submitted by Allison Wilkinson

---

## Submitter Information

**Name:** Allison Wilkinson
**Address:**
  864 President Street
  Apt. 4B
  Brooklyn,  NY,  11215
**Email:** awilkinson09@gmail.com

---

## General Comment

The proposed regulation will cause extreme and unnecessary hardship to vulnerable asylum seekers who require work authorization be approved in a timely fashion to allow them to meet their basic needs to survive. Work authorization means the difference between being able to obtain employment with a fair and legal wage and relying on shelters and food pantries to support oneself and one's children. Moreover, it makes already traumatized individuals more vulnerable to trafficking and the exploitative risks of the off-the-books economy. Failing to provide an EAD in a timely manner deprives asylum seekers of a means to obtain a lawful photo identification, depriving them of access to basic government buildings and services and exposing them to law enforcement harassment for lack of an ID. In locations where work authorization is needed to obtain a license and there is no viable public transportation, the lack of an EAD effectively strands asylum seekers with no means to travel to work, bring children to school, or live their daily lives.

Removing this rule would make the provision of work authorization for asylum seekers a legal fiction, since the wait times to renew an asylum-based EAD or apply for an EAD on another basis are already unacceptable and can take nearly a year in some cases. This causes serious harm, including lost employment and forced dependency on charitable and government services. Moreover, this rule is self-harming, as it would deprive the government of hundreds of thousands of tax revenue according to the government's own calculations.

AR005374

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-h8am
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2649
Comment Submitted by Jason Baum

---

## Submitter Information

**Name:** Jason Baum

---

## General Comment

Stop this rule! It is antithetical to the foundation of our nation.

AR005375

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-96ih
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2650
Comment Submitted by Jennifer Nagda, Young Center for Immigrant Childrens Rights

## Submitter Information

**Name:** Jennifer Nagda

## General Comment

The Young Center for Immigrant Childrens Rights (Young Center) appreciates the opportunity to submit this comment on the Notice of Proposed Rulemaking (the NPRM or the proposed rule) on the Removal of the 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications (EAD application), published by the Department of Homeland Security (DHS) and the United States Citizenship and Immigration Services (USCIS) on September 9, 2019.
As written, the proposed rule would undermine young peoples safety and well-being. It also fails to account for significant costs including those born by young people and the communities where they live, and lacks a reasoned justification given the significant impact on youth who may wait years for their asylum case to be heard. We therefore respectfully urge the Department to withdraw the proposed rule in its entirety, as outlined in more detail in the attached comment.

## Attachments

Young Center Comment Opposing NPRM Eliminating 30-Day EAD Processing

AR005376



November 8, 2019

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

**RE: DHS Notice of Proposed Rulemaking for Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001**

Dear Ms. Deshommes:

The Young Center for Immigrant Children's Rights ("Young Center") appreciates the opportunity to submit this comment on the Notice of Proposed Rulemaking ("the NPRM" or "the proposed rule") on the Removal of the 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications ("EAD application"), published by the Department of Homeland Security ("DHS") and the United States Citizenship and Immigration Services ("USCIS") on September 9, 2019. We respectfully urge the Department to withdraw the proposed rule in its entirety, for the reasons outlined below.

**I.     The Young Center's Interest in this NPRM**

The Young Center serves as the federally appointed, independent best interests guardian ad litem ("Child Advocate") for trafficking victims and other vulnerable unaccompanied children as authorized by the Trafficking Victims Protection Reauthorization Act ("TVPRA").[1] The role of the Child Advocate is to advocate for the best interests of the child. Since 2004, Health and Human Services' Office of Refugee Resettlement ("ORR") has appointed Young Center Child Advocates for thousands of unaccompanied children in ORR custody. Many of these young people—and particularly, teenagers—apply both for asylum and I-765 Employment Authorization Applications. Thus, we have a particular interest in the proposed rule and insight into its potential impact.

---

[1] *See* 8 U.S.C. § 1232(c)(6).

AR005377



The ability to work during the prolonged asylum application process is a critical resource for teenage asylum-seekers and their families. Meaningful employment provides teens and young adults with the opportunity to develop skills, gain work experience, earn wages, and receive employee benefits. With the money they earn, teens and young adult asylum-seekers can also contribute to the economy and support local businesses in their communities. In turn, the federal government benefits through the collection of federal income taxes. We therefore offer the following comments urging the agency to withdraw the NPRM in its entirety to ensure that asylum-seekers' EAD applications are adjudicated quickly and effectively.

**II.  The proposed rule undermines young people's safety and well-being, fails to account for significant costs including those born by young people and the communities where they live, and lacks a reasoned justification given the significant impact on youth who may wait years for their asylum case to be heard.**

   *A.  The proposed rule will impact the safety and well-being of teenage asylum-seekers, including those served by the Young Center.*

Under the proposed rule, teenage (and adult) asylum-seekers will have no certainty regarding when they will receive permission to work. Work is a critical means of support for young people.[2] Work also fosters stability, which is important to young people's academic achievement and mental health.[3] In our experience, most teenaged asylum-seekers EAD applications are approved. In other words, these youth are eligible to work, and no one benefits from delayed adjudication of their work authorization. The sooner teenage asylum-seekers work, the more they are able to support themselves and contribute to their families while completing their education. This is particularly critical when young people face considerable delays in the adjudication of their claims for protection.

For the teenage asylum-seekers the Young Center serves, the ability to work during the asylum application process is central to their financial, physical, and emotional well-being. Their experiences exemplify how this rule could inject unnecessary instability into the lives of other young people who fled violence in their home countries, who are committed to their education, but who nevertheless depend on their ability to work in order to be safe.

---

[2] U.S. Department of Labor, Bureau of Labor Statistics, *College enrollment and work activity of high school and college graduates* (Apr. 25, 2019), https://www.bls.gov/news.release/pdf/hsgec.pdf.
[3] *See, e.g.,* Anna Sutherland, *How Instability Affects Kids*, Institute for Family Studies, (July 29, 2014), https://ifstudies.org/blog/how-instability-affects-kids.

AR005378



For example, the Young Center was appointed as independent Child Advocate for a teenage asylum-seeker from Central America who'd been abandoned by her family and who was brutally assaulted in her country. She fled to the United States seeking protection for herself and the baby she had as a result of the assault. Having an EAD while waiting for her asylum hearing allows her to take better care of herself and her child. She works at a store within her community and reports that she feels both empowered and proud to be able to care for herself and her baby, and to not have to rely constantly on others for help.

Another child survivor of sexual violence who came to the United States seeking protection as a teenager filed a *pro* se claim for asylum and was released from custody shortly before her 18th birthday. Her ability to work while her asylum application is pending will provide her with the most basic necessities and allow her to rely on her small community of friends and family for emotional rather than financial support.

These young people—who arrive as children and seek asylum based on past persecution or a well-founded fear of persecution they experienced as children—are often squarely in between childhood and adulthood. They are pursuing their education but live in communities where many families struggle to make ends meet. Lawful employment brings much needed stability and safety to a young person. Ending a policy of prompt EAD authorization is simply bad policy— for these young people, their families, and the community at large.

   B.  *The proposed regulation fails to account for critical costs—including the costs to young people and the organizations who serve them.*

Executive Orders 12866 ("Regulatory Planning and Review") and 13563 ("Improving Regulation and Regulatory Review") direct agencies to assess the costs and benefits of available alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 requires that, when engaging in rulemaking, each agency must make a "reasoned determination that [a regulation's] benefits justify its costs."[4] It also states that "each agency is directed to use the best available techniques to quantify anticipated present and future benefits and costs as accurately as possible."[5]

The proposed rule fails to conduct a sufficient and reasoned cost-benefit analysis. DHS states in the proposed rule that when examining the costs and benefits it measured the impacts of the rule against a baseline assumption "of what would occur if the proposed rule is adopted." [6] USCIS

---

[4] Exec. Order No. 13563, 76 FR 3821 at Sec. 1(b) (Jan. 18, 2011).
[5] *Id.* at Sec. 1(c).
[6] 84 Fed. Reg. 47,149 (Sept. 9, 2019).

AR005379



assumes that in the absence of a timeframe for adjudicating EAD applications, "adjudications will align with DHS processing times achieved in FY 2017 (before the *Rosario v. USCIS* court order)." [7] However, this assumption fails to account for "the historic asylum application backlog"[8] that has increased over the past five years, which according to DHS is one of the reasons cited for eliminating the 30-day deadline. Thus, DHS attempts to justify this rulemaking with a cost-benefit analysis that relies on a flawed assumption.

The cost-benefit analysis also omits entirely any mention of the significant costs the rule would impose on asylum-seekers' family members and their communities. Although the proposed rule discusses the lost compensation to asylum-seekers, it fails to include a discussion of additional costs the proposed rule would impose on them. Without a timeframe for adjudicating EAD applications and associated access to employment, asylum-seekers would experience difficulty obtaining drivers' licenses, banking services, health care, and legal counsel for their asylum applications. Additionally, lost wages to asylum-seekers would likely result in losses to small businesses in asylum-seekers' communities.

The proposed rule also fails to mention the costs that would be imposed on organizations that provide services to asylum-seekers as a result of the increase in time to adjudicate EAD applications. If asylum-seekers are unable to obtain an EAD in a timely fashion, they are forced to rely on other forms of support, including organizations that provide financial, housing, legal, or other forms of assistance, which would burden and stretch the limited capacity of charities and non-profit service providers. While the proposed rule states that "there may also be state and local income tax losses that would vary according to the jurisdiction," [9] it omits a discussion of the costs of the loss of income tax revenue to local, state, and federal governments.

    C.   *The rule lacks a reasoned justification for abandoning a standard that benefits asylum-seekers and the communities in which they live, and is inconsistent with USCIS's mission.*

There is simply no evidence that DHS needs be exempted from the regulatory provision requiring USCIS to grant or deny an initial EAD application within 30 days of when the asylum-seekers filed the application. DHS justifies the elimination by stating that the regulatory deadline does "not provide sufficient flexibility" [10] to the agency to address: (1) the "increased volume of affirmative asylum applications and accompanying Applications for Employment

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at 47,150.
[10] *Id.* at 47,155.

AR005380



Authorization;"[11] (2) "changes in intake and document production"[12] over the last two decades; and (3) "the need to appropriately vet applicants for fraud and national security concerns."[13]

However, the changes identified by DHS in intake and document production have existed for over a decade; the changes began in 1997 and were fully implemented by 2006. Additionally, the fraud and national security vetting discussed in the proposed rule has been implemented since September 11, 2001 and the Office of Fraud Detection and National Security was created in 2004.

USCIS is deciding over 99 percent of EAD applications within the 30-day processing timeline. Thus, DHS is able to address fraud and security vetting concerns within the current 30-day timeframe.[14] The proposed rule fails to provide a "reasoned explanation" for disregarding the fact that even with the decades old production and vetting changes, USCIS has complied for over a year with the July 2018 court order in *Rosario*, requiring the agency to process initial EAD applications in 30-days. Further, if USCIS requires additional documentation from an applicant, the agency could send a request for evidence and pause the 30-day timeframe until the requested additional documentation was received.

The proposed rule also includes no reasoned explanation justifying DHS' decision to propose no alternative timeframe for replacing the 30-day timeframe for adjudicating EADs. In the proposed rule, DHS states that the 90-day alternative "would not provide USCIS with the certainty and flexibility it needs to fulfill its core mission."[15] Yet, USCIS' mission is to "efficiently and fairly adjudicat[e] requests for immigration benefits."[16] Removing the timeframe for adjudicating EAD applications will only increase delays in adjudicating EAD applications.

---

[11] *Id.*

[12] *Id.* at 47,153.

[13] *Id.* at 47,155.

[14] U.S. Citizenship and Immigration Services, *Defendants' July 2019 Compliance Report* (Aug. 26, 2019), https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf.

[15] *Id.* at 47,167.

[16] U.S. Citizenship and Immigration Services, *About Us* (Mar. 6, 2018), https://www.uscis.gov/aboutus.

AR005381



### III. Conclusion

We urge DHS to withdraw the proposed rule in its entirety. As written, the proposed rule would undermine young people's safety and well-being. It also fails to account for significant costs including those born by young people and the communities where they live, and lacks a reasoned justification given the significant impact on youth who may wait years for their asylum case to be heard.

Respectfully submitted,

Jennifer Nagda
Policy Director

AR005382

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-gv4y
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2651
Comment Submitted by Caddie Nath-Folsom

## Submitter Information

**Name:** Caddie Nath-Folsom

## General Comment

I am against the proposed rule and I urge DHS not to adopt it. The waiting period for asylum seekers to obtain an EAD is already built into the law. Asylum seekers must wait six months after filing the I-589 before they can qualify for work authorization. This is not the case for other types of status-pending EADs (for example (c)(9)). Therefore, failing to timely process (c)(8) EADs for asylum seekers would be unjust and unfair. In addition, asylum seekers are often newer arrivals to the US who desperately need documentation and social security numbers so that they can begin to stabilize their lives in the United States, not only by finding work, but also by enrolling children in school, securing housing and obtaining bank accounts. Asylum seekers, who are likely to have suffered trauma and severe upheaval in their flight from persecuters in their home countries, particularly need that stability and therefore warrant speedy processing of their EAD applications.

AR005383

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7e-rnyb
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2652
Comment Submitted by Lauren Brockett

---

## Submitter Information

**Name:** Lauren Brockett
**Address:**
 775 Twin Oaks Dr. Apt 2
 Decatur,  GA,  30030
**Email:** laurenbrockettsphr@gmail.com
**Phone:** 7705987106
**Organization:** Friends of Refugees

---

## General Comment

My name is Lauren Brockett, SPHR. I attended Emory University, where I received my Bachelor of Arts in Int'l Economics and Sociology. I am seeking to become accredited by the DOJ Board of Immigrant Appeals as an immigration representative and am currently certified by the HR Certification Institute as a Senior Professional in HR Management (SPHR). Driven to alleviate global poverty through workforce development, I am currently the Director of Employment Services for Friends of Refugees through the Refugee Career Hub, anonprofitorganization providing wellbeing, educationandemployment to 6,000 refugee families per year. I have personally placed over 3,000 refugees in decent, living wage jobs around Atlanta, building partnerships with commercial warehousing facilities, major hotelsandother sectors. I am also one of the winners of the 2014 Entrepreneur Award through Emory Business Schools social enterprise training to offer cultural competency, diversity and inclusion training to immigrants and corporate groups seeking to expand globally.

