Hon. Paula Xinis                                                                                                     Jan. 31, 2022
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 4000
Greenbelt, Maryland 20770

Re: *CASA v. Mayorkas*, 8:20-cv-2118-PX

Dear Judge Xinis:

    We write on behalf of Plaintiffs to address whether an Acting Secretary of the Department of Homeland Security (DHS) may designate an order of succession under 6 U.S.C. § 113(g)(2).

    The parties agree that the Court need not reach this issue if it adheres to its prior analysis that Chad Wolf was not lawfully serving as Acting Secretary of DHS.  ECF No. 69 at 39–45.  *See* Defs.' Ltr. Br., ECF No. 160, n.1; *see also* Pls.' MSJ & MTM, ECF No. 107-1 at 10–11.  Because then-Secretary Nielsen did not amend the order of succession that applies in the event of resignation, McAleenan was not lawfully installed and his attempt to install Chad Wolf was unlawful.  The Broader EAD Rule should be vacated simply because Wolf never had authority to act as Acting Secretary of DHS.  ECF No. 107-1 at 10–13; ECF No. 125 at 7–9.

    But even if McAleenan lawfully occupied the office of Acting Secretary, he lacked the authority to designate the order of succession that would have permitted Chad Wolf to assume his putative position.  As explained by Judge Moss in *Northwest Immigrant Rights Project* ("*NWIRP*"), § 113(g)(2) explicitly allows the Secretary to make such a designation, but does not grant such power to a DHS Acting Secretary.  *NWIRP v. USCIS*, 496 F. Supp. 3d 31, 70 (D.D.C. 2020) ("[T]he Court holds that an Acting Secretary may not amend the . . . order of succession . . . [thus] neither appointment of Wolf was effective.").  The Court should recognize this as an alternative basis on which to hold that Wolf was not lawfully an Acting Secretary and should reject Defendants' overbroad (and constitutionally suspect) reading of § 113(g)(2).[1]

    Defendants' argument that the Homeland Security Act ("HSA") authorizes an Acting Secretary to designate a further order of succession to that position is wrong:  It is at odds with the statute's plain text, conflicts with the Federal Vacancy Reform Act's ("FVRA") "exclusivity" provision, and gives rise to serious constitutional concerns.  *See NWIRP*, 496 F. Supp. 3d at 61–70.  Correctly read, the HSA authorizes only a Senate-confirmed Secretary of DHS to designate a further order of succession for Acting Secretary.

---

[1] Defendants' reliance on *United States v. Mendoza*, *see* ECF No. 160 at 2 n.2, is unpersuasive with respect to the import of the government's voluntary dismissal of its appeal in *NWIRP* because *Mendoza* concerned factors considered by the Solicitor General "*before* authorizing an appeal," 464 U.S. 154, 161 (1984) (emphasis added).  In *NWIRP*, by contrast, Defendants considered and authorized an appeal—and thereafter made the decision to dismiss the appeal.  *See Northwest Immigrant Rights, et al. v. USCIS, et. al.*, No. 20-5369 (D.C. Cir).

1

## I. Under the Plain Text of the HSA, Only the Secretary Can Designate an Order of Succession.

The plain text of § 113(g)(2) distinguishes between the Secretary of DHS and the Acting Secretary: "the *Secretary* may designate such other officers of the Department in further order of succession to serve as *Acting Secretary*." 6 U.S.C. § 113(g)(2) (emphasis added). The *NWIRP* court correctly concluded that the text of § 113(g)(2) explicitly authorizes the Secretary to designate a further order of succession but does not confer that authority on the separate position of Acting Secretary. *NWIRP*, 496 F. Supp. 3d at 61–62. This literal interpretation of the text "respect[s] Congress' decision to use different terms to describe different categories of people or things." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012); *accord Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 62–63 (2006) (stating the "normal[] presum[ption]" that "Congress intended its different words to make a legal difference").

Defendants ignore the plain text of the statute and insist that all statutory references to a principal officer's authority must apply to an official acting for that officer. ECF No. 160 at 2 (arguing any ruling to the contrary would "undermine the entire point of acting service"). But this misstates the issue. Plaintiffs do not contend that the powers of an acting official are generally distinct from those of principal officers. Rather, Plaintiffs' argument is that the statutory text here explicitly refers to *both* the Secretary and the Acting Secretary in the same provision and assigns a specific authority only to the Secretary, and thus the two positions do not have identical authority in the area that is addressed in the sentence—i.e., the ability to create a new order of succession.[2] Plaintiffs' textual interpretation of § 113(g)(2) does not limit the authority of acting officers in general. In contrast, adopting Defendants' interpretation would "undermine the entire point" of Congress using "different words" in the statute.

