**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CASA DE MARYLAND, INC., *et al.*,

    Plaintiffs,

v.

MAYORKAS, *et al.*,

    Defendant.

Case No. 20-cv-02118-PX

**MOTION TO DISMISS**

Defendants, the United States Department of Homeland Security ("Homeland Security") and Alejandro Mayorkas ("Mayorkas"), in his official capacity as Secretary of Homeland Security (collectively, the "Government," "Defendants," or "Agency"[1]), by and through undersigned counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Patrick G. Selwood, Assistant United States Attorney for that district, move to dissolve the preliminary injunction and dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Rules").[2]

## I.    INTRODUCTION

Plaintiffs filed this lawsuit over two years ago with a singular, discrete, and unobscured purpose: to vacate or set aside the 2020 Asylum EAD rules, discussed below. Since then, those rules have been vacated in their entirety, the Government published a rule restoring the prior regulations, and Plaintiffs agreed to withdraw—on mootness grounds—their then-pending motions for summary judgment and motion to modify the preliminary injunction. Yet, despite getting all the relief they sought in their

---

1    Unless otherwise indicated, references to the Agency necessarily include the Citizenship and Immigration Services office ("USCIS"), of component within Homeland Security that is generally tasked with administering lawful immigration to the United States.

2    This Motion to Dismiss constitutes the Agency's "opening brief" as envisioned by the Court's briefing schedule.

Complaint, Plaintiffs are unsatisfied, and now seek further relief based on issues not raised in their Complaint, and that are actively (and properly) pending before other courts.

For the better part of this year, Plaintiffs have devoted their time and effort trying to find a theory to keep this case alive. Plaintiffs have compiled a list of grievances—all of which were foreseeable operational-consequences of a court vacating two rules, impacting numerous regulatory sections as well as a form and instructions used by thousands of applicants every month, and all of which have since been resolved by the Government (as the Government has repeatedly explained they would) —that Plaintiffs ostensibly believe constitute an ongoing controversy. Plaintiffs' theory also provides that a (partial) preliminary injunction—issued more than two years ago—allows this Court to continue to retain jurisdiction over this matter, even though it is categorically impossible to grant Plaintiffs the relief they sought in their Complaint. There is, of course, no legal authority to support any part of Plaintiffs' theory.

For more than six months, the Government has, in good faith, attempted to explain to Plaintiffs the various congressional and presidential restraints that the Agency must comply with to effectuate the necessary regulatory changes post-vacatur. Plaintiffs do not like those explanations. But they don't need to. The Government is obligated to follow a legal and administrative process. This is the price of making regulatory change consistent with the rule of law.

At bottom, if the alleged harms that Plaintiffs now complain of are so dire, they could have filed another complaint and sought another preliminary injunction at some point during the last eight months. But the writing was on the wall that the Government would soon effect all the operational changes it said it would (and did). So instead, Plaintiffs have unfortunately chosen to use this lawsuit— and, in turn, the precious and limited resources of the federal judiciary—as a pipeline for every conceivable grievance they have against the Government before this Court, beyond those which are relevant in this case.

## II.   STATEMENT OF FACTS

### A.   Procedural background

Plaintiffs initiated the above-captioned case by a five-count Complaint filed July 7, 2020, *see* ECF No. 1, challenging two rules: *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications*, 85 Fed. Reg 37,502 (June 22, 2020) (the "Timeline Repeal Rule"), and *Asylum Application, Interview, and Employment Authorization for Applicants*, 85 Fed. Reg. 38,532 (June 26, 2020)(the "Broader Asylum EAD Rule")(collectively, these two rules are referred to as the "2020 Asylum EAD Rules"). The 2020 Asylum EAD Rules were promulgated under the authority of then-Acting Secretary of Homeland Security, Chad Wolf. *Id.* Invoking the Administrative Procedure Act ("APA"), the Federal Vacancies Reform Act ("FVRA"), and the Homeland Security Act ("HSA"), the Complaint seeks the total vacatur of the 2020 Asylum EAD Rules *See generally* ECF Nos. 1, 69 (discussing the Complaint). Specifically, Count One asserts that "[t]he Asylum EAD Rules Should Be Set Aside Because They Violate the APA"; Count Two asserts that "[t]he Asylum EAD Rules Should Be Set Aside Because They Violate the Homeland Security Act ("HSA")"; Count three asserts that "[t]he Asylum EAD Rules Should Be Set Aside Because They Violate the Federal Vacancies Reform Act ("FVRA"); Count Four asserts that "[t]he Asylum EAD Rules Should Be Enjoined Because They Are Ultra Vires"; and Count five asserts that "[t]he Broader EAD Rule Should Be Set Aside Because It Violates the Regulatory Flexibility Act ("RFA")." *See Compl.* at pp. 48-51. **Of note, every cause of action in the Complaint requests that the EAD Rules be permanently enjoined, set aside, or vacated in their entirety**. *Id.* This mirrors the "Prayer for Relief" section. *Id.* at pp. 53-54.

