IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MAYORKAS, *et al.*, <br><br> Defendant. | Case No. 20-cv-02118-PX |

**RESPONSE IN OPPOSITION**

Defendants, by and through undersigned counsel, submits this response in opposition to Plaintiff's *Motion for Summary or, in the Alternative, for Contempt*, *see* ECF No. 189.[1] As explained below, and for reasons set forth in Defendants' recent Motion to Dismiss, *see* ECF No. 202, the Court should deny Plaintiffs' motion and dismiss this action.

**I.    BACKGROUND**

The Government incorporates the statements concerning the background and procedural of this case, including the events and developments that have transpired from the *Asylumworks* vacatur to present. *See* ECF Nos. 180, 185, 198, 202. The Government also incorporates the arguments and evidence submitted in response to the original motion for a preliminary injunction, as well as their motion for partial summary judgment and oppositions to Plaintiffs' previous motions for summary judgment and to modify the PI. *See* ECF Nos. 41, 121, 133, 127, 134.

The Government has serious concerns about many of the factual representations contained within the omnibus filing and their supporting declarations, many of which are not relevant to the issues

---

1    Acronyms, names, and capitalized terms not defined in this Opposition are given the meanings ascribed to them in the Government's recently-filed Motion to Dismiss, *see* ECF No. 202.

presented.[2] However, Plaintiffs' motion can and should be resolved on the basis of legal principles and various documents, of which this Court can and should take judicial notice. *See Vaccaro v. Monte Nido Roxbury Mills*, 21-cv-1840, 2022 WL 19775, at *3 (D. Md. Jan. 3, 2022) (Gallagher, J.) ("stating that in the context of a "Rule 12(b)(6) [motion], a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed," and that "[t]his court can take judicial notice of its own records"). Because this Opposition is focused on only those matters relevant to Court's resolution of the pending motions, Defendants need not swing at pitches in the dirt.[3]

## II. CLAIMS FOR RELIEF AND STANDARDS OF REVIEW

Plaintiffs contend that they are entitled to summary judgment Counts 1, 2, 3, and 4 of the Complaint. They provide a brief summary of the arguments made in their prior motions for summary judgment, which they previously abandoned as moot, with a footnote incorporating all of their previously made arguments and evidence. Plaintiffs further contend that they are entitled to permanent injunctive relief on their claims. ECF No. 189-1 at pp. 12-13. Alternatively, Plaintiffs seek an order of contempt because, as they see it, such an order is "urgently needed to abate ongoing irreparable harm to Plaintiffs and Members." *Id.* at p. 17.

### A. Motion for summary judgment and a permanent injunction.

Defendants incorporate the standards of review for a Rule 56 motion summary judgment, as fully demonstrated in Defendants' prior filings. ECF Nos. 121, 127, 133, 134.

---

[2] Not the least of which includes the Opposition's discussions about purported settlement discussions. Defendants do not agree with those (and many other) representations. It is quite troubling—unexpected, really, given the aid of such well-healed Plaintiffs' counsel—that such information would be included in the first place. Because undersigned counsel is bound to follow this Court's local rules and the Federal Rules of Evidence, not much more can (or should) be said on the topic.

[3] Accordingly, unless otherwise indicated, the Government does not concede any statements of fact or law presented in Plaintiffs' omnibus filing.

"A party seeking a permanent injunction must demonstrate 'actual success' on the merits, rather than a mere 'likelihood of success' required to obtain a preliminary injunction. *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (quoting *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 546 n.12 (1987)). That is, "[t]he party must demonstrate (1) 'it has suffered an irreparable injury'; (2) 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury'; (3) 'considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted'; and (4) 'the public interest would not be disserved by a permanent injunction.'" Id. (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *Id.*