Last year, my team and I placed 300 refugees and immigrants in jobs, generating more than $7.7 Million in new, annual wealth for the local Clarkston/Atlanta-based community.


I believe that delays in asylum seekers getting their work authorization (Employment Authorization Document or "EAD") approval can lead to:

Lost income to the asylum seeker and their family
Food insecurity

AR005384

Inability to secure a valid ID. A work permit and a social security number (SSN) are often necessary requirements to applications for a state ID.

Risk of homelessness/housing insecurity

Inability to access health insurance (most state ACA health exchanges require a SSN and work authorization materials to qualify)

Vulnerability to exploitation, trafficking, and underground economy risks

Lack of access to community service agencies, shelters, and social service programs (many of whom require some form of valid ID, proof of residency, or proof of income)

Loss of ability to support themselves and their families

Feelings of fear, desperation, and overall mental health concerns

Sample Arguments


Harm Caused to Asylum Seekers. Asylum seekers would lose wages and benefits as a result of delayed entry into the U.S. labor force, straining their ability to support themselves and their families. USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year. The loss of income to asylum-seekers will cause an outsized amount of harm to this already-vulnerable community. A lack of income means not being able to afford food, housing, medical treatment, health insurance, or legal representation. Furthermore, individuals will be unable to secure a valid ID (needed for many social services) and be increasingly vulnerable to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increases the risk that people coming to the United States will become a public charge.

Lost Tax Revenue for the Government. USCIS admits that all levels of government will lose tax revenue as a result of the proposed rule change. USCIS projects a loss of $39.15 million to $118.54 million per year because delayed work authorization will prevent asylum seekers and their employers from contributing to Medicare and social security.

Increased Delay Contrary to National Security Interests. In the notice, USCIS makes frequent reference to a rise in national security threats as a reason to spend more time and resources on each decision. However, USCIS has reported that it has been able to decide over 99% of EADs within the 30-day timeframe for over the past year. Therefore, USCIS has proven its ability to adequately vet the amount of requests in a timely fashion. Moreover, its argument regarding increased threats serves only to prompt the need for a speedier process to properly protect national security, rather than its request to delay the process further. This need for a speedier process is further compounded by the fact that the EAD applicants are asylum-seekers already residing in the United States. If vetting must be done to prevent security risks, then having unvetted people in the U.S. subjected to a potentially indefinite review period seems contrary to the departments stated interests.

AR005385

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-bj4p
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2653
Comment Submitted by Linda Stowell

---

## Submitter Information

**Name:** Linda Stowell

---

## General Comment

Please make immigration laws reasonable so we are kept safe. Time is needed for that to happen.

AR005386

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-p1ap
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2654
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

Asylum seekers do not come here for handouts. They come to provide a safe life for themselves and their
families. Being able to work and provide for one's family is central to this safety. Currently in my community,
asylum seeking mothers are literally prostituting themselves to so-called landlords in order to pay rent for
themselves and their children. Fortunately at this point, I would say this is probably only occurring with less than
20 percent of asylum seeking mothers that I am aware of in the community work I do. Why would we ever create
a hardship that would cause more families to need to make this traumatic choice? Why would we ever force
people to survive in our communities without any means by which to feed themselves and pay for a home?

AR005387

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-ques
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2655
Comment Submitted by Emily Reber

---

## Submitter Information

**Name:** Emily Reber
**Address:**
   98122
**Email:** emilyreber@gmail.com
**Fax:** 2068588098

---

## General Comment

Creating longer processing times for asylum seekers will not keep people from trying to file for asylum nor do delays make the system any more efficient. It will only create a larger burden on the system as it creates backlogs and make it more likely that the applicant will need public assistance.

Asylum applicants already wait at least 150 days to become eligible for the benefit, which is about the amount of time that it would take to process the I765 if they could apply concurrently with the asylum application. Additionally, people need to support themselves and their families. People suffer while waiting for their EADs and additional wait times of several months unnecessarily puts peole at further risk of homelessness, etc. Potentially, they also unnecessarily are at risk of being a higher burden on health and welfare systems.

The US is at near full employment and there are labor shortages for many jobs that only asylum and other immigrants will do. This policy will also cause harm to the economies that rely on this labor.

This policy is counter productive and should not be implemented.

AR005388

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-btkp
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2656
Comment Submitted by Sue Hecht

---

## Submitter Information

**Name:** Sue Hecht
**Address:**
    POB 584
    Marina,  CA,  93933
**Email:** newswriter@yahoo.com
**Phone:** 702-225-8206

---

## General Comment

Stop discriminating against asylum seekers, innocent folks who are coming here due to VIOLENCE and criminals attacking them and their families. people come here for SAFETY for themselves and their families. They deserve to be here. IT IS LEGAL AND CONSTITUTIONAL. STOP THE HATRED AND RACISM. Thank you. 3rd generation American, me. WE ARE ALL IMMIGRANTS.

AR005389

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2656.html[9/15/2020 4:15:23 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-if7s
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2657
Comment Submitted by Anonymous

## Submitter Information

**Name:** Anonymous Anonymous

## General Comment

As a nation of immigrants, its hypocritical to not treat asylum seekers with compassion. We must do the right thing and follow the existing law.. The xenophobic policies of this administration are not serving us well. The 30-day rule should not be removed. Our diversity makes us stronger.

AR005390

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-cekz
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2658
Comment Submitted by Anonymous Deich

---

## Submitter Information

**Name:** Anonymous DEICH

---

## General Comment

I oppose this rule change. Asylum seekers should have access to employment. This rule penalizes asylum seekers, contrary to our nation's moral history. Do not penalize legitimate refugees from access to our great nation built on the backs of immigrants.

AR005391

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-ca8u
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2659
Comment Submitted by Paul Schaafsma

## Submitter Information

**Name:** Paul Schaafsma

## General Comment

The United States of America has been condemned around the world for its treatment of refugees under this President. It is outrageous to add to what are already a long list of grave crimes against humanity being carried out by this administration by eliminating the requirement that Employment Authorization Applications be processed within 30 days.

Most of the comments in favor of this move were made by people who thought the rule in question required deciding whether to grant asylum in 30 days. IT HAS NOTHING TO DO WITH ASYLUM REQUESTS. This rule is about authorizing employment. I think most of the commenters would say if refugees are in this country they would like them to support themselves. That will be impossible if processing of this form ceases to occur in a timely fashion, the only possible result of this rule change.

Crimes this administration has committed in the name of discouraging refugees from Central America include:

1) Tearing children as young as 4 months from the arms of their parents. 2) Caging children and ignoring the cries of infants, forcing other children to try to comfort them 3) Crowding refugees into for profit detention centers at 9 times the maximum capacity of the buildings, denying them soap, showers, room on the floor to sleep and medical care, even when refugees are known to have HIV or cancer, then charging by the head at rates so high it would be cheaper to house refugees in Trump Hotel suites

These policies don't serve the purpose former Chief of Staff John Kelly invoked to justify them. Kelly said in internal communications that have since been reported in the media that family separation and other abuses of refugees were necessary because they were fleeing for their lives and to deter them policies would have to create a trauma great enough to override their survival impulse and stop them from coming here. Well, all that happened is that refugees came in GREATER numbers. All we are achieving is the coarsening of Republican voters who tune out reports of these crimes because they don't want to believe their President is responsible for pointless atrocities.

AR005392

Delaying applications for authorization to seek employment will only rob refugees of a legal way to support themselves. The comments in favor of this change simply do not comprehend that.

AR005393

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-m6p7
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2660
Comment Submitted by Nancy Sulfridge

---

## Submitter Information

**Name:** Nancy Sulfridge
**Address:**
   1408 Adams Drive
   Fort Washington,  20744
**Email:** nesulfridge@gmail.com
**Phone:** 3012046146

---

## General Comment

The Proposed Rule: Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765
Employment Authorization Applications will be detrimental to asylum seekers, the communities in which they
reside, and the United States. It should not be approved.

Catholic social teaching holds that work is an essential element of human life, in fact, a defining element. Pope
John Paul wrote "From the beginning therefore he (man) is called to work. Work is one of the characteristics that
distinguish man from the rest of creatures, whose activity for sustaining their lives cannot be called work. Only
man is capable of work, and only man works, at the same time by work occupying his existence on earth. Thus
work bears a particular mark of man and of humanity, the mark of a person operating within a community of
persons. And this mark decides its interior characteristics; in a sense it constitutes its very nature." (Laborem
Exercens) To deny people the right to work is to deny them a significant part of their humanity, and that is a
great injustice.

In addition to denying asylum seekers the dignity of working to support themselves and their families, this rule
would make them dependent on others for support while waiting for their cases to be decided, and this will put a
great strain on community organizations that endeavor to provide for the needs of immigrants, whose resources
are already stretched to the limit.

Finally, delaying or denying asylum seekers the opportunity to work while awaiting decision of their case will
cost the United States a significant amount of tax revenue. USCIS estimates that lost revenue could range from
$39.15 million to $118.54 million per year in payments not made to Medicare and social security.

AR005394

As a teacher of adult education classes in Maryland for over 20 years, I have come to know many immigrants in all stages of the naturalization process. In my experience, they have all been eager to contribute to society, to work hard to support themselves and their families, and even to become taxpayers in the United States. It harms us all when their contributions of work are not welcomed.

AR005395

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-ffpt
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2661
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I strongly OPPOSE this proposal. By completely eliminating the existing 30-day deadline for processing work authorizations so asylum seekers can support themselves and in some case, their families, you're depriving them of the basic necessities of LIFE. That's immoral in and of itself ... but what's more it makes no sense on so many other levels.

USCIS itself confesses that our government will lose tax dollars as a result of this proposed rule change ... to the tune of a projected $39 - $118 million per year because delaying work authorization will make it impossible for asylum seekers & their employers from contributing to Medicare & Social Security.

It doesn't make sense either morally or economically!

Leave the existing 30-day deadline in place, and what's more, USCIS should OBIDE by the existing rules, even if it requires hiring more people.

OPPOSE OPPOSE - these are people risking everything to escape dire conditions - the proposal makes me nauseous.

AR005396

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-vg2k
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2662
Comment Submitted by James Low

---

## Submitter Information

**Name:** James Low

---

## General Comment

Be supportive of President Trump's immigration reforms. Thirty days isn't sufficient for the massive number of immigrants from multiple countries.Some cultures fail to integrate into U.S.

AR005397

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-b31b
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2663
Comment Submitted by Melissa Crow, Southern Poverty Law Center

---

## Submitter Information

**Name:** Melissa Crow
**Address:**
  Southern Poverty Law Center
  1101 17th Street, NW, Suite 705
  Washington,  DC,  20036
**Email:** melissa.crow@splcenter.org
**Phone:** 202-355-4471
**Fax:** 404-221-5857

---

## General Comment

Attached please find comments from the Southern Poverty Law Center (SPLC) in response to the Department of Homeland Securitys Notice of Proposed Rulemaking, Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications. We strongly oppose elimination of the 30-day deadline for adjudicating applications for employment authorization documents (EADs) submitted by asylum seekers. For the reasons discussed in the attached document, we request that the Proposed Rule be withdrawn because it limits asylum seekers ability to support themselves and their families; abandons the agencys prior position without reasonable explanation; deters asylum seekers from seeking protection in the United States; and is unnecessary to achieve USCISs stated goals.

---

## Attachments

SPLC Comment on Removal of 30-Day Processing Deadline for Asylum EADs.FIN

AR005398



Fighting Hate
Teaching Tolerance
Seeking Justice

Southern Poverty Law Center
PO Box 1287
Decatur, GA 30031-1287
404.521.6700
www.splcenter.org

November 8, 2019

Via Federal e-Rulemaking Portal

Ms. Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue, NW
Mailstop #2140
Washington, DC 20529-2140

> Re:  DHS Docket No. USCIS-2018-0001, RIN 1615-AC19, Notice of Proposed
> Rulemaking: Removal of 30-Day Processing Provision for Asylum Applicant-
> Related Form I-765 Employment Authorization Applications

Dear Ms. Deshommes:

I am writing on behalf of the Southern Poverty Law Center (SPLC) in response to the
Department of Homeland Security's Notice of Proposed Rulemaking, "Removal of 30-Day
Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization
Applications." We strongly oppose elimination of the 30-day deadline for adjudicating
applications for employment authorization documents (EADs) submitted by asylum seekers.

Founded in 1971, the SPLC is a civil rights organization dedicated to litigation and
advocacy that makes equal justice and equal opportunity a reality for all. SPLC's Immigrant
Justice Project represents low-income immigrants in employment and civil rights cases
across the Southeast and on issues of national importance. To achieve its mission, SPLC
operates a number of programs, including the Southeast Immigrant Freedom Initiative (SIFI),
which provides pro bono direct legal representation for noncitizens, including asylum
seekers, in five immigration detention centers in George and Louisiana. SIFI represents
clients in removal proceedings and custody proceedings before the Executive Office of
Immigration Review and the Board of Immigration Appeals, as well as in parole requests
before Immigration and Customs Enforcement. When our asylum-seeking clients are
released, obtaining employment authorization is of paramount concern.

We request that the Proposed Rule be withdrawn because it limits asylum seekers'
ability to support themselves and their families; abandons the agency's prior position without
reasonable explanation; deters asylum seekers from seeking protection in the United States;
and is unnecessary to achieve USCIS's stated goals.

AR005399

1.     **The Proposed Rule Would Harm Asylum Seekers By Limiting Their Ability to Support Themselves and Their Families.**

Eliminating the 30-day processing deadline for EAD applications would severely jeopardize asylum seekers' ability to support themselves and their families. Under existing regulations, asylum-seeking individuals must already wait 150 days after filing their asylum applications before they may apply for work authorization. 8 C.F.R. § 208.7(a). The proposed rule would likely delay the adjudication of their EAD applications for more than 30 days.[1] This delay would unnecessarily postpone asylum seekers' entry into the U.S. labor force and result in the loss of desperately needed wages and benefits.[2]

This loss of income to asylum-seekers would cause disproportionate harm to this already-vulnerable community, who would be unable to afford food, housing, medical treatment, health insurance, or legal representation. Affected individuals would also be unable to secure valid identification (needed for many social services) and become increasingly vulnerable to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increases the risk that people coming to the United States would become a public charge.