## II. Because the Text of § 113(g)(2) Does Not Explicitly Authorize the Acting Secretary to Designate an Order of Succession, the FVRA's Exclusivity Provision Prevents the Acting Secretary from Doing So.

The FVRA's exclusivity provision also supports Plaintiffs' reading of § 113(g)(2). The FVRA provides the "exclusive" means to fill temporary vacancies—unless a statutory provision "expressly" authorizes "the head of an Executive department," among others, "to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1)(A). As discussed *supra*, § 113(g)(2) does not "expressly" authorize the Acting Secretary to designate the order of succession. Therefore, as the *NWIRP* court correctly held, § 113(g)(2) does not create an exception to the FVRA's exclusivity provision. *See*

---

[2] Defendants assert that they are unaware of instances where a statutory authority is "doubly assign[ed]" to a Secretary and Acting Secretary, ECF No. 160 at 2, but there are several such instances in the U.S. Code. *See, e.g.*, 8 U.S.C. § 1182(n)(2)(G)(i) ("In the case of an investigation under this clause, the Secretary of Labor (or the acting Secretary in the case of the absence o[r] disability of the Secretary of Labor) shall personally certify that reasonable cause exists and shall approve commencement of the investigation."); 21 U.S.C. § 355(e) ("[I]f the Secretary (or in his absence the officer acting as Secretary) finds that there is an imminent hazard to the public health, he may suspend the approval of such application immediately.").

*NWIRP*, 496 F. Supp. 3d at 63 ("Defendants' broad reading of § 113(g) is also at odds with the plain meaning of the word 'expressly.'").

Defendants' efforts to rebut the *NWIRP* court's reasoning fail. Defendants first argue that an acting officer is vested with all the powers of the office, which functionally include those set forth in §113(g)(2). ECF No. 160 at 2–3. In addition to ignoring the plain text of the statute, this *general* statement ignores the FVRA's *specific* requirement that the authority to appoint an acting officer be expressly authorized. *See* 5 U.S.C. § 3347(a)(1). Because no statute "expressly" vests the Acting Secretary of DHS with authority to modify the order of succession, the Acting Secretary lacks authority to do so. *See NWIRP*, 496 F. Supp. 3d at 63–64.

Next, Defendants argue that § 113(g)(2)'s "notwithstanding" language is "clearly an exception" to the FVRA's exclusivity rule. ECF No. 160 at 2. But the question is not whether § 113(g)(2) constitutes an exception, but whether that exception should be construed broadly or narrowly. Plaintiffs' narrow interpretation is preferable for three reasons: first, it is supported by canons of statutory construction; second, it upholds the purpose of the FVRA; and third, it recognizes that the FVRA is incorporated into § 113 of the HSA.

**(i) Canons of construction**: According to the Supreme Court "[a]n exception to a 'general statement of policy' is 'usually read . . . narrowly in order to preserve the primary operation of the provision.'" *Maracich v. Spears*, 570 U.S. 48, 60 (2013) (quoting *Commissioner v. Clark*, 489 U.S. 726, 739 (1989)). Further, "exceptions ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design." *Id.*; *see also NWIRP*, 496 F. Supp. 3d at 63.

**(ii) Purpose of the FVRA**: The FVRA "was framed as a reclamation of the Congress's Appointments Clause power." *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017). Allowing an Acting Secretary to designate an order of succession risks significantly undermining Congress's purpose in passing the FVRA by relieving Presidents of their responsibility to select acting officials, *see NWIRP*, 496 F. Supp. 3d at 63,[3] and by potentially preventing the Senate from providing advice and consent.