Plaintiffs subsequently moved for a preliminary injunction. ECF Nos. 23-24. On September 11, 2020, the Court granted in part, and denied, in part Plaintiff's motion, enjoining the Timeline Repeal Rule and portions of the Broader Asylum EAD Rule for all members of CASA de Maryland ("CASA")

and the Asylum Seeker Advocacy Project ("ASAP"), two of the five organizational Plaintiffs (the "Preliminary Injunction" or "PI"). ECF Nos. 69-70.[3]

On April 20, 2021, Plaintiffs moved for summary judgment on their HSA claim related to the Broader Asylum EAD Rule, arguing that all named Plaintiffs had established Article III standing, and that Chad Wolf's tenure as Acting Secretary violated the HSA. *See* ECF No. 107 (as modified by ECF No. 118). In that motion, Plaintiffs also sought to modify the partial PI with respect to the Timeline Repeal Rule, such that rule would be enjoined nationwide, not just for CASA and ASAP members. *Id.* On June 15, 2021, Defendants moved for summary judgment on all of Plaintiffs' claims regarding the Timeline Repeal Rule. ECF No. 127. On June 29, 2021, Plaintiffs did the same, filing a Memorandum of Law opposing Defendant's Motion for Summary Judgment, and supporting Plaintiff's Motion for Summary Judgment on all their claims concerning the Timeline Repeal Rule. ECF No. 130. All three motions were ripe as of July 27, 2021, *see* ECF Nos. 107, 121, 125, 127, 133, 134, 135, and oral argument was held on January 18, 2022, *see* ECF No. 159.

## B. The *Asylumworks* vacatur and its consequences

On February 7, 2022, the United States District Court for the District of Columbia held that the 2020 Asylum EAD Rules were unlawfully enacted and vacated them in their entirety. *See Asylumworks v. Mayorkas*, No. 20-cv-03815 (BAH), ECF Nos. 41-42, 2022 WL 355213 (D.D.C. Feb. 7, 2022) (the "*Asylumworks* vacatur").[4] There is no dispute that these are the very same rules challenged in this action, which the Complaint also sought to have vacated, and that the PI and the motion to modify the PI sought to have enjoined. ECF Nos. 107, 130. Following a status conference on February 14, 2022, the Court entered an order staying this action until April 12, 2022 to allow for the possibility of an appeal during the 60-day window provided under FED. R. APP. P. 4(a). ECF Nos. 164, 166.

---

3    No answer to the Complaint was filed in this case. *See* ECF Nos. 88-106.

4    The *Asylumworks* order and memorandum opinion have already been docketed. *See* ECF No. 185-2.

At the expiration of that 60-day window, the Government informed the Court it did not intend to appeal the *Asylumworks* decision. A status conference was held on April 12, 2022, during which the Court opined and the parties expressly agreed that, in light of the *Asylumworks* vacatur, the challenged rules central to this action were vacated in their entirety and were no longer operative, and further the parties agreed that the cross motions for summary judgment were moot. ECF Nos. 168-170. The Court agreed to provide Plaintiffs with additional time to evaluate whether this action still presented a case-or-controversy, and subsequently issued an order memorializing the conference and formally denying as moot the three summary judgment motions. *Id.*

## C.  Subsequent developments[5]

Plaintiffs have taken little, if any, action to advance their purportedly viable claims in the seven months since following the *Asylumworks* vacatur. During this time, the Government, under no legal obligation, has gone to considerable efforts to understand, discuss, and (where possible) resolve Plaintiffs' concerns about the Government's efforts to implement the *Asylumworks* vacatur, and the consequences flowing from implementation of the vacatur. The parties were unable to resolve Plaintiffs' remaining concerns.

Since the vacatur, the central dispute between the parties was whether in light of the *Asylumworks* vacatur, this Court still has subject matter jurisdiction in this case, and (relatedly) whether the PI remains viable. Despite their fundamental disagreement about a number of matters, the parties are at least in agreement about the scope of the alleged post-vacatur harms.[6] In the following chart, Defendant

---

5       Defendants incorporate their prior statements concerning the background and procedural posture of this matter, particularly those relating to the events that have occurred following the *Asylumworks* vacatur. *See* ECF Nos. 185, 198.

6       Defendants have summarized Plaintiffs' alleged harms in various filings submitted in this matter. At no point have Plaintiffs taken issue with the extent and characterization of such "harms"—nor could they, the Government quoted Plaintiffs' own statements and provided copies of the original correspondence—thus, Plaintiffs concede their accuracy. *See McGraw v. Nutter*, No. 8: 20-cv-0265, 2020 WL 7425308, at *3, 5 (D. Md. Dec. 18, 2020) (Chasanow, J.) (holding that "Plaintiff failed to respond to this argument in his Opposition, which amounts to a concession…," and further noting that "a failure to respond to an argument in a dispositive motion may be fatal").

presents the alleged harms that Plaintiffs assert keep this case viable (left column), and the current status

of each alleged harm following numerous operational and legal developments (of which the