### B. Motion for contempt

"A finding of civil contempt is appropriate when a party 'violates a court order that sets forth an unequivocal command.'" *GlaxoSmithKline, LLC v. Brooks*, No. 8:22-cv-00364-PWG, 2022 WL 1443735, at *10 (D. Md. May 6, 2022) (Grimm, J.) (quoting *Ledo Pizza Sys., Inc. v. Singh*, No. 1:13-cv-2365, 2014 WL 1347113, at *2–3 (D. Md. Apr. 3, 2014) (Quarles, J.). To establish civil contempt, the complainant has the burden to demonstrate "the following four elements by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result." *Id.* (cleaned up). Substantial compliance with a court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply. *See United States v. Darwin Const. Co.*, 680 F. Supp. 739, 740 (D. Md. 1988) (Young, J.) ("Substantial compliance is found where all reasonable steps have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken.") (citations and quotations omitted).

### III. RESPONSES IN OPPOSITION

#### A. This Court lacks subject matter jurisdiction to grant a motion for summary judgment.

As explained in the recently-filed Motion to Dismiss, *see* ECF No. 202, this action is moot, and therefore the Court must dismiss for lack of subject matter jurisdiction. And because it must do so, this Court does not have the jurisdiction to issue any of the relief sought in Plaintiff's motion.

#### B. Addressing pertinent allegations

In support of their summary judgment, which includes the request for a permanent injunction, and contempt motions, Plaintiffs present various claims that are simply incorrect or outdated.

First, Plaintiffs contend that the Agency's public statements and instructions regarding initial EAD applications for asylum seekers are confusing and contradictory and continue to implement the 2020 Asylum EAD Rules, which creates uncertainty and delay. Specifically, they acknowledge the Agency' updates to the Form I-765 and its accompanying Instructions, but suggest that the updated Form and Instructions continue to give effect to the enjoined components of the 2020 Asylum EAD Rules. Plaintiffs note, in particular, that the new Form I-765 Instructions grant USCIS discretionary authority to deny employment authorization based on any arrest or conviction, and that the Instructions continue to cross reference 8 C.F.R. § 208.7, which Plaintiffs allege to be a continued implementation of the now-vacated 2020 Asylum EAD Rules.

This contention encapsulates perfectly how Plaintiffs view this litigation following the *Asylumworks* vacatur: it as an opportunity for them to bring before the Court every perceived harm or misgiving them have with the Agency, despite such claims are not in the Complaint, and despite the Agency otherwise explaining how and when the issue will be resolved. The Agency has been clear in its public communications that it immediately ceased implementing the vacated 2020 Asylum EAD Rules following issuance of the *Asylumworks* decision. As has been repeatedly explained, the processes necessary to correct agency forms and update the C.F.R. take time, demanding compliance with various

legislative and regulatory mandates, and often requiring action from other, non-Agency related government offices. The Agency has and will continue to update its website as necessary, and will make every effort to keep the public informed of further changes. On September 6, 2022, USCIS published the revised Form I-765 and its accompanying Instructions (July 26, 2022 Edition). This updated version removed changes resulting from the 2020 Asylum EAD Rule and mirrors the December 26, 2019 Edition of the Form and its Instructions in respects relevant to the 2020 Asylum EAD Rules. As for the Plaintiffs' claim that the revised version of the Form I-765 continues to contain language indicating that USCIS has discretionary authority to deny employment authorization based on arrests or convictions, Plaintiffs are simply confused. That language was in the 2019 version of the Form I-765 Instructions. It was **not** language that was added by the now-vacated 2020 Asylum Rules. A simple review of the 2019 version of the Form I-765 will reveal this fact.