2.     **The Proposed Rule Would Be an Arbitrary and Capricious Exercise of Authority**

If adopted, the Proposed Rule would be an arbitrary and capricious exercise of authority by the Department of Homeland Security. Such an action would violate the Administrative Procedure Act, which requires the government to provide a well-reasoned, evidence-based justification for proposed rulemaking, including rescission of a prior regulation.[3] When an agency's "prior policy has engendered serious reliance interests . . . [i]t would be arbitrary or capricious to ignore such matters."[4] In such cases, "a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy."[5]

---

[1] In 2017, USCIS took over 121 days – in addition to the 150-day waiting period – to adjudicate 10,103 applications. *See Gonzalez Rosario v. USCIS*, 365 F.Supp.3d 1156, 1162 (W.D. Wash. 2018) (citing SAR at 90).

[2] USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year.

[3] "[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). *See also Dept. of Commerce v. New York*, 139 S.Ct. 2551, 2567 (2019): "The Administrative Procedure Act embodies a 'basic presumption of judicial review,'" *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967), and instructs reviewing courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U. S. C. § 706(2)(A).

[4] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009).

[5] *Id.* at 516.

2

AR005400

The Proposed Rule provides no such reasoned explanation. In justifying the Proposed Rule, the government claims that its purpose is "to ensure USCIS has sufficient time to receive, screen, and process applications" and to "reduce opportunities for fraud and protect the security-related processes undertaken for each EAD application." Neither of these justifications provides a reasoned explanation for ignoring the concerns about the pressing need for work authorization that underlie the existing regulation.

The 1997 regulations properly adopted a 30-day processing deadline—providing adequate time for USCIS to review and process applications, while ensuring that asylees were not forced to wait longer than necessary to receive work-authorization. One of the "chief purposes" for adopting the 30-day processing deadline was "to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible," 62 Fed. Reg. at 10,318 (1997). Indeed, the government consciously set a 30-day deadline due to concern over the length of the 150-day waiting period. 50 Fed. Reg. at 14,780. While hoping that most applicants would have their applications adjudicated before that time, the government set the 150-day limit because it was a period "beyond which it would not be appropriate to deny work authorization to a person whose claim has not been adjudicated." *Id.* Thus, as explained by the judge in *Rosario*, "the purpose of promulgating the 30-day deadline on top of that 150-day waiting period was to cabin what was already—in the agency's view—an extraordinary amount of time to wait for work authorization." *See Gonzalez Rosario v. United States Citizenship & Immigration Servs.*, 365 F. Supp. 3d 1156, 1160–61 (W.D. Wash. 2018).

The government's prior concerns about expeditious work authorization are only heightened in the current context of significant backlogs in the adjudication of asylum applications. For individuals in removal proceedings, there is a current backlog of over one million active cases.[6] This backlog results in significant delays. Over 650,000 individuals in immigration proceedings are in courts where the average wait time for an individual's next hearing is three or four years.[7] And for many of these individuals, their next hearing is merely a scheduling ("master calendar") hearing, leading to even more waiting before their asylum case is finally adjudicated on its merits.[8]

The government's stated justifications that the 30-day deadline does not provide sufficient processing time or allow for security-related processes are not supported by the evidence. There is no reason why expanding processing time must conflict with expedient adjudication of asylum seekers' applications for work authorization. Indeed, USCIS has been able to decide 99% of EADs within the 30-day timeframe for over the past year.[9] There is no better proof of the agency's capacity to appropriately review and adjudicate applications in a reasonable timeframe.

---

[6] *See* TRAC Immigration, *Crushing Immigration Judge Caseloads and Lengthening Hearing Wait Times* (Oct. 25, 2019), https://trac.syr.edu/immigration/reports/579/.
[7] *Id.*
[8] *Id.*
[9] https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf.

AR005401

Nor does the government's purported concern about "fraud" justify the rescission of the previous regulation. In passing the original regulation, the government explicitly determined that it would "adjudicate [asylum seekers'] applications for work authorization within 30 days of receipt, regardless of the merits of the underlying asylum claim." 50 Fed. Reg. at 14,780 (1994). As the court in *Rosario* explained, the government thus considered the possibility of unsuccessful asylum applications and nevertheless chose the "elevation of the 30-day deadline above the merits of the underlying asylum claim." *Gonzalez Rosario v. United States Citizenship & Immigration Servs.*, 365 F. Supp. 3d at 1160–61.

3. **The Proposed Rule Is Part of the Trump Administration's Systematic Effort to Deter Asylum Seekers.**

The Trump administration has enacted policy after policy aimed at eviscerating the legal rights of people seeking asylum and creating the harshest conditions possible for them, with the stated goal of deterring others through the suffering of migrants who have already made the journey. This proposed rule change is part and parcel of the administration's efforts to make the United States a hostile destination for individuals fleeing persecution in their countries of origin. These efforts include the administration's metering policy, which dramatically reduces the number of asylum seekers who are inspected and processed at ports of entry along the U.S.-Mexico border, as well as the "Remain in Mexico" policy and the third-country transit rule.

In addition to preventing asylum seekers from obtaining meaningful employment within a short and predictable timeframe, the proposed rule would remove the ability to hold USCIS accountable to any deadline for adjudicating asylum seekers' EAD applications. This lack of accountability could be especially devastating in the current context of asylum adjudication, in which asylum seekers in removal proceedings may wait over four years for their cases to be heard in immigration court.[10]

The government must take care that it implements its regulations in a manner that does not violate the United States' commitment to facilitate the protection of asylum seekers.[11] By sabotaging the asylum system, the Trump administration has made a mockery of the United States' international reputation as a country that respects human rights and the rule of law.

4. **USCIS Can Achieve Its Goals Without Eliminating the 30-Day Deadline.**

Under existing law, asylum seekers must wait 180 days before they may be granted work authorization. They are permitted to submit their applications after 150 days, giving USCIS the 30-day timeframe in question to process the requests. If USCIS's goal is to have more time to process each request in order to increase flexibility and free up resources to work on other applications, then it could shorten the 150-day waiting period before asylum-

---

[10] *See* TRAC Immigration, *Crushing Immigration Judge Caseloads and Lengthening Hearing Wait Times* (Oct. 25, 2019), https://trac.syr.edu/immigration/reports/579/.

[11] *See* United Nations High Commission for Refugees, 1951 Convention Relating to the Status of Refugees, 30–31, available at http://www.unhcr.org/en-us/3b66c2aa10.

AR005402

seekers can submit their application. For example, if USCIS feels that a 60-day timeframe for EAD adjudication would be preferable, then it could allow applications to be submitted after 120 days, rather than 150. Allowing asylum-seekers to submit their EAD applications earlier would give USCIS up to 180 days to process and properly vet each individual while reducing the risk of harm to asylum seekers and their families.

* * * * *

For the foregoing reasons, USCIS should reject the proposed rule and retain the 30-day deadline for adjudication of asylum-related EAD applications. Please do not hesitate to contact me at melissa.crow@splcenter.org if you have questions regarding SPLC's comments.  Thank you for your consideration.

Respectfully submitted,

Melissa Crow
Senior Supervising Attorney

AR005403

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-5pbu
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2664
Comment Submitted by Leslie Warren

---

## Submitter Information

**Name:** Leslie Warren

---

## General Comment

This proposed regulation change removing the 30-day requirement would 1. put asylum seekers unable to support themselves, risking that they will become public charges; 2. result in loss of tax revenue; and 3. result in having unvetted people in the country for an indefinite review period. What's the matter with allowing these folks to get work while they wait? At least they can be contributing to our economy. I therefore oppose removing this processing provision for asylum seeking applicants.

AR005404

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2664.html[9/15/2020 4:15:24 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-9y9p
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2665
Comment Submitted by Anonymous Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

It's pretty obvious that this is part of a systematic effort to deter asylum seekers, but guess what, it doesn't work. When people are facing death, starvation, or torture in their home country, they're going to risk everything to save themselves and their families.

I strongly OPPOSE this proposal to eliminate the existing 30-day deadline for processing work authorization applications because - it won't work as a deterrent, it's immoral, it delays their contribution to Medicare & Social security (costing our govt. millions in lost revenue), AND it effectively turns asylum seekers into the very public charges that they're seeking to exclude.

This proposal is wrong on every single level, the least of which is that it treats humans like animals.

AR005405

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-n1v5
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2666
Comment Submitted by Raj Balasubramanian

---

## Submitter Information

**Name:** Raj Balasubramanian

---

## General Comment

Stop punishing lawful asylum seekers.

Don't make it harder for them to work and get aid.

End detentions for non-felons. Stop separating families.

Kick the ICE staff out of their buildings and put them to work as border guards.

If ICE and CBP did their job, nobody would be crossing the border without papers.

AR005406

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2666.html[9/15/2020 4:15:24 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-te1y
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2667
Comment Submitted by Elizabeth Skokan

---

## Submitter Information

**Name:** Elizabeth Skokan

---

## General Comment

Immigration is at the core of this country. This is just another blatant attempt against humanity and the right of others to seek for the betterment of their lives. Asylum is a human right!

AR005407

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-thb9
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2668
Comment Submitted by Anwen Hughes, Human Rights First

---

## Submitter Information

**Name:** Anonymous Anonymous
**Submitter's Representative:** Anwen Hughes
**Organization:** Human Rights First

---

## General Comment

Please find attached Human Rights First's comments on this proposed rule.

---

## Attachments

Human Rights First Comments on EAD Processing Rule

AR005408



November 8, 2019

*Submitted via* www.regulations.gov

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy,
US. Citizenship and Immigration Services,
Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529

RE:   **DHS Docket No. USCIS-2018-0001, RIN 1615-AC19**
      **Comment in Response to Proposed Rulemaking:**
      **Removal of 30-Day Processing Provision for Asylum Seekers' Initial**
      **Employment Authorization Document Applications**

Dear Ms. Deshommes:

Human Rights First submits these comments in response to the Department of Homeland Security's Notice of Proposed Rulemaking published in the Federal Register on September 9, 2019, by which DHS proposes to do away with the regulatory mandate that initial applications for employment authorization by asylum applicants be adjudicated within 30 days of filing.

Human Rights First strongly opposes this proposal. Eliminating any time limit on the processing of first-time work authorization for asylum seekers who are already required to wait 150 days or more to become eligible to apply for such authorization would impose multiple serious forms of harm on an already vulnerable population. The Notice of Proposed Rulemaking does not reflect any consideration of the human toll of this proposal, which would represent a significant departure from longstanding policy and practice. As a partial justification for the agency's unwillingness to process employment authorization documents for these asylum seekers according to *any* set timeframe, the Notice of Proposed Rulemaking invokes national security and fraud concerns that are divorced from the employment authorization application process applicable to asylum seekers specifically. If U.S. Citizenship and Immigration Services ("USCIS") genuinely needs more time to process these work permit applications, it has an obvious alternative solution which the Notice of Proposed Rulemaking, again, fails even to consider: allow asylum applicants to file their applications for employment authorization together with their applications for asylum, and adjudicate the application for employment authorization on the 180th day thereafter, in accordance with federal law.

AR005409

**Human Rights First and its Interest in this Issue**

For over 40 years, Human Rights First has worked to ensure protection of the rights of refugees, including the right to seek and enjoy asylum. Human Rights First grounds its work on refugee protection in the international standards of the 1951 Convention relating to the Status of Refugees and its 1967 Protocol and other international human rights instruments, and we advocate adherence to these standards in U.S. law and policy. Human Rights First operates one of the largest and most successful *pro bono* asylum representation programs in the country. With the assistance of volunteer attorneys, we provide legal representation, without charge, to hundreds of refugees each year. This extensive experience dealing directly with refugees seeking protection in the United States is the foundation for our advocacy work and informs the comments that follow.

**The Proposed Regulation Would Impose Serious Material and Psychological Harm on an Already Vulnerable Population**

Since 1995, applicants for asylum in the United States have been unable to apply for employment authorization unless their applications for asylum have been pending for 150 days. 59 Fed. Reg. 62284, 62290 (Dec. 5, 1994) (codified as amended at 8 C.F.R. § 208.7). Since 1997, this waiting period has been statutory. Current section 208(d)(2) of the Immigration and Nationality Act provides that an asylum seeker may not be issued employment authorization prior to 180 days after the date of filing of the application for asylum. This 180-day period includes the 150-day waiting period of the pre-existing regulation, plus the 30-day processing deadline that 1994 regulation also imposed.

That initial period—from the time of arrival in the United States until a person is granted employment authorization—is the most vulnerable phase in the experience of an asylum seeker in the United States. During this period, the United States government provides asylum seekers neither with financial support or housing, nor with the right to support themselves through employment. As a result, asylum seekers during this period are forced to turn to friends, relatives, or even chance acquaintances for support. As the months wear on, even those lucky enough to have local support networks begin to exhaust those sources of support. One Human Rights First client, an older man and a survivor of torture with no family in the United States, spent the first several months of our representation sleeping under the kitchen table of a member of his community who took pity on his plight. But as the asylum process dragged on, he found himself unable to impose further, and for much of the remainder of that process he was spending his nights on the public transit system. Once he finally obtained work authorization, he found employment, and was able to house himself in more dignified conditions. He was subsequently granted asylum, but that early experience took a lasting toll on him.

Other asylum seekers, unable to house themselves because they are not allowed to work and have no income and resources, find themselves forced into living situations that are



AR005410

actively abusive. Another Human Rights First client, a survivor of rape in her home country who was suffering from the continuing medical consequences of that trauma, had to beg for hospitality in the United States from people she did not know, ending up in a household where she was again sexually assaulted. She was granted asylum shortly after applying, and became work-authorized at that point, enabling her to extricate herself from this nightmarish living situation and attain self-sufficiency.

These difficulties are particularly acute for asylum seekers who are able to flee to the United States with their families: it is one thing to ask for hospitality from a friend for oneself, and quite another to ask for housing, for months on end, for a family of four with no income. Human Rights First has represented many parents, all desperate to be working, who due to the legal delays obtaining work authorization were forced into homeless shelters with their children.