**(iii) Section 113 incorporates the FVRA**: As the *NWIRP* court correctly noted, "Congress wrote the HSA to operate alongside the FVRA," and § 113 of the HSA explicitly incorporates the FVRA. *Id.* at 62. The HSA specifies that any order of succession must begin—pursuant to the FVRA—with the Deputy Secretary as the First Assistant to the Secretary, and then the Under Secretary for Management—*i.e.*, the First Assistant to the Deputy under the FVRA—as Acting Secretary if the Deputy is unavailable. 6 U.S.C. § 113(a)(1)(A)&(F); *id.* § 113(g)(1). As the *NWIRP* court reasoned, the HSA incorporates the FVRA's default scheme, and therefore, any exceptions it makes to that scheme are to be construed narrowly. *See* 496 F. Supp. 3d at 62–63.

---

[3] Defendants' argument that "other officers" in § 113(g)(2) is limited to officers enumerated in § 113, and thus, "all [such officers] are appointed by the President," ECF No. 160 at 4, misses the point. Under the FVRA, the President is responsible for selecting acting officials for *principal* officer positions; the fact that the President selected an officer for another role that does not require Senate confirmation does not relieve the President of the obligation under the FVRA to select acting officials to serve in PAS roles that do require Senate confirmation.

### III.     Defendants' Interpretation of § 113(g)(2) Raises Serious Constitutional Concerns.

As the *NWIRP* court noted, Defendants' overbroad interpretation of § 113(g)(2) raises serious constitutional concerns about the interplay between the statute and the Appointments Clause. 496 F. Supp. 3d at 64. Under the Appointments Clause, "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. "Reading . . . § 113(g) to permit any Department official who is serving as Acting Secretary to appoint successors to the office of Acting Secretary would raise the question whether such an official is the 'Head of Department' for purposes of the Appointments Clause." *NWIRP*, 496 F. Supp. 3d at 64.

Defendants concede that an Acting Secretary who holds that position without the advice and consent of the Senate is not, by definition, a *principal* officer (and therefore is an "inferior officer" within the meaning of the Appointments Clause), but they inexplicably argue that such an inferior officer is nevertheless the "Head of the Department" within the meaning of the Appointments Clause. ECF No. 160 at 4–5. Defendants' interpretation thereby forces the Court to address the unresolved question of whether an inferior officer, not subject to Senate confirmation, may be a Department Head under the Appointments Clause. *See NWIRP*, 496 F. Supp. 3d at 64. Plaintiffs' interpretation of § 113(g)(2), by contrast, avoids this constitutional concern entirely by limiting the authority to designate an order of succession to a Senate-confirmed Secretary.

Defendants argue that their interpretation raises "no constitutional concerns." ECF No. 160 at 4. But Defendants' overbroad interpretation of § 113(g)(2) would grant inferior officers constitutional authority beyond what any court has heretofore recognized.[4]

First, Defendants argue that a designation of service under § 113(g)(2) is not an appointment within the meaning of the Appointments Clause, and so the *NWIRP* court's concerns are misplaced. *Id*. at 4. But this argument, if adopted, would only compound the constitutional problem. If a statute may simply avoid the question of whether inferior officers may serve as Heads of Departments as long as their service is in an "acting capacity," then the Appointments Clause itself would be rendered a nullity. Such an approach would also exempt acting officers from concerns about the constitutional limits on the duration of their service, or concerns about whom Congress may authorize to take such roles. The *NWIRP* court and the D.C. Circuit in *In re Grand Jury Investigation*—the case on which Defendants primarily rely[5]—both do not adopt this

---

[4] Defendants' handwringing about the "far-reaching consequences" of a determination by this Court that an inferior officer cannot appoint another inferior officer, *see* ECF No. 160 at 5 n.7, is beside the point. As Defendants acknowledge, *id.*, the *NWIRP* court adopted Plaintiffs' interpretation of § 113(g)(2) and did not need to reach this conclusion.

[5] Defendants overstate the relevance of *In re Grand Jury*. The D.C. Circuit's narrow ruling was limited to a "single-issue" and addressed only whether then-Acting Attorney General Rosenstein was vested "with the same authority that could be exercised by the officer for whom he acts" with respect to that issue. 916 F.3d at 1055–56. That court's holding does not address the full scope of an Acting AG's authority.

view, and instead assess acting service within the bounds of the Appointments Clause. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1055 (D.C. Cir. 2019); *NWIRP*, 496 F. Supp. 3d at 64–69.