Government has made both Plaintiff and this Court aware, *see* ECF Nos. 185, 198):

| SOURCES OF PLAINTIFF'S ALLEGED HARM | STATUS AS OF THIS MOTION (October 18, 2022) |
| --- | --- |
| (1) CASA and ASAP will no longer receive the same prioritization they once did and that they will be grouped with the other similarly situated I-765(c)(8) applicants, resulting in the greater likelihood that their applications are not processed within 30 days.<br><br>*See* ECF No. 185 at p. 5 (citations omitted). | **Repeatedly addressed and rejected by this Court –** The Government's position is, and will continue to be, that post-*Asylumworks* vacatur, the Agency has a legal obligation to process all initial (c)(8) EAD applications within the same 30-day processing timeframe. This Court reiterated and fully adopted this position during both the June 13th and July 18th recorded conferences. The *Rosario* court's permanent injunction controls compliance with the 30-day processing time. On September 27, 2022, the *Rosario* court held that the Agency has taken "all reasonable steps" to resume compliance and therefore there was no contempt of that order.<br><br>*See* ECF No. 185 at pp. 5-6. (citing ECF No. 185-3 at p. 6; ECF No. 185-7 at pp. 14-19). |
| (2) The current Form I-765 contains several misstatements of law in light of the *Asylumworks* vacatur, including Instructions that "asylum seekers must pay the biometrics fee," that applicants are subject to the One-Year Filing Deadline bar, and that applicants must wait 365-day calendars days to be eligible to apply for an initial EAD.<br><br>*See* ECF No. 185 at p. 5 (citations omitted). | **Resolved** - On September 6, 2022, the Agency released revised versions of Form I-765, *Application for Employment Authorization*, and accompanying Instructions, in compliance with applicable requirements, and following approval of an Emergency PRA revision package. These revisions bring the Form I-765 and its Instructions into full compliance with the *Asylumworks* vacatur.<br><br>*See* https://www.uscis.gov/i-765.[7] |
| (3) "USCIS has continued to issue rejection notices instructing applicants to resubmit their applications with the (no longer in effect) biometric fee or fee waiver."<br><br>*See* ECF No. 185 at p. 5 (citations omitted). | **Resolved** – As explained in the Motion to Stay, USCIS confirmed that as of June 6, 2022, these notices were no longer being sent out to applicants. Plaintiffs have been repeatedly informed of this, and the correction was brought to the Court's attention during the June 13th Hearing. Having received no further objection or inquiry from Plaintiffs or any other party, Defendants consider this matter resolved. *Id.* at pp. 3, 4, 8.<br><br>*See* ECF No. 185 at p. 5 (citations omitted). |

---

[7]     USCIS updated the Form and Instructions for both the I-765 and I-589 on their respective USCIS webpages on September 6, 2022, and communicated that to the public the next day. *See* https://www.uscis.gov/newsroom/alerts/uscis-released-revised-editions-of-forms-i-589-and-i-765.

| | |
|---|---|
| (4) "USCIS also recently notified the public of its intention to continue using the current version of Form I-765—which was designed to implement the now-vacated rule changes and requires the collection of information now unnecessary to adjudicate any EAD application." <br><br> *See* ECF No. 185 at p. 5 (citations omitted). | **Resolved** - On September 6, 2022, USCIS released revised versions of Form I-765, *Application for Employment Authorization*, and its accompanying Instructions, in compliance with applicable requirements, and following approval of an Emergency PRA revision package. These revisions bring the Form and its Instructions into full compliance with the *Asylumworks* vacatur. Of important note, the *"USCIS may, in its discretion…"* language found in the current Form I-765—that Plaintiffs complain of—was present in the 2019 version of the Form I-765 Instructions. Thus, the language predates the now-vacated rules and is not a proper subject of inquiry in this case. As already mentioned, USCIS has removed the content from the Form I-765 and its accompanying Instructions. |
| (5) "USCIS's online "Case Inquiry" tool continues to list two drop-down options for I-765 category (c)(8) applications: "I765 – Based on a pending asylum application [(c)(8)]" and "I765 – Based on a pending asylum application [(c)(8)] and member of Rosario/CASA/ASAP." When applicants who are not members of CASA or ASAP select the first option and attempt to report delayed application processing, the tool returns a message that the application "is currently within the posted processing times" and "[a]n inquiry may not be created at this time." <br><br> *See* ECF No. 185 at p. 5 (citations omitted). | **Resolved** - As of September 20, 2022, USCIS has updated the "Case Inquiry" or "e-Request" tool on its website and has removed the I-765 (c)(8) drop down option with residual language referring to "Rosario/CASA/ASAP" members. Applicants can now select whether they have a query related to an initial or renewal/replacement application. |
| (6) The Code of Federal Regulations ("C.F.R."), and its electronic version ("e-C.F.R.") have not been updated to reflect the now vacated rules. <br><br> *See* ECF No. 185 at p. 5 (citations omitted). | **Resolved** - On September 22, 2022, DHS published the final rule, Asylum Application, and Employment Authorization for Applicants; Implementation of Vacatur, in the federal register.  *See* 87 FR 57795. The final rule implemented the *Asylumworks* vacatur by removing certain regulatory text governing asylum applications, interviews, and eligibility for employment authorization and an employment authorization document (EAD) based on a pending asylum application. It also reinserts various regulatory provisions as they appeared prior to the effective dates of the two final rules issued in June 2020. <br><br> On September 26, 2022, the e-C.F.R. was updated following publication of the vacatur rule.  *See* https://www.ecfr.gov/recent-changes |

Though not the focus of this Motion, these updates effectively moot all of Plaintiffs' post-

vacatur claims. Thus, even assuming the Court had jurisdiction to entertain these six alleged harms—

though it does not—the case must still be dismissed for lack of subject matter jurisdiction. *See McBryde*

*v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001)

("If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot. This requirement applies independently to each form of relief sought, and subsists through all stages of federal judicial proceedings, trial and appellate.") (quotations omitted) (citing *Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992); *Friends of the Earth v. Laidlaw,* 528 U.S. 167, 185 (2000); *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990)).