Second, Plaintiffs repeatedly accuse the Government of unlawfully withholding information and purposefully violating the PI. *See, e.g., Opp.* at pp. 9-10. By this, Defendant believes Plaintiff is referring to USCIS's actions, in compliance with the *Asylumworks* vacatur, to incorporate CASA and ASAP member (c)(8) initial EAD applications into a unified adjudication queue with all other (c)(8) initial EAD applications. Plaintiffs learned of this change no later than June 3, 2022, when the Government informed Plaintiffs, via letter correspondence, that following the 60-day window that proceeded the *Asylumworks* vacatur, the Government could no longer legally differentiate between initial (c)(8) EAD applications filed by CASA and ASAP members and any other initial (c)(8) EAD applicants:

> USCIS appreciates the concern of CASA and ASAP members, that they will be impacted by the *Asylumworks'* vacatur. As you know, prior to the vacatur and as a consequence of the CASA-PI, your clients were the only initial (c)(8) EAD applicants entitled to the 30-day processing timeframe. While the *Asylumworks* vacatur provides CASA and ASAP members the very relief they desire, the decision also ushers in the unavoidable consequence that CASA and ASAP members are now subject to the same governing rules and regulations as all other applicants in the initial (c)(8) category. This means their applications will no longer be treated differently than other initial (c)(8) EAD applicants. The agency is now legally obligated—and, indeed, it is devoting all resources—to meeting the 30-day processing timeframe as to all (c)(8) EAD applicants, without regard to CASA or ASAP membership.

*See* ECF No. 185-3 at p. 4.

There is no basis in this or any other Court's orders for providing special treatment to CASA and ASAP members after the February 7, 2022 vacatur of the relevant rules. Further, since June 3, 2002, Plaintiffs have filed eight pleadings, and there have been two hearings with the Court (June 13, 2022 and July 18, 2022). If this issue was so concerning, or if the Government's actions were so egregious and violative of some agreement, it would seem perplexing why Plaintiffs are now just raising it. But the answer is quite clear. The Court has routinely indicated that, post *Asylumworks*, any concerns Plaintiffs have about the time required to process their initial (c)(8) EAD applications is a matter governed by the *Rosario* class action. Moreover, there was never any "agreement" or "implementation plan" as Plaintiffs suggest. There is not a single word in the Court's PI order to that effect, Defendant is unaware of any such document, and, most tellingly, Plaintiffs have not provided any such agreement. They merely cite to a declaration issued in the *Rosario* case, which also does not contain the agreement.

Third, Plaintiffs argue that the Government continues to instruct CASA and ASAP members to identify themselves as such when they use the USCIS e-Request Tool, and that the Government advises members—on its public-facing website—that "[w]e are implementing the . . . preliminary injunction in *Casa de Maryland*," such that Members are entitled to the benefit of this Court's PI if they submit membership evidence with their EAD applications. These claims are outdated, as these issues were corrected by the Agency on September 19, 2022. As Plaintiffs' counsel has been advised, if the Agency inadvertently continues to have such residual language posted on its website, it will make every effort to immediately remediate this issue. And it has.

Fourth, Plaintiffs claim that the 2020 Asylum EAD Rules have not been removed from the C.F.R. On September 22, 2022, DHS published the final rule, *Asylum Application, and Employment Authorization for Applicants; Implementation of Vacatur*, in the Federal Register implementing the

*Asylumworks* vacatur.[4] Consistent with the *Asylumworks* decision, this final rule implements the vacatur by removing and restoring certain regulatory text governing asylum applications, interviews, and eligibility for employment authorization based on a pending asylum application. *See* 87 FR 57795. As both the Court Plaintiffs have been advised, the e-C.F.R. has also been updated to reflect this change; however, the official volume of the C.F.R. relevant to these changes is only updated annually (on January 1st), and will reflect this change at that time.[5] While the official volume of the C.F.R. has not yet been updated, Plaintiffs cannot contrive an argument for ongoing harm on that basis. It would be nonsensical to suggest courts retain jurisdiction for up to a year until a vacated regulation, which vacatur was ordered by a court and implemented through publication in the Federal Register of a conforming rule, appears in the official volume of the C.F.R. This is underscored by the ready availability to the public of the e- C.F.R., which although unofficial, expeditiously publishes accurate and up to date information reflecting changes to the C.F.R. in advance of the official publication cycle.