For those who are forced to work without employment authorization during the long current waiting period, some end up working in unsafe and exploitative conditions from which they feel little protection due to their lack of legal status. Human Rights First has found clients who were being paid far less than the minimum wage, or in some cases not paid at all, by employers who were well aware that these employees lacked work authorization, and who exploited that fact. When these same asylum seekers are already highly traumatized by their experiences of persecution in their home countries, this kind of exploitation becomes all the easier to effect and harder to remedy. Many asylum seekers are also deeply uncomfortable with the notion of working without authorization, because they do not want to be breaking the law, but find that the asylum system and their need for physical survival leave them little choice.

Moreover, the practical difficulties associated with the lack of a work permit go far beyond an inability legally to work. For non-citizens who are not permanent residents of the United States, an employment authorization document is critical not just as a work permit but as form of legally valid identification, necessary for everything from domestic travel (including to attend immigration court hearings), to obtaining a driver's license in most states, to getting married, to accessing many government facilities. In addition, for non-citizens in this situation, an employment authorization document is a prerequisite to being issued a social security number, which is a critical facilitator of essential services even for children and the elderly who are not seeking to join the labor force. Asylum seekers while they lack employment authorization, ineligible for public health coverage in most states, are also unable to purchase health insurance under the Affordable Care Act. They also face difficulties opening bank accounts and find it impossible to enter into a lease for rented housing in many markets even when they can afford it.

The existing delays in access to employment authorization also affect asylum seekers' ability to secure legal representation to assist them in applying for asylum. This creates a vicious circle: refugees needing help in properly filing an application for asylum are delayed in doing so by lack of resources, which in turn delays their ultimate access to the



AR005411

work permit that would put them in a better position to afford legal representation. As an organization dedicated to providing free legal services to refugees unable to afford competent counsel, Human Rights First deals with clients who typically arrived in the United States with very little or have nearly exhausted what they brought with them, but the broader reality is that few refugees are independently wealthy and that even those who can scrounge the fees for a private lawyer can often only do so by a narrow margin. Extending the period of ineligibility for employment would only exacerbate this problem, with particularly severe effects on asylum seekers who find themselves in parts of the country where free or reduced-cost legal services providers are few and far between.

Beyond all these practical and legal obstacles, the inability to work legally also takes a psychological toll on asylum seekers. Those who are here with their spouses and/or children suffer severely at their inability to support them and create for them some semblance of normalcy in the first year or so of their experience as refugees. This affects both those who in their home countries were doing very well economically and providing their families with a comfortable existence, and those who in their countries of origin lived much more modest lives but derived a sense of purpose and dignity from succeeding in providing for their children's needs. Those asylum seekers who were forced to leave their families behind also suffer from their sense of powerlessness and depression when they find themselves unable to meet the needs of their loved ones, particularly when they are already suffering emotionally from their separation. Human Rights First has seen clients panicked at their inability to send money to close relatives suffering a medical emergency, to pay school fees in order to avoid having their own exile derail their children's education, or simply to provide regular support for the daily needs of family members from whom they are now separated for an indefinite period.

In addition, working—even in a job that is below an asylum-seeker's ultimate qualifications—helps the asylum seeker feel that his or her life is moving forward; that he or she is now a real person, with identification, a place in this new society, and an ability to engage in routine transactions. It can be a helpful distraction from a sense of exile and loss, and an encouragement to future planning. And in fact, Human Rights First regularly sees asylum applicants, even those still waiting for their asylum claims to be approved, moving actively up the economic scale from the point when they obtain employment authorization.[1]

---

[1] In this connection, we would note that DHS's estimates of the loss in asylum applicants' earnings—basically the only loss to asylum applicants from this regulation on which this Notice of Proposed Rulemaking spends any time—are premised on the assumption that asylum seekers' wage growth remains flat. Our experience is the opposite: our clients' earnings rarely remain unchanged over time, and their movement is typically upward. Even during the period when their asylum claims are pending, most asylum seekers become oriented to the U.S. job market, acquire English skills, and in some cases convert the educational or professional credentials they have, or acquire new ones, or new vocational skills. All this tends to set the stage for upward economic movement. In other words, DHS's calculations of lost wages for asylum seekers may be significantly underestimated, and so too the estimates of lost tax revenue that derive from them.



It is troubling that the Notice of Proposed Rulemaking, in assessing the likely impact of its proposal on a population whose vulnerabilities the United States has bound itself by treaty to respect, gives no attention the human toll of this proposal on those it would most immediately affect.

**The Security and Vetting Concerns Invoked in the Notice of Proposed Rulemaking Are Out of Sync With Current Realities**

The Department of Homeland Security asserts that it "has been unable to meet the 30-day processing timeframe in certain cases due to changes to the agency's vetting procedures and increased background checks, which resulted from the Government's response to the September 11, 2001 terror attacks." Human Rights First is reassured by its own awareness that the Government in fact responded rather promptly to the September 11, 2001 terror attacks, and that the various security improvements discussed in this portion of the Notice of Proposed Rulemaking were implemented some 15 years ago, as the Notice indeed acknowledges. For all that time, these security and vetting procedures have been coexisting with the 30-day processing timeline for initial employment authorization documents for asylum seekers. Yes, U.S. Citizenship & Immigration Services has since 9/11 "implemented changes in the collection of biographic and biometrics information" for benefits including the employment authorization document. But in the case of employment authorization that is based on a pending application for asylum, that biometric and biographic data collection is already done in connection with the application for asylum. Applicants for asylum, when they file an initial application for employment authorization, have by definition already undergone a biometrics appointment in connection with their application for asylum—months earlier, in most cases—and do not need to undergo further biometrics appointments in connection with their application for a work permit. Security and background checks based on that biometric and biographic data go through speedily in the overwhelming majority of cases, so that this issue can hardly justify moving from a 30-day processing window to an entirely limitless wait for all asylum applicants.

**To the Extent USCIS Actually Needs More Time to Process Initial Applications for Employment Authorization for Asylum Seekers, Another Less Harmful Solution is Available**

The Notice of Proposed Rulemaking indicates that DHS considered moving from a 30-day processing time window to a 90-day one, but rejected this in favor of eliminating any time limit on processing of work permits, on the grounds that imposing any regulatory limit would "unnecessarily constrict adjudication workflows." The Notice of Proposed Rulemaking posits a state of radical uncertainty about work and life generally ("USCIS . . . has no way of predicting what national security and fraud concerns might be or what procedures would be necessary in the future"), and offers this as a reason to refuse to commit to any deadlines at all.



If USCIS feels constrained by the 30-day processing deadline for asylum seekers who have already suffered through a 150-day waiting period, an alternative solution, rather than either extending or eliminating the processing time allowed for applications for employment authorization filed after the 150-day waiting period, would be simply to allow asylum seekers to file for employment authorization at the same time they file for asylum. The asylum seekers would complete a biometrics appointment applicable to both applications—as they do now—and their asylum applications would proceed down the path to adjudication. Their applications for employment authorization could also be processed during those 150 days, and be required to be adjudicated on the 180th day after filing, as the Immigration and Nationality Act requires.[2] This would allow USCIS a leisurely period to process the applications for employment authorization, without imposing additional hardships on asylum seekers. This change would also reduce costs to legal services providers and asylum seekers, by allowing both the I-589 Application for Asylum and Withholding of Removal and the I-765 Application for Employment Authorization to be finalized in a single appointment.

**Conclusion**

For the reasons described here, Human Rights First would urge DHS to withdraw the portion of this proposed regulation that would eliminate the 30-day time limit on processing of first-time employment authorization documents for asylum applicants. Human Rights First has no quarrel with the proposal to eliminate the regulatory requirement that renewal applications for employment authorization be filed 90 days prior to the expiration of the existing document, as the concern underlying that requirement is better addressed by the automatic 180-day extension of the validity of a work permit upon filing of the renewal application. With respect to this second aspect of the Notice of Proposed Rulemaking, however, Human Rights First would recommend that DHS adopt a regulatory timeframe (of less than 180 days) for adjudicating renewals, to reduce the number of instances where asylum seekers who file timely applications for renewal nonetheless face interruptions in their ability to work or access valid identification due to processing delays stretching beyond the 180-day extension.

We appreciate your consideration of these comments.

Sincerely,

Anwen Hughes
Deputy Legal Director

---

[2] If adopted, this alternative should apply to applications for asylum filed on or after the date of implementation of the new regulation.



# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-mzih
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2669
Comment Submitted by Hank Fung

---

## Submitter Information

**Name:** Hank Fung

---

## General Comment

The 30 day rule is an important backstop to prevent asylum seekers from staying in limbo while USCIS slow walks the necessary background checks. If DHS needs additional time, it should identify the amount of time and ask for that rather than asking for an infinite amount of time. This violates due process.

Note that the individuals are already physically in the United States. As the law is currently written, asylum seekers must wait 180 days before they may be granted authorization to work. They are allowed to submit their application after 150 days, giving USCIS the 30-day timeframe in question to process the requests. If USCISs goal is to have more time to process each request in order to increase flexibility and free up resources to work on other applications, then it could easily shorten the waiting time before asylum-seekers are allowed to submit their application. If USCIS feels that a 60-day timeframe would be more beneficial, then it may allow applications to be submitted after 120 days, rather than 150. Also, in the 180 days, the asylum seeker is usually tracked and does not "disappear" in the system as it is not in their interests to do so. There could be more vetting occurring in the 180 day period, rather than have asylum seekers relying from friends, family, and charity for months or possibly years at a time.

Thank you for your consideration.

AR005415

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7f-r3ay
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2670
Comment Submitted by Joby Thoyalil, Maine Equal Justice

## Submitter Information

**Name:** Anonymous Anonymous
**Submitter's Representative:** Joby Thoyalil
**Organization:** Maine Equal Justice

## General Comment

Please find attached comments from Maine Equal Justice on Docket ID: USCIS-2018-0001.

## Attachments

Maine Equal Justice Comments on Docket ID USCIS-2018-0001

AR005416



126 Sewall Street
Augusta, ME  04330-6822
TTY/Voice: (207) 626-7058
Fax: (207) 621-8148
www.mejp.org

**Joby Thoyalil**
Senior Policy Analyst
(207) 626-7058 x207
jthoyalil@mejp.org

November 8, 2019

To Whom it May Concern at U.S. Citizenship and Immigration Services:

I am submitting these comments on behalf of Maine Equal Justice on the U.S. Citizenship and Immigration Services (USCIS) Proposed Rule: Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications (DHS Docket No. USCIS-2018-0001).

Maine Equal Justice is a nonprofit civil legal services organization based in Augusta, Maine. Through policy advocacy, education, and legal representation, we work to increase economic security, opportunity, and equity for people throughout Maine. For years, we have provided direct legal assistance and community education to asylum seekers who have needed help meeting their basic needs. We strongly oppose the proposed rule, which we believe would cause significant harm to individuals and families fleeing persecution and seeking refuge in the U.S. We also believe that the proposal would have a significantly negative impact on Maine communities and on our state's economy and businesses.

People seeking asylum seek the help of anti-poverty organizations like ours because they are not allowed to work for at least 180 days after submitting an application for asylum. After this period, they begin to support themselves, and thus begin to rebuild their lives in earnest. The proposed rule would postpone their ability to do that, which would likely keep people stuck in a state of extreme instability for many more months. Those impacted by this instability would include families with small children, who would be at risk of having to depend on insufficient food and housing resources that are needed to ensure healthy child development. When children experience housing instability, their health and ability to learn can be severely diminished. Children who are hungry are significantly more likely than others to receive special education services, to repeat a grade in school and to have received mental health counseling.[1] Indeed, the impact of hunger can have lifelong consequences for children.[2]

---

[1] American Psychological Association. (n.d.). Effects of Poverty, Hunger and Homelessness on Children and Youth. Retrieved November 8, 2019 from http://www.apa.org/pi/families/poverty.aspx

[2] Hartline-Grafton, H., & Dean, O. (December 2017). Hunger & Health: Impact of Poverty, Food Insecurity, and Poor Nutrition. Food Research & Action Center. Retrieved November 8, 2019 from http://frac.org/wp-content/uploads/hunger-health-impact-poverty-food-insecurity-health-well-being.pdf

AR005417

Postponing asylum seekers' ability to be self-sufficient would not only negatively impact the asylum seekers themselves, but also Maine employers and businesses – many of whom have greatly benefitted from the economic participation of asylum seekers in recent decades. A report from the New American Economy found that in 2016, immigrants in the metro Portland area contributed $1.2 billion to the metro area's GDP. Immigrants contributed $62 million in state and local taxes in 2016. While they made up 4.6 percent of the Portland metro area population in that year, they were 7.8 percent of entrepreneurs. Finally, it's estimated that immigrants in the Portland region created or preserved "1,117 local manufacturing jobs that would have otherwise vanished or moved elsewhere." This data represents just a fraction of the economic benefit immigrants are bringing to our state.[3]

A report by Maine Development Foundation and the Maine State Chamber of Commerce noted that while immigrants are 3.5 percent of our workforce, they are 10.1 percent of our advanced degree workers, include 12.9 percent of our physicians, and include 25.3 percent our graduates from STEM (science, technology, engineering, and math) programs. The same report found that immigrants in Maine have higher levels of educational attainment than the national average for immigrants, and the percentage of immigrants in our state with bachelor's, graduate, and professional degrees is higher than the state average overall.[4]

Economists, business leaders, and experts in our workforce have repeatedly named immigration as a key solution to Maine's workforce challenges. Amanda Rector, our State Economist, has stated: "Even if we kept all of our young people here, we simply do not have enough of them in the state now to replace the retiring baby boomers. We must attract more workers to the state if we are going to have enough people to fill the jobs that will open up as the older workers retire, and we'll have to attract even more if we want businesses to be able to grow."[5] But immigrants can help address this demographic challenge. A 2016 report found that the population of foreign-born individuals grew by 23 percent from 2000 to 2013 while Maine's native-born population grew just 4 percent. Moreover, immigrants are doing more than growing and diversifying our workforce; they are bringing valuable skills, education, expertise, and experience to our state.[6]

Across Maine, current and former asylum seekers have built new lives for their families, and Maine communities and our economy are stronger as a result. Immigrants from nations across the world have helped weave the fabric of our state. Those who are making their homes here today are bringing just as much vitality, leadership, and economic growth for our state as the French Canadian, Irish, and other

[3] New American Economy. (n.d.). New Americans in Portland, ME: A Snapshot of the Demographic and Economic Contributions of Immigrants in the Metro Area. Retrieved November 8, 2019 from https://www.newamericaneconomy.org/wp-content/uploads/2018/08/G4G_Portland.pdf

[4] Maine Development Foundation and Maine State Chamber of Commerce. (2016). Maine's Labor Shortage: New Mainers and Diversity

[5] Mainebiz. (September 2016). Report: Immigrants key to addressing Maine's workforce woes. Retrieved November 8, 2019 from https://www.mainebiz.biz/article/report-immigrants-key-to-addressing-maines-workforce-woes

[6] Coastal Enterprise Institute (CEI). (March 2016). BUILDING MAINE'S ECONOMY How Maine Can Embrace Immigrants and Strengthen the Workforce

AR005418

immigrants of our past. Ensuring that asylum seekers have the firm financial footing they need to have a strong start here is vitally important to Maine's future. For these reasons, we urge you to withdraw this proposed rule.