Second, Defendants argue that an Acting Secretary becomes the Head of the Department when assuming the Acting Secretary role and thus gains the Department Head's authority to appoint inferior officers. ECF No. 160 at 5. But this circular assertion does not answer the constitutional question of whether an inferior officer—*i.e.*, one not subject to Senate confirmation—can exercise appointment authority. *In re Grand Jury* provides no support to Defendants here, because the statute at issue in that case authorizes the Deputy Attorney General—a PAS officer—to serve as the Head of the Department in the Attorney General's absence. *See* 916 F.3d at 1055. The Deputy Attorney General is, by definition, subject to Senate confirmation and thus is a principal, not an inferior, officer. *See* 28 U.S.C. § 503.[6] Defendants' interpretation of § 113(g)(2) would authorize inferior officers to assume the authority of the Head of the Department—including appointing other inferior officers—an issue the D.C. Circuit did not address in *In re Grand Jury*. *See* 916 F.3d at 1055–1056; *see NWIRP*, 496 F. Supp. 3d at 64–65 (discussing why *In re Grand Jury* does not resolve the constitutional concerns raised by Defendants' interpretation of the HSA). Further, Secretary Nielsen's Order included several inferior officer positions.[7]

In sum, Defendants' interpretation of § 113(g)(2) requires this Court to conclude that inferior officers may serve as Heads of Departments within the meaning of the Appointments Clause of the Constitution. Plaintiffs' interpretation does not and avoids these constitutional concerns.

---

[6] The other cases cited by Defendants—which tangentially address this issue in dicta—are similarly inapposite: they concern the authority of other PAS officials. *See United States v. Nixon,* 418 U.S. 683, 694 (1974) (discussing the authority of Solicitor General, who is a PAS officer, to exercise the AG's power to "appoint subordinate officers to assist him in the discharge of his duties" when serving as Acting AG); *United States v. Pellicci,* 504 F.2d 1106, 1107 (1st Cir. 1974) (similar). Defendants cite no authority that addresses whether the Constitution permits an inferior officer—who has not been subject to Senate confirmation for any role—to serve as the Department Head capable of appointing other inferior officers.

[7] Additionally, as Defendants concede (*see* ECF No. 160 at 4 n.5), Nielsen's Order included officer positions *not* enumerated in § 113. *Compare* 6 U.S.C. § 113, *with* ECF Nos. 41-1 at 69–70 (showing at least six positions not listed in § 113). Thus, under Defendants' own interpretation of § 113(g)(2), Nielsen's Order was an invalid order of succession because her list included officer positions that Defendants now contend were ineligible to be designated in an order of succession. Moreover, Defendants' attempt to excuse the inclusion of unenumerated officers in Nielsen's Order (by arguing that the Order "only . . . delegat[ed] [some] authority" to such officers but kept them out of the order of succession, *see* ECF No. 160 at 4 n.5) contradicts their position that Nielsen's Order created a uniform list that was *both* an order of succession and an order of delegated authority. *See* Defs.' Opp'n to Pls' MSJ & MTM, ECF No. 121 at 10–14.

Respectfully submitted,

| | |
|---|---|
| */s/* | */s/* |
| Linda Evarts (Bar No. 22012) | Zachary Manfredi (*pro hac vice*) |
| Mariko Hirose (Bar No. 22337) | ASYLUM SEEKER ADVOCACY PROJECT |
| Kathryn Austin (Bar No. 21915) | 228 Park Avenue S. #84810 |
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT | New York, NY 10003-1502 |
| | Tel: (305) 484-9260 |
| One Battery Park Plaza, 4th Floor | zachary.manfredi@asylumadvocacy.org |
| New York, New York 10004 | |
| Tel: (516) 838-1655 | */s/* |
| levarts@refugeerights.org | Richard W. Mark (*pro hac vice*) |
| kaustin@refugeerights.org | Joseph Evall (*pro hac vice*) |
| mhirose@refugeerights.org | Katherine Marquart (*pro hac vice*) |
| | Chris Jones (*pro hac vice*) |
| *Counsel for Plaintiffs* | GIBSON, DUNN & CRUTCHER LLP |
| | 200 Park Avenue |
| | New York, NY  10166-0193 |
| | Tel: (212) 351-4000 |
| | RMark@gibsondunn.com |
| | JEvall@gibsondunn.com |
| | KMarquart@gibsondunn.com |
| | CRJones@gibsondunn.com |

cc: All Counsel of Record