On July 22, 2022, the plaintiffs in *Asylumworks* filed a "Motion to Enforce Judgment or for Additional Injunctive Relief" (the "Enforcement Motion"), contending that the Government has failed to implement the vacatur. *See Asylumworks*, No. 20-cv-03815 (BAH), ECF No. 47 at p. 1 ("Defendants have failed to comply with this Court's order vacating and voiding ab initio the Rules."). The Enforcement Motion requests that the *Asylumworks* Court enter an order or issue injunctive relief: (1) "requiring immediate amendment of the e-C.F.R. to reflect the regulations now in effect"; (2) "compelling [d]efendants to immediately revise the I-765 Form, accompanying Form Instructions, and relevant agency guidance;" and (3) "directing [d]efendants to process applications in accordance with the effective rules, including by instructing that all applications be adjudicated within thirty days of their filing date or within fifteen days of this Court's order for any application that has been pending for longer than thirty days." *Id.* at pp. 2-3. Additionally, and of particular pertinence here, the *Asylumworks* plaintiffs are requesting the court issue an order "clarifying that EAD processing does not depend on ASAP or CASA membership[.]" *Id.* at pp. 24-25.

In opposition, the Government argues that it has complied with the *Asylumworks* vacatur, and that all reasonable efforts have been and continue to be made to implement the vacatur consistent with the Government's statutory and regulatory obligations, and to comply with obligations established under the *Rosario* permanent injunction. *See Asylumworks*, No. 20-cv-03815 (BAH), ECF No. 54 (the "Enforcement Opposition"). In their opposition, the Government has provided the *Asylumworks* Court with a thorough explanation of the operational efforts the Agency has undertaken since the vacatur

order issued—along with subsequent updates—as well as the statutory, regulatory, and procedural requirements that must be followed in the context of revising the C.F.R., the forms, and the form instructions affected by *Asylumworks* vacatur. The Government also explained the efforts undertaken to resolve the backlog of cases that was created as a consequence of the *Asylumworks* vacatur—a backlog, the Enforcement Opposition notes, that has adversely impacted the Government's compliance with the 30-day processing timeframe for adjudicating initial asylum-based EAD applicants. *Id.* at p. 5. That Enforcement Motion is fully ripe and awaiting resolution.

On August 25, 2022, the plaintiffs filed a "Motion for Civil Contempt and to Enforce Permanent Injunction" (the "Contempt Motion") in *Rosario v. USCIS*, No. 15-cv-00813-JLR (W.D. Wash.); ECF No. 185-6. [8] The Contempt Motion argued that USCIS has been non-compliant with the *Rosario* court's permanent injunction and requested that the court intervene to ensure greater compliance with the mandate that USCIS process all initial asylum EAD applications within 30-days. *Rosario*, No. 15-cv-00813-JLR at ECF No. 196.

On September 27, 2022, the *Rosario* court denied the Contempt Motion, explaining that after reviewing the Agency's various efforts, it was "satisfied that [the Government] ha[d] taken 'all reasonable steps' within their power to increase the resources available to adjudicate initial EAD applications, to reduce the backlog of pending applications, and to return to substantial compliance with the court's injunction." ECF No. 198-1 at p. 2. The court further noted "that USCIS has increased the number of officers assigned to adjudicate initial EAD applications from 62 to 106; continues to hire officers through multiple categories of personnel recruitment; has authorized substantial overtime for

---

[8] Again, *Rosario* was a class action comprised of individual asylum applicants —brought prior to the promulgation of the Timeline Repeal Rule—challenging USCIS' failure to process initial EAD applications within the 30-day processing timeframe it set for itself. *See Rosario v. USCIS*, 365 F. Supp. 3d 1156, 1162 (W.D. Wash. 2017). The *Rosario* plaintiffs prevailed, as the court granted both preliminary and permanent injunctive relief, on July 26, 2018, requiring that USCIS process work applications within the 30-day processing period. *Id.* at 1158; *see also Rosario*, No. 15-cv-00813-JLR, ECF Nos. 125-126.

officers; and has taken additional measures to increase the rate at which it processes initial EAD applications." *Id.* at p. 3. Finally, it noted that defendants "expect to eliminate the backlog of initial EAD applications by November 15, 2022, and to demonstrate full compliance with the 30-day timeframe for adjudicating initial EAD applications in their December 2022 status report." *Id.*

### III.   STANDARD OF REVIEW

Federal courts are of limited jurisdiction, constrained to exercise only that authority conferred to them by the Constitution and federal statute. *Raktabutr v. Greater Baltimore Med. Ctr.*, No. 1:21-cv-0008, 2021 WL 633374, at *2 (D. Md. Feb. 18, 2021) (Hollander, J). A federal court cannot rule on the merits of a case without first deciding that it has subject matter jurisdiction over the category of claim in at issue. *See Daimler Tr. v. Prestige Annapolis, LLC*, No. 1:16-cv-544, 2016 WL 3162817, at *3 (D. Md. June 7, 2016) (Hollander, J.) (federal courts "have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it") (citations omitted). So important is this threshold inquiry, that an "objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Rule 12(h)(3)) (cleaned up). Indeed, this is particularly the case with mootness, as the Fourth Circuit has instructed that courts should consider their ability to continue hearing a case, even when jurisdiction is "fairly in doubt." *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) ("**A court is deprived of jurisdiction over a case when the case becomes moot. Therefore, we address mootness, irrespective whether the issue was raised by the parties, when our jurisdiction is fairly in doubt.**") (emphasis added) (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir.2013); *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009); *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir.2002)).