Fifth, Plaintiffs make various assertions that their Members are harmed because they are confused by the post-vacatur website and application, and therefore have to "call ASAP seeking assistance when their applications are not processed within 30 days." ECF 189-1 at p. 7. Complaints about having to advise their clients are perplexing. Plaintiffs' clients became members of CASA and ASAP to obtain information and assistance, including legal advice, regarding processes that are inherently complex and that can be confusing under the best of circumstances. The goal sought by Plaintiffs has been achieved: the nationwide vacatur of two rules. Now they complain of having to provide ongoing services and legal advice to the clients they recruited and chose to represent. The fact that counsel's resources are being impacted by their decision to represent thousands of asylum

---

4   *See* https://www.federalregister.gov/documents/2022/09/22/2022-20228/asylum-application-and-employment-authorization-for-applicants-implementation-of-vacatur

5   *See* https://ask.gpo.gov/s/article/When-will-the-Code-of-Federal-Regulations-CFR-be-published-on-govinfo.

applicants in this matter is neither a surprise nor is it a harm chargeable to the Government. Of note, Plaintiffs do not complain that USCIS is or has been wrongfully denying impacted EAD applications following the vacatur by unlawfully applying provisions of the vacated rules. Rather, they complain that their clients continue to need help understanding the consequences of the vacatur decision that awarded plaintiffs the outcome they sought, and that created a predictable period of confusion and uncertainty in its aftermath. Plaintiffs can and should continue to provide their clients with the services that they advertise they provide, and that are part of any legal representation. But that work is not a harm caused by plaintiffs—it is simply a responsibility Plaintiffs chose to undertake in their mission.

The Agency has taken and will continue to take all the administrative steps necessary to inform the public, revise forms, and revise the C.F.R. consistent with the vacatur and the legal and regulatory requirements that inform those processes. As long as courts are empowered to vacate rules, the Agency, the public, and opposing counsel will be faced with the delays inherent in these processes. Every time a court vacates a rule that DHS promulgated, the Agency is put to a burdensome collection of processes and requirements to comply with the vacatur. In this particular instance, internally, USCIS was required to immediately instruct adjudicators regarding the changed legal requirements applicable to the impacted adjudications. It was also necessary for USCIS to inform the public that the agency was no longer implementing the vacated rules, that applicants no longer needed to submit certain evidence, and that revised timelines applied to the process. Further, it was necessary for the Agency to decide when and how to revise impacted forms and revise the C.F.R. given the relevant forms and regulations are not specific to (c)(8) EADs but encompass other employment authorization subcategories as well.

Sixth, Plaintiffs are incorrect that that the *Asylumworks* and *Rosario* cases have been insufficient to ensure that the Government is making meaningful progress toward a 30-day processing timeframe for EAD applicants with pending asylum applications. The *Rosario* injunction, and its impact on the Agency in the form of USCIS's sustained efforts to comply post-vacatur are self-evident. USCIS has

doggedly pursued the twin goals of reducing the backlog and resuming compliance with the 30-day processing timeframe since the vacatur order issued, as the monthly *Rosario* report demonstrates.

USCIS does not have unlimited resources. To resume processing initial (c)(8) EAD applications within 30 days post *Asylumworks*, USCIS prioritized the backlog of approximately 80,000 cases created overnight due to the vacatur. USCIS also needed to address its internal adjudication capacity as the number of new cases being filed subject to the 30-day timeframe also suddenly increased substantially. Had USCIS not first addressed the backlog, it might have been able to keep up with the increased number of new initial (c)(8) EAD applications post *Asylumworks* month-to-month, but only at the expense of the applicants who had been waiting longest. USCIS's ability to actually achieve compliance with the 30-day timeframe would have been substantially delayed, as adjudication of the applications of the most aggrieved applicants, those whose applications had been waiting the longest, would have been consigned to a secondary or tertiary priority behind new applicants.[6]