Thank you for considering our comments. Please contact me at 207-626-7058 x207 or at jthoyalil@mejp.org if you have any questions about our comments or would like to discuss this further.


Sincerely,

Joby Thoyalil
Senior Policy Analyst
Maine Equal Justice

AR005419

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-q38j
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2671
Comment Submitted by Sharon Nichols

---

## Submitter Information

**Name:** Sharon Nichols
**Address:**
  12775 Fairbrook Rd.
  San Diego,  CA,  92131
**Email:** shashka42@gmail.com

---

## General Comment

I oppose this rule change because it makes no sense. Both we and asylum seekers benefit by them being able to work while waiting to be heard, and paying taxes accordingly. I have interacted with numerous asylum seekers and they wish to work; and I have employed immigrants and know what hard workers they are. I stand in strong opposition to this change.

AR005420

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2671.html[9/15/2020 4:15:25 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-rthc
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2672
Comment Submitted by Diana Chaikin

---

## Submitter Information

**Name:** Diana Chaikin
**Address:**
　105 14th Ave
　Seattle,　98122

---

## General Comment

Hello,

Asylum processing and preventing asylum seekers from employment in the US is detrimental to our economy. We are almost at full employment, meaning there are jobs in lower skilled and often dangerous, unglamorous fields that benefit from an influx of workers. This benefits asylum seekers by allowing them to contribute to our economy almost immediately. There is no rational reason to make this process more difficult and it actually harms our economy to prevent these positions from being filled by asylum seekers, especially since they are not being filled by the people who reflexively express xenophobic sentiment towards asylum seekers.

Thank you for your time and attention.

AR005421

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-dj1c
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2673
Comment Submitted by Leslie Sinclair

---

## Submitter Information

**Name:** Leslie Sinclair

---

## General Comment

I am Leslie Sinclair, one person who is outraged that those seeking asylum in America are purposely being put to further risk by the intention covered in this rule: Removal of 30-day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications if this proposed Rule is enacted.

Persons seeking asylum are victims fleeing violence. I consider the Rule's furthering of hunger and homelessness and lack of health care a fierce type of violence the wealthiest nation on earth seeks to foist upon asylum seekers.

Do not decide to take our country down this pernicious road. We are better than that. Do better. Be better. Vote with integrity not greed.

AR005422

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-zv9g
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2674
Comment Submitted by Barbara Bales

---

## Submitter Information

**Name:** Barbara Bales
**Address:**
    533 Darby Glen Lane
    Durham,  NC,  27713
**Email:** barbtries@gmail.com
**Phone:** 9199730244

---

## General Comment

Stop this incessant cruelty toward immigrants!

AR005423

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-zni6
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2675
Comment Submitted by Duffy Trager

---

## Submitter Information

**Name:** Duffy Trager

---

## General Comment

This proposed rule will lead to millions of dollars in lost tax revenue because it will significantly delay the adjudication of many asylum applicants work authorization. In so doing it will prevent many asylum seekers from obtaining employement when they otherwise would seek out opportunities. As an immigration lawyer who regularly works with asylum seekers I can attest that many desire to work and positively contribute to this country while their asylum applications are pending.

AR005424

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-dzuq
**Comments Due:** November 08, 2019
**Submission Type:** Web

# PUBLIC SUBMISSION

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2676
Comment Submitted by Katherine Quinn

---

## Submitter Information

**Name:** Katherine Quinn

---

## General Comment

The public should be understanding of the workload the Department of Homeland Security and United States Customs and Immigration Service faces in processing the historic backlog of asylum cases. With the backlog standing at just over 325,000 as of January 2019, the amount of time and resources it will take to give each application the adequate review needed to ensure the applicant's legitimacy is beyond those currently available. DHS is responsible for national security and is within their rights to vet each asylum applicant as thoroughly as necessary to ensure that security for American citizens. However, removal of the 30-day EAD adjudication will neither benefit national security nor will it address the backlog itself. Additionally, there will be serious implications for the welfare of legitimate asylum seekers with this proposed change and little evidence to support such a measure is warranted.

To date, DHS has yet to conduct any official investigation, research, or measurement into the extent of fraud in the asylum system. Given the none-to-callous claim of national security being at stake, investigating the extent of the issue is a necessity is essential to effectively addressing the problem. According to a GAO report published under the Obama Administration, only 374 asylum statuses were terminated for fraud between 2010-2014. In the same timeframe, well over 400,000 people fleeing war, disaster, political upheaval and imminent crisis were admitted to the United States to establish themselves for a better life and opportunity. Concerns over fraud seem to be overstated for the benefit of political rhetoric rather than actual security concerns.

Removing the 30-day adjudication deadline means that all asylum seekers may risk their work authorization not being adjudicated in a timely manner, creating undue hardship and the potential for deportation more immediate. This may entice some asylum seekers to choose illegal employment and pathways into the country because they have no indication of how long they may way for work authorization to be approved. For individuals facing life or death situations in their countries of origin, it is important that decisions be made efficiently and effectively.

In the proposed rule change summary, USCIS mentions that while only 50% of EAD applications were adjudicated by USCIS within the 30-day timeframe nearly 78% were adjudicated within 60 days. Instead of

AR005425

removing the timeline entirely and incentivizing illegal entry into the country, DHS should consider creating an extended deadline of 90-days in order to meet the vetting standards required for USCIS to make adjudication decisions. DHS and USCIS will still need to devote more resources and funding to processing the backlog of asylum applicants and in order to effectively meet any new timeline set forth.

In conclusion, it should be clear that the proposed rule change is ill-advised if national security is the most important factor in the proposal. Additionally, DHS and USCIS should consider the social welfare impacts on the vast number of legitimate asylum seekers who will be adversely effected by the policy change.

AR005426

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-k28n
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2677
Comment Submitted by Lacy Panyard

---

## Submitter Information

**Name:** Lacy Panyard

---

## General Comment

There is no legitimate public interest served by not allowing asylum seekers to work while their applications are pending. Allowing them to become productive members of society is what we all can benefit from. Most importantly, denying them the chance to work severely limits their access to counsel (since they cannot work to Pay counsel) which will result in an infringement on their due process rights.

AR005427

file:///C/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2677.html[9/15/2020 4:15:25 PM]

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-nbpk
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2678
Comment Submitted by Hayley Landman, American Constitution Society, U.C. Berkeley School of Law Chapter

---

## Submitter Information

**Name:** Hayley Landman
**Address:**
   Berkeley,  CA,
**Email:** hayley.landman@berkeley.edu
**Phone:** 636-373-3037
**Submitter's Representative:** Hayley N Landman
**Organization:** American Constitution Society, U.C. Berkeley School of Law Chapter

---

## General Comment

Please see the attached.

---

## Attachments

DHS Comment -- ACS Berkeley Law

AR005428

Nov. 8, 2019

*Submitted online via the Federal eRulemaking Portal*
Department of Homeland Security
U.S. Citizenship and Immigration Services
Office of Policy and Strategy
Chief, Regulatory Coordination Division
20 Massachusetts Avenue, NW Washington, D.C. 20529-2140

RE: Comments on Removal of 30-Day Processing Provision for Asylum Applicant- Related
Form I-765 Employment Authorization Applications
Docket Numbers:
CIS No. 2617-18
DHS Docket No. USCIS-2018-0001


To whom it may concern:

    The American Constitution Society Chapter at U.C. Berkeley School of Law opposes
these rule changes.


On Trump Admin's Stated Goals
    There is an inherent contradiction between the Trump Administration's stated goals of
reducing reliance on public assistance of immigrants seeking legal status and prohibiting asylum
applicants from gaining legal work status. The removal of a 30 day turnaround for work
authorization would increase the amount of asylum applicants forced to rely on public assistance
while they wait for permission to work legally. If the Administration wants to have a strong
immigrant workforce, it should make an effort to allow these asylum seekers to work legally.
    It is apparent from this proposed regulation that the Administration wants to increase the
financial burden on the public and on individual asylum seekers to curtail immigration.
However, not even the Trump Administration's most egregious policies of child kidnapping and
detainment camps have effectively slowed the entrance of asylum seekers. This policy will only
inflict pain on individuals and on the economy, without any benefits.

DHS Failed to Consider Cost Impacts to Employers
    USCIS failed to consider the cost impacts on employers of hiring new employees. USCIS
states that "there may be some unmonetized costs such as additional opportunity costs to
employers that would not be captured in [the] monetized estimates [of the impacts of the rule]."
USCIS's failure to adequately calculate these costs renders the economic analysis of the rule
insufficient and the resulting regulation inherently flawed.
    Per Executive Order 12866, DHS must consider the costs and benefits of available
regulatory alternatives. In their summary of proposed impacts, USCIS acknowledges that "there
may be additional opportunity costs to employers such as additional search costs," but they did
"not include additional costs to business for lost profits and opportunity costs."

AR005429

From the rule: "These companies would incur a cost, as they would be losing the productivity and potential profits the asylum applicant would have provided had the asylum applicant been in the labor force earlier. Companies may also incur opportunity costs by having to choose the next best alternative to immediately filling the job the asylum applicant would have filled. USCIS does not know what this next best alternative may be for those companies. As a result, USCIS does not know the portion of overall impacts of this rule that are transfers or costs. If companies can find replacement labor for the position the asylum applicant would have filled, this rule would have primarily distributional effects in the form of transfers from asylum applicants to others already in the labor market (or workers induced to return to the labor market). USCIS acknowledges that there may be additional opportunity costs to employers such as additional search costs. However, if companies cannot find reasonable substitutes for the labor the asylum applicants would have provided, this rule would primarily be a cost to these companies through lost productivity and profits."

DHS needs to undertake economic analysis and provide some projections for how this rule will impact the availability of labor. If the labor market remains tight and unemployment remains low, there will be fewer people seeking work able to fill these roles. If the economy enters recession and unemployment rises, then finding replacement labor will present another financial burden.


<u>The Trump Administration cannot create a crisis and then respond to that crisis by placing burdens on asylum seekers' Fifth Amendment rights.</u>

The length of time applicants wait before a decision on their applications is increasing to nearly two years.
https://trac.syr.edu/phptools/immigration/court_backlog/apprep_backlog_avgdays.php The Administration's policies have not addressed or solved this problem, but instead seem to exacerbate the issue. Asylum seekers are extremely vulnerable populations and to create this rule means that only very rich individuals can get through the asylum process. This undercuts the entire purpose of allowing employment authorization for these groups. The policy will not effectively support the people who need the most help.

The Administration addresses in Footnote 11 that the original goal of this 30-day time constraint had nothing to do with caseload and instead served humanitarian goals of allowing asylum-seekers to obtain work as soon as possible. Thus, the burden was originally on the courts to accommodate this caseload. The proposed rule shifts the burden onto the asylum-seekers who will have to wait an indefinite period of time before they receive authorization.

Courts have long held that dates and deadlines are essential parts of regulations, without which the regulations are meaningless. The current Administration should be familiar with this jurisprudence, as a number of its policies have been struck down in the context of delaying implementation dates. See, e.g., *Air Alliance Houston v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018). Eliminating the 30-day decision period in effect eliminates the right to a work authorization, period. This tramples the property rights of asylum seekers. The U.S. government has created a property interest in the right to lawfully work to support oneself while awaiting asylum, and cannot deprive asylum-seekers of that right without due process.


Sincerely,

American Constitution Society, Berkeley Law Chapter

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-5z9s
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2679
Comment Submitted by Mary Cunningham

---

## Submitter Information

**Name:** Mary Cunningham
**Address:**
  41-42 24th St Apt 2009
  Long Island City,  NY,  11101
**Email:** mary.cunningham99@gmail.com

---

## General Comment

I am deeply concerned that, without the 30-day processing requirement, EAD applications from asylum seekers will be delayed indefinitely. Without access to work authorization, asylum seekers will not have the ability to support themselves and their families, build their lives, and contribute to our local economies. My clients will lack government-issued identification that helps them integrate into life in the United States. The right to seek safety and protection in the United States is unequivocal. By decreasing access to the tools that allow asylum applicants to meet their basic needs while waiting for decisions on their claims, the proposed rule is undercutting that fundamental right. Because this proposed rule change places a serious burden on the most vulnerable immigrants, we strongly oppose the proposed regulation and request that it be withdrawn.

I respectfully request that USCIS continue processing asylum-based EAD applications pursuant to its current policy and practices that require adjudication within 30 days of filing.

AR005432

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-qm7v
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2680
Comment Submitted by Tiffany Roman

---

## Submitter Information

**Name:** Tiffany Roman

---

## General Comment

I argue against the removal of the 30 day processing provision for asylum applicants, as there are severe repercussions for those who must wait indefinitely for processing times. To me, this proposed change is intended to deter asylum seekers and aligns to previous measures put forth by the administration, including the public charge rule, the Migrant Protection Protocols, and the third-country transit bar. From an economic perspective, delaying individuals the right to work also delays contributions to Medicare and social security by workers and their employers. Without the ability to work, asylum seekers lose potential income that they can use to support themselves and their families, thus increasing the risk that the individuals would be become a public charge.