A Rule 12(b)(1) motion to dismiss is a challenge to subject matter jurisdiction, "rais[ing] the issue of whether the court has the authority to hear and decide the case." *Daimler*, 2016 WL 3162817,

at *3 (cleaned up). Such jurisdictional challenges generally proceed in one of two ways, either as: (i) a "facial challenge," where the party seeking dismissal asserts that the complaint's allegations are insufficient to establish subject matter jurisdiction, or (ii) a "factual challenge," where the party seeking dismissal asserts the that the complaint's jurisdictional allegations are not true or are incomplete to the point of being not true. *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (Hollander, J.); *see also MedSense, LLC v. Univ. Sys. of Maryland*, 420 F. Supp. 3d 382, 389 (D. Md. 2019) (Simms, J.) (discussing distinctions between facial and factual challenges). Because the entirety of the relief sought in the Complaint is not legally attainable, this Motion presents a facial challenge to subject matter jurisdiction.[9]

Regardless of the route chosen, Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *See Trump*, 416 F. Supp. 3d at 492-93; *see also Kone*, 2004 WL 2944186, at *1 ("A federal court must thus dismiss for lack of jurisdiction when a plaintiff cannot show an express waiver of sovereign immunity.") (citations omitted). And "[t]here is no presumption of jurisdiction *Sampson v. Sheppard Pratt Hosp. at Ellicott City*, No. 1:12-cv-204, 2012 WL 12846966, at *1 (D. Md. Feb. 22, 2012) (Nickerson, J.) (citing *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). The Court must grant a Rule 12(b)(1) motion to dismiss, without exception, "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## IV.    Argument

The Court must dismiss this action on mootness grounds. The 2020 Asylum EAD Rules have been vacated in their entirety and are no longer in effect, which was precisely the full relief Plaintiffs

---

[9]      Defendant believes the Complaint's allegations, in themselves, are sufficient for a Rule 12(b)(1) dismissal. However, this Motion also discusses subsequent developments and events and pertinent to the viability of the allegations in the Complaint. If the Court finds it necessary to consider information outside of the Complaint, this Motion can and should proceed as a factual challenge to subject matter jurisdiction. *See MedSense,* , 420 F. Supp. 3d at 389 (providing thorough discussion of facial and factual challenges to subject matter jurisdiction).

sought in their Complaint. The two exceptions to the mootness doctrine, as recognized by the Supreme Court, do not apply. And there is simply no authority for the proposition that a Court can retain jurisdiction over a case based on a (now two-year-old) preliminary injunction, where it is otherwise impossible for the Court to grant the relief sought in the pleadings.

### A. Mootness generally

One of the justiciability doctrines of Article III, "[t]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (alterations and internal quotation marks omitted).[10] Under the mootness doctrine, a federal court's jurisdiction "extends only to actual cases or controversies." *Humane Soc'y of the United States v. United States Fish & Wildlife Serv.*, 838 F. App'x 721, 727–28 (4th Cir. 2020) (citing U.S. Const. art. III, § 2); *Honig v. Doe,* 484 U.S. 305, 317 (1988) ("Under Article III of the Constitution, federal courts may only adjudicate actual, ongoing controversies.") (cleaned up). "When 'a case or controversy ceases to exist—either due to a change in the facts or the law—the litigation is moot, and the court's subject matter jurisdiction ceases to exist.'" *Humane Soc'y*, 838 F. App'x at 728 (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)); *see also Mahoney v. Babbitt*, 113 F.3d 219, 220–21 (D.C. Cir. 1997) (explaining that the question of mootness comes into focus "when 'circumstances destroy the justiciability of a suit previously suitable for determination.'") (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533 (2d ed.1984)). "Put another way, 'a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Humane Soc'y*, 838 F. App'x at 728 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *see also  Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described

---

[10]     The mootness doctrine "rests on the fundamental principle of [federal] jurisprudence that Article III of the Constitution "limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Mahoney v. Babbitt*, 113 F.3d 219, 220–21 (D.C. Cir. 1997) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471 (1982). From "this principle there arise several doctrines that cluster about Article III," including "standing, mootness, ripeness, political question, and the like[.]"*Mahoney*, 113 F.3d at 220 (citations and quotations omitted); *see also Allen v. Wright,* 468 U.S. 737, 750 (1984).

as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

The jurisdictional requirement of an actual, ongoing controversy continues through all stages of federal judicial proceedings. *Grice v. Colvin*, 97 F. Supp. 3d 684, 705–06 (D. Md. 2015) (Hazel, J.) (citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990)). For this Court **"[t]o sustain [its] jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed[.]"** *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (emphasis added). "In declaratory judgment actions," such as here, "to satisfy the case or controversy requirement the dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests, and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007)).