### C. There is no legal or factual basis for this Court to grant any of the relief sought by Plaintiffs.

In light of the foregoing, and because this Court is without subject matter jurisdiction, Plaintiffs are not entitled to any relief sought in their motion. Relatedly, Counts 1, 2, 3, and 4 of the Complaint all allege that the 2020 Asylum EAD Rules were enacted unlawfully, and they seek vacatur of those rules on those grounds. But this Court cannot vacate rules that no longer exist. Accordingly, Plaintiff is not entitled to summary judgment on those counts (or any counts in the Complaint).

---

[6] Consider the following data. On January 31, 2022, of the 8,138 initial C8 EAD applications cases pending for adjudication that were subject to the *Rosario* injunction, 30 applications had been pending for 91 or more days. USCIS adjudicated a total of 12,475 cases in January 2022. On February 28, 2022, as a consequence of the vacatur, there were 93,639 initial C8 EAD cases pending for adjudication that were subject to the *Rosario* injunction, of which 72,412 had been pending for 91 or more days. As of August 31, 2022, as a consequence of USCIS's sustained efforts to resume 30-day compliance, the backlog of cases pending for more than 91 days had been reduced to 687. USCIS adjudicated a total of 34,889 cases in August of 2022. Consider also that between March and August of 2021 USCIS adjudicated an average of 14,502 cases per month. Between March and August of 2022 USCIS adjudicated an average of 28,840 cases per month.

Likewise, Plaintiffs are not entitled to a permanent injunction because they have not and cannot succeed on the merits of this case. Moreover, Plaintiffs' alleged "irreparable harm"—that they must consult their clients—is hardly irreparable or a harm. It is their chosen profession: Plaintiffs can continue to counsel them and hire more staff if necessary. Issuing a permanent injunction is most certainly not in the public interest—it would be only in the interest of CASA and ASAP. Such an order would add further confusion to this situation, it would undermine the findings of the *Rosario* court, and it would give adjudication priority to CASA and ASAP members, to the disfavor of every other (c)(8) applicant, many of whom submitted their applications before CASA and ASAP members.

Lastly, a civil contempt order is not appropriate because there was no "valid" order that was violated, or the Agency at least has a reasonable belief for understanding the order to be no longer valid. *See De Simone v. VSL Pharms., Inc.*, No. 8:15-cv-1356, 2021 WL 3023021, at *2 (D. Md. July 16, 2021) (Chuang, J.) ("A party therefore should not be found in civil contempt where there is 'a *fair ground of doubt* as to the wrongfulness of [their] conduct.'") (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)). Plaintiffs might argue that the Government departed from the Court's PI by incorporating CASA and ASAP members into a unified adjudication queue with all other initial (c)(8) EAD applicants; however, this Court's PI did not order USCIS to maintain a separate adjudicatory queue for CASA and ASAP members. This Court ordered the Agency to exempt CASA and ASAP members from application of aspects of the 2020 Asylum EAD Rules. The *Asylumworks* vacatur merely expanded the nature and scope of that relief by vacating the rules, affording even broader relief to all initial (c)(8) EAD applicants.  The Agency's action was not a departure from the PI; but even if this Court disagrees, the PI dissolved when the relief sought became moot, and there was otherwise no lawful basis to keep them separate. Moreover, as shown above and in the recent *Rosario* decision, the Agency has substantially complied with the PI, making a civil contempt order inappropriate.

Date: October 18, 2022

Respectfully submitted,

Erek L. Barron
United States Attorney

*/s/ Patrick G. Selwood*
Patrick G. Selwood
Assistant United States Attorney
United States Attorney's Office, District of Maryland
36 South Charles Street, Fourth Floor
Baltimore, Maryland, 21201
Telephone: (410) 209-4892
Email: Patrick.Selwood@usdoj.gov

*Counsel for the Defendants*