AR005433

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-geru
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications

**Document:** USCIS-2018-0001-2681
Comment Submitted by John KIngery

---

## Submitter Information

**Name:** John KIngery

---

## General Comment

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

DHS Docket No. USCIS-2018-0001
84 F.R. 47148

November 8, 2019

To Whom It May Concern:

I am submitting my statement in opposition to Department of Homeland Securitys Notice of Proposed
Rulemaking on Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765
Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019.

I have been involved in supporting immigrants and refugees for the past three years. Last year, I met a woman
and her son from Honduras. They were fleeing from persecution in their home country and were for the
completion of the asylum process. It is a process that can take 6 months to several years.

Only after completing that process can they begin to integrate fully into American society. Removing the
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment
Authorization Applications would delay that integration to the determinate of the mother and child. That is a

AR005434

single case that is applicable to other asylum seekers.

Detailed reasons for my opposition are:

DHS has proposed no alternative timeline - although it considered proposing a 90-day timeframe to replace the 30-day timeframe for adjudicating EADs (see p. 47166-47167 of the Notice), which would already be three times the current timeframe, DHS proposes to instead remove a timeframe entirely, suggesting that the agency anticipates these applications being significantly delayed.

DHS already has the ability to stop the clock on the 30-day processing timeframe if they need to request additional documentation from an applicant.

DHS reports that it is now deciding over 99% of EADs within the 30-day processing timeline, demonstrating that DHS is generally able to address fraud and security concerns within the current timeframe and process.

The Rule would cause significant financial hardship to asylum applicants who are unable to work and to those who depend on them financially - destabilizing the financial (and therefore health, housing, etc.) situation of persons already traumatized by the threats and persecution that led them to apply for asylum.

Without an EAD and associated access to employment, asylum-seekers will have difficulty obtaining drivers licenses, banking services, healthcare, and legal counsel for their asylum applications.

Without an ability to lawfully work, asylum seekers cannot afford legal counsel and are thus significantly less likely to win relief. Nationwide, fewer than 3% of families without lawyers are successful in securing asylum, with thousands receiving deportation orders despite having strong claims.

The Rule would burden and stretch the capacity of charities and non-profit service providers: if asylum-seekers are unable to obtain an EAD in a timely manner, they are forced to rely on other forms of support, including organizations that provide financial, housing, legal, or other forms of assistance.

Local, state, and federal governments will lose income tax revenue from asylum-seekers who are delayed in entering the job market or forced to work in the shadow economy. DHS estimates that the annual Medicare and social security revenue loss to the government to be between $39.15 to $118.54 million dollars. DHS estimates the rule will cause asylum-seekers to annually lose $255.88 to $774.76 million in income.

DHS voiced concern about fraud and national security should favor prompt decisions on EADs. If DHS has a concern about an individual, then it should quickly vet the application, rather than delay.

AR005435

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-xlx5
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2682
Comment Submitted by Tanya Kane-Parry

---

## Submitter Information

**Name:** Tanya Kane-Parry
**Address:**
  5031 Navarro St.
  Los Angeles,  CA,  90032
**Email:** tkanepa@calstatela.edu
**Phone:** 323-346684

---

## General Comment

Asylum seekers should be permitted to work as soon as possible! They are refugees who should be treated with respect, kindness and caring. They are not entering illegally, but are seeking legal protection from harm and the opportunity to begin new lives in this country. They want to work, to support themselves and their families, pay taxes and contribute to their communities. Do not extend the delay in providing them work permits. Let them get to work right away!

AR005436

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-tnz9
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2683
Comment Submitted by Yael Schacher, Refugees International

---

## Submitter Information

**Name:** Yael Schacher
**Address:**
2001 S Street NW
Suite 700
Washington,  DC,  20009
**Email:** yael@refintl.org
**Phone:** 860 816 4473

---

## General Comment

See attached file(s)

---

## Attachments

RI Comment on Proposed Work Authorization Rule USCIS-2018-0001

AR005437



November 8, 2019

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

RE: DHS Docket No. USCIS-2018-0001: Comment to Notice of Proposed Rulemaking by U.S.
Citizenship and Immigration Services

Dear Ms. Deshommes:

Refugees International respectfully submits this comment on the September 9, 2019, Notice of
Proposed Rulemaking for "Removal of 30-Day Processing Provision for Asylum Applicant-
Related Form I-765 Employment Authorization Applications." The government seeks to remove
the 30-day processing requirement for a work authorization document. If finalized, the Proposed
Rule would allow U.S. Citizenship and Immigration Services [USCIS] to indefinitely delay the
adjudication of work authorization requests, which would leave asylum seekers without access to
identification, employment opportunities, services and legal counsel that are critical to their
ability to pursue their asylum claims and to their safety while they do so.

Refugees International is a non-governmental organization that advocates for lifesaving
assistance and protection for displaced people in parts of the world impacted by conflict,
persecution, and forced displacement. We do not accept government or United Nations funding,
which helps ensure that our advocacy is impartial and independent. Each year, Refugees
International conducts approximately twenty field missions to identify displaced people's needs
for basic services such as food, water, healthcare, housing, access to education and protection
from harm.  Refugees International advocates for the importance of labor market access for
refugees and asylum seekers all over the world, including in the United States.

In sending the Protocol to the U.N. Convention Relating to the Status of Refugees to the U.S. Senate for ratification in 1968, President Lyndon Johnson wrote of the importance of enabling asylum seekers "to become self-supporting members of free societies, living under conditions of dignity and self- respect."[1] In the late 1980s, a federal court ruled that delaying the issuance of work authorization to asylum seekers could "compel an applicant to abandon his or her asylum application."[2] In 1994, the Department of Justice believed that the ability to apply for asylum and an employment authorization document simultaneously created a magnet for possible fraud but also recognized the hardships imposed on asylum applicants who were unable to support themselves or their families absent work authorization. 1994 regulations reflected a compromise: an asylum seeker whose case had not been completed at the 150-day mark could file for work authorization. The INS was then obligated to process the work authorization application within 30 days.[3]   More than two decades later, the court in *Rosario v. USCIS* reiterated the importance of this principle when it ordered USCIS to comply with the 30-day processing requirement. In doing so, the court remarked that it was "abundantly clear" that a lengthy asylum process demands prompt adjudication of work authorization applications so asylum seekers can support themselves. Ending this 30 day requirement will remove an important safeguard for asylum seekers eager to be self-sufficient and assimilate into our American economy.

Refugees International is well aware of what happens in other countries when work authorization for asylum seekers is restricted or delayed.  Without access to work authorization, asylum seekers in Turkey have been pushed into an abusive underground labor market.[4] Studies have shown that waiting periods for work authorization for asylum seekers in Europe have very long term negative impacts on the ability of asylum seekers to find employment.[5]  Preventing asylum seekers from working metes out a terrible human toll, depriving them of purpose and motivation, making them feel powerless to support their families and to move forward in their lives.

Asylum seekers are among the most vulnerable noncitizens in the United States. The U.S. government does not provide asylum seekers with housing, stipends, or government appointed counsel. Asylum seekers forced to wait longer periods for work authorization may turn to exploitative work underground (with increased risk of trafficking) and they and their children could fall into sickness and homelessness. Asylum seekers without work authorization have difficulty obtaining healthcare and medical treatment, identification documents such as drivers' licenses,[6] and affording legal counsel for their underlying asylum applications, making it much

---

[1] Lyndon B.  Johnson "Special Message to the Senate Transmitting the Protocol Relating to the Status of Refugees." 1 August 1968. *Public Papers of the Presidents of the United States: Lyndon Johnson 1968-1969. No. 428.* Washington D.C.: Government Printing Office: 868-69

[2] Ramos v. Thornburgh, 732 F. Supp. 696 (E.D. Tex. 1989).

[3] Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization, 59 Fed. Reg. 14779 (Mar. 30, 1994)

[4] https://www.refugeesinternational.org/reports/2019/9/18/insecure-future-deportations-and-lack-of-legal-work-for-refugees-in-turkey

[5] https://www.gsb.stanford.edu/faculty-research/working-papers/long-term-impact-employment-bans-economic-integration-refugees

[6] Work authorization documents are often the only proof of lawful residence asylum-seekers can provide. Unaccompanied children need them to receive Social Security Numbers, which are common prerequisites for accessing long-term educational opportunities, qualifying for vocational and technical programs, obtaining health insurance, and receiving preventative care.

AR005439

less likely that they will prevail on their applications. If this rule goes into effect, asylum seekers without means of support may be forced to abandon their claims. This rule, like the Remain in Mexico policy and many other recently implemented policies, aim to make seeking asylum so difficult and full of suffering in order to inhibit people from applying and pursuing their claims, which is a clear violation of the Refugee Act of 1980.

The rule would not only negatively affect asylum seekers and their families. Charities and service providers will be forced to expend limited resources to help asylum seekers with subsistence while they wait longer for the ability to support themselves through work. Without a work permit and thus an ID, asylum seekers will hesitate to call the police if they or someone they know are victims of a crime, thus making neighborhoods and communities less safe.

The notice of the proposed rulemaking does not provide sufficient reasons for the rule nor consider better alternatives. The notice states that USCIS needs more time to adjudicate asylum work authorization applications because of changes to vetting procedures and increased background checks resulting from the U.S. government's response to the September 11, 2011 terror attacks ("9/11"). Yet, these changes have been in place since 2004 with the creation of the Office of Fraud Detection and National Security (FDNS). USCIS has had well over a decade to implement post-9/11 enhanced vetting and security checks and has been vetting asylum applicants with these criteria for fifteen years.  If USCIS hired more officers and trained them, within a few months there would be more trained officers who could adjudicate work authorization applications expeditiously. DHS instead rejects out of hand the possibility of hiring more officers, and does not even provide an estimate of the cost of hiring more officers, nor does it engage in an economic analysis of the cost of hiring new officers as compared to the loss to the tax base by preventing asylum seekers from working lawfully and paying taxes. (Even DHS admits in the rule that asylum seekers would lose annual salary wages and benefits totaling between $255.88 million to $774.76 million.) If USCIS genuinely needs more time to process work permit applications, it has an alternative solution which the notice fails to consider: allow asylum applicants to file their applications for employment authorization together with their applications for asylum (as they did before 1994) and adjudicate the application for employment authorization on the 180th day thereafter, in accordance with federal law.

For these reasons, Refugees International urges the withdrawal of the Proposed Rule.

Sincerely,

Yael Schacher
Senior U.S. Advocate
Refugees International

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-ni7x
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2684
Comment Submitted by Melissa Albin

---

## Submitter Information

**Name:** Melissa Albin

---

## General Comment

It is inhumane to force asylum seekers and their families to go without a paycheck, and by extension, without food, shelter, and access to healthcare and other services. Please reject the Trump administrations proposed regulation that says that asylum seekers must wait 30 days to work.

The world is watching as we collectively decide if we will let the bully in the White House carry out every conceivable form of human cruelty. Please consider the imprint you will be making on history as you weigh your decision on this issue.

AR005441

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-8zv2
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2685
Comment Submitted by Megan Hope

## Submitter Information

**Name:** Megan Hope
**Address:**
  4123 Kalamath St.
  Denver,  CO,  80211
**Email:** meganelpaso@yahoo.com
**Phone:** 7202561967

## General Comment

To support this proposed rule runs entirely counter to American values of (1) protecting people fleeing countries where they are denied freedom, including freedom from fear and persecution and (2) providing opportunities for people to work to support themselves and contribute to the national economy. It is both cruel and nonsensical. Asylum seekers deserve the chance to work; we ALL deserve to have asylum seekers be able to work.

AR005442

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-8e61
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2686
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

that is a very bad rule, will lead to economic loss, people distress, work disruption. please do not approve this rule

AR005443

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-y75v
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2687
Comment Submitted by Michael Gonen

---

## Submitter Information

**Name:** Michael Gonen
**Address:**
　115 Winchester road
　Merion Station,  PA,  19066
**Email:** Gonenusmc@gmail.com
**Phone:** 7326105286

---

## General Comment

This is madness. Why make them wait at all? If theyre here they might as well work to keep themselves fed instead of being either a public charge or a burden on the Charity of others.

AR005444

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 12, 2019
**Tracking No.** 1k3-9d7g-b0fd
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2688
Comment Submitted by indivisible Ventu.ra

---

## Submitter Information

**Name:** indivisible Ventu.ra

---

## General Comment

The administration has created an entire fictional world in which asylum seekers are supposedly useless, freeloaders who sit around waiting for free food and services to be handed to them. And to force that to happen, they literally prevent some of the hardest working people on the planet from working, people who were literally willing to walk a thousand miles to save their families from imminent danger.

Why make them wait so long? To make their kids hungry at night? To force them to join exploitative situations to feed their families. To catch them working illegally so as to deport them? To force them to accept charity so as to become "public charges" against their will?

The administration also tells the whopper that despite being forced to sit idle for 150 days within our borders, that these people still pose such as security risk that the 30 day work permit period is untenable. How many days must they exist without income to prove that they are safe neighbors? If vetting must be done to prevent security risks, then having unvetted people in the U.S. subjected to a potentially indefinite review period seems contrary to the departments stated interests.

How many of our forebears walked down gangplanks into New York and picked up jobs in short order and started their lives anew?

If USCIS feels that a 60-day timeframe would be more beneficial, then it may allow applications to be submitted after 120 days, rather than 150. Allowing asylum-seekers to submit their applications earlier could allow the department to have up to 180 days to process and properly vet each individual while reducing the risk of harm to each applicant.