Importantly, **"the scope of a federal court's jurisdiction to resolve a case or controversy is defined by the affirmative claims to relief sought in the complaint."** *Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) (emphasis added) (citations and quotations omitted). That is, "to determine whether [a] case [has] become moot, **[federal courts] looked only to the relief requested by [the plaintiffs]"** in the complaint. *Id.* (emphasis added) (citations and quotations omitted); *see, e.g., Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414–15 (1972) (holding that a challenge to repealed statute providing tax exemption for church property was moot where no court could grant "[t]he *only relief* sought in the complaint"); *Love v. Griffith*, 266 U.S. 32, 34 (1924) (holding that a challenge to a rule, which prohibited African Americans from voting in past primary election, was moot because the "bill was for an injunction that could not be granted at that time" and **"[t]here was no constitutional obligation to extend the remedy beyond**

**what was prayed**") (emphasis added); *Prowse v. Payne*, 984 F.3d 700, 702 (8th Cir. 2021) (holding that "a case becomes moot 'when changed circumstances already provide the requested relief and eliminate the need for court action'") (quoting *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018)). In such circumstances, the court "must refrain from reaching the merits because any opinion issued would be merely advisory, resting on "hypothetical state of facts" not in the complaint or at issue in the litigation. *Lewis*, 494 U.S. at 477.

### A. Dismissal is required because all claims in the Complaint are moot.

Under a straightforward application of the above principles, this case is clearly moot. The relief sought in the Complaint is clear, fixed, and unequivocal: Plaintiffs sought the vacatur of the EAD Rules. *See generally Compl.* at pp. 48-51; *see also id.* at pp. 53-54 (Prayer for Relief); ECF No. 69 (Court's Memorandum Opinion) at p. 23 ("Plaintiffs seek the ultimate remedy of setting aside the rules[.]"); ECF No. 159 at p. 58 (Ms. Evarts, stating that "vacatur of the rules in their entirety is the proper remedy at summary judgment.").[11] The *Asylumworks* judgment vacated the 2020 Asylum EAD Rules in their entirety, and the Government is legally bound by that ruling. *See* ECF No. 185-2 (*Aslyumworks* vacatur opinion).

Not only are the 2020 Asylum EAD Rules no longer in existence, but the Government affirmatively restored the prior regulations through the publication of a vacatur rule on September 22, 2022, which corresponds with this Court's expectation. ECF No. 69 at p. 62, n.17 (explaining that if Plaintiffs ultimately succeed, "the Government will have to likely revert to the previous rules.") (citing *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). Because the rules at issue in the Complaint, quite literally, do not exist anymore, Plaintiffs' alleged injuries have also ceased to exist. Likewise, none of the same issues remain "live." *Marietta Mem'l Hosp. v. W. Virginia Health Care Auth.*, 2017 WL 5559926, at *2 (S.D.W. Va. Nov. 17, 2017) ("One way in which a case can become

---

11      A copy of the transcript of the January 18, 2022 oral arguments is attached hereto as **Exhibit A**.

moot is by a change in law if the change renders the issues in the case no longer 'live.'") (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)). Whether the 2020 Asylum EAD Rules were lawfully enacted pursuant to the Acting Secretary's authority (FVRA claims), whether the Acting Secretary's appointment violated the succession provisions of the agency's enabling statute (HSA claims), and whether "agency's rulemaking process violated the APA" (APA claims) are all disputes that are no longer "alive," *see Lewis*, 494 U.S. at 477, for the simple and obvious fact that the rules do not exist. *See* ECF No. 69 at pp. 15-17 (the Court summarizing the three arguments made by Plaintiffs). As a result, there is nothing in the Complaint—i.e. within the scope of this litigation—to redress.

Indeed, the vacatur of the 2020 Asylum EAD Rules is precisely the type of intervening event that requires federal courts to dismiss on mootness grounds. *See Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation omitted) (explaining that when "intervening events make it impossible to grant the prevailing party effective relief," no live controversy remains; *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) ("A claim may be mooted "when the claimant receives the relief he or she sought to obtain through the claim, because the court no longer has effective relief to offer."); *Sharp Healthcare v. Leavitt*, 2009 WL 790113, at *3 (S.D. Cal. Mar. 25, 2009) ("When the complaint requests only declaratory or injunctive relief and intervening legislation settles or alters the controversy, the case is moot and must be dismissed"); *see, e.g., Initiative & Referendum Inst. v. USPS*, 685 F.3d 1066, 1074 (D.C. Cir. 2012) (holding that "[a] challenge to a superseded law is rendered moot unless there [is] evidence indicating that the challenged law likely will be reenacted.") (quotations and citations omitted)); *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (holding that "any issues concerning whether [a bill] became a law were mooted when that bill expired by its own terms."); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (collecting cases) (holding that **"when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot"**) (emphasis added); *Coalition of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184 (D.C. Cir. 2004) (holding that