AR005445

file:///C:/...p/AR%20Assignments/Asylum%2030-Day%20Download%20(uploaded)/Public%20Comments/files/USCIS-2018-0001-2688.html[9/15/2020 4:15:27 PM]

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d7a-tlrw
**Comments Due:** November 08, 2019
**Submission Type:** API

# PUBLIC SUBMISSION

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2689
Mass Mail Campaign 9: Comment Submitted by Michael Rodriguez, Ropes & Gray LLP (Total as of 11/13/2019: 14)

---

## Submitter Information

**Name:** Michael Rodriguez
**Address:**
   Boston, MA, 02118
**Email:** dalton.rodriguez@ropesgray.com

---

## General Comment

November 8, 2019

Submitted Via Federal e-Rulemaking Portal

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

RE: Opposition to Proposed Federal Rule Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications, DHS Docket No. USCIS-2018-0001

Dear Ms. Deshommes,

I, through my employer Ropes & Gray LLP, have provided pro bono legal services to indigent asylum seekers. For all of these clients, we submitted Employment Authorization Document (EAD) applications. I submit these comments in opposition to the Proposed Rule Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications (Sep. 9, 2019), DHS Docket No. USCIS-2018-0001 (hereinafter, the Rule). The Rule would eliminate the requirement that DHS adjudicate initial requests for employment

AR005446

authorization by asylum applicants within 30-days of filing.

The Rule will have significant and long-lasting negative effects on the ability of my asylum clients to support themselves and their loved ones while they are waiting for their claims to be heard. By definition, an asylum seeker is an individual who has suffered grave harm, including torture and sexual violence on account of a statutory protected ground, and who flees his or home country with very few possessions and little support or financial resources. Asylum seekers turn to the U.S. for a safe haven and protection. This rule to eliminate the 30-day processing time for work authorization will undermine asylum seekers abilities to sustain themselves. The proposed rule change will allow DHS to have unlimited time to decide if and when asylum seekers will be issued work authorization, during which time asylum seekers would have no means of supporting themselves and be forced to wait and survive on the charity of others. The Rule will only compound the devastating delays that many asylum seekers face. DHS, which suffers backlogs in almost every benefit category, will have no incentive to issue a prompt decision.

Further, the Rule is not in the economic interest of the United States which benefits greatly from the contributions of refugees and asylum seekers. It compounds the impact of the already lengthy 180-day waiting period before asylum seekers are eligible for work authorization and is unnecessary given that DHS has shown itself capable of near complete compliance with the 30-day adjudication requirement. DHSs argument that the proposed rule is due in part to fraud concerns is contradictory since DHS should want to expedite EAD determinations and quickly vet applications, as it currently does, to detect and investigate any concerns about applications rather than create extensive delays.

I am deeply concerned that, without the 30-day processing requirement, EAD applications from asylum seekers will be delayed indefinitely. Without access to work authorization, asylum seekers will not have the ability to support themselves and their families, build their lives, and contribute to our local economies. My clients will lack government-issued identification that helps them integrate into life in the United States. The right to seek safety and protection in the United States is unequivocal. By decreasing access to the tools that allow asylum applicants to meet their basic needs while waiting for decisions on their claims, the proposed rule is undercutting that fundamental right. Because this proposed rule change places a serious burden on the most vulnerable immigrants, we strongly oppose the proposed regulation and request that it be withdrawn.

I respectfully request that USCIS continue processing asylum-based EAD applications pursuant to its current policy and practices that require adjudication within 30 days of filing.

Sincerely,

M. Dalton Rodriguez

AR005447

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d79-92t5
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2690
Mass Mail Campaign 11: Comment Submitted by Aleyda Borja, ACLU of Arizona (Total as of 11/13/2019: 11)

## Submitter Information

**Name:** Aleyda Borja

## General Comment

My name is Yvette and I work at the ACLU of Arizona. Arizona is a border state that will be affected by this proposed rule.

Asylum seekers would lose wages and benefits as a result of delayed entry into the U.S. labor force, straining their ability to support themselves and their families. USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year. The loss of income to asylum-seekers will cause an outsized amount of harm to this already-vulnerable community. A lack of income means not being able to afford food, housing, medical treatment, health insurance, or legal representation. Furthermore, individuals will be unable to secure a valid ID (needed for many social services) and be increasingly vulnerable to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increases the risk that people coming to the United States will become a public charge.

AR005448

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 08, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d7b-idu3
**Comments Due:** November 08, 2019
**Submission Type:** API

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2691
Mass Mail Campaign 12: Comment Submitted by Eileen Falk, Ropes & Gray, LLP (Total as of 11/13/2019: 11)

## Submitter Information

**Name:** Eileen Falk
**Address:**
     2099 Pennsylvania Ave, NW
     Washington,  DC,  20006
**Email:** eileen.falk@ropesgray.com
**Phone:** 202-508-4721
**Organization:** Ropes & Gray, LLP

## General Comment

I submit these comments in opposition to the Proposed Rule Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications (Sep. 9, 2019), DHS Docket No. USCIS-2018-0001, and respectfully request that USCIS continue processing asylum-based EAD applications pursuant to its current policy and practices that require adjudication within 30 days of filing.

Please see attached file for full commentary.

## Attachments

EAD Opposition Comment

AR005449

November 8, 2019

*Submitted Via Federal e-Rulemaking Portal*

Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW
Mailstop #2140
Washington, D.C. 20529-2140

**RE:     Opposition to Proposed Federal Rule "Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications," DHS Docket No. USCIS-2018-0001**

Dear Ms. Deshommes,

For a year, I, through my employer Ropes & Gray LLP, have provided pro bono legal services to indigent asylum seekers.  I have personally represented four asylum applicants, all of whom have received asylum.  For all of these clients who are adults, we submitted Employment Authorization Document (EAD) applications.  I submit these comments in opposition to the Proposed Rule "Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications" (Sep. 9, 2019), DHS Docket No. USCIS-2018-0001 (hereinafter, the Rule).  The Rule would eliminate the requirement that DHS adjudicate initial requests for employment authorization by asylum applicants within 30-days of filing.

The Rule will have significant and long-lasting negative effects on the ability of my asylum clients to support themselves and their loved ones while they are waiting for their claims to be heard. By definition, an asylum seeker is an individual who has suffered grave harm, including torture and sexual violence on account of a statutory protected ground, and who flees his or home country with very few possessions and little support or financial resources. Asylum seekers turn to the U.S. for a safe haven and protection. This rule to eliminate the 30-day processing time for work authorization will undermine asylum seekers' abilities to sustain themselves. The proposed rule change will allow DHS to have unlimited time to decide if and when asylum seekers will be issued work authorization, during which time asylum seekers would have no means of supporting themselves and be forced to wait and survive on the charity of others. The Rule will only compound the devastating delays that many asylum seekers face. DHS, which suffers backlogs in almost every benefit category, will have no incentive to issue a prompt decision.

Further, as described below, the Rule is not in the economic interest of the United States which benefits greatly from the contributions of refugees and asylum seekers. It compounds the impact of the already lengthy 180-day waiting period before asylum seekers are eligible for work

authorization and is unnecessary given that DHS has shown itself capable of near complete compliance with the 30-day adjudication requirement. DHS's argument that the proposed rule is due in part to fraud concerns is contradictory since DHS should want to expedite EAD determinations and quickly vet applications, as it currently does, to detect and investigate any concerns about applications rather than create extensive delays.

1. **Preventing asylum-seekers from securing lawful employment is not in the United States' economic interest**

Ensuring that asylum seekers can secure lawful employment as soon as possible is in the economic interest of the United States. According to the Department of Health and Human Services, refugees and their family members contributed more than $343 billion in revenue to federal, state and local coffers. On balance, refugees contributed $63 billion more than they received in benefits from various programs. The U.S. economy benefits greatly from this population that works so hard when given a chance and permission to work. According to the Brookings Institute, refugees and asylum seekers engage in entrepreneurship at much higher rates than U.S. born individuals. In the U.S., for example, while immigrants are 15 percent of the population, they represent 25 percent of entrepreneurs. Small businesses and the jobs they create are the engines of growth, innovation, and economic stability of the United States.

Given the fact that asylum seekers are fleeing persecution in their home countries, the vast majority do not have sufficient resources to support themselves and their families for the duration of their immigration proceedings. The rule to eliminate the 30-day adjudication requirement would impose additional hardship on asylum seekers because they would face uncertainty and inconsistency in DHS processing. The proposed Rule would prevent asylum seekers from being able to support themselves and their loved ones through lawful employment.

2. **Eliminating the 30-day adjudication requirement would result in extensive waiting periods for asylum seekers to be issued employment authorization**

Asylum seekers already bear the burden of government back-logs and adjudication delays. Even with a return to the Asylum Office's processing of First in, First out, asylum applicants face great difficulties in getting their cases heard. When a decision on an asylum seekers case is delayed, it negatively impacts their ability to provide for themselves, support family, and build a life here in the United States. Many asylum seekers wait months, if not years, for their cases to be heard and then adjudicated.

Asylum seekers are already required to wait a lengthy period of 180-days before they are eligible for work authorization. During this time, as mentioned above, they rely on others for support to survive. Removing the 30-day processing time requirement would cause significant harm to already vulnerable individuals. Without a time limit for processing initial applications, DHS would have no incentive to adjudicate these cases in a timely manner and asylum seekers who are statutorily eligible to work would be unable to do so for an unknowable period of time.

We already see asylum seekers face significant barriers while waiting for the employment documents to be renewed. Eliminating the 30-day processing requirement would place initial

EAD eligible asylum seekers in the same uncertain waiting period as renewal applicants, but it would be far worse for asylum seekers who were applying for work authorization for the first time as they would not have the ability to sustain themselves. At least for asylum seekers who are renewing work authorization, they have the benefit of the 180-day auto-extension while DHS manages its backlog and processing delays.

3. **DHS's near complete compliance with *Rosario* demonstrates that it is capable of adjudicating these applications within 30 days of filing**

In July 2018, the U.S. District Court for the Western District of Washington ruled that USCIS must adjudicate asylum seekers' initial applications for employment authorization within 30 days, as is specified at 8 C.F.R. 208.7(a)(1). As part of the ruling, USCIS was ordered to submit status reports indicating compliance with the 30-day adjudication requirement. In December 2018, DHS reported adjudicating 96.3% of asylum-seekers' initial applications for employment authorization within 30 days.

DHS's near complete compliance with the order and its ability to adjudicate over 90% of initial EAD applications by asylum-seekers proves that DHS is able to successfully comply with the 30-day adjudication requirement set forth in 8 C.F.R. 208.7(a)(1). *See, Rosario v. USCIS*, Case No. C15-0813JLR (W.D. Wash. July 26, 2018), at 10-11 (noting that DHS's "achieved a 96.3% compliance rate with 8 C.F.R. 208.7(a)(1) in December 2018, and an average compliance rate of 92.7% for the final quarter of 2018.").

4. **DHS's concerns related to asylum fraud are unfounded given its robust system of security checks and fraud detection**

DHS voiced concern about fraud and national security related to the adjudication of EADs based on asylum applications. However, DHS currently has a robust system of security checks and experienced officers trained in detecting fraud. If DHS has a concern about an individual, then it should quickly process and investigate the application, rather than create delays. As mentioned above, DHS currently decides over 90% of the EAD applications within the 30-day processing timeline, demonstrating that DHS is able to address fraud and security concerns within the current timeframe and process.

5. **My opposition to the proposed change to Eliminate the 30-day processing requirement**

I am deeply concerned that, without the 30-day processing requirement, EAD applications from asylum seekers will be delayed indefinitely. Without access to work authorization, asylum seekers will not have the ability to support themselves and their families, build their lives, and contribute to our local economies. My clients will lack government-issued identification that helps them integrate into life in the United States. The right to seek safety and protection in the United States is unequivocal. By decreasing access to the tools that allow asylum applicants to meet their basic needs while waiting for decisions on their claims, the proposed rule is undercutting that fundamental right. Because this proposed rule change places a serious burden

AR005452

on the most vulnerable immigrants, we strongly oppose the proposed regulation and request that it be withdrawn.

I respectfully request that USCIS continue processing asylum-based EAD applications pursuant to its current policy and practices that require adjudication within 30 days of filing.

Sincerely,

Eileen M. Falk

AR005453

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6i-qwu3
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2692
Comment Submitted by Kevin Kocher

---

## Submitter Information

**Name:** Kevin kocher

---

## General Comment

Do whats right support the president
Mission

AR005454

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6j-to16
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2693
Comment Submitted by Jason James

## Submitter Information

**Name:** Jason James

## General Comment

Please help President Trump secure Americas safety by removing this arbitrary bureaucratic timeline.

AR005455

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6j-6icr
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2694
Comment Submitted by Anonymous

---

## Submitter Information

**Name:** Anonymous Anonymous

---

## General Comment

I am an immigration attorney and I work with asylum seekers every day. This rule is detrimental not only to asylum seekers, but to the people of the United States.

Asylum seekers would lose wages and benefits as a result of delayed entry into the U.S. labor force, straining their ability to support themselves and their families. USCIS admits that lost compensation to asylum applicants ranges from $255.88 million to $774.76 million in taxable income per year. The loss of income to asylum-seekers will cause an outsized amount of harm to this already-vulnerable community. A lack of income means not being able to afford food, housing, medical treatment, health insurance, or legal representation. Furthermore, individuals will be unable to secure a valid ID (needed for many social services) and be increasingly vulnerable to exploitation, trafficking, and underground economic risks. The lack of ability to work and correlating lack of income also vastly increases the risk that people coming to the United States will become a public charge.

This proposed rule change is part and parcel of this administrations effort to make the U.S. a hostile destination for individuals fleeing persecution in their countries of origin. This is evidenced by this rule change as well as the third-country transit bar, the proposed wide-sweeping public charge rule, and the institution of the so-called Migrant Protection Protocols. By removing the ability of asylum seekers to gain meaningful employment within a short and predictable timeframe, the Trump Administration effectively turns asylum seekers into the very public charges it seeks to exclude. Additionally, this policy change would make the work authorization process more unpredictable and inefficient by removing the ability to hold USCIS accountable to any deadline.

AR005456

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6j-cpbn
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2695
Comment Submitted by Bud Frei

## Submitter Information

**Name:** Bud Frei

## General Comment

Please help President Trump to secure America's safety by removing the arbitrary bureaucratic timeline for asylum seekers.

AR005457

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6k-mmnk
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2696
Comment Submitted by Patricia Love

## Submitter Information

**Name:** Patricia Love

## General Comment

I am writing to urge you to support President Trumps immigration reforms by giving the authorities more time to complete their jobs of researching all applicants applications. Currently they are cutting corners and allowing some immigrants into America making our country unsafe.