a constitutional challenge to a regulation was moot where the agency abandoned the regulation); *National Mining Ass'n v. U.S. Department of Interior*, 251 F.3d 1007 (D.C. Cir. 2001) (holding that a challenge to a revised rule was moot, explaining that "[t]he old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed" because "[a] new system is now in place" and "[a]ny opinion regarding the former rules would be merely advisory"); *Arizona Public Service Co. v. EPA*, 211 F.3d 1280, 1295–96 (D.C. Cir. 2000) (holding moot a challenge to an EPA rule after the agency issued a "clarification" altering the regulation); *Freeport–McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 46 (D.C. Cir. 1992) (finding a case "plainly moot" where the challenged agency order had been "superseded by a subsequent order," and noting that such an occurrence was so "routine" that "[o]rdinarily, we would handle such a matter in an unpublished order"); *Torres v. U.S. Dep't of Homeland Sec.*, 2018 WL 1757668, at *10 (S.D. Cal. Apr. 12, 2018) (holding that two alleged APA violations, concerning revocation of plaintiff's DACA status, were moot where plaintiff received a remedy sought for those violations); *CREW v. Wheeler*, 352 F. Supp. 3d 1 (D.D.C. 2019) (holding that "[t]he promulgation of a superseding policy or program can have the power to moot a challenge to the old one.").

### B. No exceptions to mootness apply.

Federal courts recognize two limited exceptions to the mootness doctrine. *Beahn v. Gayles*, 550 F. Supp. 3d 259, 271 (D. Md. 2021) (Hazel, J.). First, courts have held that the mere "voluntary cessation" of a challenged action may not moot a case if that action could reasonably be expected to recur. *Id.* (citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). And "a second, similar, exception to the mootness doctrine" applies where "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," and "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (citing *Fed. Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 462 (2007). This "'capable of repetition yet evading review' exception is a narrow one, reserved for 'exceptional' circumstances." *Id.* (quoting *Int'l*

*Bhd. of Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018)). Neither exception applies here: the 2020 Asylum EAD Rules were vacated in their entirety by a federal court; the Agency did not voluntarily stop applying them; and there is no probable scenario in which these rules will be enacted again.[12] There are no other known mootness exceptions.

### C.  The preliminary injunction does not confer jurisdiction where the relief sought in the Complaint is moot.[13]

"A preliminary injunction '**is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties' pending final judicial review.**" ECF No. 69 at p. 25 (emphasis added) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012); *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981); *see also GlaxoSmithKline, LLC v. Brooks*, No. 8:22-cv-00364, 2022 WL 463070, at *2 (D. Md. Feb. 15, 2022) (Grimm, J.) ("The purpose of a preliminary injunction or a temporary restraining order… is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, **ultimately to preserve the court's ability to render a meaningful judgment on the merits**.") (emphasis added). Indeed, the Court's opinion granting this temporary relief, rightly conveys this very limitation. ECF No. 69 at pp. 62-69.

Accordingly, even if Plaintiffs' newfound harms were legitimate and viable, this Court has no jurisdiction to review and redress them. There is simply no provision within Rule 65 ("Injunctions and Restraining Orders") that allows for this, nor is there any other legal authority to support the proposition that a court that loses jurisdiction on mootness grounds can nonetheless maintain control over the case because of a preliminary injunction that had been issued.

---

12      Plaintiffs have not suggested that one of the two mootness exceptions applies.

13      During the June 13th hearing, Plaintiffs' counsel represented to this Court that *Kiakombua v. Wolf*, 498 F. Supp. 3d 1 (D.D.C. 2020), stood for the proposition that this Court can continue enforcing a preliminary injunction, even though the relief in the Complaint could not be provided by this Court. *See* ECF No. 185-7 at pp. 22-23, 27 *Kiakombua* does nothing of the sort. The *Kiakombua* court actually issued a final order vacating the Agency's "Credible Fear Interview Lesson Plan," for being in violation of the INA and APA. After vacating the lesson plan, however, the court found it necessary to maintain the injunction to ensure that everyone whose claims were adjudicated under the "illegal" manual were given a new interview. Here, this Court has not and cannot issue a final judgment on the merits, and Plaintiffs have already been provided the full relief being sought in their Complaint.