AR005458

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6k-6vs8
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2697
Comment Submitted by Marilyn Woodhouse

---

## Submitter Information

**Name:** Marilyn Woodhouse

---

## General Comment

It is important to be thorough in vetting asylum seekers. The safety os US ciczens is at stake. Don't cut corners!

AR005459

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6k-ys4h
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2698
Comment Submitted by Paul Bell

---

## Submitter Information

**Name:** Paul Bell

---

## General Comment

Our president needs your support to remove the ridiculous timelines that jeopardize our safety and security in the United States. Please support our President and the American people. Its time to put politics aside!

AR005460

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6l-3l7e
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2699
Comment Submitted by Michael Everett

---

## Submitter Information

**Name:** Michael Everett

---

## General Comment

Stop illegal immigration

AR005461

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6l-fitc
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2700
Comment Submitted by Eileen Gendreau

---

## Submitter Information

**Name:** Eileen Gendreau

---

## General Comment

What has happened to our Democratic Party? I used to be a Democrat but this is not the Democratic Party platform I voted for, Kennedy was the last Democrat that had some sanity. The Democrats of today are trying to destroy our country, They are trying to turn it into a socialist country and end our sovereignty and our great nation. Please return to the party you once were and agree to keep our country safe and secure from all that are trying to destroy and take over our country.

AR005462

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6l-64cf
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2701
Comment Submitted by Linda Krawiecki

---

## Submitter Information

**Name:** Linda Krawiecki

---

## General Comment

We need to be able to do a complete back ground check, on their back grounds before they can just be allowed to just arrive.

I don't want just anyone to come saying they want asylum we need to know who they are, where they really came from, and I certainly am tired of all the hand outs for them

AR005463

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6l-mpm2
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2702
Comment Submitted by Annette Losik

---

## Submitter Information

**Name:** Annette Losik

---

## General Comment

Sufficient time must be allowed to evaluate asylum cases. Especially when the Government is overwhelmed with applications. So once asylum applicants are safe, many months should be allowed for processing, with extensions if the workload is excessive.

AR005464

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6m-fyow
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2703
Comment Submitted by Michael Johnson

---

## Submitter Information

**Name:** Michael Johnson

---

## General Comment

Please help President Trump secure America's safety by removing the arbitrary bureaucratic timeline for vetting asylum seekers.

AR005465

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6m-9aov
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2704
Comment Submitted by Rita Rodriguez

## Submitter Information

**Name:** Rita Rodriguez

## General Comment

Tell Washington to support President Trumps Immigration Reforms!!

AR005466

# PUBLIC SUBMISSION

**As of:** September 15, 2020
**Received:** November 07, 2019
**Status:** Posted
**Posted:** November 13, 2019
**Tracking No.** 1k3-9d6m-fb69
**Comments Due:** November 08, 2019
**Submission Type:** Web

**Docket:** USCIS-2018-0001
Removal of 30-Day Processing Provision for Form I-765 (c)(8) Employment Authorization Applications

**Comment On:** USCIS-2018-0001-0001
Removal of 30- Day Processing Provision for Asylum Applicant- Related Form I-765 Employment Authorization Applications

**Document:** USCIS-2018-0001-2705
Comment Submitted by Michele Pollock Rich, CDWBA The Legal Project

## Submitter Information

**Name:** Anonymous Anonymous
**Submitter's Representative:** CDWBA The Legal Project
**Organization:** CDWBA The Legal Project

## General Comment

See attached file(s)

## Attachments

Proposal to Remove Processing Time Aylum Seeker EAD

AR005467



**Michele Pollock Rich**
Executive Director

**Jessica Lennon**
Associate Executive Director

The
**Legal**
**Project**
*Capital District Women's Bar Association*

Ms. Samantha Deshommes
Chief, Regulatory Coordination Division
Office of Policy and Strategy
U.S. Citizenship and Immigration Services, Department of Homeland Security
20 Massachusetts Avenue NW, Mailstop #2140
Washington, D.C. 20529-2140

RE:  DHS Docket No. USCIS-2018-0001, 84 Fed. Reg. 47148

November 7, 2019

To Whom It May Concern:

I am writing on behalf of The Capital District Women's Bar Association, Legal Project, Inc. ("The Legal Project"), to voice my strong opposition to a proposal by the Department of Homeland Security's United States Citizenship and Immigration Services (DHS USCIS). I am submitting this in response to DHS's Notice of Proposed Rulemaking on Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, DHS Docket No. USCIS-2018-0001, issued September 9, 2019.

The Legal Project is a private non-profit in Albany, NY, that provides free legal representation and advice to low-income documented and undocumented individuals in immigration, domestic violence, family law, and foreclosure-defense cases. We represent people in a wide variety of immigration matters, including family-based cases, petitions under the Violence Against Women Act (VAWA), petitions for U and T nonimmigrant status, refugee and asylum family reunification cases, and applications for naturalization, for Temporary Protected Status, for Special Immigrant Juvenile Status, and for asylum. Our focus is on providing high-quality humanitarian relief. We frequently work with individuals who have undergone significant trauma and abuse at the hands of people they should be able to trust: their loved ones and/or their governments.

The Legal Project represents dozens of asylum seekers and can attest to the importance of work authorization in bringing stability, safety, and self-sufficiency to their lives, especially when their applications for work authorization are processed in a reliable, timely manner. In this proposed regulation, DHS seeks to remove a processing time requirement for work authorization applications that has been in place for 25 years. As discussed below, DHS routinely failed to comply with this rule in recent years until a federal court order compelled it to do so. DHS has been able to comply with the processing time requirement with approximately 99% accuracy since then; however, DHS now wishes to remove it.

The Legal Project objects to DHS removing a regulation that it has demonstrated an ability to comply with 99% of the time in the past year. As discussed below, in the reasons for removing the processing time requirement, DHS cites factors that have been present for many years and that it has clearly been able to overcome this year in order to achieve this compliance. DHS's reliable, quick processing this year has had a stabilizing impact on the lives of our clients who have uprooted themselves and their families to flee trauma and persecution. Additionally, DHS's estimated cost of removing this requirement suggests staggering financial losses to asylum seekers and their families, as well as to Medicare and Social Security. However, it fails to consider either lost tax revenue at the local and state levels or the financial losses to businesses and communities where these individuals work, shop, and live. Finally, we object to DHS removing this processing time requirement without committing to an alternative one. Without reliable processing times, individuals may be unable to support themselves and their families, may feel trapped in abusive personal relationships or workplaces, and the lives they have been trying to rebuild after fleeing persecution may be destabilized again.

AR005468

<u>Current regulation</u>

Under the current regulation, an individual who flees from their home due to persecution and who is seeking the protection of our nation's laws will not be legally authorized to work for at least 6 months after they arrive.[1] It may take longer; they may not be able to prepare and file their asylum application soon after their arrival in the U.S. because they are unfamiliar with U.S. law, have ongoing symptoms related to the trauma they experienced, or must address basic needs, like finding shelter. However, even once their application is properly filed, they are ineligible under 8 C.F.R. 208.7(a)(1) to seek employment authorization from DHS until their asylum application has been pending for 150 days without adjudication. At that point, the same regulation allows the asylum-seeker to file an application for employment authorization but prevents DHS from approving it until the person's asylum application has been pending without adjudication for 180 days. This means that the *earliest* they could receive authorization to work is 6 months after their arrival in the U.S.

In light of this delay, 8 C.F.R. 208.7(a)(1) has required the government to adjudicate an asylum seeker's application for employment authorization within 30 days.[2] This regulation has been in place for 25 years,[3] however, in recent years, DHS routinely failed to comply with the requirement,[4] leaving asylum seekers unable to support themselves through authorized work and unable to predict when they would receive authorization to work.

The Legal Project represents dozens of asylum seekers and we have seen the impact of these delays on the lives of our clients and their families. One client escaped persecution in Sierra Leone with his pregnant wife. After they arrived in the U.S., they were unable to pay an attorney to file their asylum application. They had to wait several months before they were able to receive pro bono representation. By the time their application was finally filed, they had been in the U.S. for almost 9 months. In accordance with the current regulation, they waited until their asylum applications had been pending for 150 days before applying for employment authorization. However, DHS did not comply with the 30-day processing requirement and it took an additional 5 months before they received authorization to work. In total, they struggled for almost 2 years without work authorization. During that time, the only work they could find were odd jobs done off the books, and they were forced to rely on the good will of the community, including local food pantries, in order to survive.

<u>*Rosario* litigation and post-order compliance</u>

In 2015, the Northwest Immigrant Rights Project and The Advocates for Human Rights brought a class action against USCIS, asking the U.S. District Court in the Western District of Washington to compel USCIS to timely adjudicate asylum seekers' applications for employment authorization. In July 2018, the District Court ordered DHS to comply with the 30-day requirement set forth in the regulation and to update plaintiffs on their compliance.[5] These updates show that DHS has been able to comply approximately 99% of the time since then.[6]

<u>Regulatory changes proposed by DHS</u>

Despite their demonstrated ability to comply with this 30-day processing requirement, DHS has proposed removing it.[7] Not only does DHS propose removing it, DHS fails to offer an alternative timeline for processing work authorizations (also known as Employment Authorization Documents or EADs). As justification for the proposed change, DHS cites the "changes in intake and EAD document production" (though those have been in place for 15 years[8]) and the required security

---

[1] 8 C.F.R. 208.7(a)(1)

[2] *Id.*

[3] Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization, 59 Fed. Reg. 62284 (Dec. 5, 1994).

[4] Order on Cross Motions for Summary Judgement at 3, Rosario v. USCIS, No. 2:15-cv-00813-JLR (W.D. Wash.), appeal pending, NWIRP v. USCIS, No. 18-35806 (9th Cir.).

[5] *Id.* at 12.

[6] Defendant's July 2019 Compliance Report, Rosario v. USCIS, No. 2:15-cv-00813-JLR (W.D. Wash.), appeal pending, NWIRP v. USCIS, No. 18-35806 (9th Cir.), available at:
https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/nirp_v_uscis_defendants_july_2019_compliance_report.pdf (last viewed Nov. 5, 2019).

[7] Removal of 30-Day Processing Provision for Asylum Applicant Related Form I–765 Employment Authorization Applications, 84 Fed. Reg. 47148 (proposed Sept. 9, 2019) (to be codified at 8 C.F.R. pt. 208.7).

[8] *Id.* at 47154, including fn. 17.

2

AR005469

vetting and document fraud measures (part of the law for 18 years[9]) as strains on the agency's ability to continue meeting the requirement.[10] DHS also cites increased numbers of people applying for asylum, which has been the trend for 5 years.[11] These "strains" are not new; the agency has had years to increase its capacity for timely processing EADs in light of these requirements and the rising application rates. Furthermore, these "strains" have not prevented DHS from successfully complying with the law since July 2018.

Despite using the increase in applications as a justification for removing the processing time requirement, DHS fails to account for this increase when calculating the costs of the proposed rule. In finding that asylum seekers will lose $255.88 to $774.76 million annually and the federal government will lose $39.15 million to $118.54 in contributions to Medicare and Social Security, DHS estimated that it will process applications at the same rate it did before the federal court's decision in *Rosario*.[12] DHS asserts these staggering losses to individuals and the government without committing itself to the processing timeframe it relied on in its calculations, addressing the rising number of asylum applications, or even fully assessing the cost of this change. For example, DHS did not calculate the losses to businesses that employ asylum seekers and may need to replace them if their work authorization is not renewed timely, the losses to businesses that they patronize in communities across the nation, losses in local sales tax or state income tax, or the impact on families of being unable to predict or depend on the asylum applicant's authorization to work. If DHS does not commit to a timeframe for adjudications, it will surely take longer to process these applications and the losses to individuals and to governments will be even greater.

In January 2017, DHS created an automatic EAD extension policy,[13] allowing certain EAD renewal applicants to continue working for 180 days beyond the expiration date printed on their EADs while they waited for DHS to process the renewal. However, the extension policy does not commit DHS to processing the renewal application during the 180 days, and our clients have lost their jobs when DHS took longer to process their renewal applications, leaving them without work authorization after the extension ended. Even though asylum seekers' EADs are included in the automatic extension policy, we know that this policy is insufficient to protect any applicant, including asylum seekers, from losing their employment due to DHS's adjudication delays. DHS should not point to this policy as a protection for vulnerable populations like asylum seekers when removing the 30-day processing requirement.

<u>Impact on our clients, their families, and our communities</u>

When DHS complies with the 30-day processing requirement for asylum seekers' EADs, individuals know when to expect their work permits. This allows them to plan how much longer they need to survive without work authorization, whether this means that they are not working or are working without authorization. People who work without authorization often make less than those with EADs and may be trapped in jobs where their employers feel empowered to mistreat them. For example, a client from Guatemala was a trained Information Technology (IT) worker. For the first 9 months after he arrived in the U.S., he didn't have work authorization. He took odd jobs on construction sites, but he was only able to find about 15 hours of work each week. Once he received his EAD, he was able to take a full-time job at much higher pay in the IT sector. If individuals can predict how long DHS will take to process their EAD, they can prepare to enter the workforce or change jobs. They can tell a prospective employer how soon they expect to be authorized to work. If they are renewing a work permit, they can reassure their employers that they will not face an interruption in their work authorization.

For asylum seekers living in New York State, receiving an EAD helps an individual gain financial stability and personal safety for other reasons, as well. An asylum applicant is generally unable to receive a Social Security number or a driver license without their EAD. They may struggle to receive health insurance or to open a bank account without an EAD. For example, one of our clients fled Turkey with his spouse and 3 children. The Turkish government had confiscated their passports, so they did not have enough identification to open a bank account or obtain a license. They struggled to enroll their children in school without Social Security numbers. As a result of the *Rosario* order, DHS was processing EADs in a timely manner when the family applied. Once they applied, they received the EADs and Social Security cards within 2

<hr>

[9] *Id.* at 47154.

[10] *Id.* at 47155.

[11] *Id.* at 47153-4, including data on asylum applications received each Fiscal Year since 2013.

[12] *Id.* at 47150.

[13] Automatic Employment Authorization Document (EAD) Extension, https://www.uscis.gov/working-united-states/automatic-employment-authorization-document-ead-extension (last visited Nov. 5, 2019).

AR005470