Federal courts that have been confronted with such an unwieldly theory have found that a preliminary injunction does not confer jurisdiction, but subsists on the viability of the underling action—thus, where the relief sought in the complaint is moot and no exception to mootness applies, the preliminary injunction cannot continue. *See, e.g., Marietta Mem'l Hosp. v. W. Virginia Health Care Auth.*, 2017 WL 5559926, at *2 (S.D.W. Va. Nov. 17, 2017) (holding that plaintiff's complaint was "moot because the challenged provision [had] been repealed, [and] there is no indication that its reenactment is probable, and as a result, further held that "the current preliminary injunction [was] similarly moot") (citations omitted); *Norfolk 302, LLC v. Vassar*, 2009 WL 10689618, at *1 (E.D. Va. Jan. 16, 2009) (explaining that the court's preliminary injunction, which "enjoin[ed] enforcement of some language in the challenged statutes and regulation," was deemed moot by the Fourth Circuit, when "the Virginia General Assembly revised the language of the challenged statutes and regulation legislature"); *Mid Atl. Express, LLC v. Baltimore Cty., Md.*, 410 F. App'x 653 (4th Cir. 2011) (collecting cases) (rejecting plaintiff's argument that an "otherwise moot controversy may be live if a party has a claim against a Rule 65.1 injunction bond"); *Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*, 1994 WL 267836, at *10, n.4 (S.D.N.Y. June 15, 1994) (stating that the need for injunctive relief is mooted where defendant revises allegedly infringing commercial); *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 109 F. Supp. 3d 626, 628 (S.D.N.Y. 2015) (dissolving preliminary injunction where the government defendants' change in policy mooted the case before a decision on the merits), *aff'd*, 815 F.3d 105, 111 (2d Cir. 2016); *Baker v. Bray*, 701 F.2d 119, 122 (10th Cir. 1983) (vacating a preliminary injunction due to district court's dismissal of "the claim upon which the request for a preliminary injunction was based"); *Victory v. Berks Cty.*, 2019 WL 653788, at *6 (E.D. Pa. Feb. 15, 2019) (dissolving preliminary injunction where case became moot before adjudication of the merits); *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977) (explaining that the "preliminary injunction was by its very nature interlocutory, tentative and impermanent," thus "[w]ith the entry of the final judgment, the life of the preliminary injunction came

to an end, and it no longer had a binding effect on any one"); *see also* 11A FED. PRAC. & PROC. CIV. §
2947 (3d ed.) ("A preliminary injunction remains in effect until a final judgment is rendered or the
complaint is dismissed, unless it expires earlier by its own terms, or is modified, stayed, or reversed.").

### D. The practical consequences of Plaintiffs' theory

There is virtually no limitation to Plaintiff's theory (and why would there be). Were this Court
to accept this legally unsupported position, and thereby ignore the Rules and basic tenants of
justiciability, Plaintiffs could use this action to seek all matter of relief into perpetuity. Any time there is
a discrepancy on  the Form I-765 or  its accompanying Instructions (however slight), any time the
USCIS website requires a necessary update, or any time the Agency dips below a certain percentage of
30-day EAD processing timeframe, Plaintiffs would use this action and this Court to compel Agency
action. It matters not that Plaintiffs received what they asked for in their Complaint, or that there
remains no legal support for their post-vacatur jurisdiction theory to begin with, or that their newfound
grievances have all been resolved by the Government—this is a consequence of what Plaintiffs are
requesting here.

### E. Plaintiffs have other means to litigate their alleged harms.

Rather than allow for Plaintiff to completely subvert the threshold requirements of subject
matter jurisdiction and the Federal Rules of Civil Procedure, Plaintiffs can continue pursuing their
alleged harms in this Court (or elsewhere) by filing another lawsuit. Their remaining (post-vacatur)
claims, to the extent they have not been addressed by subsequent operational and legal developments—
consist of two categories. First, Plaintiffs claim that their members' applications are not being
adjudicated within 30 days. And second, Plaintiffs assert that the Agency has put forward insufficient
notice or conflicting information concerning the vacatur of the 2020 Asylum EAD Rules. In fact,
Plaintiffs make this abundantly clear where in arguing they have satisfied the requirements for summary
judgment and a permanent injunction, as they state that "[they] and [their] Members have suffered and

continue to suffer irreparable injuries due to the continued existence of erroneous information on official forms, instructions, websites, and in the C.F.R." ECF No. 189-1 at p. 13. This is a clear admission from Plaintiffs that they are departing from the alleged wrongdoings as pleaded—these allegations do not appear in the Complaint, nor does any request for relief targeting these alleged harms. *Supra Akiachak* ("the scope of a federal court's jurisdiction to resolve a case or controversy is defined by the affirmative claims to relief sought in the complaint").

As to the first category, this is plainly a *Rosario* issue, which this Court has rightly reminded Plaintiffs of, time and again. *See* ECF No. 174 (June 13th Hearing) at pp. 16-17; ECF No. 181 (July 18th Hearing) at pp. 4-5.[14] And as to the second, such a theory—however unfounded—can be brought in a subsequent lawsuit. Indeed, alleged injuries due to lack of notice or erroneous information on official forms, instructions, and websites have been the pleaded in lawsuits before, just not this one. *See, e.g., Mendez Rojas v. Johnson (Secretary of the Department of Homeland Security)*, 305 F. Supp. 3d 1176 (W.D. Wash. 2018) (a class action in which asylum seekers who challenged, on due process grounds, the Agency's alleged failure to provide them with notice of the statutory requirement that an asylum seeker must apply for asylum within one year of arrival).

## V.   CONCLUSION

In sum, for the reasons set forth herein, and for other good cause shown, this Court should dismiss this action under Rule 12(b)(1). A proposed order is enclosed.

---

14      Hearing transcripts can be found at ECF No. 185-7 (June 13th Hearing) and **Exhibit B** (July 18th Hearing).

Date: October 18, 2022

Respectfully submitted,

Erek L. Barron
United States Attorney

*/s/ Patrick G. Selwood*
Patrick G. Selwood
Assistant United States Attorney
United States Attorney's Office, District of Maryland
36 South Charles Street, Fourth Floor
Baltimore, Maryland, 21201
Telephone: (410) 209-4892
Email: Patrick.Selwood@usdoj.gov

*Counsel for the Defendants*